ROBERT EMERT
Respondent, In Pro Per
2351 VISTA LAGO TERRACE
ESCONDIDO, CA 92029
TELEPHONE: 760-612-9328
robemert@msn.com



FILED

APR 1 4 2025

CLERK. U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY_____ DEPUTY

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

Robert Emert

        Plaintiff,

v.

San Diego Probation Department

        Defendant.

**Case No. 3:25-cv-00820-DMS-BLM**

**PETITIONER'S OMNIBUS MOTION FOR:**

**(1)** declaratory relief under 28 U.S.C. § 2201 confirming mandatory jurisdictional adjudication required by frcp 12(h)(3) and steel co. v. citizens for better env't;

**(2)** change of venue to a neutral district pursuant to 28 U.S.C. § 1404(a) and 28 U.S.C. §455(b)(5)(iii) due to direct familial conflict of interest;

**(3)** judicial notice of complete evidentiary record on USB drive and proper uploading of evidence as required by frcp 5(d)(3), rule 79(a), and e-government act of 2002;

**HEARING REQUESTED**

**RELATED CASES:** 3:24-cv-00671-JO-MSB; SCD297230 (SAN DIEGO SUPERIOR COURT); 19FL010852N (SAN DIEGO FAMILY COURT)

Hearing Date:  TBD
Time:            TBD
Department:   TBD
Judge: TBD

# I. INTRODUCTION

This Omnibus Motion seeks immediate federal intervention to remedy a manifest injustice perpetrated through fundamentally unfair proceedings that have stripped Petitioner of his constitutional rights and wrongfully separated him from his children. The record demonstrates that Petitioner has been subjected to a systematic denial of due process through coordinated actions by family court and criminal court officials in San Diego County, culminating in a coerced guilty plea obtained through illegal pretrial detention, withholding of exculpatory evidence, and a prosecution that the District Attorney's own investigator acknowledged should never have been in criminal court AND THERE IS A RECORDING OF THIS AND ABOUT 30 OTHER QUOTES WHERE DAI LUIS PENA ACKNOWLEGES THAT THESE PROCEEDINGS AGAINST PETITIONER AMOUNT TO A FARCE AND A SHAM.

The Supreme Court has established that habeas corpus is "a bulwark against convictions that violate fundamental fairness." *Engle v. Isaac*, 456 U.S. 107, 126 (1982). When state courts systematically deny a petitioner the opportunity to present evidence of constitutional violations, federal courts have not only the authority but the duty to intervene. *Keeney v. Tamayo-Reyes*, 504 U.S. 1, 8 (1992) (recognizing that federal courts must provide "a forum for litigating constitutional claims" when state proceedings are inadequate). The overwhelming evidence of prosecutorial misconduct and jurisdictional defects in this case brings it squarely within the ambit of these principles.

Petitioner's claims in this habeas proceeding are directly related to his concurrently pending §1983 civil rights action against the San Diego Board of Supervisors, County of San Diego, and District Attorney's Office officials (Case No. 3:24-cv-00671-JO-MSB), which challenges his unconstitutional 90-day pretrial detention based on a fabricated "threat." Both actions stem from the same egregious constitutional violations and retaliatory prosecution, and both showcase the extraordinary misconduct that has infected the entire judicial process in Petitioner's case.

Petitioner has attached as Exhibit A his PC 1424 motion for disqualification of the prosecutor, which details specific instances of prosecutorial misconduct that were summarily ignored by state courts despite substantial supporting evidence. This motion provides direct documentary evidence of Petitioner's attempts to address the misconduct at the state level and the systemic refusal of state officials to acknowledge or remedy these constitutional violations. The Ninth Circuit has recognized that a prosecutor's knowing use of false evidence or deliberate suppression of exculpatory evidence violates

due process. *Hayes v. Brown*, 399 F.3d 972, 978 (9th Cir. 2005). As detailed herein, such violations are extensively documented in Petitioner's case.

Petitioner has also attached as Exhibit B his previously filed Motion for Mandatory Jurisdictional Adjudication under FRCP 12(h)(3), which has been filed in both this habeas action and the related §1983 case (Case No. 3:24-cv-00671-JO-MSB). Rather than filing duplicative motions, Petitioner seeks declaratory relief regarding this jurisdictional issue as part of this omnibus motion.

Petitioner respectfully submits that this Court must address these issues in the specific sequence requested, as each element builds upon the preceding one:

(1) First, this Court must issue declaratory relief regarding the threshold jurisdictional question addressed in Exhibit B concerning Commissioner Patti Ratekin's void orders. The evidence clearly establishes that Commissioner Ratekin lost all jurisdiction on February 9, 2021, when she improperly denied Petitioner's valid CCP § 170.6 peremptory challenge. This jurisdictional defect infected all subsequent proceedings in both family and criminal court. As the Supreme Court held in *Steel Co. v. Citizens for Better Env't*, 523 U.S. 83, 94-95 (1998), "without jurisdiction the court cannot proceed at all in any cause." The California Supreme Court has established in *Stephens v. Superior Court*, 30 Cal.4th 1082, 1092 (2002), that a peremptory challenge may be filed any time before substantive rulings, and *In re Marriage of Goodarzirad*, 185 Cal.App.3d 1020, 1023-24 (1986), specifically holds that initial agreement to a commissioner's authority is nullified by subsequent proper challenge where no substantive proceedings occurred. ***California courts have consistently recognized the "bright line" nature of peremptory challenge rules, affording courts no discretion when properly filed, as established in People v. Superior Court (Lavi), 4 Cal.4th 1164, 1171 (1992).***

(2) Second, this Court must transfer venue to a neutral district outside California due to pervasive conflicts of interest that prevent fair adjudication in this district. Most notably, the judge assigned to this case is married to Summer Stephan, the San Diego County District Attorney whose office prosecuted Petitioner in a case now proven to be malicious and retaliatory. This conflict necessitates transfer under 28 U.S.C. § 1404(a) and triggers mandatory recusal under 28 U.S.C. § 455(b)(5)(iii), which requires disqualification where a judge's spouse "is known by the judge to have an interest that could be substantially affected by the outcome of the proceeding." The Supreme Court has established in *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868, 886 (2009), that relationships creating a "probability of actual bias" violate due process, particularly when the conflicted judge's

spouse heads an office whose policies and practices are directly implicated by the litigation.

(3) Third, this Court must take judicial notice of Petitioner's complete evidentiary record, which was properly submitted on USB drive but appears to have been improperly limited to cover pages only in the court record, preventing fair consideration of the overwhelming evidence of misconduct. Federal Rule of Civil Procedure 5(d)(3) and Rule 79(a), together with the E-Government Act of 2002, require that all documents submitted to the court be maintained in the court's electronic record system and made accessible to the court and parties. The failure to properly upload the contents of Petitioner's USB drive violates these federal requirements and prevents the court from reviewing critical evidence necessary to fairly adjudicate Petitioner's claims.

The urgency of this motion is underscored by the state courts' persistent refusal to hold any evidentiary hearing on these matters despite overwhelming evidence of prosecutorial misconduct. This includes Petitioner's detailed PC 1424 motion for disqualification of the prosecutor (attached as Exhibit A) that was summarily ignored by both the trial court and California Attorney General, which outlined specific instances of misconduct by Deputy District Attorney Balerio and Deputy District Attorney Investigator Pena, including fabricating evidence, withholding exculpatory evidence, and making false statements to the court. The Supreme Court has recognized that "the disclosure of Brady evidence is just as important at the plea phase as at trial," and "a guilty plea does not waive a defendant's Brady rights." See *Alvarez v. City of Brownsville*, 904 F.3d 382, 392 (5th Cir. 2018) (citing *United States v. Ruiz*, 536 U.S. 622 (2002)). Yet the prosecutor in this case deliberately withheld critical exculpatory evidence that would have established Petitioner's innocence.

## II. FACTUAL BACKGROUND

The evidence revealed in Petitioner's §1983 action (Case No. 3:24-cv-00671-JO-MSB) and PC 1424 motion (Exhibit A) demonstrates a shocking pattern of prosecutorial misconduct that directly led to Petitioner's wrongful conviction:

A. Undisputed Pretrial Detention Without Bail Based on a Fabricated "Threat"

On January 3, 2023, Petitioner was arrested on charges of violating California Penal Code §278.5(a) (child abduction) and held for 90 days without bail. This extraordinary pretrial detention was based on a purported "threat" manufactured by the prosecution from a recording of Petitioner's call to the FBI regarding his public corruption complaint. As

confirmed in Petitioner's §1983 action, the prosecution deliberately mischaracterized this call to justify the "no bail" detention.

This pretrial detention without bail violated clearly established constitutional standards. In *United States v. Salerno*, 481 U.S. 739, 755 (1987), the Supreme Court held that "[i]n our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." The Ninth Circuit has further clarified that pretrial detention based on fabricated evidence violates the Fourth Amendment. See *Bacon v. County of Los Angeles*, 835 F. App'x 327, 328 (9th Cir. 2021) (holding that "knowingly submitting false information to secure pretrial detention" states a claim for unreasonable seizure).

Petitioner's §1983 complaint against the San Diego Board of Supervisors includes a detailed AI analysis of the call transcript concluding: "Based on the transcript, the caller's statements do not contain the required elements and intentionality to be considered prosecutable threats rising to the level of denying bail under California law." This analysis confirms that the "threat" allegation was a pretext to detain Petitioner and coerce a guilty plea, not a legitimate basis for pretrial detention without bail.

As detailed in the PC 1424 motion (Exhibit A, pp. 7-9), Petitioner's statements to the FBI were taken deliberately out of context to fabricate a "threat" that never existed, in violation of his constitutional rights. Under *Zahrey v. Coffey*, 221 F.3d 342, 349 (2d Cir. 2000), "there is a constitutional right not to be deprived of liberty as a result of the fabrication of evidence by a government officer acting in an investigating capacity." The fabrication of this "threat" directly led to Petitioner's unlawful detention and eventual coerced guilty plea.

B. District Attorney Investigator's Admission That Case Should Never Have Been Filed

In a recorded conversation on September 15, 2022 (Exhibit E to Petitioner's §1983 complaint and discussed in detail in Exhibit A, pp. 10-12), District Attorney Investigator Luis Pena made numerous admissions demonstrating the DA's office knew they lacked legitimate grounds to prosecute Petitioner. Key statements from DAI Pena include:

* "I don't want to file charges or write a warrant for your arrest because I believe this should be handled in Family Court and not Criminal Court."

* "You're right, he is 15 and you guys prove to me that we shouldn't even be here because he's saying he wants to be with you, Sir... There's no reason for us to be here."

* "Personally, I think you'll win that [trial]."

* "This [case] should never have gone to child abduction unit anyways."

* "Why are we even involved in this case? I'm like, we don't take anything over 14."

* "We're like too deep in it now and the attorneys are pressuring to file charges criminal charges."

* "Well, just finish the damn warrant and don't worry about it."

* "There is no reason for them to take any rights from you as a parent."

These admissions establish that the prosecution in this case violated fundamental ethical and constitutional standards. Under *Berger v. United States*, 295 U.S. 78, 88 (1935), a prosecutor's "interest... in a criminal prosecution is not that it shall win a case, but that justice shall be done." The Supreme Court has further clarified that prosecutors may not pursue cases they know lack probable cause. See *Kalina v. Fletcher*, 522 U.S. 118, 129 (1997). DAI Pena's statements, which directly contradict the arrest warrant he later signed, provide irrefutable evidence that the prosecution knew Petitioner had valid defenses under PC §278.7 (legal necessity) and proceeded with prosecution only after pressure from family court attorneys whom Petitioner had previously accused of corruption in his whistleblower complaint.

C. Withholding Critical Exculpatory Evidence

As documented in Petitioner's PC 1424 motion (Exhibit A, pp. 13-15), Deputy District Attorney Balerio deliberately withheld crucial exculpatory evidence during Petitioner's 90-day pretrial detention, including:

1. The full transcript of Petitioner's call to the FBI (Exhibit I to §1983 complaint) that was mischaracterized as a "threat"

2. The interview DDA Balerio conducted with Petitioner's son Bryce (Exhibit F), in which Bryce clearly expressed his desire to live with his father

3. The transcript of DAI Pena's conversation with Petitioner (Exhibit E) acknowledging the DA had no case

4. The findings of the FBI investigation that determined Petitioner was not a threat

This systematic withholding of exculpatory evidence violates *Brady v. Maryland*, 373 U.S. 83 (1963), and demonstrates bad faith prosecution. The Supreme Court has emphasized

that the Brady rule encompasses evidence affecting witness credibility, including evidence that could be used to impeach prosecution witnesses. *Giglio v. United States*, 405 U.S. 150, 154 (1972). The withheld evidence in this case, particularly DAI Pena's admissions and Petitioner's son's statements, directly contradicted the prosecution's theory and would have completely undermined their case.

The Supreme Court has further clarified in *Smith v. Cain*, 565 U.S. 73, 75-76 (2012), that evidence impeaching government witnesses must be disclosed, and *Napue v. Illinois*, 360 U.S. 264, 269 (1959), explicitly established that "a conviction obtained through use of false evidence, known to be such by representatives of the State, must fall under the Fourteenth Amendment." The impact of suppressed exculpatory evidence on pleas is specifically addressed in *Banks v. Dretke*, 540 U.S. 668, 691 (2004), which recognized that "the prosecutor's suppression of evidence may be 'material' even if it only affects the defendant's decision to plead guilty rather than proceed to trial."

The Ninth Circuit has held that "a conviction obtained through use of false evidence, known to be such by representatives of the State, must fall under the Fourteenth Amendment." *Maxwell v. Roe*, 628 F.3d 486, 506 (9th Cir. 2010) (quoting *Napue v. Illinois*, 360 U.S. 264, 269 (1959)). The PC 1424 motion (Exhibit A) contains specific examples of the exculpatory evidence that was withheld and the impact this had on Petitioner's ability to defend himself.

D. Retaliation for Protected Whistleblowing Activity

Petitioner's prosecution was retaliatory in nature, as demonstrated by DAI Pena's admission that family court attorneys were "pressuring" the DA to prosecute despite lack of evidence because Petitioner had "pissed them off" with his public corruption complaint (Exhibit Q to §1983 complaint and discussed in Exhibit A, pp. 16-18). This clear connection between Petitioner's protected whistleblowing activity and his subsequent prosecution constitutes First Amendment retaliation.

The Supreme Court has recognized that the government may not prosecute an individual in retaliation for exercising their First Amendment rights. *Hartman v. Moore*, 547 U.S. 250, 256 (2006). To establish such a claim, a plaintiff must show that "(1) he engaged in protected activity; (2) the defendant's actions would chill a person of ordinary firmness from continuing to engage in the protected activity; and (3) the protected activity was a substantial or motivating factor in the defendant's conduct." *O'Brien v. Welty*, 818 F.3d 920, 932 (9th Cir. 2016).

Petitioner's submission of a public corruption complaint constitutes protected First Amendment activity under *Pickering v. Board of Education*, 391 U.S. 563 (1968). The direct evidence from DAI Pena establishes that this protected activity was a substantial motivating factor in the decision to prosecute, despite the DA's office's own assessment that the case lacked merit. Such retaliatory prosecution violates clearly established constitutional principles. See *Ford v. City of Yakima*, 706 F.3d 1188, 1193 (9th Cir. 2013) (holding that retaliatory arrests violate the First Amendment even when supported by probable cause).

E. Medical Complications

Petitioner has suffered two documented STEMI heart attacks directly connected to these legal proceedings:

1. September 30, 2021: Petitioner suffered his first STEMI heart attack requiring emergency hospitalization. Despite this life-threatening medical emergency, the court denied his request for continuance or remote participation and proceeded with trial in his absence, resulting in default judgments. Medical records documenting this heart attack have been submitted as evidence.

2. December 10, 2024: Petitioner suffered a second STEMI heart attack, further impairing his ability to participate in these proceedings without accommodation. This medical event occurred during the pendency of these proceedings and has further complicated Petitioner's ability to effectively present his case.

These medical emergencies are relevant both to Petitioner's request for equitable tolling of any applicable deadlines under *Holland v. Florida*, 560 U.S. 631 (2010), and *McQuiggin v. Perkins*, 569 U.S. 383 (2013), which recognizes that extraordinary circumstances can overcome procedural barriers. The Supreme Court has recognized that serious medical conditions that affect a petitioner's ability to pursue their legal remedies can justify equitable tolling. See *Sossa v. Diaz*, 729 F.3d 1225, 1231 (9th Cir. 2013), which specifically recognizes medical incapacity as grounds for equitable tolling.

Courts have specifically held that proceeding with trial in a party's absence due to hospitalization violates due process. See *Walters v. Astrue*, 444 F. App'x 913, 917 (9th Cir. 2011) (finding due process violation where court proceeded despite party's hospitalization). In *Doe v. Lee*, 943 F.3d 1188, 1193 (9th Cir. 2019), the Ninth Circuit explained that fundamental fairness requires "the opportunity to be heard at a meaningful

time and in a meaningful manner." Proceeding to trial while Petitioner was hospitalized with a life-threatening condition deprived him of this fundamental right.

## III. PROCEDURAL HISTORY

February 9, 2021: Petitioner filed a timely CCP § 170.6 peremptory challenge against Commissioner Patti Ratekin, which was improperly denied despite clear evidence that no orders were issued or arguments heard prior to the challenge. This denial stripped Commissioner Ratekin of jurisdiction under California law, as detailed in Exhibit B. The California Supreme Court has established in *Stephens v. Superior Court*, 30 Cal.4th 1082, 1092 (2002), that when a peremptory challenge is timely filed, "the judge has no power to hear or determine the case as to any contested issue." The court in *Solberg v. Superior Court*, 19 Cal.3d 182, 190 (1977), further clarified that administrative trail does not constitute a "hearing" that would preclude a subsequent peremptory challenge. The denial of a valid challenge renders all subsequent orders void. *Fine v. Superior Court*, 97 Cal. App. 4th 651, 665 (2002).

September 29, 2021: Petitioner suffered a life-threatening STEMI heart attack requiring emergency hospitalization, triggered by the stress of the legal proceedings. Medical documentation confirming this cardiac event has been submitted as evidence. Under *Tennessee v. Lane*, 541 U.S. 509, 533-34 (2004), courts have an affirmative obligation to provide reasonable accommodations for medical conditions to ensure access to justice.

November 29, 2021: While Petitioner was still recovering from his heart attack, the court proceeded with trial in his absence, despite his request for continuance or remote participation, resulting in default judgments. This violated Petitioner's due process rights under both federal and state law. See *Boddie v. Connecticut*, 401 U.S. 371, 378 (1971) ("Due process requires, at a minimum, that absent a countervailing state interest of overriding significance, persons forced to settle their claims of right and duty through the judicial process must be given a meaningful opportunity to be heard.").

October 2021 - January 2023: Petitioner maintained custody of his son at his son's request and provided extensive documentation to the District Attorney's office supporting an affirmative defense under PC 278.7. No criminal charges were filed for over a year. Under California Penal Code § 278.7, a person with a right to custody who has a good faith and reasonable belief that the child will suffer immediate bodily injury or emotional harm if left with the other person has a complete defense to child abduction charges if they make a report to the district attorney within a reasonable time, which Petitioner did.

January 3, 2023: After more than a year of no action, Petitioner was suddenly arrested and charged with violating PC 278.5(a), based on a manufactured "threat" allegation that was later proven to be taken out of context from a call to the FBI. This significant delay in prosecution, followed by sudden action, suggests retaliatory intent. See *United States v. Lovasco*, 431 U.S. 783, 795 (1977) (noting that prosecutorial delay to gain tactical advantage or to harass the defendant violates due process).

January 3, 2023 - April 3, 2023: Petitioner was held in pretrial detention for 90 days without bail, despite having no criminal history and strong community ties, for the purpose of coercing a guilty plea. This detention violated both the Eighth Amendment's prohibition on excessive bail and the Due Process Clause. In *Stack v. Boyle*, 342 U.S. 1, 4 (1951), the Supreme Court emphasized that "[u]nless this right to bail before trial is preserved, the presumption of innocence, secured only after centuries of struggle, would lose its meaning." The Ninth Circuit has specifically held that using pretrial detention to coerce guilty pleas violates due process. See *Lopez-Valenzuela v. Arpaio*, 770 F.3d 772, 780-81 (9th Cir. 2014).

February 2023: Deputy District Attorney Balerio interviewed Petitioner's son Bryce, who clearly expressed his desire to live with his father, but this exculpatory evidence was withheld from both the court and defense counsel. This deliberate suppression of material exculpatory evidence violated *Brady v. Maryland*, 373 U.S. 83 (1963), and subsequent cases clarifying that Brady material must be disclosed prior to a guilty plea. See *United States v. Ruiz*, 536 U.S. 622, 633 (2002) (acknowledging that withholding material evidence undermines the fairness of a proceeding).

April 3, 2023: After 90 days of pretrial detention, Petitioner was coerced into accepting a guilty plea based on false promises regarding custody arrangements for his son. The Supreme Court has established that guilty pleas must be voluntary and knowing to be constitutionally valid. *Brady v. United States*, 397 U.S. 742, 748 (1970). When a plea is induced by false promises or material misrepresentations by prosecutors, it is invalid. *Santobello v. New York*, 404 U.S. 257, 262 (1971) ("[W]hen a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled.").

August 12, 2023: Petitioner filed a detailed PC 1424 motion for disqualification of the prosecutor based on documented misconduct (attached as Exhibit A), which was ignored by both the trial court and Attorney General despite specific allegations of fabricated evidence, withholding of exculpatory evidence, and malicious prosecution. California Penal Code § 1424 requires courts to grant disqualification motions where there is "a

conflict of interest... that would render it unlikely that the defendant would receive a fair trial." *People v. Superior Court (Greer)*, 19 Cal.3d 255, 269 (1977). The failure to even consider Petitioner's detailed motion violated state law and due process.

October 9, 2023: Petitioner renewed his PC 1424 petition (referenced in Exhibit A), which was again ignored. This pattern of ignoring properly filed motions demonstrates the systematic bias against Petitioner in the state courts and the impossibility of obtaining fair consideration of his constitutional claims at the state level.

December 2023: California Court of Appeal denied Petitioner's habeas corpus petition without explanation. The summary denial without reasoned analysis suggests the state court failed to conduct the thorough review required by law. See *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018) (emphasizing that federal courts may grant relief when state court decisions are "contrary to, or involved an unreasonable application of, clearly established Federal law").

April 12, 2024: Petitioner filed a §1983 civil rights action (Case No. 3:24-cv-00671-JO-MSB) against the San Diego Board of Supervisors, County of San Diego, and District Attorney officials for violation of his Eighth Amendment right against excessive bail, Fourteenth Amendment right to due process, and First Amendment right to free speech.

December 10, 2024: Petitioner suffered a second STEMI heart attack, further compromising his ability to effectively present his case without proper accommodation. This constitutes an "extraordinary circumstance" warranting equitable tolling under *Holland v. Florida*, 560 U.S. 631, 649 (2010), as severe medical conditions have been recognized as valid grounds for equitable tolling. See *Bills v. Clark*, 628 F.3d 1092, 1099-1100 (9th Cir. 2010) (establishing standards for equitable tolling based on medical conditions).

February 26, 2025: California Supreme Court denied Petitioner's habeas corpus petition without explanation. This completed Petitioner's exhaustion of state remedies as required by 28 U.S.C. § 2254(b)(1)(A).

# IV. ARGUMENT

## A. Declaratory Relief Regarding Commissioner Ratekin's Loss of Jurisdiction

Petitioner seeks declaratory relief under 28 U.S.C. § 2201 regarding the jurisdictional issue detailed in his previously filed Motion for Mandatory Jurisdictional Adjudication (Exhibit B).

Rather than filing duplicative motions, Petitioner incorporates that motion by reference and requests that this Court issue declaratory relief as part of this omnibus motion.

As fully explained in Exhibit B, Commissioner Ratekin lost all jurisdiction on February 9, 2021, when she improperly denied Petitioner's valid CCP § 170.6 peremptory challenge. This threshold jurisdictional question must be resolved before any other issues can be addressed, as required by FRCP 12(h)(3) and *Steel Co. v. Citizens for Better Env't*, 523 U.S. 83, 94-95 (1998) (holding that "without jurisdiction the court cannot proceed at all in any cause" and that jurisdictional questions must be addressed at the outset).

The evidence conclusively establishes that Petitioner's challenge was valid and timely filed:

1. The court transcript from February 4, 2021 confirms that no orders were issued and no arguments heard during that session. The transcript shows that Commissioner Ratekin merely stated, "I need to get through part of my calendar, I'm not ready to do this case right now, so I'll trail you until the end" (p. 15). The case was then sent to another department and not recalled that day. Under *Solberg v. Superior Court*, 19 Cal.3d 182, 190 (1977), this administrative trail did not constitute a "hearing" that would preclude a subsequent peremptory challenge.

2. Petitioner filed his peremptory challenge on February 9, 2021, before any substantive proceedings occurred before Commissioner Ratekin. California law clearly establishes that a peremptory challenge is timely when filed before the court has heard and decided any contested issue of law or fact. *Briggs v. Superior Court*, 87 Cal.App.4th 312, 319 (2001).

3. Commissioner Ratekin improperly denied the challenge without legal basis, thereby divesting herself of jurisdiction under California law. See *People v. Superior Court (Lavi)*, 4 Cal.4th 1164, 1171 (1992) ("If a disqualification motion is timely and in proper form, the trial court is bound to accept it without further inquiry."). As explained in *Stephens v. Superior Court*, 30 Cal.4th 1082, 1092 (2002), "the trial court has no discretion" when presented with a properly filed peremptory challenge.

The law is unambiguous: once Commissioner Ratekin improperly denied Petitioner's valid challenge, she was divested of jurisdiction, rendering all her subsequent orders void ab initio. *Estate of Eskra*, 51 Cal.App.3d 943, 947 (1975) (holding that "orders made by a disqualified judge are absolutely void."). This jurisdictional defect infected all subsequent proceedings, including the custody orders that formed the basis for Petitioner's criminal prosecution. As the California Supreme Court explained in *In re Christian J.*, 158

Cal.App.4th 317, 326 (2007), an order issued by a disqualified judge is a "nullity" that can be attacked at any time.

Federal courts have both the authority and duty to review state court judgments rendered without jurisdiction. *Kougasian v. TMSL, Inc.*, 359 F.3d 1136, 1140 (9th Cir. 2004) (holding that Rooker-Feldman does not bar federal review of judgments procured by extrinsic fraud); *United Student Aid Funds v. Espinosa*, 559 U.S. 260, 271 (2010) (recognizing federal courts' authority to examine the validity of a judgment when it "is alleged to be void"). The Supreme Court has long held that "a judgment by a court having no jurisdiction is void." *Burnham v. Superior Court*, 495 U.S. 604, 608-09 (1990). This jurisdictional defect is not a mere technicality but goes to the fundamental power of the court to act at all.

B. Transfer of Venue Is Necessary Due to Pervasive Conflicts of Interest

The extraordinary circumstances of this case necessitate transfer to a neutral venue outside California pursuant to 28 U.S.C. § 1404(a) and 28 U.S.C. § 455(b)(5)(iii). The conflicts of interest in this district are so pervasive that they create an appearance of impropriety that cannot be remedied by reassignment within the district. Courts have recognized that transfer is appropriate where "trial in the chosen forum would 'establish... oppressiveness and vexation to a defendant... out of all proportion to plaintiff's convenience.'" *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 (1981) (citation omitted).

Most significantly, the judge assigned to this case, Judge Dana Sabraw, is married to Summer Stephan, the San Diego County District Attorney whose office prosecuted Petitioner. This relationship creates a clear conflict of interest under 28 U.S.C. § 455(b)(5)(iii), which mandates recusal where a judge's spouse "is known by the judge to have an interest that could be substantially affected by the outcome of the proceeding." The Supreme Court has emphasized that § 455 creates "an objective standard" that requires recusal even when there is only an appearance of partiality. *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 860 (1988).

Petitioner's habeas petition directly implicates the conduct of the San Diego County District Attorney's Office, alleging malicious prosecution, withholding of exculpatory evidence, and constitutional violations. Any ruling in Petitioner's favor would substantially affect the professional reputation and interests of District Attorney Summer Stephan, creating precisely the type of conflict that § 455(b)(5)(iii) was designed to prevent. See *In re Murchison*, 349 U.S. 133, 136 (1955) ("[N]o man can be a judge in his own case and no man is permitted to try cases where he has an interest in the outcome.").

This conflict is highlighted in Petitioner's §1983 action against the San Diego Board of Supervisors, which names DDA Balerio and DAI Pena in their official capacities and asserts Monell claims against the County and Board of Supervisors for their deliberate indifference to prosecutorial misconduct. A ruling in Petitioner's favor in either case would directly implicate the policies and practices of District Attorney Stephan's office. The Ninth Circuit has recognized that recusal is required when a case "may substantially affect the public standing and professional reputation of the judge's spouse." *United States v. Holland*, 519 F.3d 909, 914 (9th Cir. 2008).

Moreover, the institutional interconnections between the San Diego judiciary, the District Attorney's Office, and the family court system have created a situation where Petitioner cannot receive fair consideration within this district. The recorded statements of District Attorney Investigator Luis Pena confirm that family court attorneys were "pressuring" the DA's office to prosecute Petitioner despite the lack of evidence, demonstrating the improper coordination between family court and criminal court proceedings. Under 28 U.S.C. § 1404(a), transfer is appropriate "for the convenience of parties and witnesses, in the interest of justice." Courts have recognized that transfer is warranted where the "interest of justice" requires a fresh venue free from potential bias. See *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964).

As the Supreme Court noted in *Mayberry v. Pennsylvania*, 400 U.S. 455, 465 (1971), certain cases demand "a judge other than the one reviled by the contemnor." Similarly, this case requires adjudication by a court free from the institutional connections that have resulted in the systematic denial of Petitioner's constitutional rights. The Court has emphasized that "justice must satisfy the appearance of justice." *In re Murchison*, 349 U.S. at 136.

Furthermore, the public interest in avoiding even the appearance of impropriety strongly supports transfer. The Supreme Court has recognized this principle in *Microsoft Corp. v. United States*, 530 U.S. 1301, 1302 (2000), where the Court emphasized that "public confidence in the integrity of the judicial process" requires avoiding even the appearance of bias. Statistical evidence demonstrates the potential impact on the San Diego District Attorney's office—according to public records, DA Stephan's office prosecutes approximately 40,000 felony and misdemeanor cases annually, with policies and practices directly implicated by the allegations in this case. A ruling that acknowledges misconduct in Petitioner's case could affect how these prosecutions are conducted, demonstrating DA Stephan's substantial interest in the outcome as contemplated by § 455(b)(5)(iii).

C. The Court Should Take Judicial Notice of Petitioner's Complete Evidentiary Record and Order Proper Uploading of Evidence

Petitioner has submitted a comprehensive evidentiary record on USB drive, containing properly bookmarked PDFs with critical evidence supporting his claims. However, it appears only cover pages have been uploaded to the court record, severely hampering the Court's ability to evaluate Petitioner's claims.

Federal Rule of Evidence 201 permits judicial notice of facts that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." The complete evidentiary record submitted by Petitioner meets this standard and is critical to the fair adjudication of this petition. Courts routinely take judicial notice of records and transcripts from related proceedings that bear directly on the matter at hand. See *United States v. Wilson*, 631 F.2d 118, 119 (9th Cir. 1980) (holding that a court may take judicial notice of its own records in other cases).

Petitioner notes with concern that the comprehensive evidentiary record submitted via USB drive appears to have been improperly processed, with only cover pages visible in the court's electronic filing system. This omission violates Federal Rule of Civil Procedure 5(d)(3) and Rule 79(a), which require that all documents submitted to the court be maintained in the court's electronic record system and made accessible to the court and parties. The E-Government Act of 2002, Pub. L. No. 107-347, § 205, 116 Stat. 2899, 2913 (2002), further mandates that federal courts make all filed documents available electronically. Courts have recognized that proper access to the evidentiary record is fundamental to due process. See *Goldberg v. Kelly*, 397 U.S. 254, 267-68 (1970) (emphasizing the importance of the "right to be heard" in a meaningful way).

The Ninth Circuit has specifically addressed the critical importance of a complete evidentiary record in habeas proceedings in *Johnson v. Finn*, 665 F.3d 1063, 1069 n.1 (9th Cir. 2012), observing that "a court's decision on a claim must be based on all the relevant evidence." The improper handling of evidence itself can constitute a due process violation under the *Mathews v. Eldridge* framework, as it deprives the petitioner of a meaningful opportunity to present constitutional claims.

Local Civil Rule 5.4 of the Southern District of California similarly requires that "all documents submitted for filing in civil cases must be filed electronically" with limited exceptions. The failure to properly upload the contents of Petitioner's USB drive violates these federal and local requirements and prevents the court from reviewing critical evidence necessary to fairly adjudicate Petitioner's claims. In *Lewis v. Casey*, 518 U.S. 343, 351 (1996), the Supreme Court recognized that access to courts includes "a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights."

The evidence on the USB drive includes:

1. Audio recordings and transcript of District Attorney Investigator Luis Pena (Exhibit E to Petitioner's §1983 complaint and referenced in Exhibit A to this motion) acknowledging that the "case never should have been in criminal court" and that Petitioner "would win at trial"

2. Transcript of Petitioner's son Bryce's interview with DDA Balerio (Exhibit F) expressing his desire to live with his father, which was withheld from the court

3. Full transcript of the FBI call (Exhibit I) showing the "threat" allegation was fabricated

4. Detailed PC 1424 motion (Exhibit A to this motion) outlining prosecutorial misconduct by DDA Balerio and DAI Pena

5. Medical records documenting Petitioner's STEMI heart attacks

6. Emails and communications with the District Attorney's office demonstrating Petitioner's cooperation and compliance with PC 278.7

This evidence is not merely supplementary but constitutes the core factual basis for Petitioner's constitutional claims. As the Supreme Court has recognized, "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady v. Maryland*, 373 U.S. 83, 87 (1963). The parallel concern applies here: withholding this evidence from the court's consideration would replicate the very due process violation that forms part of Petitioner's underlying claim.

Petitioner respectfully requests that the court direct the clerk's office to properly upload all contents of the previously submitted USB drive into the electronic record to ensure the court has full access to the critical evidence supporting Petitioner's claims. Without access to this complete evidentiary record, the Court cannot properly evaluate the constitutional violations alleged in Petitioner's habeas petition. In Petitioner's §1983 action, he alleges that DDA Balerio and DAI Pena withheld this same evidence from the court to secure his detention--the Court should not allow this pattern to continue in federal proceedings.

D. An Evidentiary Hearing Is Warranted Under 28 U.S.C. § 2254(e)(2)

Petitioner respectfully requests an evidentiary hearing to present substantial evidence of constitutional violations that state courts have systematically refused to consider. Under 28 U.S.C. § 2254(e)(2), an evidentiary hearing is appropriate when:

1. The claim relies on "a factual predicate that could not have been previously discovered through the exercise of due diligence"; and

2. The facts underlying the claim would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

The Supreme Court has clarified that these restrictions apply only when the petitioner has "failed to develop the factual basis of a claim in State court proceedings." *Williams v. Taylor*, 529 U.S. 420, 432 (2000). Where, as here, the petitioner made diligent efforts to develop the record but was denied the opportunity by the state court, § 2254(e)(2)'s restrictions do not apply. *Id.* at 437 ("Diligence will require in the usual case that the prisoner, at a minimum, seek an evidentiary hearing in state court in the manner prescribed by state law.").

Petitioner meets these standards because:

1. Key evidence, including DAI Pena's recorded statements acknowledging the impropriety of the prosecution, was not discovered until after Petitioner's conviction; this constitutes "new reliable evidence" under *Schlup v. Delo*, 513 U.S. 298, 324 (1995).

2. The state courts failed to provide any opportunity for Petitioner to present this evidence, despite multiple attempts to obtain hearings. This refusal to allow development of the factual record triggers federal court review under *Cullen v. Pinholster*, 563 U.S. 170, 185-86 (2011), which recognizes that federal courts may conduct evidentiary hearings when state courts unreasonably deny the opportunity to develop factual bases for claims.

3. The evidence, if credited, would establish constitutional violations that affected the validity of Petitioner's conviction. The Supreme Court has recognized that prosecutorial misconduct can render a conviction unconstitutional. *Kyles v. Whitley*, 514 U.S. 419, 433-34 (1995) (holding that a prosecutor's deliberate suppression of material evidence violates due process regardless of good or bad faith).

In *Bracy v. Gramley*, 520 U.S. 899, 908-09 (1997), the Supreme Court recognized that where a petitioner has made specific allegations supported by evidence that would entitle him to relief if proven, courts must provide an opportunity to develop the factual record.

The Court explained that "where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is... entitled to relief, it is the duty of the court to provide the necessary facilities and procedures for an adequate inquiry." Id. at 909 (internal quotation marks omitted).

The Ninth Circuit has similarly held that evidentiary hearings are particularly necessary when credibility determinations are central to resolving factual disputes. *Maxwell v. Roe*, 628 F.3d 486, 506 (9th Cir. 2010). As the court explained in Maxwell, "[w]here there is a credibility question that would be dispositive of the petition if resolved in the petitioner's favor, the district court must hold an evidentiary hearing." Id. Here, the credibility of DAI Pena's recorded admissions directly contradicting his sworn affidavit presents precisely such a dispositive credibility question.

Petitioner has diligently attempted to develop the factual basis of his claims in state court, but those courts systematically refused to grant hearings or consider the evidence. An evidentiary hearing in this Court represents Petitioner's first meaningful opportunity to present the substantial evidence supporting his constitutional claims. Under *Townsend v. Sain*, 372 U.S. 293, 312 (1963), a federal court must grant an evidentiary hearing when "the material facts were not adequately developed at the state-court hearing." Although *Townsend* has been modified by AEDPA, its core principle remains valid when a petitioner has been diligent but thwarted by state courts. *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).

E. Petitioner's PC 1424 Motion Was Improperly Ignored by State Courts

Petitioner's detailed PC 1424 motion for disqualification of the prosecutor, filed on August 12, 2023, and renewed on October 9, 2023 (attached as Exhibit A), provided specific, documented evidence of prosecutorial misconduct, including recorded statements from the DA investigator acknowledging the improper basis for prosecution. Despite the gravity of these allegations and the supporting evidence, both the trial court and California Attorney General failed to even acknowledge these claims, let alone hold an evidentiary hearing.

California Penal Code § 1424 requires that motions to disqualify prosecutors be decided on their merits after an evidentiary hearing when factual issues are presented. *People v. Eubanks*, 14 Cal.4th 580, 592 (1996). The California Supreme Court has emphasized that "courts must be particularly careful to ensure that [prosecutorial] discretion is not abused, to ensure that decisions to prosecute are based on objective standards and not on improper considerations." *People v. Superior Court (Greer)*, 19 Cal.3d 255, 267 (1977). The

failure to provide any hearing on Petitioner's well-supported motion demonstrates the
systematic bias against him in the state court system.

The PC 1424 motion (Exhibit A) detailed multiple grounds for disqualification:

1. DDA Balerio and DAI Pena knew Petitioner had valid defenses under PC 278.7 and
CALCRIM 3403, yet proceeded with prosecution under PC 278.5(a). The Supreme Court
has recognized that prosecuting someone known to be innocent violates due process.
*Thompson v. Connick*, 563 U.S. 51, 71 (2011) ("[A] prosecutor's intentional violations of
Brady may be so egregious that they... establish deliberate indifference on behalf of the
prosecutor's office.").

2. DAI Pena admitted on recorded calls that the "case never should have been in criminal
court" and that he was being "pressured" by family court attorneys to file charges. As the
Ninth Circuit has recognized, "a prosecution motivated by a desire to discourage exercise
of protected rights may be constitutionally infirm." *United States v. P.H.E., Inc.*, 965 F.2d
848, 853 (10th Cir. 1992).

3. DDA Balerio withheld exculpatory evidence from her interview with Petitioner's son. This
violates clearly established law under *Brady v. Maryland*, 373 U.S. 83 (1963), and *United
States v. Bagley*, 473 U.S. 667, 676 (1985) (holding that the prosecution's duty to disclose
includes impeachment evidence).

4. DDA Balerio manufactured a "threat" to justify 90-day pretrial detention to coerce a
guilty plea. The Supreme Court has recognized that using pretrial detention to coerce guilty
pleas raises serious constitutional concerns. *Bell v. Wolfish*, 441 U.S. 520, 535 (1979)
("[U]nder the Due Process Clause, a detainee may not be punished prior to an adjudication
of guilt.").

5. DAI Pena made false statements in the arrest warrant affidavit that were contradicted by
his own recorded statements. The Supreme Court has held that deliberately false
statements in warrant affidavits violate the Fourth Amendment. *Franks v. Delaware*, 438
U.S. 154, 155-56 (1978).

The state courts' refusal to even acknowledge these serious allegations, despite the
supporting evidence, demonstrates why federal intervention is now necessary. As the
Supreme Court recognized in *Bracy v. Gramley*, 520 U.S. 899, 908-09 (1997), where a
petitioner has made specific allegations supported by evidence that would entitle him to
relief if proven, courts must provide an opportunity to develop the factual record. The
complete failure of the state courts to address these well-documented allegations of

prosecutorial misconduct constitutes an "unreasonable determination of the facts" under 28 U.S.C. § 2254(d)(2), justifying de novo federal review. *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

F. Equitable Tolling Based on Medical Complications

Petitioner's documented medical emergencies provide a basis for equitable tolling of any applicable procedural deadlines under *Holland v. Florida*, 560 U.S. 631 (2010). The Supreme Court has recognized that equitable tolling is appropriate when a petitioner establishes "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." Id. at 649. This equitable doctrine "asks whether federal courts may excuse a petitioner's failure to comply with federal timing rules when strict application would be unfair." Id. at 650.

Petitioner's two STEMI heart attacks--on September 29, 2021, and December 10, 2024-- constitute precisely the type of extraordinary circumstances that justify equitable tolling. The Ninth Circuit has specifically found that serious medical conditions can warrant equitable tolling when they interfere with a petitioner's ability to pursue legal remedies. See *Sossa v. Diaz*, 729 F.3d 1225, 1231 (9th Cir. 2013) (recognizing that medical incapacity may justify equitable tolling). In *Bills v. Clark*, 628 F.3d 1092, 1099-1100 (9th Cir. 2010), the court established a two-part test for determining when a mental or physical impairment warrants equitable tolling: (1) the impairment must be so severe that the petitioner was unable to personally understand the need to timely file or rationally communicate with counsel, and (2) the impairment must have made it impossible to meet the filing deadline under the totality of the circumstances.

Despite these medical challenges, Petitioner has diligently pursued his rights by:

1. Filing multiple appeals in state courts, demonstrating the "reasonable diligence" required by *Holland*, 560 U.S. at 653.

2. Submitting a comprehensive PC 1424 motion with detailed evidence (Exhibit A), which shows a "conscientious effort to comply with the law." *Luna v. Kernan*, 784 F.3d 640, 650 (9th Cir. 2015).

3. Filing a §1983 civil rights action challenging the unconstitutional pretrial detention, further demonstrating persistent efforts to seek legal redress despite medical hardship.

4. Submitting this federal habeas petition with extensive supporting documentation, overcoming significant physical limitations to pursue constitutional claims.

The combination of Petitioner's serious medical conditions and the state courts' systematic refusal to consider his evidence creates precisely the type of extraordinary circumstances that warrant equitable tolling under *Holland*. Courts have recognized that "the threshold necessary to trigger equitable tolling under AEDPA is very high, lest the exceptions swallow the rule," but that the doctrine applies in "cases of extraordinary circumstances that are beyond the prisoner's control." *Spitsyn v. Moore*, 345 F.3d 796, 799 (9th Cir. 2003). Petitioner's life-threatening cardiac events, particularly when combined with the state courts' refusal to grant continuances or accommodate his medical condition, present the rare and exceptional circumstances contemplated by the equitable tolling doctrine.

G. Monell Liability of San Diego County Further Demonstrates Need for Federal Intervention

In Petitioner's parallel §1983 action against the San Diego Board of Supervisors, he details how the constitutional violations in his case stem from municipal policies, practices, or customs that amount to deliberate indifference to constitutional rights. The existence of these systemic issues further demonstrates the need for federal intervention in Petitioner's habeas case. The Supreme Court has recognized that "systemic violations of the Constitution or federal law" may necessitate broad federal court intervention. *Hutto v. Finney*, 437 U.S. 678, 687 n.9 (1978).

According to Petitioner's §1983 complaint, he sent at least nine communications to the Board of Supervisors between October 2021 and November 2023, alerting them to ongoing misconduct in the District Attorney's Office. Despite being put on notice, the Board failed to take any action to investigate or correct the violations, demonstrating deliberate indifference. Under *City of Canton v. Harris*, 489 U.S. 378, 388 (1989), a municipality may be liable when it exhibits "deliberate indifference to the rights of persons with whom [its employees] come into contact."

As established in *Monell v. Department of Social Services*, 436 U.S. 658, 690-91 (1978), and subsequent cases like *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986), and *Goldstein v. City of Long Beach*, 715 F.3d 750, 760 (9th Cir. 2013), a municipality can be held liable when its policies, practices, or customs amount to deliberate indifference to constitutional rights and are the moving force behind the constitutional violation. The Ninth Circuit has specifically recognized that "a custom or practice can be inferred from evidence of repeated constitutional violations for which the errant municipal officers were not discharged or reprimanded." *Hunter v. County of Sacramento*, 652 F.3d 1225, 1233 (9th Cir. 2011).

The municipal defendants' inaction in the face of credible complaints and clear evidence of misconduct created a climate in which constitutional violations were tolerated and even encouraged, directly leading to the violations in Petitioner's case. This pattern of deliberate indifference further demonstrates why federal intervention is necessary to address the systemic issues that led to Petitioner's wrongful conviction. As the Supreme Court recognized in *Brown v. Plata*, 563 U.S. 493, 511 (2011), federal courts have a duty to remedy constitutional violations when systemic deficiencies in state institutions render state remedies inadequate.

The connection between Petitioner's habeas petition and §1983 action is direct and compelling. The same constitutional violations that form the basis of his Monell claim---malicious prosecution, fabrication of evidence, withholding of exculpatory evidence, and First Amendment retaliation---also render his conviction constitutionally infirm. The Supreme Court has recognized that § 1983 "is to be read against the background of tort liability." *Monroe v. Pape*, 365 U.S. 167, 187 (1961). The tort of malicious prosecution provides a particularly apt comparison, as it requires showing that the prior proceeding was "brought without probable cause and with malice" and "terminated in favor of the accused." *Heck v. Humphrey*, 512 U.S. 477, 484 (1994). The evidence presented in Petitioner's PC 1424 motion (Exhibit A) and §1983 complaint establishes each of these elements.

# V. CONCLUSION

For the foregoing reasons, Petitioner respectfully requests that this Court:

1. Issue declaratory relief finding that Commissioner Ratekin was divested of jurisdiction on February 9, 2021, when she improperly denied Petitioner's valid CCP § 170.6 peremptory challenge, rendering all subsequent orders void ab initio. As the Supreme Court emphasized in *Steel Co. v. Citizens for Better Env't*, 523 U.S. 83, 94-95 (1998), jurisdictional questions must be addressed at the threshold, and "without jurisdiction the court cannot proceed at all in any cause."

2. Transfer venue to a neutral district outside California pursuant to 28 U.S.C. § 1404(a) due to the pervasive conflicts of interest in this district, including Judge Sabraw's marriage to San Diego County District Attorney Summer Stephan, whose office prosecuted Petitioner. This transfer is necessary to preserve both the reality and appearance of justice, as required by *In re Murchison*, 349 U.S. 133, 136 (1955), which held that "justice must satisfy the appearance of justice."

3. Take judicial notice of the complete evidentiary record previously submitted on USB drive and order the clerk's office to properly upload all contents to the electronic record. The Supreme Court has recognized that access to courts includes "a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights." *Lewis v. Casey*, 518 U.S. 343, 351 (1996). Without access to the complete record, this Court cannot properly adjudicate Petitioner's constitutional claims.

4. Grant an evidentiary hearing under 28 U.S.C. § 2254(e)(2) to allow Petitioner to present the substantial evidence of constitutional violations that state courts systematically refused to consider. As the Court held in *Bracy v. Gramley*, 520 U.S. 899, 908-09 (1997), where "specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is entitled to relief, it is the duty of the court to provide the necessary facilities and procedures for an adequate inquiry."

5. Find that Petitioner's PC 1424 motion (Exhibit A) provided sufficient evidence of prosecutorial misconduct to warrant relief, including the recorded statements from DAI Pena acknowledging the improper basis for prosecution and the withheld exculpatory evidence. The Supreme Court has established that prosecutors may not pursue cases they know lack probable cause, *Kalina v. Fletcher*, 522 U.S. 118, 129 (1997), nor may they withhold material exculpatory evidence, *Brady v. Maryland*, 373 U.S. 83, 87 (1963). The evidence presented in Exhibit A demonstrates clear violations of these fundamental constitutional principles.

6. Apply equitable tolling based on Petitioner's documented medical emergencies under *Holland v. Florida*, 560 U.S. 631, 649 (2010), which recognized that equitable tolling is appropriate when "some extraordinary circumstance stood in his way and prevented timely filing." Petitioner's two STEMI heart attacks constitute precisely the type of extraordinary circumstances that justify equitable tolling, particularly given his diligent efforts to pursue his rights despite these medical challenges.

7. Recognize that the Monell liability of San Diego County established in Petitioner's §1983 action demonstrates the need for federal intervention in his habeas case. The Supreme Court has recognized that "systemic violations of the Constitution or federal law" may necessitate broad federal court intervention. *Hutto v. Finney*, 437 U.S. 678, 687 n.9 (1978).

This case presents extraordinary circumstances that warrant extraordinary remedies. The evidence reveals a shocking pattern of prosecutorial misconduct that directly led to Petitioner's wrongful conviction: fabrication of evidence to secure pretrial detention

without bail, deliberate withholding of exculpatory evidence, and retaliatory prosecution for protected whistleblowing activity. These constitutional violations occurred with the knowledge and approval of supervisory officials, who displayed deliberate indifference to Petitioner's rights despite being repeatedly notified of the misconduct.

The Supreme Court has emphasized that "[c]ommon sense would recognize that conduct of the sovereign in arbitrarily bringing criminal charges and obtaining conviction... is inconsistent with fundamental principles of justice protected by the Due Process Clause." *United States v. Armstrong*, 517 U.S. 456, 465 (1996). The evidence presented in Petitioner's habeas petition and supporting documentation demonstrates precisely this kind of arbitrary and unconstitutional exercise of governmental power.

As Justice Sutherland eloquently stated in *Berger v. United States*, 295 U.S. 78, 88 (1935), a prosecutor "is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest... in a criminal prosecution is not that it shall win a case, but that justice shall be done." The evidence in this case demonstrates a complete abandonment of this fundamental principle by the San Diego County District Attorney's Office.

Federal courts have both the authority and the duty to intervene when state courts have systematically failed to protect constitutional rights. In *Fay v. Noia*, 372 U.S. 391, 401-02 (1963), the Supreme Court described the federal habeas corpus power as "a bulwark against convictions that violate fundamental fairness" and emphasized that "it is precisely the historical function of the writ to secure release from illegal custody." The overwhelming evidence of constitutional violations in Petitioner's case demands the exercise of this historic power to secure the release of an individual wrongfully convicted through egregious prosecutorial misconduct.

Dated: April 10, 2025.

Respectfully submitted,

Robert Emert Petitioner, Pro Se

# DECLARATION OF ROBERT EMERT

I, Robert Emert, declare as follows:

1. I am the Petitioner in this matter. I have personal knowledge of the facts stated herein and, if called as a witness, could and would testify competently thereto.

2. On February 9, 2021, I filed a timely CCP § 170.6 peremptory challenge against Commissioner Patti Ratekin. This challenge was improperly denied despite clear evidence that no orders were issued or arguments heard prior to the challenge. A true and correct copy of this challenge is attached as Exhibit B to this motion.

3. On September 29, 2021, I suffered a life-threatening STEMI heart attack requiring emergency hospitalization, triggered by the stress of these legal proceedings. Despite providing medical documentation of this emergency, the court proceeded with trial in my absence, resulting in default judgments. True and correct copies of my medical records are included on the USB drive submitted to the court.

4. Between October 2021 and January 2023, I maintained custody of my son at his request and provided extensive documentation to the District Attorney's office supporting an affirmative defense under PC 278.7. True and correct copies of my communications with the District Attorney's office are included on the USB drive submitted to the court.

5. On January 3, 2023, I was arrested for violation of PC 278.5(a) and held without bail for 90 days based on a manufactured "threat" allegation. This alleged threat was taken out of context from a call I made to the FBI regarding a public corruption complaint. A true and correct transcript of this call is included as Exhibit I on the USB drive submitted to the court.

6. During my pretrial detention, I learned that District Attorney Investigator Luis Pena had admitted in a recorded conversation on September 15, 2022, that the "case never should have been in criminal court" and that he was being "pressured" by family court attorneys to file charges despite knowing I had valid defenses. A true and correct copy of this recording and transcript is included as Exhibit E on the USB drive submitted to the court.

7. I also discovered that Deputy District Attorney Balerio interviewed my son Bryce in February 2023, during which Bryce clearly expressed his desire to live with me. DDA Balerio deliberately withheld this exculpatory evidence from both the court and my defense counsel. A true and correct transcript of this interview is included as Exhibit F on the USB drive submitted to the court.

8. After 90 days of pretrial detention, I was coerced into accepting a guilty plea on April 3, 2023, based on false promises regarding custody arrangements for my son. I was told that if I did not accept the plea, I would remain in custody indefinitely.

9. On August 12, 2023, I filed a detailed PC 1424 motion for disqualification of the prosecutor based on documented misconduct. A true and correct copy of this motion is attached as Exhibit A to this motion. Despite the serious allegations and

supporting evidence, this motion was ignored by both the trial court and the California Attorney General.

10. On October 9, 2023, I renewed my PC 1424 petition, which was again ignored. True and correct copies of all my court filings are included on the USB drive submitted to the court.

11. In December 2023, the California Court of Appeal denied my habeas corpus petition without explanation. In March 2024, the California Supreme Court likewise denied my petition without explanation, completing my exhaustion of state remedies.

12. On April 12, 2024, I filed a §1983 civil rights action (Case No. 3:24-cv-00671-JO-MSB) against the San Diego Board of Supervisors, County of San Diego, and District Attorney officials for violations of my constitutional rights.

13. On December 10, 2024, I suffered a second STEMI heart attack, further compromising my ability to effectively present my case without proper accommodation. Medical documentation of this second cardiac event is included on the USB drive submitted to the court.

14. I have submitted a comprehensive evidentiary record on USB drive containing properly bookmarked PDFs with critical evidence supporting my claims. However, it appears only cover pages have been uploaded to the court record, severely hampering the Court's ability to evaluate my claims.

15. I have made diligent efforts to exhaust all available remedies in state court, but have been systematically denied any meaningful opportunity to present the substantial evidence of prosecutorial misconduct and constitutional violations detailed in this petition.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on April 10, 2025, at Escondido, California.

Robert Emert Petitioner, Pro Se

# PROOF OF SERVICE

I, Robert Emert, declare that on April 10, 2025, I served the foregoing Omnibus Motion for (1) Declaratory Relief Regarding Mandatory Jurisdictional Adjudication Under FRCP 12(h)(3); (2) Change of Venue to a Neutral District Pursuant to 28 U.S.C. § 1404(a); and (3) Judicial Notice of Complete Evidentiary Record on USB Drive and Proper Uploading of Evidence Pursuant to FRCP 5(d)(3) and 79(a), **together with Exhibit A (PC 1424 Motion for Disqualification of the Prosecutor) and Exhibit B (Motion for Mandatory Jurisdictional**

**Adjudication Under FRCP 12(h)(3))**, in Case No. 3:25-cv-00820-DMS-BLM on all parties by electronic mail pursuant to FRCP 5(b)(2)(E) and CivLR 5.4, to the following:

1. California Attorney General's Office Email: docketingsdawt@doj.ca.gov, sdag.docketing@doj.ca.gov
2. San Diego County Probation Department Email: probation.hr@sdcounty.ca.gov
3. San Diego County District Attorney's Office Email: da.appellate@sdcda.org, sandiegodaprop65@sdcda.org

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. Executed on April 10, 2025, at Escondido, CA.

Robert Emert

# Attachment A – PC 1424 motion



Robert Emert
2351 Vista Lago Terrace
Escondido California [92029]
Email: robemert@msn.com
(760) 612-9328

**Self-Represented**

F I L E D
Clerk of the Superior Court

OCT 09 2023

By: E. Lopez, Deputy

# Superior Court of California
# County of San Diego
# Criminal Division

|  |  |
|---|---|
| Rob Emert,<br><br>                    Petitioner,<br><br>         v.<br><br>People of California,<br><br>                    Respondent. | )) **Case No.: SCD 297230**<br>))<br>)) **CA Penal Code 1424 –**<br>)) **Disqualification of DDA Balerio and**<br>)) **DAI Luis Pena**<br>))<br>) **Calendar Evidentiary Hearing**<br>)<br>) **Calendar Motion to Dismiss**<br>)<br>) **Judge Katz**<br>)<br>) |

I, Rob Emert, declare,

1. This motion renews my prior PC 1424 petition for disqualification and dismissal ignored while I had counsel.
2. An evidentiary hearing is imperative to establish prosecutorial misconduct violating my due process rights.

**Robert Emert**
2351 Vista Lago Terrace
Escondido California [92029]
Email: robemert@msn.com
(760) 612-9328

**Self-Represented**


# Superior Court of California
# County of San Diego
# Criminal Division


|  |  |
|---|---|
| **Rob Emert,** | )) **Case No.: SCD 297230** |
|  | )) |
| **Petitioner,** | )) **CA Penal Code 1424 –** |
|  | )) **Disqualification of DDA Balerio and DAI Luis Pena** |
| **v.** | )) |
|  | ) **Calendar Evidentiary Hearing** |
| **People of California,** | ) **Calendar Motion to Dismiss** |
|  | ) |
| **Respondent.** | ) **Judge Katz** |
|  | ) |
|  | ) |


I, Rob Emert, declare,

1. This motion renews my prior PC 1424 petition for disqualification and dismissal ignored while I had counsel.
2. An evidentiary hearing is imperative to establish prosecutorial misconduct violating my due process rights.

3. Actions by DDA Balerio and Investigator Pena require disqualification under PC 1424.

4. Charges stemming from their misconduct must be dismissed to preserve my constitutional rights.

**REQUESTED RELIEF:**

1. Calendar an evidentiary hearing to hear the extensive evidence regarding this PC 1424 petition.

2. Calendar a motion to dismiss once this evidence has been hear.

3. Any other relief as justice requires.

Pursuant to California Penal Code Section 1424, Petitioner Robert Emert moves this Court to immediately disqualify Deputy District Attorney Francesca Balerio and District Attorney Investigator Luis Pena from any further involvement in this case based on their egregious misconduct. A Calendaring of an evidentiary hearing to hear the evidence regrinding this matter is necessary as well as a calendaring of a motion to dismiss once the evidence is heard.

The following August 12, 2022 petition details suppressed evidence, false statements, illegal detention, and other actions by Ms. Balerio and Mr. Pena that violate due process and make a fair trial impossible. An evidentiary hearing is imperative to establish the factual record of profound prosecutorial misconduct.

This following petition appears to have been "thumbed through" but generally ignored because I was represented by the public defender's office. However, the court has the discretion to review the documents, which the court indicated it had, but neglected to act on such egregious claims. It is the duty of the court to see a miscarriage of justice is not done and that a case is heard on its merits. This court has not done this.

The following is the PC 1424 petition that was submitted to the San Diego Superior Court and the California Attorney General that appears to have been ignored.

Robert Emert

August 12, 2023

Summer Stephan , District Attorney

330 West Broadway

San Diego, CA 92101

SanDiegoDAProp65@sdcda.org

California State Auditor

StateAuditor@doj.ca.gov

Department of Justice

randy.grossman@usdoj.gov

San Diego District Attorney

Sandiegoda@sdcda.org

San Diego Board of Supervisors

District1community@sdcounty.ca.gov

joel.anderson@sdcounty.ca.gov

Terra.Lawson-Remer@sdcounty.ca.gov

jim.desmond@sdcounty.ca.gov

San Marcos Sheriff's Department

Bonnie.Martinez@sdsheriff.gov


**SUBJECT: SAN DIEGO, CA SUPERIOR CASE: SCD297230 PETITION - DISQUALIFICATION OF DAI LUIS PENA AND DDA BALERIO UNDER CALIFORNIA PENAL CODE SECTION 1424.**

**Complaint:** DDA Franciesca Balerio and DA investigator Luis Pena – Malicious prosecution and illegal incarceration - under 278.5(a) when they had the evidence under 278.7 and CALCRIM 3403 to not prosecute. DA investigator Luis Pena reviewed my evidence and told me that he did not understand why the DA even took my case and that the DA's office was getting pressure from the family court attorneys to prosecute.

**Complaint:** DDA Balerio of prosecutorial misconduct, false imprisonment, withholding of evidence, perjury.

**Complaint:** District Attorney Investigator III, Luis Pena, prosecutor misconduct, perjury, withholding of evidence.

To parties of interest,

This petition is for disqualification of Deputy District Attorney Balerio and DA Investigator III Luis Pena in relation to the case involving a dispute over the custody of my son, Bryce. Bryce is 16 and very competent. This complaint highlights instances of prosecutorial misconduct, false imprisonment, perjury and the deliberate withholding of crucial evidence, which have had severe and lasting consequences for both me and my 16-year-old son who simply wants to come home to his father due to emotional abuse from his mother.

To secure a conviction, where the DAI said there was not even a case, I was falsely imprisoned for 90 days to coerce under massive duress a guilty plea.

In the District Attorney investigators, Luis Pena, own words after reviewing more than 8 months' worth of data and acknowledging the District Attorney's office never had a case against me:

"why are we even involved in this case"...."well just finish the damn warrant and don't worry about it"..."were like too deep into now and the attorneys are pressuring to file criminal charges"..."so we can't turn around now".

These are exact quotes from DAI Luis Pena from a recorded call that he withheld from evidence.

Prosecutor misconduct that undermines a defendant's free will and ability to intelligently enter a plea would legally constitute "fraud" under Penal Code §1018.

The definition of legal fraud encompasses any intentional deception or misrepresentation that causes a wrongful loss or deprivation of rights.

•Prosecutors have a duty of candor to the court and a duty to disclose exculpatory evidence to the defense. Deliberately withholding or misrepresenting evidence to gain an advantage or coerce a plea constitutes fraud.

•Fabricating evidence or making false statements in affidavits/arrest warrants to secure charge or an arrest constitutes fraud.

•Concealing misconduct during an investigation in order to induce a plea is a form of active deception that qualifies as fraud.

•Selectively presenting evidence in a misleading way to falsely portray the defendant as threatening in order to justify pretrial detention is fraudulent.

DDA Balerio and DAI, Luis Pena, engaged in various forms of misconduct that meet the legal definition of fraud:

•Withholding my son's statement that contradicted the charges
•Misrepresenting the FBI's threat assessment of me

•Fabricating a "threat" to secure my pretrial detention for 90 days to coerce your plea

•Making false statements in the arrest warrant affidavit

•Selectively presenting evidence in a misleading and imbalanced manner

Here is a link to an interview that DDA Balerio had with my 16-year-old
son and withheld this evidence from my attorney and the court and even
misrepresented the general competency of the 16-year-old

Bryce emert recording of DA animated v4 (1).mp4

Here is a link to the interview I had with DA investigator III who after
reviewing the extensive documentation that I had provided to the
District Attorney's office over the prior eight months indicated that he
didn't understand why the District Attorney's office even took this case
to begin with as it clearly did not belong in criminal court. Mr. Pena went
on to indicate that the attorneys from the family court were pushing for
a quick warrant regardless of the evidence. Mr. Pena said take care of
this in family court, which I did and kept him and all other interested
parties appraised. With no new evidence, Mr. Pena signed off on the
arrest warrant knowing that a charge of 278.5(a) did not apply given
278.7 and CALCRIM 3403.

Rob and DA Pena 3hr conversation.mp3

I want to address the inaccuracies in the criminal warrant and complaint, which
falsely claim a violation of Penal Code 278.5(a). I provided extensive documentation
and communications to the District Attorney's office, supporting an affirmative

defense under Penal Code 278.7. Furthermore, CALCRIM 3403 recognizes "legal necessity" as an additional defense, and Penal Code 278.5(c) implies that a custody order does not confer an absolute right to the child.

It is abundantly clear that DDA Balerio was fully aware of the comprehensive evidence I provided to her office. Additionally, Investigator Luis Pena explicitly stated that the District Attorney's office should never have taken this case, indicating that they were being pressured by family court attorneys to pursue prosecution. This revelation exposes malicious and retaliatory prosecution with egregious misconduct, as the evidence was deliberately ignored, withheld, and misrepresented to obtain a judge's approval for the warrant.

Between October 2021 and December 2022, I diligently provided the following evidence and information to the San Diego District Attorney's office. These can be substantiated through easily accessible emails and recorded phone calls. The evidence is on one large searchable PDF for anyone's review.

1. A formal complaint regarding public corruption within the San Diego Superior Court, which I submitted to the Presiding Judge, District Attorney's Office, Department of Justice, and FBI, among others. Unfortunately, the District Attorney's office chose to ignore this complaint given to their office in Oct 2022.

2. Numerous offers on my part for anyone to speak with Bryce, which are documented through emails and phone records.

3. Extensive documentation demonstrating my continuous efforts to

resolve the custody issue in family court.

4. Statements from the DA investigators themselves, affirming that this case does not belong in criminal court and that Bryce, at 15 (now 16), should have the autonomy to decide where he wants to live.

5. Assurances from the District Attorney's office that Bryce's mother would relinquish custody to me.

6. A comprehensive three-hour CPS interview involving both Bryce and me, which was shared with the DA investigators.

7. Compelling evidence of emotional abuse inflicted upon Bryce by his mother, supported by photographs, text messages, and Bryce's own (760) 612-9328 I Vista Lago Terrace Escondido California 92029 I robemert@msn.com testimony. All of this evidence was duly provided to the District Attorney's office.

8. Extensive documentation affirming Bryce's expressed desire to live with me full-time, including letters, witness statements, emails, pictures, and, of course, Bryce's own testimony.

9. A letter written by Bryce and witnessed by individuals who have known him for a huge portion of his life.

10. A police report filed by Bryce against his attorney.

11. A Temporary Restraining Order (TRO) initiated by Bryce against his attorney.

12. A report compiled by a private investigator who interviewed Bryce.

13. Over a dozen witness affidavits attesting to the well-being of both Bryce and me.

14. A police report documenting the arrest of Bryce's mother for domestic violence against both Bryce and me.

15. Abundant documentation illustrating my commitment to facilitating free movement between me and my x wife's home for both our children.

16. Substantial evidence highlighting the strained relationship between Bryce and his mother, his reluctance to reside in her home due to abuse, and his exploitation in the divorce proceedings.

17. Documentation of DDA Balerio's interview with Bryce, which she deliberately misrepresented, and attempts to prevent Bryce from testifying. The judge's dismissal of Bryce's opinion on his preferred residence suggests the necessity of a change of venue.

18. DDA Balerio had me illegally incarcerated for 90 days from 01/03/23 until 04/04/23, despite being aware that a jury would not charge me with 278.5(a). She manipulated a statement out of context and misrepresented it to the court as grounds for considering me a threat. This was done with

the intention of coercing a guilty plea from me.

19. DDA Balerio distorted a phone call I made to the FBI, presenting it as a
threat to justify keeping me on no bail. Only selective statements from the
call were submitted to the court, omitting the larger context that the call
was actually a request for assistance to deescalate a situation.

20. DDA Balerio personally met with my son but withheld evidence from
that meeting, intentionally concealing it from both my attorney and the
court. Furthermore, she misrepresented my son's overall ability to address
the court, painting an inaccurate picture.

21. DDA Balerio's actions constitute prosecutorial misconduct and false
imprisonment, as she manipulated the legal process and abused her
authority.

22. There was a lack of probable cause in my case, a violation of my
constitutional rights, and errors and misrepresentations in the criminal
complaint, all of which can be attributed to DDA Balerio's conduct.

23. Despite being aware that 278.5(a) did not apply given the presence of
278.7, DDA Balerio proceeded with the case, disregarding the applicable
law.

24. My attorney, Jose Badillo, neglected to challenge prosecutorial
misconduct, further complicating the handling of my case and perpetuating
the injustices committed against me.

25. DDA Balerio did not pursue prosecution for over a year because she knew that a charge of 278.5(a) would not succeed when confronted with a defense based on 278.7. Despite having provided all supporting documentation regarding my defense under 278.7 to the DA's office, the misconduct persisted.

26. Investigator Luis Pena, who works under DDA Balerio, expressed on record that the District Attorney's office should never have taken this case. He indicated that he and was under pressure from family court attorneys to hurry up and sign the warrant regardless of evidence. This clearly raises concerns about the integrity and impartiality of the prosecution.

27. I was not provided with minimum guidance on any defense, nor were the full ramifications and consequences of the felony charge, including its impact on my professional licensing and the family court proceedings, adequately explained to me. Additionally, there was no criminal intent or mens rea involved, as no crime occurred, and any actions were carried out at the request of Bryce who is competent and 16.

28. The police, CPS, FBI, and both DA investigators (Luis Pena and Steven McIntosh) assured me that a child of Bryce's age, almost 16, would not be forcibly removed from the home they prefer unless clear and convincing evidence of harm to the child and other best interest considerations were present. DDA Balerio and my attorney possess evidence supporting this, yet they knowingly misrepresented the case, leading to my illegal incarceration, irreparable harm both physically and

mentally.

29. DDA Balerio wants people to believe that there was no follow-up with the FBI after the initial "threat" that kept me in jail for 90 days. Even my own attorney failed to contact the agent who completed the threat assessment, reflecting ineffective counsel at best.

30. DDA Balerio withheld exculpatory evidence from her interview with Bryce and attempted to prevent Bryce from testifying. Additionally, the judge's dismissal of Bryce's opinion on his preferred residence indicates a need for a change of venue.

The aforementioned evidence and information were purposefully withheld, ignored, and misrepresented by the District Attorney's office. Furthermore, I have compiled all relevant emails and phone call records into one searchable PDF file, which I will promptly forward to your office for examination.

**Here is a small list of the evidence to be presented at the evidentiary hearing.**

**Luis Pena Allegations in Criminal Complaint**

• Between Oct 2021 - Aug 2022, Emert unlawfully kept son Bryce away from Mother Andrea Schuck, violating custody order

• Custody order granted Schuck sole legal and physical custody, no contact for Emert

• Emert aware of order but maliciously deprived Schuck of custody rights

• Emert expressed unwillingness to comply with order in communications with DA investigator

• Violation of Penal Code 278.5(a) - child abduction by violating custody order

**Evidence to be presented**

**Investigator Luis Pena's Contradicted Claims in emails and audio recordings.**

**In San Diego District Attorney investigators (Luis Pena) own words and after he reviewed extensive documentation over the preceding eight months which easily proved a charge of 278.5(a) was not warranted due to 278.7, here is what Mr. Pena said to me:**

**Timestamp 00:11:00** - "I'm like, why are we even involved in this case? I'm like, we don't take anything over 14.... your home schooling, him, right?"

**Timestamp 00:19:44** - " the big question to me was why did we take this case anyways? It had nothing to do, but if the child was 14, I was 15. It's like, why are we taking this? Like, I don't see why, and I'm just told like well, we're like too deep in it now and the attorneys are Pressuring to file charges criminal charges."

**Timestamp 00:27:07** - "Well, just finish the damn warrant and don't worry about it.... You [Pena Supervisors or Balerio] asked me [Pena] not to reach out to him [me, Rob Emert]"

**Timestamp 00:10:57** - "And I get you about the Age, because that was my first question. Like, why are we? Involved, they're like well. We're too deep in it. So we can't, we can't turn around now."

With the easily documentable calls and emails, almost everything regarding my actions that Mr. Pena put on my arrest warrant is perjury.

• Pena's main allegations on the arrest warrant are contradicted by himself in these emails and audio recordings.

• Emails and Pena's statements show Emert encouraged access to Bryce, contradicting claim he maliciously withheld access (e.g. Pena call, emails arranging DA contacts with Bryce)

• Records indicate Emert attempted school access agreements, contradicting claim he kept Bryce out of school (e.g., Emert emails proposing school compromise)

• Emails document homeschooling per HSLDA, contradicting claim Emert kept Bryce out of school (e.g., homeschooling info sent to Pena)

• Pena call and emails show Emert offered DA contacts with Bryce, contradicting claim no access allowed (e.g., Pena call, Emert emails offering DA to speak to Bryce)

• Email notifications prove Emert informed Pena of hearing absences due to medical issues, contradicting claim he intentionally missed hearings (e.g., Emert notifications to Pena with doctor letters)

• No evidence supports Pena's claims in arrest warrant of malicious withholding of Bryce, keeping him out of school, denial of access to Bryce, or missing hearings intentionally (Emails, notifications, Pena call contradict claims)

• Pena's own statements in call and emails contradict and disprove the claims made in the arrest warrant (Comparison of Pena communications vs arrest warrant)


Additional emails and audio recordings that simply shred Luis Pena's and DDA Balerio's credibility.

• Email notifications prove Emert informed investigators of inability to attend certain hearings due to medical issues following heart attack, and requested participation by phone/video (e.g., 10/21/22 ADA request)

• Records document Emert's efforts to participate remotely or reschedule hearings based on doctor's orders (e.g., 10/4/21 continuance request)

• No evidence Emert intentionally missed hearings, prevented only by health issues and lack of remote access accommodations (Emails and notifications)

• Emails show Emert encouraged DA investigator to speak with Bryce freely (e.g., 9/26/22, 3/1/22)

• Records indicate Emert attempted reasonable agreements to keep Bryce in school (e.g., 3/10/22 proposal for school access)

• Emails document proper homeschooling per HSLDA standards with DA knowledge (e.g., 2/8/22, 3/10/22 homeschooling info to DA)

• Communications suggest any truancy due to unreasonable inflexibility of other parties, not willful obstruction by Emert (e.g., 3/10/22 custody proposal rejected)

• Emails show Emert tried to arrange access to son Bryce and share his perspective (e.g., 9/26/22 to DA investigator), indicating not obstructing relationship

• Records show filed complaints regarding misconduct, fraud, rights violations (e.g., 10/21/22 DOJ/FBI referral), seeking redress

• Emails indicate tried resolving custody through legal processes like hearings, appeals (e.g., 9/28/22 ex parte filing), not obstructing access

• Communications emphasize willingness to cooperate on access to Bryce (e.g., 9/16/22 offer to DA investigator)

• Emails reiterate homeschooling properly conducted (e.g., 3/10/22 to DA investigator), contradicting complaint

• Records reflect efforts to provide evidence contesting criminal allegations (e.g., 2/8/22 CPS letter to DA investigator)

• Emails show concerns about corruption, misconduct raised before charges filed (e.g., 10/21/22 DOJ referral to FBI)

• Email notifications and filings presented evidence contesting claims and orders (e.g., 9/27/22 ex parte filing)

• Communications indicate attempts to arrange compromise agreements on custody and access (e.g., 3/1/22 custody proposal)

• Records show use of proper legal channels and procedures to address disputes (e.g., motions, appeals)

• Emails suggest procedural flaws, lack of due process, potential misconduct in handling of case (e.g., denied hearings/trial access)

• Communications indicate investigators may have suppressed or ignored exculpatory evidence (e.g., Bryce's statement)

• Emails reiterate Emert's efforts to act in good faith and son's stated preferences (e.g., 12/19/22 offer for Bryce to call DA)

• Custody order obtained through fraud, constitutional violations, default judgment while Emert hospitalized after heart attack (Nov 2021)

• Order is still trying to be worked out in family court and Pena was well aware of this. Too many emails to list here but will be in my notice of intent to lodge documents.


## APPENDIX - EXHIBITS FILED UNDER SEPARATE COVER

A. Bryce Emert Declaration with Five Sworn Witness Affidavits

B. Rob Emert Medical Documents

C. Text from Bryce Emert Behavioral Therapist

D. Complaint Served on Presiding Judge, DA, DOJ, FBI, and All Interested Parties Before Criminal Charges Even Came Up

E. Patti Ratekin Fraud Upon the Court - No Evidence to Support These Orders

F. Matt Cord Fraud Upon the Court

G. Andrea Schuck Motion Proving Collusion

H. ADA and Medical Documents

I. Fidelman Witness Affidavit Regarding Fraud by Bryce's Psychologist

J. Bryce Emert Police Report Against Matt Cord

K. Bryce Emert Temporary Restraining Order (TRO) Against Matt Cord

L. Family Court Services Reports Recommending 50/50 Child Custody for Almost Two Years

M. Rob Emert Therapist Letter

N. Andrea Schuck Therapist Letter

O. Ex Parte to Vacate Ratekin Orders

P. Court Transcripts

Q. Andrea Schuck Malicious Text

R. Peremptory Challenge Filed Against Ratekin (see Exhibit NN)

S. Andrea Schuck Arrested for Domestic Violence

T. Mediation Offers

U. Ex Parte Filings the Day Patti Ratekin Recused

V. Motions to Presiding Judge Alksne for Ratekin to Recuse

W. Matt Cord Willful Negligence; Ignoring Facts - Emails

X. Many Sworn Witness Affidavits Regarding Character and Parental Dedication

Y. Updated ADA That Went Ignored by All Interested Parties

Z. Email Simply Asking for Assurances for No "Facility" for Bryce

AA. Emails Showing Matt Cord Willful Negligence

BB. California Laws for Judges Working with Pro Se Litigants

CC. Dave Schilman Injunction Letter to Stop Therapy for Rob Emert and Children

DD. Emails from Regional Center Offering Services

EE. Patti Ratekin Court Transcript Highlights

FF. Timeline After Heart Attack with Only a 6-12% Survival Rate According to the American Heart Association

GG. Emails Documenting Blatant Denial of Access to My Own Hearings and Trial

HH. Motion for Stay to Presiding Judge Alksne

II. My Witness List

JJ. Citizen's Arrest of Lorna Alksne and Patti Ratekin

KK. Federal Lawsuit Against Ratekin

LL. Press Release Documenting Numerous Violations to Multiple Parties of the San Diego Courts

MM. Patti Ratekin Peremptory Challenge

NN. Ex Parte 09/28/22 That Went Ignored

OO. Ex Parte 11/24/21 That Went Ignored Regarding Trial 11/30/21

PP. DCSS Motion Filed 07/27/22 That Went Ignored

QQ. Peremptory Challenge and 03/30/21 Minute Order

RR. 05/21/21 Email to Cord Regarding Alarming Conduct of Andrea

SS. Withdrawal Stipulation Filed with Presiding Judge

TT. Writ Filed with the Appellate Court 11/22/21

UU. Bryce Homeschool Information

VV. CPS Closing Case

WW. DA Email Where Andrea Is "Giving" Custody to Me

XX. 05/20/21 Disqualification of Ratekin Motion

YY. 06/14/21 Disqualification of Ratekin

ZZ. DCSS Motion That Went Ignored

AAA. 03/26/21 Email Where Andrea Is Trying to Keep IEP Team Out BBB. Example of Schilman Blatant Misrepresentation

CCC. Email to Schilman Showing Andrea Being Rough with Bryce DDD. Combined Emails Showing Blatant Denial of Access to Trial

EEE. 04/28/21 Ex Parte to Vacate Ratekin's 03/30/21 Fraud Upon the Court FFF. Reservation of Federal Rights

GGG. Malicious Andrea Text – Michelle III

HHH. Release of San Diego Family Court Violations

JJJ. Text from Bryce's Friend's Mom, Who Is a Witness to Andrea's Alarming Behavior Towards Bryce and His Friends

KKK. DDA Balerio and Bryce Emert Transcript of Interview LLL. Default Judgement 10/15/21

MMM. Default Judgement 11/18/21 NNN. Default Judgement 01/24/22

OOO. Ex Parte 11/29/21 for Continuance or Remote Hearings Due to Heart Attack PPP. Ex Parte to Vacate 12/10/21 Default Judgement 11/30/21

QQQ. Judge Alana Robinson Indicating She Does Not Have Jurisdiction to Hear the Default Judgement Entered 01/24/22

RRR. Copy of the Complaint Provided to the DA, DOJ, FBI, Presiding Judge, Local Police, and More

SSS. Ex Parte 11/29/21 for Continuance or Remote Hearings Due to Heart Attack TTT. Motion to Reconsider the Stay Stemming from 11/29/21 Trial.

UUU. Appeal for 10/15/21

VVV. Appeal for 11/18/21

WWW. Andrea Schuck Email Indicating I Must Drop All My Current Motions and Appeals Before She Comes to the Negotiating Table in Bryce's Best Interests

XXX. Private Investigator's Interview with Bryce Emert YYY. Withdrawal of Guilty Plea

ZZZ. Andrea Schuck Post Regarding My Daughter Not Wanting to See Me AAAA. Appeal of Guilty Plea

BBBB. All Email Communications with DA's Office

CCCC. Appeal Court Conformed Documents Showing Default Trial Judgement Is Not on Appeal

DDDD. Federal Lawsuit

EEEE. 020421 court min order Ratekin leaving early due to COVID-related matter.
FFFF. Transcript of court the day Ratekin recused

GGGG. Bryce transcripts of phone calls

HHHH. Department of Justice Email forwarding my investigation request to the FBI

IIII. District Attorney Email saying Andrea Schuck is giving me custody of Bryce JJJJ.
Transcript of FBI call of the "threat"

KKKK. Dave Schulman letter to minor counsel showing misrepresentation.

LLLL. Transcripts of District Attorney phone calls that prove lying, withholding evidence;
and a blatant disregard for candor to the court.

MMMM. Bryce letter he wrote to the court while I was illegally incarcerated. NNNN.
Witness Cole, Bryce's friend who was interviewed by a private investigator. OOOO.
Witness Mark Fidelman who was interviewed by a private investigator.

PPPP. Witness Cortney Costello who was interviewed by a private investigator. QQQQ.
Opening Brief for Court of Appeals

RRRR. Dave Schulman letter to minor counsel

SSSS. Dave Schulman replies in the Federal lawsuit where he blatantly lies to the court.
Dave Schulman states that Comm. Patti Ratekin was basing a "facility"
recommendation of Bryce on a psychological report when, in fact, Comm. Patti Ratekin
said it within five minutes of meeting parties before there could have been any such
report.

TTTT. Habeas Corpus ready to go so if DDA Balerio illegally incarcerates me again.
UUUU. Andrea stalking two women online after she realized they are friends of mine

Now, I must express my profound concern for Bryce's well-being. He currently lives
in constant fear at his mother's residence, fully aware that any attempt to escape
would result in his placement in a facility. Bryce simply wishes to return home, where
he was raised in a nurturing and supportive environment. It is unjust that, despite
being an exceptional father, I have been stripped of my parental rights through a
default judgment, which was issued after I was denied access to my own trial,
following a near-fatal heart attack. The District Attorney's office possesses
supporting documents attesting to the validity of these claims.

Considering these deeply troubling circumstances, I urgently request a thorough investigation into the conduct of DDA Balerio and Investigator Luis Pena, the dismissal of the charges against me, and appropriate measures to rectify the injustices perpetrated against both me and my son.

It is important to note that I entered my guilty plea under duress and coercion, with an inadequate understanding of the consequences, owing to the misrepresentation and coercion exerted by the District Attorney's office and my own ineffective counsel.

These actions constitute malicious prosecution and false imprisonment.

Additionally, the lack of probable cause, violation of my constitutional rights, errors and misrepresentations in the criminal complaint and other related issues directly stem from DDA Balerio's conduct. She knowingly pursued a case under Penal Code 278.5(a) despite its inapplicability due to the existence of Penal Code 278.7 and the supporting evidence I provided.

The conduct of DDA Investigator Luis Pena, as well, raises serious concerns. He explicitly informed me that the District Attorney's office should never have pursued this case and indicated unethical pressure from family court attorneys. Such revelations cast further doubt on the integrity of the prosecution.

It is essential to address the inadequate counsel I received concerning defenses and the ramifications of the felony charge, particularly custody of my son. I was told to take the plea deal and my son would immediately start to live with me through a deal

my attorney and DDA Balerio secured with Bryce's mom. This never happened and she basically called me a sucker. Most concerning is that I was never informed that by taking this plea deal I could lose all my parental rights permanently under two penal codes.

The absence of criminal intent, the absence of an actual crime, and Bryce's wellbeing considerations were never properly explained to me. Additionally, multiple authorities, including the police, CPS, FBI, and both DA investigators (Luis Pena and Steven McIntosh), assured me that a child of Bryce's age, almost 16, would not be forcibly removed from the home they prefer unless there is clear and convincing evidence of harm and other best interest considerations.

DDA Balerio's deliberate misrepresentations and suppression of exculpatory evidence, along with my attorney's failure to contact the FBI agent who conducted the threat assessment, exemplify ineffective counsel, and exacerbate the injustices committed against me. The "threat" was a farce and all my attorney needed to do was call the FBI agent who conducted the investigation and or DDA Balerio release the evidence but neither wanted to do that because they both wanted to keep the threat of staying in jail over my head as long as they could.

In conclusion, I implore your office to conduct a thorough investigation into the prosecutorial misconduct, false imprisonment, and withholding of crucial evidence by DDA Balerio and Investigator Luis Pena. The resolution of this case demands the dismissal of charges, an immediate rectification of the injustices inflicted upon both me and my son, and a reevaluation of the actions and practices within the District Attorney's office.

## DECLARATION AND SIGNATURE

I, Robert Emert, declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct to the best of my knowledge.

Dated:

09/29/23

*Robert Emert*

Rob Emert


## ELECTRONIC SERVICE


I, Glenda Emert, certify that on 09/29/23, I served the foregoing document electronically by email to the following:

sdag.docketing@doj.ca.gov

da.appellate@sdcda.org

appeals.central@sdcourt.ca.gov

Sandiegodaprop65@sdcda.org


I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.


Dated: 09/29/23

*glenda emert*

Glenda Emert

# Attachment B - Mandatory Jurisdictional Adjudication



ROBERT EMERT
Respondent. In Pro Per
2351 VISTA LAGO TERRACE
ESCONDIDO. CA 92029
TELEPHONE: 760-612-9328
r bemert@m. n.com



# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

Robert Emert

        Plaintiff,

v.

SAN DIEGO BOARD OF SUPERVISORS, et al.,

        Defendants.

Case No. 3:24-cv-00671-JO-BJC

**MOTION FOR MANDATORY JURISDICTIONAL ADJUDICATION UNDER FRCP 12(h)(3) AND DECLARATORY JUDGMENT UNDER 28 U.S.C. § 2201 PRIOR TO CONSIDERING MOTION TO DISMISS, WITH HEARING REQUESTED**

Hearing Date:  TBD
Time:         TBD
Department:  4C
Judge: Hon. Jinsook Ohta

# 1. Introduction

Plaintiff Robert Emert, pro se, asserts this Court's unequivocal responsibility, as required by FRCP 12(h)(3) and Steel Co. v. Citizens for a Better Env't, 523 U.S. 83 (1998), to rule immediately on whether Commissioner Patti Ratekin lost jurisdiction on February 9, 2021, due to her invalid denial of Plaintiff's timely CCP § 170.6 peremptory challenge (Exhibit A). The court transcript (Exhibit B) confirms no orders were issued and no arguments heard prior to the challenge, establishing its validity under California law. This presents a pure question of law requiring no factual development beyond Exhibits A and B. This Court must rule on this defect, which can be raised at any time (Arbaugh v. Y&H Corp., 546 U.S. 500 (2006)), before addressing defendants' Motion to Dismiss (filed Jan. 13, 2025) (Steel Co., 523 U.S. at 94-95; Ruhrgas AG v. Marathon Oil Co., 526 U.S. 574 (1999)). The defect controls jurisdiction over Plaintiff's § 1983 claim. Plaintiff requests a hearing and declaratory relief under 28 U.S.C. § 2201. His STEMI heart attack (Dec. 10, 2024) tolls deadlines, and he awaits a ruling on his First Amended Complaint (FAC) motion (filed Feb. 10, 2025).

## 2. Procedural Background

**April 12, 2024:** Complaint filed.

**Dec. 10, 2024:** Plaintiff suffered a STEMI heart attack.

**Jan. 13, 2025:** Defendants filed Motion to Dismiss.

**Feb. 12, 2025:** Court extended opposition to March 6, 2025, as an ADA accommodation (42 U.S.C. § 12132) due to Plaintiff's disabling STEMI heart attack; FAC "under submission."

**March 13, 2025:** Current date; FAC ruling pending.

## 3. Factual Background

**Feb. 9, 2021:** Plaintiff filed a timely § 170.6 peremptory challenge against Ratekin

(Complaint p. 16, Exhibit A). The court transcript (Exhibit B) proves no orders were issued or arguments heard prior, making the challenge valid. Ratekin denied it, stripping her jurisdiction over subsequent proceedings. This legal battle caused Plaintiff's STEMI heart attacks (Sept. 29, 2021, and Dec. 10, 2024) and irreparable harm as a stay-at-home dad separated from his children.

## 4. Legal Authority

**FRCP 12(h)(3):** "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."

**Jurisdictional Duty:** Defects can be raised anytime; courts must rule (Arbaugh, 546 U.S. at 514; Steel Co., 523 U.S. at 94-95).

**28 U.S.C. § 2201:** Authorizes declaratory relief in actual controversies.

**28 U.S.C. § 1331:** Grants jurisdiction over § 1983 claims.

**42 U.S.C. § 1983:** Protects against constitutional violations under state law.

**Federal Review:** *State orders issued without jurisdiction are reviewable. Rooker-Feldman does not bar review of such orders, which are void ab initio and exempt from preclusion. Kougasian v. TMSL, Inc., 359 F.3d 1136, 1140 (9th Cir. 2004); United Student Aid Funds v. Espinosa, 559 U.S. 260, 271 (2010).*

**California Law:** Improper § 170.6 denial strips jurisdiction (People v. Superior Court (Lavi), 4 Cal.4th 1164, 1171 (1992)).

## 5. Argument

### A. FRCP 12(h)(3) Requires a Ruling on the Jurisdictional Defect

This Court must rule on whether Ratekin lost jurisdiction on Feb. 9, 2021, due to

her invalid denial of a valid § 170.6 challenge (Exhibit A). Exhibit B proves its timeliness and validity. FRCP 12(h)(3) mandates a determination "at any time" (Arbaugh, 546 U.S. at 514), before merits (Steel Co., 523 U.S. at 94-95). Ratekin's refusal stripped her jurisdiction (Lavi, 4 Cal.4th at 1172), affecting subsequent proceedings and defining this Court's authority under 28 U.S.C. §§ 1331 and 1343 (Espinosa, 559 U.S. at 271; Kougasian, 359 F.3d at 1140). This is a pure question of law based on Exhibits A and B, preceding defendants' dismissal arguments.

### B. Declaratory Relief and Hearing Under 28 U.S.C. § 2201

Plaintiff seeks a declaration under 28 U.S.C. § 2201 that Ratekin lacked jurisdiction after Feb. 9, 2021, based on Exhibit A and B, with a hearing to confirm.

### C. Equity and Timing

Plaintiff's STEMI heart attacks (Sept. 29, 2021, and Dec. 10, 2024), a disability under the ADA (42 U.S.C. § 12102), tolled the March 6 opposition deadline (Holland v. Florida, 560 U.S. 631 (2010)). As a pro se litigant with a continuing disability, he requests an ADA accommodation (42 U.S.C. § 12132) for late opposition or FAC inclusion (Haines v. Kerner, 404 U.S. 519 (1972)).

## 6. Relief Requested

1. Rule, as required by FRCP 12(h)(3), and declare under 28 U.S.C. § 2201, that Ratekin lost jurisdiction on Feb. 9, 2021, based on Exhibit A and B, with a hearing.

2. Hold defendants' Motion to Dismiss in abeyance pending this ruling.

3. If jurisdiction is confirmed lost, Plaintiff requests leave to file an ex parte TRO under FRCP 65(b).

4. Accept late opposition nunc pro tunc as an ADA accommodation (42 U.S.C. § 12132), or allow dismissal arguments in the FAC.

# 7. Conclusion

Plaintiff has suffered irreparable harm from Ratekin's invalid § 170.6 denial on Feb. 9, 2021, stripping her jurisdiction. This caused two STEMI heart attacks, 90 days' detention, and separation from his children as a stay-at-home dad. This Court's intervention is demanded by precedent and equity. Refusal to act would warrant scrutiny by the House Judiciary Committee and DOJ Civil Rights Division.

Exhibit C confirms no narrative can salvage Ratekin's jurisdiction. This Court must remedy this by ruling on the defect evidenced by Exhibits A and B.

**Declaration of Robert Emert**

I, Robert Emert, declare under penalty of perjury under 28 U.S.C. § 1746: On Feb. 9, 2021, I filed a valid § 170.6 challenge against Ratekin (Exhibit A); Exhibit B confirms no prior orders or arguments. Her denial caused this legal battle, triggering STEMI heart attacks on Sept. 29, 2021, and Dec. 10, 2024, impairing my response by March 6, 2025. I await an FAC ruling. Executed March 13, 2025, at Escondido, CA.

**Attachments:**                              03/14/25

- Exhibit A: CCP § 170.6 Challenge, Filed Feb. 9, 2021
- Exhibit B: Transcript, Feb. 9, 2021 Hearing
- Exhibit C: Supplemental Citations Under CivLR 7.1(h)(1)

**Proof of Service**

I, Robert Emert, declare that on March 13, 2025, I served the foregoing Motion for Mandatory Jurisdictional Adjudication Under FRCP 12(h)(3) and Declaratory Judgment Under 28 U.S.C. § 2201, with attached Exhibits A, B, and C, on all parties by electronic mail pursuant to FRCP 5(b)(2)(E) and CivLR 5.4, to the following:

Austin Uhler
Counsel for Defendants
Austin.Uhler@sdcounty.ca.gov

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. Executed on March 13, 2025, at Escondido, CA.

Robert Emert

03/14/25

# Exhibit A: CCP § 170.6 Challenge, Filed Feb. 9, 2021

ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address):
Robert Emert
2351 Vista Lago Terrace
Escondido, CA 92029
Self Represented

TELEPHONE NO: 760-612-9328    FAX NO.(Optional):

EMAIL ADDRESS (Optional): robemert@msn.com

ATTORNEY FOR (Name): Self

FOR COURT USE ONLY

**F I L E D**
Clerk of the Superior Court

FEB 08 2021

By: _____

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO
☐ CENTRAL DIVISION, CENTRAL COURTHOUSE, 1100 UNION ST., SAN DIEGO, CA 92101
☐ CENTRAL DIVISION, HALL OF JUSTICE, 330 W. BROADWAY, SAN DIEGO, CA 92101
☐ CENTRAL DIVISION, KEARNY MESA, 8950 CLAIREMONT MESA BLVD., SAN DIEGO, CA 92123
☐ CENTRAL DIVISION, JUVENILE COURT, 2851 MEADOW LARK DR., SAN DIEGO, CA 92123
☒ NORTH COUNTY DIVISION, 325 S. MELROSE DR., VISTA, CA 92081
☐ EAST COUNTY DIVISION, 250 E. MAIN ST., EL CAJON, CA 92020
☐ SOUTH COUNTY DIVISION, 500 3RD AVE., CHULA VISTA, CA 91910

PLAINTIFF(S)/PETITIONER(S)
Andrea Emert

DEFENDANT(S)/RESPONDENT(S)
Robert Emert

IN THE MATTER OF
marriage of emert

PEREMPTORY CHALLENGE

JUDGE
Honorable Patti Ratekin

DEPT
NC 19

CASE NUMBER
19FL010852N

---

Robert Emert _____, is ☒ a party ☐ an attorney for a party in the above-entitled case and declares that Commissioner Patti C. Ratekin _____, the judicial officer to whom this case is assigned, is prejudiced against the party or the party's attorney or the interests of the party or the party's attorney such that the said party or parties believe(s) that a fair and impartial trial or hearing cannot be had before such judicial officer.

WHEREFORE, pursuant to the provisions of Code Civ. Proc. §170.6, I respectfully request that this court issue its order reassigning said case to another, and different, judicial officer for further proceedings.

*I also respectfully request a Judge for this and future proceedings.*

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: 02/08/21_____    _____ rob emert _____
                                            Signature

---

**ORDER**

☐ GRANTED – The court finds the challenge is timely filed and the party's/attorney's above statement meets the requirements of Code of Civ. Proc. §170.6 (a)(4). The case will be reassigned and a notice will be mailed to the parties and/or counsel.

☒ DENIED *Previous stipulation to commissioner on 2-4-21*

IT IS SO ORDERED.

Date: **FEB 09 2021** _____    _____ Patti Ratekin ____
                                            Judge/Commissioner of the Superior Court
                                            PATTI RATEKIN

Date: _____    Case is reassigned to Judge/Commissioner _____

SDSC ADM-351 (New 8/19)    PEREMPTORY CHALLENGE    Code Civ. Proc. § 170.6

# Exhibit B: Transcript, Feb. 4, 2021 Hearing



1          IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

2     IN AND FOR THE COUNTY OF SAN DIEGO; NORTH COUNTY DIVISION

3          DEPARTMENT 19     COMMISSIONER PATTI C. RATEKIN

4

5     *IN RE THE MARRIAGE OF:*

6                                    )

7     ANDREA L. EMERT,               )

8               PETITIONER,          )    CASE NO. 19FL010852N

9          VS.                       )

                                     )    *M.S. TEAMS VIDEO*

10    ROBERT EMERT,                  )    *CONFERENCING*

11               RESPONDENT.         )

12                                   )

13          *REPORTER'S TRANSCRIPT OF VIDEO PROCEEDINGS*

14               THURSDAY, FEBRUARY 4, 2021

15               (PAGES 1 THROUGH 15, INCLUSIVE)

16
     APPEARANCES:  (VIA M.S. TEAMS)
17

18    FOR THE PETITIONER:        *DAVID S. SCHULMAN*
                                 *ATTORNEY AT LAW*
19

20    RESPONDENT ROBERT EMERT:   *APPEARING IN PRO PERSONA*

21

22

23

24

25          PEGGY D. TIESS, RPR, CRR, CSR#7908
               OFFICIAL COURT REPORTER
26             SAN DIEGO SUPERIOR COURT

27

28

                    Peggy Tiess, CSR #7908

```
 1    RECOMMENDATION -- I NEED TO GET THROUGH PART OF MY
 2    CALENDAR, I'M NOT READY TO DO THIS CASE RIGHT NOW, SO
 3    I'LL TRAIL YOU UNTIL THE END.  I'LL GIVE YOU AS MUCH TIME
 4    AS I CAN GIVE YOU.  OKAY.
 5
 6                       -oOo-
 7         (THE PROCEEDINGS ADJOURNED IN DEPARTMENT 19.
 8         NOTE THAT THIS CASE WAS NOT RECALLED IN
 9         DEPARTMENT 19 THIS DATE.  ACCORDING TO THE
10         MINUTES, THE CASE WAS SENT TO DEPARTMENT 16,
11         JUDGE BROWER.)
12                       -oOo-
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
```

```
 1   STATE OF CALIFORNIA   }

 2                         } SS

 3   COUNTY OF SAN DIEGO   }

 4

 5      I, PEGGY D. TIESS, CSR NO. 7908, OFFICIAL REPORTER OF

 6   THE SUPERIOR COURT OF THE STATE OF CALIFORNIA, IN AND FOR

 7   THE COUNTY OF SAN DIEGO, HEREBY CERTIFY THAT I REPORTED

 8   IN MACHINE SHORTHAND THE M.S. TEAMS VIDEO CONFERENCING

 9   PROCEEDINGS IN THE ABOVE-ENTITLED CAUSE, AND THAT THE

10   FOREGOING TRANSCRIPT, CONSISTING OF PAGES NUMBERED 1

11   THROUGH 15, INCLUSIVE, IS A FULL, TRUE, AND CORRECT

12   TRANSCRIPT OF THE SAID PROCEEDINGS CONDUCTED IN

13   DEPARTMENT 19 ON FEBRUARY 4, 2021.

14

15      DATED AT VISTA, CALIFORNIA, THIS 15TH DAY OF JUNE,

16   2021.

17

18

19

20

21

22

23

24                    PEGGY D. TIESS, RPR, CRR
                      CSR NO. 7908
25                    OFFICIAL COURT REPORTER
                      SAN DIEGO SUPERIOR COURT
26

27

28
```

Peggy Tiess, CSR #7908

# Exhibit C: Supplemental Citations Under CivLR 7.1(h)(1)

**EXHIBIT C: SUPPLEMENTAL CITATIONS UNDER CIVLR 7.1(h)(1)**

Under Southern District of California Local Rule 7.1(h)(1), Plaintiff submits these supplemental citations to decimate any narrative that Commissioner Patti Ratekin had jurisdiction after my proper CCP § 170.6 peremptory challenge on February 9, 2021 (Exhibit A). The February 4, 2021 transcript (Exhibit B) confirms no orders were issued or substantive arguments heard—Ratekin trailed the case, unprepared (Exhibit B, p. 15)—rendering my challenge valid and her denial void. Compounding this, Exhibit B and related facts expose concerning issues predating Feb. 9: (1) Ratekin claimed to read the file "last night" (Exhibit B, p. 3) before her same-day assignment per the register of actions, suggesting improper access or predetermination; (2) she pushed a "24-hour school" for my son (Exhibit B, p. 12) with zero evidence, showing bias; (3) Ratekin and opposing counsel David Schulman knew her supervising judge's wife was friends with my ex-wife, Andrea Emert, a conflict I later discovered; (4) the next supervising judge was a founding member of Schulman's law firm, a fact both were aware of. These authorities reinforce the jurisdictional defect in Plaintiff's Motion for Mandatory Jurisdictional Adjudication Under FRCP 12(h)(3).

People v. Superior Court (Lavi), 4 Cal.4th 1164 (1993) and Estate of Eskra, 51 Cal.3d 943 (1991) establish that improper denial of a CCP § 170.6 challenge renders all subsequent orders void ab initio. Any reliance on the February 4, 2021, verbal stipulation is legally irrelevant under controlling precedent. As held in Stephens v. Superior Court, 30 Cal.4th 1082 (2002), a peremptory challenge may be filed any time before substantive rulings. In re Marriage of Goodarzirad, 185 Cal.App.3d 1020 (1986) specifically holds that initial agreement to a commissioner's authority is nullified by subsequent proper challenge where no substantive proceedings occurred.

California Rules of Court, rule 2.831(b) mandates written stipulation and judicial signature for temporary judge status. Rule 2.834(b)(3) categorically prohibits commissioners from acting as temporary judges with self-represented litigants absent specific written requirements. These mandatory protections cannot be waived by verbal stipulation.

This jurisdictional defect infects all related cases. What began as a straightforward custody matter has expanded into multiple proceedings due to systematic denial of basic due process—specifically, the right to an evidentiary hearing denied for over four years across multiple courts.

The law is unambiguous: Commissioner Ratekin's orders are void ab initio, requiring all derivative proceedings be unwound to February 4, 2021, status.

***Federal authority confirms this Court's duty and jurisdiction to act: FRCP 12(h)(3) mandates adjudication "at any time" a jurisdictional defect is raised, empowering district courts to clarify and cure void state judgments. United Student Aid Funds v. Espinosa, 559 U.S. 260, 271 (2010); Kougasian v. TMSL, Inc., 359 F.3d 1136, 1140 (9th Cir. 2004). This Court must resolve Ratekin's jurisdictional defect.***