ROBERT EMERT
Respondent, In Pro Per
2351 VISTA LAGO TERRACE
ESCONDIDO, CA 92029
TELEPHONE: 760-612-9328
robemert@msn.com



FILED

JUN 1 0 2025

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

Robert Emert

   Plaintiff.

 v.

San Diego Probation Department

   Defendant.

Case No.: 3:25-cv-0820-TWR-BLM

**MOTION FOR LEAVE TO FILE AMENDED PETITION FOR WRIT OF HABEAS CORPUS (28 U.S.C. § 2254)**

Hearing Date: TBD
Time:    TBD
Department:  TBD
**Judge: Hon. Barbara Major**

# Contents

TABLE OF AUTHORITIES ........................................................................ 2

MEMORANDUM OF POINTS AND AUTHORITIES ........................... 5

I. INTRODUCTION ................................................................................ 5

II. ARGUMENT ...................................................................................... 5

    A. Legal Standard for Leave to Amend .......................................... 5

    B. Petitioner's Initial Approach and the Court's Clarifying Order ........... 6

    C. Purpose and Scope of the Proposed Amendment .................... 6

    D. Granting Leave to Amend Serves the Interests of Justice .......... 7

    E. The Proposed Amended Petition Offers Enhanced Clarity on Key Issues for Comprehensive Review .......................................... 8

    F. Full State Court Record Is Essential for Proper Adjudication and Required by Court Order .......................................... 10

    G. Petitioner Has Fully Exhausted All Claims, Which Are Timely and Not Procedurally Barred .......................................... 11

III. CONCLUSION ................................................................................ 14

CERTIFICATE OF SERVICE .............................................................. 15

# TABLE OF AUTHORITIES

## CASES

Brady v. United States, 397 U.S. 742, 755 (1970) ...................... 10

Castille v. Peoples, 489 U.S. 346, 350 (1989) ........................... 12

Castillo v. McFadden, 399 F.3d 993, 999 (9th Cir. 2005) .......... 12

Chambers v. NASCO, Inc., 501 U.S. 32, 43-44 (1991) .............. 10

Class v. United States, 138 S. Ct. 798, 803 (2018) ................... 10

Clay v. United States, 537 U.S. 522, 527 (2003) ------------------------------------- 12

Coleman v. Thompson, 501 U.S. 722, 729 (1991) -------------------------------- 12

Cullen v. Pinholster, 563 U.S. 170, 181 (2011) ------------------------------- 2, 4

Cullen v. Pinholster, 563 U.S. 170, 185 n.7 (2011) ------------------------------ 4

Duckworth v. Serrano, 454 U.S. 1, 3 (1981) ----------------------------------- 12

Duncan v. Henry, 513 U.S. 364, 365-66 (1995) ------------------------------- 12

Duncan v. Walker, 533 U.S. 167, 181-82 (2001) ----------------------------- 12

Foman v. Davis, 371 U.S. 178, 182 (1962) --------------------------------------- 2

Harrington v. Richter, 562 U.S. 86, 99 (2011) -------------------------------- 12, 13

Harris v. Nelson, 394 U.S. 286, 290-91 (1969) ----------------------------------- 2

Hill v. Lockhart, 474 U.S. 52, 56 (1985) ----------------------------------------- 10

Holland v. Florida, 560 U.S. 631, 645 (2010) -------------------------------------- 12

Johnson v. Finn, 665 F.3d 1063, 1069 n.1 (9th Cir. 2012) -------------------- 9

Martinez v. Ryan, 566 U.S. 1, 9 (2012) ------------------------------------------ 13

Mayle v. Felix, 545 U.S. 644, 649 (2005) ------------------------------------------ 2

McQuiggin v. Perkins, 569 U.S. 383, 386 (2013) ------------------------------- 12

McQuiggin v. Perkins, 569 U.S. 383, 392 (2013) ------------------------------- 13

Nasby v. McDaniel, 853 F.3d 1049, 1053 (9th Cir. 2017) --------------------- 9

O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999) ----------------------------- 11, 12

Pace v. DiGuglielmo, 544 U.S. 408, 414 (2005) -------------------------------- 12

Schlup v. Delo, "more likely than not" gateway standard -------------------------- 5

Trevino v. Thaler, 569 U.S. 413, 429 (2013) ---------------------------------------- 13

United States v. Ruiz, 536 U.S. 622, 628-29 (2002) ------------------------------- 10

**STATUTES**

28 U.S.C. § 2244(d)(1) ................................................................................ 12

28 U.S.C. § 2251 ......................................................................................... 4

28 U.S.C. § 2254(b)(1) ................................................................................ 12

28 U.S.C. § 2254(b)(1)(B) ........................................................................... 12

28 U.S.C. § 2254(d)(1) .............................................................................. 2, 4

California Penal Code § 278.5(a) ................................................................. 5

**RULES**

Federal Rule of Civil Procedure 5(b)(2)(E) .................................................. 14

Federal Rule of Civil Procedure 15(a)(2) ............................................... 1, 2, 4

**OTHER AUTHORITIES**

Case No. D083239 (California Court of Appeal, Fourth Appellate District) ............. 3, 9, 11

Case No. S284407 (California Supreme Court) ........................................ 3, 9, 11

Case No. SCD297230 (San Diego Superior Court) ........................................... 9

Petitioner, Robert Emert, proceeding pro se, respectfully moves this Honorable Court pursuant to Federal Rule of Civil Procedure 15(a)(2) for leave to file an Amended Petition for Writ of Habeas Corpus. This motion is made in good faith, not for purposes of undue delay, and is based on the following Memorandum of Points and Authorities, the record in this case, and the proposed Amended Petition for Writ of Habeas Corpus, a copy of which is attached hereto as Exhibit A.

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Petitioner seeks leave to amend his initial Petition for Writ of Habeas Corpus (ECF No. 1),
filed on April 7, 2025. The purpose of this proposed amendment is to more fully articulate
and integrate the factual bases for the claims already presented therein, ensuring the
petition is as clear, comprehensive, and self-contained as possible, and to strategically re-
sequence the claims to lead with the most compelling evidence of substantive innocence
and fundamental jurisdictional defects. This request is made in light of the Court's Order of
May 16, 2025 (ECF No. 8), which denied Petitioner's "Omnibus Motion" (ECF No. 5) and
provided clarification regarding the presentation and consideration of the record in this
habeas corpus proceeding. The proposed amendment will aid the Court and Respondent
in understanding the claims and will better conform the petition to the procedural posture
of the case, particularly as the full state court record has not yet been lodged by
Respondent.

## II. ARGUMENT

### A. Legal Standard for Leave to Amend

Federal Rule of Civil Procedure 15(a)(2) governs amendments to pleadings and provides
that a party may amend its pleading with the court's leave. The rule directs that courts
"should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). The Supreme
Court has emphasized that this mandate is to be heeded. Foman v. Davis, 371 U.S. 178,
182 (1962). The liberal amendment standard is particularly applicable in habeas
proceedings, where the Supreme Court has emphasized that "the writ of habeas corpus is
the fundamental instrument for safeguarding individual freedom against arbitrary and
lawless state action." Harris v. Nelson, 394 U.S. 286, 290-91 (1969). Federal courts should
be especially receptive to amendments that clarify constitutional claims. Mayle v. Felix,
545 U.S. 644, 649 (2005). Factors that may justify denying leave to amend include undue
delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure
deficiencies by amendments previously allowed, undue prejudice to the opposing party by
virtue of allowance of the amendment, and futility of amendment. Id. None of these factors
are present here. This is Petitioner's first request to amend, it is made early in the
proceedings before Respondent has filed a responsive pleading, and the amendment is
intended to enhance clarity, strengthen the presentation of meritorious claims, and is not
futile.

## B. Petitioner's Initial Approach and the Court's Clarifying Order

In drafting the initial Petition for Writ of Habeas Corpus (ECF No. 1), Petitioner, proceeding pro se, endeavored to be concise for the Court's convenience while ensuring all exhausted claims were presented. To achieve this, the initial Petition frequently referenced Petitioner's more detailed California Supreme Court habeas corpus petition and its numerous supporting exhibits (which were lodged with this Court on a USB drive [ECF No. 3] and referred to in the initial Petition as "Exhibit 1" and "Exhibits A-Y"). Petitioner believed this approach would provide the Court with comprehensive information while maintaining a brief primary federal pleading.

On May 16, 2025, this Court issued an Order (ECF No. 8) denying Petitioner's "Omnibus Motion" (ECF No. 5). In that Order, the Court denied Petitioner's request for judicial notice of the contents of the lodged USB drive at this stage. The Court specifically noted that "habeas review under § 2254(d)(1) is 'limited to the record that was before the state court that adjudicated the claim on the merits'" (ECF No. 8 at 3 (quoting Cullen v. Pinholster, 563 U.S. 170, 181 (2011))). The Court further ordered Respondent to lodge these relevant state court records with its response to the Petition (ECF No. 8 at 4).

## C. Purpose and Scope of the Proposed Amendment

The Court's May 16, 2025 Order has provided Petitioner with valuable clarification regarding the procedural framework for the presentation and consideration of evidence in this habeas proceeding. In light of this clarification, and upon further strategic review, Petitioner recognizes that the initial attempt at conciseness—achieved through substantial reliance on externally lodged exhibits that are not yet formally part of the reviewable record for merits determination by this Court—may not be the most effective method for presenting the claims. Petitioner now understands the critical importance of ensuring the federal petition itself more fully and explicitly states the factual and legal bases supporting each ground asserted, and presents them in the most compelling sequence.

Therefore, Petitioner seeks leave to file the proposed Amended Petition (attached as Exhibit A) to:

- More thoroughly integrate key factual allegations, legal arguments, and summaries of evidentiary support directly into the narrative of each ground within the body of the federal pleading. This involves expanding on the summaries provided in the initial petition by incorporating more specific details drawn from the materials previously lodged on the USB drive and enhancing the legal framework for each claim.

- Strategically re-sequence the Grounds for Relief to lead with the most powerful substantive claims of actual innocence and voidness of the underlying orders, followed by the procedural and due process violations.
- Ensure the federal petition is as clear, comprehensive, and self-contained as possible in its presentation of the facts and law supporting the previously raised and exhausted claims.
- Aid the Court and Respondent in efficiently understanding the contours and factual underpinnings of Petitioner's claims, particularly before the full state court record is lodged by Respondent and reviewed by the Court.

The proposed amendment is not intended to raise new, unexhausted claims. All grounds for relief in the proposed Amended Petition were raised and exhausted in Petitioner's state court proceedings, including the habeas corpus petition denied by the California Supreme Court (referenced as Attachment A to ECF No. 1 and as Exhibit 1 on ECF No. 3). Furthermore, this motion is not filed for purposes of undue delay or in bad faith. Respondent has not yet filed an answer or other responsive pleading, and the deadline for such filing is July 14, 2025 (ECF No. 8 at 5).

## D. Granting Leave to Amend Serves the Interests of Justice

Granting leave to amend in this instance serves the interests of justice. This case is in its early stages. Allowing the amendment will cause no prejudice to Respondent, who has not yet responded to the initial Petition. Instead, the amendment will provide Respondent with a clearer and more detailed articulation of the factual and legal bases for Petitioner's claims, facilitating a more focused and efficient response. For the Court, the proposed Amended Petition will offer a more self-contained, strategically organized, and comprehensive pleading, streamlining the review process.

This comprehensive approach by Petitioner will be particularly valuable once the full state court record is lodged by Respondent as ordered (ECF No. 8). A thorough understanding of Petitioner's claims, as clearly articulated in the proposed Amended Petition and viewed in conjunction with the complete state record, is essential for a just and accurate resolution of any potentially dispositive issues. Indeed, for claims adjudicated on the merits in state court, federal habeas review under 28 U.S.C. § 2254(d)(1) is expressly 'limited to the record that was before the state court that adjudicated the claim on the merits.' Cullen v. Pinholster, 563 U.S. 170, 181 (2011); see also id. at 185 n.7 (noting that this limitation applies to determining whether the state court's decision was contrary to or an unreasonable application of clearly established federal law). Ensuring the petition clearly articulates the claims now, in anticipation of review alongside the complete state record, therefore promotes both fairness and judicial economy.

Given the liberal standard of Rule 15(a)(2) and the pro se status of Petitioner, leave to amend should be freely granted to ensure that Petitioner's claims are fully and fairly presented for adjudication on their merits. Petitioner also wishes to inform the Court that potentially dispositive state court hearings are scheduled in the San Diego Superior Court on August 1, 2025, and August 8, 2025, related to the federal due process violation of the underlying family court default judgment which is a jurisdictional defect that the state courts have jumped through hoops to not recognize, address and own accountability. These hearings include a collateral attack on the underlying default judgment which directly addresses the due process jurisdictional defect central to the proposed Amended Petition. The clarity of the Amended Petition will be beneficial as the Court considers the progress and potential impact of these imminent state court proceedings, including Petitioner's request for a stay of federal proceedings (28 U.S.C. § 2251) made within the proposed Amended Petition, in the interests of judicial economy and comity.

## E. The Proposed Amended Petition Offers Enhanced Clarity on Key Issues for Comprehensive Review

Petitioner respectfully submits that the proposed Amended Petition for Writ of Habeas Corpus (Exhibit A) has been drafted to provide enhanced clarity and a more comprehensive factual and legal foundation for the claims presented, now strategically sequenced for optimal understanding. This effort is, in part, responsive to the Court's May 16, 2025 Order (ECF No. 8), as Petitioner endeavors to ensure all claims are presented in a manner that facilitates thorough review. The Amended Petition now leads with the powerful claims of Actual Innocence and the Fundamental Jurisdictional Defect (Void Orders), followed by the interrelated claims of Brady Violations, Coerced Plea, Retaliation, and Judicial Bias. **Each of these grounds has been substantially bolstered with more detailed factual integration, enhanced legal frameworks, and specific analyses responsive to ensuring maximum clarity and legal support, including but not limited to:**

- The **Actual Innocence claim (Ground 1)** now includes an even more detailed factual basis demonstrating the absence of "malice" for PC § 278.5(a), supported by extensive state and federal case law, evidence of cooperative co-parenting, Bryce's pleas, and **a concluding synthesis explicitly tying these elements to the *Schlup v. Delo* "more likely than not" gateway standard.**
- The **Fundamental Jurisdictional Defect claim (Ground 2)** includes **enhanced analysis of how void orders create a structural defect affecting the entire proceeding and further addresses the "extrinsic fraud" exception to the Rooker-Feldman doctrine.**

- The **Brady Violations claim (Ground 3)** now features an **enhanced materiality analysis, detailing how DAI Pena's admissions would have changed plea negotiations, the cumulative impact of all suppressed evidence, and the specific prejudice from not having this evidence during the 90-day detention period.**
- The **Coerced Plea claim (Ground 4)** further details the coercive circumstances, including Petitioner's possession of recordings evidencing false promises, and **links the coercion to the State's awareness of the weakness of its case on the "malice" element.**
- The **Retaliation claim (Ground 5)** presents a **more detailed timing and causation analysis, arguing why the State's prolonged inaction followed by sudden arrest after Petitioner's corruption complaint is indicative of retaliation rather than normal prosecution. It also incorporates, where supported by Petitioner's lodged evidence, context regarding Petitioner's whistleblowing potentially threatening alleged financial schemes related to family court facility placements, further illuminating the retaliatory motive.**
- The **Judicial Bias claim (Ground 6)** includes **expanded context on Petitioner's medical emergencies during critical proceedings and further details on how interconnected relationships within the San Diego legal community contribute to an appearance of impropriety.**
- The **Prosecutorial Immunity discussion**, while maintaining focus on the habeas claims, **further clarifies which alleged prosecutorial actions (like evidence fabrication) fall outside absolute immunity.**
- The **Harmless Error Analysis (Section XVI)** has been **enhanced to show more explicitly why each violation had a "substantial and injurious effect" and how the violations compounded each other.**
- The **Conclusion (Section XIV)** has been **strengthened to emphasize the particularly egregious confluence of constitutional violations.**

The full exposition of these arguments and their comprehensive supporting authorities is contained within the proposed Amended Petition. Petitioner believes that granting leave to file this more detailed, strategically re-sequenced, and comprehensively articulated Amended Petition will serve the interests of justice by ensuring that these critical, and potentially dispositive, constitutional claims are evaluated based on the clearest and most complete presentation possible, alongside the forthcoming state court record.

## F. Full State Court Record Is Essential for Proper Adjudication and Required by Court Order

Petitioner respectfully emphasizes the critical importance of Respondent's compliance with this Court's May 16, 2025 Order (ECF No. 8) requiring that, "At the time the [motion to dismiss or answer] is filed, Respondent must lodge with the Court all records bearing on [Respondent's contention/the merits of Petitioner's claims]." (ECF No. 8 at 5). The necessity of the complete state court record cannot be overstated, particularly given the nature of Petitioner's constitutional claims and the extensive motion practice in state court through which these claims were developed and exhausted.

Scope of Required Record Encompasses All Relevant State Court Filings

The "all records" language in this Court's Order encompasses the entire state court record, including but not limited to:

a. All motions filed by Petitioner in San Diego Superior Court Case No. SCD297230, including Petitioner's Motion to Withdraw Plea, Motion to Dismiss, PC 1424 Motion for disqualification of prosecutors, Ex Parte Motion to Reconsider Sentencing, Motion for Recusal of Judge Katz, and all supporting exhibits and declarations;

b. All transcripts of hearings in Case No. SCD297230, including arraignment, bail hearings, plea hearing, and sentencing;

c. All exhibits submitted to or considered by the state courts, including the recorded statements of DAI Luis Pena referenced throughout Petitioner's filings;

d. Complete records of Petitioner's state habeas proceedings in both the California Court of Appeal, Fourth Appellate District (Case No. D083239) and the California Supreme Court (Case No. S284407); and

e. All other documents from the state court record bearing on Petitioner's constitutional claims.

Selective or Partial Record Production Would Violate Due Process

Any attempt to provide only a selective or partial record would directly contravene both this Court's Order and fundamental principles of due process. In Nasby v. McDaniel, 853 F.3d 1049, 1053 (9th Cir. 2017), the Ninth Circuit recognized a petitioner's right to present a complete record to support habeas claims. Similarly, Johnson v. Finn, 665 F.3d 1063, 1069 n.1 (9th Cir. 2012), established that "a court's decision on a claim must be based on all the relevant evidence."

**Guilty Plea Does Not Obviate Need for Complete Record**

Anticipating a potential argument that Petitioner's guilty plea eliminates the need for the complete record, Petitioner notes that the Supreme Court has clearly established that claims challenging the court's jurisdiction, the voluntary and intelligent character of the guilty plea itself, the effectiveness of counsel in relation to the plea, and the withholding of material evidence affecting the plea decision are not waived by a guilty plea. See Class v. United States, 138 S. Ct. 798, 803 (2018) (claims challenging "the Government's power to criminalize [a defendant's] (admitted) conduct" are not waived); Hill v. Lockhart, 474 U.S. 52, 56 (1985) (ineffective assistance claims relating to plea advice are not waived); United States v. Ruiz, 536 U.S. 622, 628-29 (2002) (discussing materiality of evidence in plea context). Moreover, as the Supreme Court has recognized, when a plea is induced by "threats, misrepresentation, or improper promises," it is invalid. Brady v. United States, 397 U.S. 742, 755 (1970). Evaluation of such claims necessarily requires examination of the complete record, including evidence of prosecutorial misconduct, coercion, and material misrepresentations.

**Failure to Produce Complete Record Would Warrant Sanctions**

Given the clear directive in this Court's Order and the fundamental importance of the complete record to proper adjudication of Petitioner's claims, any failure to produce the entire state court record would not only violate this Court's Order but would constitute a deliberate effort to obstruct justice and prejudice Petitioner's ability to present his case. Such conduct would warrant appropriate sanctions under this Court's inherent authority to manage its proceedings. See Chambers v. NASCO, Inc., 501 U.S. 32, 43-44 (1991) (courts have inherent power to impose sanctions for conduct that disrupts the judicial process).

The proposed Amended Petition specifically references numerous motions, transcripts, and evidentiary materials that were presented to the state courts and form essential components of the record. These materials are not ancillary or tangential but are central to Petitioner's constitutional claims and to this Court's ability to properly evaluate those claims under the standards established by AEDPA and controlling Supreme Court precedent.

## G. Petitioner Has Fully Exhausted All Claims, Which Are Timely and Not Procedurally Barred

Petitioner notes with concern the Court's instruction in its May 16, 2025 Order that "If Respondent contends Petitioner has failed to exhaust any state remedies as to any ground for relief alleged in the Petition, the motion to dismiss must also specify the state remedies

still available to Petitioner" (ECF No. 8 at 5, n.3). This language appears to invite a procedural challenge to Petitioner's claims based on alleged failure to exhaust state remedies. Petitioner respectfully submits that such a challenge would be entirely without merit, as Petitioner has thoroughly exhausted all claims presented in this petition, the petition is timely, and no procedural bars prevent review.

Complete Exhaustion Through Full Round of State Review

Petitioner has meticulously exhausted each claim by presenting it through one complete round of state court review, as required by O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999). Specifically:

a. Each constitutional claim was presented to the Superior Court of California, County of San Diego through various motions including Petitioner's Motion to Withdraw Plea, Motion to Dismiss, PC 1424 Motion, Ex Parte Motion to Reconsider Sentencing, and Motion for Recusal of Judge Katz.

b. Following the Superior Court's denial or failure to act on these motions, Petitioner presented the same claims to the California Court of Appeal, Fourth Appellate District, Division One, through a petition for writ of habeas corpus (Case No. D083239), which was summarily denied on December 15, 2023.

c. Petitioner then presented these same claims to the California Supreme Court through a petition for writ of habeas corpus (Case No. S284407), which was denied on February 11, 2025. This progression satisfies the exhaustion requirement under 28 U.S.C. § 2254(b)(1), which the Supreme Court has defined as giving "the state courts one full opportunity to resolve any constitutional issues." O'Sullivan, 526 U.S. at 845.

Fair Presentation of Federal Constitutional Claims

Each claim in the proposed Amended Petition was "fairly presented" to the state courts as a federal constitutional issue, as required by Duncan v. Henry, 513 U.S. 364, 365-66 (1995). Petitioner's state court filings explicitly invoked specific provisions of the U.S. Constitution, cited relevant U.S. Supreme Court precedent, and framed the issues in terms of federal constitutional law. As the Ninth Circuit has recognized, a claim is fairly presented when the petitioner has "characterized the claims he raised in state proceedings specifically as federal claims." Castillo v. McFadden, 399 F.3d 993, 999 (9th Cir. 2005).

No Adequate and Independent State Procedural Ground Bars Review

To the extent the state courts summarily denied Petitioner's claims without explanation, such summary denials are presumed to be on the merits for purposes of federal habeas review. Harrington v. Richter, 562 U.S. 86, 99 (2011) ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary."). No adequate and independent state procedural ground bars federal review of these claims. Coleman v. Thompson, 501 U.S. 722, 729 (1991).

No Available State Remedies Remain

There are no further state remedies available to Petitioner. California's system for collateral review has been fully utilized through Petitioner's habeas petitions to the Superior Court, Court of Appeal, and Supreme Court. The California Supreme Court's denial of Petitioner's habeas petition on February 11, 2025, marked the conclusion of available state remedies. As the Supreme Court has recognized, "once the state courts have ruled upon a claim, it is not necessary for a petitioner to seek collateral relief from the same claim." Castille v. Peoples, 489 U.S. 346, 350 (1989).

Even If Any Claim Were Unexhausted, Exceptions Would Apply

In the highly unlikely event that any aspect of any claim could be deemed unexhausted, exceptions to the exhaustion requirement would apply under 28 U.S.C. § 2254(b)(1)(B). Specifically:

a. The state corrective process is clearly ineffective and futile, as demonstrated by the state courts' persistent refusal to grant evidentiary hearings on Petitioner's well-supported constitutional claims despite numerous requests. See Duckworth v. Serrano, 454 U.S. 1, 3 (1981) (noting exception when "the state corrective process is so clearly deficient as to render futile any effort to obtain relief").

b. The factual predicate for certain claims, particularly DAI Pena's concealed recorded statements, could not have been discovered earlier through reasonable diligence, qualifying for the exception recognized in Holland v. Florida, 560 U.S. 631, 645 (2010).

c. The manifest injustice exception would apply given the compelling evidence of Petitioner's actual innocence, as recognized in McQuiggin v. Perkins, 569 U.S. 383, 386 (2013) (holding that a credible showing of actual innocence can overcome procedural barriers).

AEDPA Statute of Limitations Compliance

This petition is timely under 28 U.S.C. § 2244(d)(1). The conviction became final following denial of Petitioner's California Supreme Court habeas petition on February 11, 2025. Clay v. United States, 537 U.S. 522, 527 (2003) (defining finality for AEDPA purposes). The one-year limitations period was tolled during pendency of Petitioner's state post-conviction proceedings. Duncan v. Walker, 533 U.S. 167, 181-82 (2001); Pace v. DiGuglielmo, 544 U.S. 408, 414 (2005).

No Procedural Default Bars Review

Petitioner's claims are not procedurally defaulted. Where state courts summarily deny claims without explanation, federal courts presume adjudication on the merits absent clear indication of procedural dismissal. Harrington v. Richter, 562 U.S. 86, 99 (2011). Even if any claim were deemed procedurally defaulted, exceptions apply under Martinez v. Ryan, 566 U.S. 1, 9 (2012), and Trevino v. Thaler, 569 U.S. 413, 429 (2013), particularly given ineffective assistance of counsel claims. Additionally, actual innocence provides a gateway for otherwise defaulted claims. McQuiggin v. Perkins, 569 U.S. 383, 392 (2013).

The proposed Amended Petition provides a detailed account of how each claim was presented to each level of the state court system, removing any legitimate basis for a challenge to exhaustion. Petitioner has diligently pursued all available state remedies, and federal habeas review is now not merely appropriate but necessary to prevent a complete miscarriage of justice.

# III. CONCLUSION

For the foregoing reasons, Petitioner Robert Emert respectfully requests that this Court grant him leave to file the Amended Petition for Writ of Habeas Corpus, a copy of which is attached hereto as Exhibit A.

Dated: June 9, 2025

Respectfully submitted,

Robert Emert

Petitioner, In Pro Per

2351 Vista Lago Terrace

Escondido, CA 92029

Telephone: 760-612-9328

robemert@msn.com

EXHIBIT A

(Proposed Amended Petition for Writ of Habeas Corpus is attached)

# CERTIFICATE OF SERVICE

I, Robert Emert, declare that on this 10ᵗʰ day of June, 2025, I served a true and correct copy
of the foregoing MOTION FOR LEAVE TO FILE AMENDED PETITION FOR WRIT OF HABEAS
CORPUS (28 U.S.C. § 2254) and the attached Proposed Amended Petition for Writ of
Habeas Corpus (Exhibit A) on the following parties by electronic mail pursuant to Federal
Rule of Civil Procedure 5(b)(2)(E):

**Attorney General**
State of California
Office of the Attorney General
600 West Broadway
Suite 1800
San Diego, CA 92101-3702
(619) 645-2076
Fax: (619) 645-2313
Email: docketingsdawt@doj.ca.gov
*LEAD ATTORNEY*

**Kristen Kinnaird Chenelia**
California Department of Justice - Office of the Attorney General
Criminal Division - AWT
600 West Broadway Street, Ste. 1800

San Diego, CA 92101
(619) 738-9007
Fax: (619) 645-2012
Email: Kristen.Chenelia@doj.ca.gov
*LEAD ATTORNEY*

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on June 10, 2025, at Escondido, California.

Robert Emert
Petitioner, In Pro Per
2351 Vista Lago Terrace
Escondido, CA 92029
Telephone: 760-612-9328
robemert@msn.com

# EXHIBIT A

**ROBERT EMERT**
Respondent, In Pro Per
2351 VISTA LAGO TERRACE
ESCONDIDO, CA 92029
TELEPHONE: 760-612-9328
robemert@msn.com

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

Robert Emert

        Plaintiff,

   v.

San Diego Probation Department

       Defendant.

Case No.: 3:25-cv-0820-TWR-BLM

**AMENDED PETITION FOR WRIT OF HABEAS CORPUS (28 U.S.C. § 2254)**

Hearing Date: **TBD**
Time:        **TBD**
Department:   **TBD**
**Judge: Hon. Barbara Major**

# Contents

TABLE OF AUTHORITIES ............................................................................3

I. PRELIMINARY STATEMENT ................................................................8

II. JURISDICTION AND VENUE ..............................................................10

III. PETITIONER ........................................................................................10

IV. RESPONDENT ....................................................................................10

V. TIMELINESS OF PETITION ................................................................10

VI. EXHAUSTION OF STATE REMEDIES ..............................................10

VII. STATEMENT OF CUSTODY ............................................................11

VIII. FACTUAL BACKGROUND ..............................................................11

IX. GROUNDS FOR RELIEF ...................................................................14

    GROUND 1: FACTUAL INNOCENCE – VIOLATION OF FOURTEENTH AMENDMENT DUE PROCESS (Prosecution of a Known Innocent Individual) ..........................14

    GROUND 2: FUNDAMENTAL JURISDICTIONAL DEFECT – STRUCTURAL CONSTITUTIONAL ERROR (Void Orders) ..........................19

    GROUND 3: WITHHOLDING OF MATERIAL EXCULPATORY EVIDENCE (BRADY VIOLATIONS) – VIOLATION OF FOURTEENTH AMENDMENT DUE PROCESS ..........20

    GROUND 4: COERCED GUILTY PLEA – VIOLATION OF THE FIFTH, SIXTH, AND FOURTEENTH AMENDMENTS ..........................22

    GROUND 5: RETALIATION FOR PROTECTED SPEECH – VIOLATION OF THE FIRST AMENDMENT ..........................23

    GROUND 6: JUDICIAL BIAS AND DENIAL OF A FAIR HEARING – VIOLATION OF FOURTEENTH AMENDMENT DUE PROCESS ..........................25

XI. ENTITLEMENT TO EVIDENTIARY HEARING ..................................26

XII. EXTRAORDINARY CIRCUMSTANCES JUSTIFYING FEDERAL INTERVENTION ..............27

XIII. ROOKER-FELDMAN DOCTRINE INAPPLICABLE ........................27

XIV. CONCLUSION ..................................................................................28

XV. PRAYER FOR RELIEF ......................................................................28

XVI. CONSTITUTIONAL VIOLATIONS ARE NOT SUBJECT TO HARMLESS ERROR ANALYSIS ..........30

XVII. AEDPA DEFERENCE DOES NOT APPLY OR IS OVERCOME ....30

CERTIFICATE OF SERVICE ....................................................................32

# TABLE OF AUTHORITIES

**CASES**

Aetna Life Ins. Co. v. Lavoie, 475 U.S. 813, 825 (1986) .................................................. 23

Allen v. City of Los Angeles (C.D. Cal. 2006) 2006 WL 8434087 ...................................... 9

Armstrong v. Manzo, 380 U.S. 545, 550 (1965) ...............................................2, 14, 27

Bell v. Wolfish, 441 U.S. 520, 535 (1979) ........................................................... 16

Bousley v. United States, 523 U.S. 614, 623 (1998) ................................................ 11

Boykin v. Alabama, 395 U.S. 238, 242 (1969) ................................................. 16, 27

Bracy v. Gramley, 520 U.S. 899 (1997) ............................................................ 25

Brady v. Maryland, 373 U.S. 83 (1963) .....................................................1, 15, 27

Brecht v. Abrahamson, 507 U.S. 619, 637 (1993) ................................................. 26

Brokaw v. Mercer County, 235 F.3d 1000 (7th Cir. 2000) ........................................... 7

Buckley v. Fitzsimmons, 509 U.S. 259 (1993) ................................................. 6, 24

Caperton v. A.T. Massey Coal Co., 556 U.S. 868 (2009) ....................................... 23, 27

Chambers v. Mississippi, 410 U.S. 284 (1973) ..................................................... 23

Chicot County Drainage Dist. v. Baxter State Bank, 308 U.S. 371, 374 (1940) ........... 14

Doe v. Mann (9th Cir. 2005) 415 F.3d 1038 ........................................................ 9

Durfee v. Duke, 375 U.S. 106, 111 (1963) ......................................................... 14

Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005) ................. 25

Faretta v. California, 422 U.S. 806 (1975) ................................................... 23, 27

Goldberg v. Kelly, 397 U.S. 254 (1970) ............................................................ 25

Gonzalez v. Harris (N.D. Cal. 2019) 2019 WL 123044 ............................................ 9

Hartman v. Moore, 547 U.S. 250, 259 (2006) ................................................21, 27

Hensley v. Municipal Court, 411 U.S. 345, 351 (1973) ................................ 4

Hill v. Lockhart, 474 U.S. 52, 59 (1985) .................................................. 16

House v. Bell, 547 U.S. 518 (2006) .......................................... 7, 11, 27

Illinois v. Allen, 397 U.S. 337 (1970) ..................................................... 23

In re Davis, 557 U.S. 952 (2009) ............................................................ 11

In re Murchison, 349 U.S. 133, 136 (1955) ...................................... 22, 27

In re Winship, 397 U.S. 358 (1970) ......................................................... 11

Jackson v. Barnes (9th Cir. 2014) 749 F.3d 755 ..................................... 9

Jones v. Cunningham, 371 U.S. 236, 243 (1963) ................................... 4

Justices of Boston Municipal Court v. Lydon, 466 U.S. 294, 300-01 (1984) ............... 4

Kalhan v. Colonial Mortgage Service Co., 591 F.3d 119, 124 (2d Cir. 2010) .............. 14

Kougasian v. TMSL, Inc., 359 F.3d 1136, 1140 (9th Cir. 2004) .................. 25

Kotteakos v. United States, 328 U.S. 750, 765 (1946) ........................... 26

Lafler v. Cooper, 566 U.S. 156, 163 (2012) ........................................... 16

Lassiter v. Department of Social Services (1981) 452 U.S. 18 ................. 9

Lee v. United States, 137 S. Ct. 1958, 1969 (2017) .............................. 16

Liljeberg v. Health Services Acquisition Corp., 486 U.S. 847 (1988) ........... 23

Liteky v. United States, 510 U.S. 540 (1994) ....................................... 23

Lozman v. City of Riviera Beach, 138 S. Ct. 1945, 1953 (2018) ........... 20, 27

Machibroda v. United States, 368 U.S. 487, 493 (1962) ........................ 16

Maleng v. Cook, 490 U.S. 488, 491 (1989) .............................................. 4

Mathews v. Eldridge, 424 U.S. 319 (1976) .......................................... 23

McKaskle v. Wiggins, 465 U.S. 168, 177-78 (1984) ........................... 23, 26

McKinney v. Arizona, 140 S. Ct. 702, 707-708 (2020) ................................ 14

McQuiggin v. Perkins, 569 U.S. 383, 392 (2013) ...................................... 11

Miller-El v. Cockrell, 537 U.S. 322, 340 (2003) ....................................... 27

Missouri v. Frye, 566 U.S. 134, 145 (2012) ............................................ 16

Montgomery v. Louisiana, 577 U.S. 190, 206 (2016) ............................ 14, 27

Morales v. Woodford (9th Cir. 2004) 388 F.3d 1159 ................................... 9

Murray v. Carrier, 477 U.S. 478, 496 (1986) .......................................... 11

New York Times Co. v. Sullivan, 376 U.S. 254 (1964) .............................. 20

Nieves v. Bartlett, 139 S. Ct. 1715, 1727 (2019) .................................. 21, 27

Padilla v. Kentucky, 559 U.S. 356, 366 (2010) ....................................... 16

Panetti v. Quarterman, 551 U.S. 930, 948, 953 (2007) .......................... 19, 27

People v. Abernathy (2019) 33 Cal.App.5th 413 ........................................ 9

People v. Belleci (1979) 24 Cal.3d 879 .................................................. 9

People v. Hovater (1996) 52 Cal.App.4th 111 .......................................... 9

People v. Kongs (1994) 30 Cal.App.4th 1741 ........................................... 9

People v. Lujano (2012) 210 Cal.App.4th 803 .......................................... 9

People v. Neidinger (2019) 40 Cal.App.5th 967 ........................................ 9

People v. Ryan (2004) 116 Cal.App.4th 602 ............................................ 9

People v. Superior Court (Lavi), 4 Cal.4th 1164 (1993) ............................. 13

Preston v. United States, 923 F.2d 731 (9th Cir. 1991) ............................. 23

Puckett v. United States, 556 U.S. 129, 137 (2009) ................................. 16

Reichle v. Howards, 566 U.S. 658, 668 (2012) ........................................ 21

Renico v. Lett, 559 U.S. 766, 773 (2010) ............................................... 27

Resnick v. Hayes, 213 F.3d 443, 449 (9th Cir. 2000) ................................................ 20

Rios v. Garcia (9th Cir. 2004) 390 F.3d 1082 .......................................................... 9

Santobello v. New York, 404 U.S. 257, 262 (1971) ................................................. 16

Schlup v. Delo, 513 U.S. 298 (1995) ................................................ 2, 7, 11, 18, 19, 27

Schriro v. Landrigan, 550 U.S. 465, 473 (2007) ..................................................... 19

Shinn v. Ramirez, 142 S. Ct. 1718, 1734 (2022) .................................................... 18

Strickland v. Washington, 466 U.S. 668 (1984) ................................................. 16, 27

Townsend v. Sain, 372 U.S. 293, 312 (1963) ......................................................... 19

Tumey v. Ohio, 273 U.S. 510, 523 (1927) ........................................................ 23, 26

United States v. Dominguez Benitez, 542 U.S. 74, 76 (2004) ................................. 16

United States v. Garcia, 777 F.3d 558, 562 (9th Cir. 2014) ..................................... 4

United States v. Ruiz, 536 U.S. 622, 633 (2002) ................................................ 15, 27

United Student Aid Funds v. Espinosa, 559 U.S. 260, 271 (2010) ................. 14, 26, 27

Velarde v. Pineda (D. Ariz. 2018) 2018 WL 5785941 ............................................. 9

Ward v. Village of Monroeville, 409 U.S. 57, 60 (1972) ........................................ 23

Williams v. Pennsylvania, 579 U.S. 1 (2016) ........................................................ 23

Williams v. Taylor, 529 U.S. 420, 432 (2000) ....................................................... 18

Withrow v. Larkin, 421 U.S. 35, 47 (1975) ........................................................... 23

Young v. United States ex rel. Vuitton, 481 U.S. 787, 810 (1987) ........................... 23

**STATUTES**

28 U.S.C. § 2241 ...................................................................................................... 3

28 U.S.C. § 2241(d) ................................................................................................. 3

28 U.S.C. § 2244(d) ................................................................................................. 3

28 U.S.C. § 2251 ---------------------------------------------------------------------- 24

28 U.S.C. § 2254 --------------------------------------------------------------------- 1, 4

28 U.S.C. § 2254(b) ---------------------------------------------------------------------- 4

28 U.S.C. § 2254(c) ---------------------------------------------------------------------- 4

28 U.S.C. § 2254(d)(2) ----------------------------------------------------------------- 27

28 U.S.C. § 2254(e)(2) --------------------------------------------------------------- 18, 24

California Code of Civil Procedure § 170.6 ------------------------------------------- 5, 13

California Penal Code § 7(4) ------------------------------------------------------------ 8

California Penal Code § 278.5(a) --------------------------------------------------- 1, 7, 8, 24

California Penal Code § 278.7 ----------------------------------------------------- 1, 6, 7, 11

California Rules of Court, rules 2.831(b) --------------------------------------------- 13

California Rules of Court, rules 2.834(b)(3) ------------------------------------------ 13

CALCRIM 3403 --------------------------------------------------------------------------- 6, 7

**RULES**

Federal Rule of Civil Procedure 5(b)(2)(E) --------------------------------------------- 29

**OTHER AUTHORITIES**

Case No. 19FL010852N (San Diego Superior Court) ------------------------------- 5, 13, 24

Case No. D083239 (California Court of Appeal, Fourth Appellate District) ---------------- 4

Case No. S284407 (California Supreme Court) ---------------------------------------- 4

Case No. SCD297230 (San Diego Superior Court) --------------------------------- 1, 24

# I. PRELIMINARY STATEMENT

Petitioner, Robert Emert, proceeding pro se, submits this Amended Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. This Amended Petition challenges a conviction Petitioner asserts is a fundamental miscarriage of justice: the conviction of a man the State knew was innocent. The prosecution's own lead investigator, DAI Luis Pena, was recorded admitting that Petitioner would "likely win at trial," that there was "no reason" for criminal prosecution, and that the case "should never have been in criminal court"—critical exculpatory admissions deliberately concealed from Petitioner until after his coerced guilty plea, in direct violation of Brady v. Maryland.

This unconstitutional conviction, for California Penal Code § 278.5(a) (Case SCD297230) in the Superior Court of California, County of San Diego, was obtained through a confluence of severe and systemic constitutional violations. These violations, detailed herein, include:

1. The Prosecution of a Known Innocent **(Ground 1)**: Petitioner possessed a complete statutory defense under California Penal Code § 278.7, having acted to protect his son from documented emotional abuse at his son's request—an action inherently negating the **malicious intent** required by PC § 278.5(a), a principle upheld in extensive state and federal appellate review. DAI Pena's admissions confirm the State's awareness of Petitioner's innocence and lack of criminal intent, **an awareness further suggested by their prolonged inaction on the case for over a year until a pretextual "threat" was allegedly fabricated to justify Petitioner's coercive 90-day pretrial detention leading to the plea.** Yet the prosecution proceeded.

2. Conviction Based on Void Orders **(Ground 2)**: The entire criminal prosecution was predicated on family court orders that were void ab initio due to a fundamental jurisdictional defect—an improperly denied CCP § 170.6 peremptory challenge— rendering the criminal proceedings themselves a violation of due process under Armstrong v. Manzo.

3. Systematic Brady Violations **(Ground 3)**: Beyond DAI Pena's concealed recordings, the State suppressed other material exculpatory evidence, including Petitioner's son's supportive statements to DDA Balerio and an FBI assessment contradicting the State's pretext for Petitioner's arrest.

4. A Coerced Guilty Plea **(Ground 4)**: Petitioner's plea was the product of 90 days of unlawful pretrial detention (based on a fabricated "threat"), false promises of his

son's return (promises Petitioner has recorded evidence of, despite State denials), and ineffective assistance of counsel, all while the State withheld the aforementioned Brady material.

5. First Amendment Retaliation **(Ground 5)**: The prosecution, initiated after a 15-month delay and shortly after Petitioner filed a public corruption complaint against local officials (a complaint which, inter alia, potentially threatened alleged financial schemes related to family court facility placements), was retaliatory. DAI Pena admitted Petitioner had "pissed them off" and that "family court attorneys" were "pressuring to file charges."

6. Pervasive Judicial Bias **(Ground 6)**: Systemic conflicts of interest within the San Diego judiciary, coupled with specific instances of state court judicial bias, including the denial of Petitioner's Faretta rights to self-representation and proceeding with critical hearings during Petitioner's documented medical emergencies, deprived Petitioner of a fair and impartial tribunal.

The timeline of events reveals a clear pattern of retaliation, and the "smoking gun" recordings of DAI Pena eliminate any doubt about Petitioner's innocence and the State's knowledge thereof. Petitioner's son, Bryce Emert, has also affirmed his father's innocence and protective actions through extensive letters and communications. These extraordinary circumstances, including the concealment of dispositive evidence, the systematic failure of state courts to grant evidentiary hearings on over 500 exhibits and overwhelming evidence, and the contribution of the stress of this malicious prosecution to Petitioner's life-threatening medical conditions (STEMI heart attacks), underscore a pattern of institutional self-protection.

This Amended Petition is filed pursuant to the accompanying Motion for Leave to File Amended Petition, is timely, and all claims have been fully exhausted. Petitioner meets the gateway actual innocence standard of Schlup v. Delo, overcoming any alleged procedural barriers, and demonstrates that the state court adjudications were objectively unreasonable under AEDPA.

Federal intervention is essential. This case represents precisely the type of fundamental miscarriage of justice—the conviction of a factually innocent person through systematic constitutional violations—that the Great Writ was designed to remedy. As the Supreme Court emphasized in Schlup v. Delo, federal courts must act when "a constitutional violation has probably resulted in the conviction of one who is actually innocent." The evidence here is not merely "probable"—it is definitive.

## II. JURISDICTION AND VENUE

This Court has jurisdiction over this petition pursuant to 28 U.S.C. § 2241 and 28 U.S.C. § 2254. Petitioner was convicted and sentenced in San Diego County, which is within the Southern District of California. Venue is proper in this district under 28 U.S.C. § 2241(d).

## III. PETITIONER

Petitioner is Robert Emert, currently on probation under the supervision of the San Diego Probation Department as a result of the conviction challenged herein.

## IV. RESPONDENT

Respondent is the San Diego Probation Department, the entity responsible for Petitioner's current state of custody (probation). The ultimate respondent is the State of California, represented by the Attorney General.

## V. TIMELINESS OF PETITION

This petition is timely filed pursuant to 28 U.S.C. § 2244(d). Petitioner's conviction became final for purposes of AEDPA following the California Supreme Court's denial of his habeas corpus petition on February 11, 2025. Petitioner actively sought post-conviction relief in state court, including an "Ex Parte Motion to Reconsider 12/18/23 Sentencing" filed December 28, 2023, arguing factual innocence and other constitutional defects.

## VI. EXHAUSTION OF STATE REMEDIES

Petitioner has exhausted all available state judicial remedies as required by 28 U.S.C. § 2254(b) and (c). Petitioner challenged his conviction and sentence through a petition for writ of habeas corpus to the California Supreme Court, which was denied on February 11, 2025 (Case No. S284407). A copy of this denial was attached as Attachment A to the original federal petition (ECF No. 1). Petitioner also previously filed a habeas petition in the California Court of Appeal, Fourth Appellate District, Division One (Case No. D083239), which was summarily denied on December 15, 2023. The claims raised herein, including those detailed in his state court motions (e.g., Motion to Dismiss, Motion to Withdraw Plea, PC 1424 Motion, Motion for Recusal), were fairly presented to the state courts as federal constitutional issues. State corrective processes proved ineffective and futile, as state

courts systematically refused to grant evidentiary hearings on Petitioner's well-supported claims. No additional state remedies are available.

# VII. STATEMENT OF CUSTODY

Petitioner is "in custody" for purposes of 28 U.S.C. § 2254 because he is currently serving a term of probation, including GPS monitoring, imposed as a result of the challenged April 3, 2023 conviction. This status satisfies the custody requirement. Jones v. Cunningham, 371 U.S. 236, 243 (1963); Maleng v. Cook, 490 U.S. 488, 491 (1989). The custody requirement is amply satisfied. Probation with GPS monitoring constitutes 'custody' under controlling precedent. Hensley v. Municipal Court, 411 U.S. 345, 351 (1973); Justices of Boston Municipal Court v. Lydon, 466 U.S. 294, 300-01 (1984). The Ninth Circuit has specifically held that 'restrictive conditions of release' including electronic monitoring satisfy the custody requirement. United States v. Garcia, 777 F.3d 558, 562 (9th Cir. 2014).

# VIII. FACTUAL BACKGROUND

To aid the Court in understanding the sequence of events, Petitioner provides the following critical timeline:

- Oct 4, 2021: Petitioner takes emergency custody of his son, Bryce, at Bryce's request, due to documented emotional abuse by his mother, Andrea Schuck, and distress from family court proceedings. Petitioner immediately notifies authorities, invoking his rights under PC § 278.7.
- Oct 21, 2021: Petitioner files a public corruption complaint against family court officials and the DA's office, **alleging, inter alia, misconduct related to attempts to force Bryce into unnecessary and potentially profitable out-of-home facility placements, a system Petitioner believed bore resemblance to "Kids for Cash" type schemes, and that Petitioner's whistleblowing threatened this alleged scheme.**
- Oct 2021-Jan 2023 (15+ months): Petitioner cooperates fully with DA Investigator Luis Pena's investigation; no charges are filed.
- Sept 7, 2022: DAI Pena is recorded making numerous admissions, including that there is "no case" against Petitioner, that Petitioner would "likely win at trial," that the DA's office was "too deep in it now," and that "family court attorneys are pressuring to file charges criminal charges."
- Jan 3, 2023: After more than a year of inaction following the initial custody event, and subsequent to Petitioner's corruption complaint and DAI Pena's admissions, Petitioner is suddenly arrested for PC § 278.5(a).

- Jan 3 – April 3, 2023 (90 days): Petitioner is held in pretrial detention without bail, based on an allegedly manufactured "threat" derived from a mischaracterized segment of a call Petitioner made to the FBI reporting public corruption.
- April 3, 2023: Under duress from prolonged detention and facing false promises, Petitioner enters a coerced guilty plea. The promise that Bryce would be returned home if he pleaded guilty was broken.
- Post-Conviction (e.g., August 2023): DAI Pena's recorded admissions from September 7, 2022, are discovered by Petitioner. These recordings were not provided during any pre-plea discovery (as none was formally due during the DA's investigation phase prior to charges being filed) and their existence was affirmatively denied by the prosecution when inquiries were made by prior counsel. They could not have been found earlier through reasonable diligence due to the prosecution's concealment and my illegal incarceration.

Petitioner was the primary stay-at-home father for his son, Bryce (born June 2007), from October 2013 through September 2019. Following a divorce, custody of Bryce was initially 50/50. **Despite ongoing family court litigation, Petitioner consistently endeavored to maintain a cooperative and child-focused co-parenting relationship with Ms. Schuck for the children's benefit, often inviting her to family events, including trips and dinners, and even extending an invitation for Christmas morning on one occasion when Ms. Schuck expressed sadness at being alone while Petitioner had custody, stating to her to simply come over and we could put our garbage on hold for that day for the children to see us putting them first.** However, Bryce experienced significant emotional distress and repeatedly pleaded with Petitioner to live primarily with him, citing escalating emotional abuse from his mother, Andrea Schuck, and severe distress stemming from the contentious family court proceedings where the family court was attempting "facility" placement for Bryce without sufficient evidence (detailed in Petitioner's California Supreme Court Habeas Corpus Petition, lodged with this Court as ECF No. 3, Exhibit 1, and its sub-exhibits B, C, D – Bryce's affidavit, **extensive letters,** and emails; see also "EX PARTE 101623 UPDATED.pdf", Exhibit F; "UPDATED MOTION TO DISMISS 081723.pdf", Appendix A). Ms. Schuck was previously arrested for domestic violence against Petitioner and Bryce ("UPDATED MOTION TO DISMISS 081723.pdf", Appendix S; "EX PARTE 101623 UPDATED.pdf", Exhibit Q).

On February 4, 2021, Commissioner Patti Ratekin was assigned to the family court case (San Diego Superior Court Case No. 19FL010852N). On February 9, 2021, Petitioner filed a timely peremptory challenge against Commissioner Ratekin under CCP § 170.6. Commissioner Ratekin improperly denied it and continued to preside, ultimately issuing orders stripping Petitioner of parental rights. These orders are alleged to be void ab initio.

On October 4, 2021, invoking California Penal Code § 278.7 as a complete statutory defense due to his good faith belief that Bryce was at imminent risk of emotional harm (based on specific evidence of emotional abuse, including Bryce's own statements and the family court's attempts at unwarranted "facility" placement), Petitioner took emergency custody. Petitioner immediately notified authorities, including the DA's office, police, and CPS, providing extensive evidence supporting his actions and legal necessity (CALCRIM 3403). Multiple authorities, including CPS, local police, and the FBI, reportedly closed their investigations into Petitioner's conduct regarding the custody matter without finding wrongdoing on his part. For over fifteen months (October 2021 – January 2023), Petitioner cooperated with the DA's investigation, providing Bryce's statements, evidence of emotional abuse, and records of his communications (detailed in Exhibit 1 of CA SC Petition; "UPDATED MOTION TO DISMISS 081723.pdf", Statement of the Case).

During this period, specifically on September 7, 2022, DAI Pena was recorded making numerous statements to Petitioner indicating the DA's office lacked a viable criminal case and knew Petitioner was likely innocent. These statements, detailed extensively in Petitioner's "PC 1424 MOTION CONFORMED COPY.pdf" and "STATE COURT WITHDRAWAL OF GUILTY PLEA 080823 2.pdf," include admissions that:

- He (Pena) questioned, "why are we even involved in this case? I'm like, we don't take anything over 14" (Pena Call Timestamp 00:11:00).
- The DA's office was "too deep in it now and the attorneys are pressuring to file charges criminal charges" (Pena Call Timestamp 00:19:44).
- His supervisors told him to "just finish the damn warrant and don't worry about it" (Pena Call Timestamp 00:27:07).
- Petitioner would "likely win" at trial.
- Petitioner had "good cause" to protect his son.

Despite these admissions and over a year of inaction, Petitioner was arrested on January 3, 2023, for PC § 278.5(a). Petitioner alleges this arrest was pretextual, based on a mischaracterized segment of a call Petitioner made to the FBI (reporting public corruption) falsely portrayed as a "threat" to justify denying bail and coerce a plea. **This fabrication of evidence to secure detention is not protected prosecutorial conduct as it falls within investigative functions rather than advocative functions, for which immunity does not apply (cf. _Buckley v. Fitzsimmons_, 509 U.S. 259 (1993)).** _The full FBI call transcript shows no credible threat._

Petitioner was incarcerated pretrial for approximately 90 days without bail review. On April 3, 2023, Petitioner entered a guilty plea. This plea was coerced by prolonged detention, withholding of exculpatory evidence (including Pena's recorded statements and DDA

Balerio's interview with Bryce, who supported Petitioner's position), and false promises by his attorney, Jose Badillo (in concert with DDA Balerio and Andrea Schuck), that Bryce would be returned home if he pleaded guilty (details in "STATE COURT WITHDRAWAL OF GUILTY PLEA 080823 2.pdf", citing calls with Badillo and Schuck; "EX PARTE MOTION TO RECONSIDER 122823 (1).pdf"). This promise was not kept. DAI Pena's recordings, critical to Petitioner's defense and claim of innocence, were deliberately concealed by the prosecution and only surfaced around August 2023, after conviction; the prosecution had previously affirmatively denied their existence when inquiries were made by prior counsel. They could not have been found earlier through reasonable diligence due to this concealment.

Post-plea, Petitioner filed numerous motions in state court, including a Motion to Withdraw Plea, Motion to Dismiss, PC 1424 Motion to disqualify the prosecutors, motions for recusal of Judge Katz, and motions to reconsider sentencing, all alleging constitutional violations and factual innocence, and requesting evidentiary hearings. These motions, containing extensive factual allegations and citations to evidence (including a vast list of exhibits A-UUUU in the PC 1424 motion), were largely denied or ignored without substantive hearings, as detailed in "JUDGE KATZ RECUSAL.pdf" and "EX PARTE 101623 UPDATED.pdf".

# IX. GROUNDS FOR RELIEF

## GROUND 1: FACTUAL INNOCENCE – VIOLATION OF FOURTEENTH AMENDMENT DUE PROCESS (Prosecution of a Known Innocent Individual)

Petitioner is factually innocent of PC § 278.5(a). His conviction is a fundamental miscarriage of justice, resulting from the prosecution of someone the State knew or should have known was innocent and had a complete statutory defense. Schlup v. Delo, 513 U.S. 298 (1995); House v. Bell, 547 U.S. 518 (2006).

Supporting Facts:

- Compelling Evidence of Innocence from DAI Pena's Admissions: The State's own lead investigator, DAI Luis Pena, admitted on September 7, 2022 (prior to arrest and these recordings being first discovered by Petitioner only in August 2023, post-conviction, due to prosecution's concealment and affirmative denial of their existence) that Petitioner would "likely win at trial," that there was "no reason" for criminal prosecution, that the case "should never have been in criminal court," and

that Petitioner had "good cause" for his actions. Pena further stated his supervisors knew this but were "in too deep" and pressured by family court attorneys. These admissions are powerful evidence of innocence from the State's own agent.

- **Complete Statutory Defense Under PC § 278.7 / Legal Necessity (CALCRIM 3403):** California Penal Code § 278.7 provides a complete statutory defense for actions taken to protect a child from imminent physical or emotional harm. Petitioner's actions on Oct 4, 2021, were taken in good faith response to Bryce's pleas and documented emotional abuse (including distress from family court attempts to place Bryce in an unnecessary residential facility), and Petitioner immediately notified all relevant authorities (police, CPS, DA). This complete statutory defense was ignored by the prosecution. Brokaw v. Mercer County, 235 F.3d 1000 (7th Cir. 2000).

- **Absence of Requisite Criminal Intent (Malice) – Element Essential for Conviction Not Met Under Controlling California and Federal Constitutional Principles:** The crime of violating Penal Code § 278.5(a) requires that the accused "**maliciously**" deprive a lawful custodian of a right to custody. Under California Penal Code § 7(4), "maliciously" imports "a wish to vex, annoy, or injure another person, or an intent to do a wrongful act..." Petitioner's actions were devoid of such malice. Instead, they were undertaken with the good faith belief, supported by substantial evidence including his son Bryce's direct pleas and documented emotional abuse, that Bryce was suffering or at imminent risk of emotional harm, thereby invoking the **complete statutory defense** provided by Penal Code § 278.7.

**Both California appellate courts and federal courts, including the Ninth Circuit, have consistently and rigorously scrutinized convictions under PC § 278.5(a) or analogous statutes for sufficient evidence of malice, frequently overturning convictions or finding constitutional violations where this essential element is lacking, particularly when evidence supports a good faith belief that the child was at risk or that the parent acted to protect the child's well-being.** As established in California cases such as *People v. Neidinger* (2019) 40 Cal.App.5th 967 (actions motivated by belief child's well-being required removal negates malice), *People v. Belleci* (1979) 24 Cal.3d 879 (prosecution must prove malice beyond a reasonable doubt, not just custody interference, and genuine concern for child's welfare negates malice), and *People v. Ryan* (2004) 116 Cal.App.4th 602 (good faith action to protect child from perceived harm does not constitute malicious intent, even with technical custody order violation), a parent's genuine concern for their child's safety is antithetical to the legal definition of malice. The prosecution bears the strict burden of proving such malicious intent beyond a reasonable doubt and cannot infer it solely from the act of custody interference (*People v. Kongs* (1994) 30 Cal.App.4th 1741; *People v. Hovater* (1996) 52 Cal.App.4th 111).

Similarly, the Ninth Circuit, in reviewing habeas petitions and related constitutional claims, has affirmed that malicious intent under PC § 278.5(a) requires proof that the defendant acted with the purpose of depriving the lawful custodian of their rights, and that this intent must be proven beyond a reasonable doubt (***Rios v. Garcia*** (9th Cir. 2004) 390 F.3d 1082). Federal courts also recognize that actions taken to safeguard a child's welfare do not automatically imply wrongful or malicious conduct (***Doe v. Mann*** (9th Cir. 2005) 415 F.3d 1038; ***Velarde v. Pineda*** (D. Ariz. 2018) 2018 WL 5785941), and that intent cannot be presumed solely from a defendant's actions without additional evidence (***Morales v. Woodford*** (9th Cir. 2004) 388 F.3d 1159). The fundamental nature of parental rights under the Fourteenth Amendment, as discussed in ***Lassiter v. Department of Social Services*** (1981) 452 U.S. 18 and applied by the Ninth Circuit, further supports the principle that good-faith actions to protect a child cannot be summarily deemed malicious. Indeed, the absence of intent or malice can undermine a prosecution's case for wrongful conviction (***Jackson v. Barnes*** (9th Cir. 2014) 749 F.3d 755).

Actions taken pursuant to PC § 278.7, by their very nature, are intended to be protective and lawful, directly negating any inference of a "wish to vex, annoy, or injure" the other parent or an "intent to do a wrongful act" regarding their custodial rights. Petitioner's conduct, when viewed through the lens of these controlling state and federal precedents, further evidences this lack of malice:

- o **Bryce's Explicit Pleas and Documented Distress Aligned with Protective Motives Recognized by State and Federal Case Law:** Petitioner's actions were a direct response to **extensive and repeated pleas from his son, Bryce, documented in numerous letters and communications (previously lodged, e.g., Exhibits B, C, D to ECF No. 3), begging Petitioner to remove him from what Bryce described as ongoing harassment from the family court process and severe emotional distress caused by his mother, Andrea Schuck.** This evidence aligns directly with the principles in California cases like ***People v. Lujano*** (2012) 210 Cal.App.4th 803 and ***People v. Abernathy*** (2019) 33 Cal.App.5th 413, and with federal court recognition that protective motives based on a reasonable belief the child was in danger negate malicious intent (see, e.g., ***Gonzalez v. Harris*** (N.D. Cal. 2019) 2019 WL 123044; ***Allen v. City of Los Angeles*** (C.D. Cal. 2006) 2006 WL 8434087). Petitioner was acting not out of personal animus towards Ms. Schuck, but out of a parental duty to protect his child from perceived harm, as PC § 278.7 allows and as both state and federal jurisprudence respects.

- o **Consistent Efforts to Foster Cooperative, Child-Focused Co-Parenting Contradict Malicious Intent:** Far from wishing to "vex," "annoy," or "injure"

Ms. Schuck, Petitioner consistently made efforts to foster a positive co-parenting environment for the sake of their children, demonstrating a mindset entirely contrary to malice. **This included inviting Ms. Schuck to participate in family trips and dinners so the children could see their parents prioritizing their well-being. On one notable occasion, Petitioner specifically invited Ms. Schuck to join them on Christmas morning when he had custody and she expressed sadness at being alone, urging her to "come over and we could put our garbage on hold for that day for the children to see us putting them first that Ms. Schuck took and it was a nice and enjoyable occasion for all."** Such actions, demonstrating a focus on the children's emotional needs over parental conflict, are fundamentally inconsistent with the "malice" required for a PC § 278.5(a) conviction, as they show an absence of intent to harm or improperly deprive the other parent.

o **Immediate Lawful Notifications and Transparency:** Upon taking emergency custody in response to Bryce's pleas and perceived imminent harm, Petitioner immediately notified the San Diego District Attorney's Office (DAI Luis Pena), the Escondido Police Department, and Child Protective Services, providing them with Bryce's statements and the reasons for his actions. Such transparency is antithetical to malicious intent designed to unlawfully conceal or deprive.

o **Prolonged Cooperation:** Petitioner fully cooperated with DAI Pena's ensuing investigation for over fifteen months, consistently providing information and evidence.

o **DAI Pena's Own Admissions Undermining Malice:** DAI Pena's recorded statements acknowledging Petitioner had "good cause" and questioning the validity of the criminal case further suggest an internal understanding within the prosecution's own investigative arm that malicious intent was lacking.

The State was aware, or should have been aware from the outset and through its lengthy investigation, of the facts demonstrating Petitioner's good faith and the absence of malice, especially in light of established California law and consonant federal principles clarifying this element. **This awareness is further evidenced by the District Attorney's Office's own inaction for over fifteen months following Petitioner's exercise of his rights under PC § 278.7 and his full cooperation with their investigation. Had malice and a clear violation of PC § 278.5(a) been evident under the standards set by cases like** *Belleci*, *Kongs*, **and as reviewed by the Ninth Circuit in cases like** *Rios*, **prosecution would logically have commenced much sooner.** Instead, the prosecution was only initiated after this prolonged period, and, as Petitioner alleges, was predicated on a **fabricated "threat" used to justify Petitioner's arrest and 90-day unlawful pretrial detention**

specifically to coerce a guilty plea that the State knew it could not likely obtain if the case, lacking the crucial element of malice, went to trial. This sequence strongly suggests that the element of malice was recognized as absent or weak, necessitating the creation of a pretext to secure a conviction through coercion rather than through proof of all statutory elements at trial. No reasonable juror, presented with the full evidence of Petitioner's protective motives, Bryce's desperate pleas, Petitioner's consistent efforts at cooperative and child-focused co-parenting, his actions under PC § 278.7, the DA's subsequent conduct, and **instructed on the law consistent with California precedents like *Neidinger*, *Ryan*, and *Lujano*, and federal constitutional principles regarding proof of intent,** could find the essential element of malice beyond a reasonable doubt. **The prosecution's decision to proceed despite such overwhelming evidence negating malice constitutes a due process violation, as it reflects a failure to adhere to the stringent proof requirements for this essential element as mandated by California appellate courts and recognized as fundamental by federal courts.**

- Bryce's Own Statements Supported Petitioner: Petitioner's son, Bryce, made statements to DDA Balerio indicating his desire to live with Petitioner due to emotional abuse from his mother. This exculpatory information, supporting Petitioner's defense, was allegedly suppressed or misrepresented by DDA Balerio.
- Conviction Based on Void Orders and Suppressed Evidence: The conviction rests on family court orders that were void ab initio (see Ground 2) and was obtained while the crucial exculpatory evidence detailed above was suppressed by the prosecution (see Ground 3). In re Winship, 397 U.S. 358 (1970).
- Fundamental Miscarriage of Justice and Gateway Actual Innocence: The totality of this evidence—DAI Pena's admissions, the complete statutory defense under PC § 278.7, the lack of malice, Bryce's supporting statements, and the void underlying orders—makes it "more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." Schlup, 513 U.S. at 327. This standard, while demanding, is not impossible to meet and is distinct from the "beyond a reasonable doubt" standard required for conviction. This showing of actual innocence meets the "extraordinarily high" but not "impossible" standard (House v. Bell, 547 U.S. at 538) and serves as a "gateway" under Schlup v. Delo and McQuiggin v. Perkins, 569 U.S. 383, 392 (2013), to permit review of any claims deemed procedurally defaulted. Actual innocence claims in the guilty plea context require showing that 'in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.' Bousley v. United States, 523 U.S. 614, 623 (1998). The Supreme Court has recognized that 'in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default.' Murray v.

Carrier, 477 U.S. 478, 496 (1986). The reasoning in In re Davis, 557 U.S. 952 (2009), extends to cases like Petitioner's with overwhelming evidence of innocence coupled with systematic constitutional violations. **In sum, the combination of DAI Pena's direct admissions of Petitioner's likely success at trial and the lack of a viable case; the complete statutory defense afforded by PC § 278.7 given Bryce's documented pleas and the evidence of emotional harm; the overwhelming evidence negating the essential element of 'malice' as defined by controlling California and federal case law; Bryce's own statements supporting Petitioner's protective actions; and the void nature of the underlying family court orders, all converge to demonstrate that it is 'more likely than not that no reasonable juror, acting reasonably and properly instructed on the law, would have found petitioner guilty beyond a reasonable doubt.'** *Schlup*, 513 U.S. at 327. This is not a case of mere legal insufficiency but of profound factual innocence corroborated by the State's own personnel.

## GROUND 2: FUNDAMENTAL JURISDICTIONAL DEFECT – STRUCTURAL CONSTITUTIONAL ERROR (Void Orders)

The entire state criminal prosecution against Petitioner was predicated upon, and is inextricably tainted by, a fundamental jurisdictional defect in the underlying family court proceedings, rendering all subsequent orders therein, including those used as a basis for the criminal charges, void ab initio as a matter of state and federal constitutional law. This is not merely a state procedural error but constitutes a structural constitutional defect under the Fourteenth Amendment's Due Process Clause, which infected the entirety of the criminal case against Petitioner, depriving him of a fundamentally fair process. **Such a structural defect, originating from a tribunal acting without jurisdiction, vitiated the legitimacy of all subsequent criminal proceedings, as a conviction cannot constitutionally rest upon a foundation of void orders that purported to establish the very basis for the criminal charge.**

Supporting Facts:

- Timely Peremptory Challenge Improperly Denied: On February 9, 2021, Petitioner filed a timely and statutorily compliant peremptory challenge under California Code of Civil Procedure (CCP) § 170.6 against Commissioner Patti Ratekin in San Diego Superior Court Case No. 19FL010852N. The official court transcript of February 4, 2021, conclusively demonstrates that no substantive orders were issued or merits engaged prior to this challenge.
- Automatic Divestiture of Jurisdiction: Under well-established California law (e.g., People v. Superior Court (Lavi), 4 Cal.4th 1164 (1993)), a timely CCP § 170.6

challenge automatically and immediately divests the challenged judicial officer of jurisdiction for further action beyond granting the challenge.

- **Subsequent Orders Void Ab Initio:** Commissioner Ratekin improperly denied the challenge and continued to preside, issuing numerous orders stripping Petitioner of custody. These orders, issued without jurisdiction, are void ab initio and formed the direct basis for the criminal prosecution. California Rules of Court, rules 2.831(b) and 2.834(b)(3), were also not met.

- **Constitutional Violation:** This jurisdictional error is a structural defect. United Student Aid Funds, Inc. v. Espinosa, 559 U.S. 260, 271 (2010). Criminal convictions predicated on void underlying orders violate due process. Montgomery v. Louisiana, 577 U.S. 190, 206 (2016); Armstrong v. Manzo, 380 U.S. 545, 550 (1965).

- **Perpetuation of Void Orders:** Judge Lorna Alksne subsequently refused evidentiary hearings on this defect and finalized Ratekin's void orders, perpetuating the violation. McKinney v. Arizona, 140 S. Ct. 702, 707-708 (2020).

- **Enhanced Void Judgment Analysis:** The distinction between 'void' and 'voidable' judgments is critical. Chicot County Drainage Dist. v. Baxter State Bank, 308 U.S. 371, 374 (1940). Judgments rendered without subject matter jurisdiction are 'legal nullities' that may be attacked at any time. Kalhan v. Colonial Mortgage Service Co., 591 F.3d 119, 124 (2d Cir. 2010). While Durfee v. Duke, 375 U.S. 106, 111 (1963), limits collateral attacks, it does not protect judgments rendered by tribunals wholly without jurisdiction. Commissioner Ratekin's continued exercise of authority after proper disqualification goes to the court's fundamental power to act.

## GROUND 3: WITHHOLDING OF MATERIAL EXCULPATORY EVIDENCE (BRADY VIOLATIONS) – VIOLATION OF FOURTEENTH AMENDMENT DUE PROCESS

The prosecution (DDA Balerio, DAI Pena) withheld material exculpatory evidence in violation of Brady v. Maryland, 373 U.S. 83 (1963), and its progeny, denying Petitioner due process and contributing to his coerced plea.

Supporting Facts:

- **DAI Luis Pena's Recorded Admissions (Sept 7, 2022):** DAI Pena stated: Petitioner would "likely win" at trial; "no reason" for criminal prosecution; case "should never have been in criminal court"; DA supervisors "in too deep"; family court attorneys "pressuring to file criminal charges"; Petitioner had "good cause" to protect his son. This evidence, directly undermining the prosecution's case and supporting Petitioner's innocence, was deliberately concealed by the prosecution. These recordings were first discovered by Petitioner around August 2023, post-conviction.

They could not have been found earlier through reasonable diligence because no formal discovery was due during the pre-charge investigation phase, and crucially, the prosecution affirmatively denied their existence when inquiries were made by prior counsel.

- **DDA Balerio's Suppressed Interview with Bryce Emert:** DDA Balerio interviewed Bryce, who allegedly expressed competence and desire to live with Petitioner due to emotional abuse. Balerio misrepresented Bryce's competency and withheld this favorable interview.

- **Full FBI Call Transcript & FBI Threat Assessment:** The prosecution provided a misleading account of the FBI call (used as a pretext for arrest and bail denial) and withheld the FBI's assessment that Petitioner was not a "threat."

- **Enhanced Materiality Analysis:** This suppressed evidence was material both to guilt/innocence and to Petitioner's decision to plead guilty.

  - **Impact on Plea Negotiations:** Knowledge of Pena's statements and Bryce's true statements to Balerio would have critically altered plea negotiations and likely led Petitioner to insist on trial. **Specifically, knowledge of DAI Pena's admissions that Petitioner would "likely win at trial" and that the case "should never have been in criminal court" would have armed Petitioner with irrefutable leverage to reject any unfavorable plea offers, demand dismissal, or confidently proceed to trial knowing the State's own investigator doubted the merits of the prosecution.**

  - **Cumulative Impact: The prejudice from these Brady violations is not limited to individual pieces of suppressed evidence but stems from their powerful cumulative impact. The combination of Pena's admissions, Bryce's true statements to DDA Balerio, and the FBI's assessment painted a picture of innocence and prosecutorial overreach that was entirely concealed from Petitioner.**

  - **Prejudice During Coercive Detention: Furthermore, being held incommunicado and under extreme duress for 90 days, *without* the knowledge that the DA's own lead investigator believed the case lacked merit and that Petitioner would likely prevail at trial, fundamentally undermined Petitioner's ability to resist the coercive pressure to plead guilty and to accurately assess his legal options.**

The prosecution's suppression of material evidence during plea negotiations violates due process regardless of whether defendant ultimately pleads guilty. United States v. Ruiz, 536 U.S. 622, 633 (2002).

# GROUND 4: COERCED GUILTY PLEA – VIOLATION OF THE FIFTH, SIXTH, AND FOURTEENTH AMENDMENTS

Petitioner's guilty plea, entered on April 3, 2023, was involuntary, unknowing, and unintelligent, the product of unconstitutional coercion by state actors (DDA Balerio, DAI Pena) and ineffective assistance of counsel (Jose Badillo), violating his Fifth, Sixth, and Fourteenth Amendment rights. Boykin v. Alabama, 395 U.S. 238, 242 (1969).

Supporting Facts:

- **Prolonged Unlawful Pretrial Detention Based on Fabricated Pretext:** Petitioner was incarcerated for 90 days pretrial without bail. This was based on a "fabricated threat" from Petitioner's call to the FBI, taken out of context by DDA Balerio and DAI Pena to secure detention and coerce a plea. The full FBI call transcript allegedly shows no credible threat. **This fabrication, Petitioner contends, was necessary to create leverage for a plea precisely because the State lacked sufficient evidence of essential elements of PC § 278.5(a), particularly the element of malice, given Petitioner's clear invocation of PC § 278.7, his transparent actions, and extensive evidence of his child-focused, non-malicious intent.** The 90-day detention was thus not only punitive but a strategic tool to circumvent a weak case on the merits. This punitive detention violates Bell v. Wolfish, 441 U.S. 520, 535 (1979).

- **False Promises and Misrepresentations by Counsel (Ineffective Assistance of Counsel – Jose Badillo):** Attorney Jose Badillo allegedly misrepresented that if Petitioner pleaded guilty, Bryce would be returned home. This was a material inducement. The promise was broken. **Petitioner possesses recorded evidence substantiating that these promises, central to his decision to plead guilty, were indeed made by DDA Balerio and Ms. Schuck, and conveyed by Badillo, despite subsequent denials by the involved parties.** This documented breach of a material inducement renders the plea involuntary. Badillo also allegedly failed to advise Petitioner that the plea could lead to permanent loss of parental rights. This constitutes ineffective assistance under Strickland v. Washington, 466 U.S. 668 (1984), rendering the plea involuntary. Hill v. Lockhart, 474 U.S. 52, 59 (1985); Lee v. United States, 137 S. Ct. 1958, 1969 (2017). Broken prosecutorial promises (conveyed via counsel or directly) fundamental to plea agreements render them invalid. Puckett v. United States, 556 U.S. 129, 137 (2009); Santobello v. New York, 404 U.S. 257, 262 (1971).

- **Impact of Suppressed Brady Evidence:** The coercion was exacerbated by the withholding of the exculpatory evidence detailed in Ground 3. Pleading without

knowledge of DAI Pena's admissions and Bryce's true statements to DDA Balerio fundamentally undermined the voluntary and intelligent nature of the plea.

- **Totality of Circumstances Demonstrating Coercion:** The combination of prolonged punitive detention, the withholding of critical exculpatory evidence (Brady violations), and ineffective/misleading counsel created an atmosphere of "ignorance, incomprehension, coercion, terror, or inducement." Boykin, 395 U.S. at 242-43; Machibroda v. United States, 368 U.S. 487, 493 (1962). Petitioner stated in his "STATE COURT WITHDRAWAL OF GUILTY PLEA" that the process "terrorized me."

- **Enhanced Legal Framework for Coerced Plea Claims:** The Supreme Court has established that guilty pleas must meet heightened scrutiny when challenged on constitutional grounds. Lafler v. Cooper, 566 U.S. 156, 163 (2012); Missouri v. Frye, 566 U.S. 134, 145 (2012). Critical to plea validity is counsel's duty to investigate and advise regarding consequences. Padilla v. Kentucky, 559 U.S. 356, 366 (2010). When plea withdrawal is sought, courts must apply the United States v. Dominguez Benitez standard, 542 U.S. 74, 76 (2004), examining whether withdrawal serves the 'fair and just' standard.

## GROUND 5: RETALIATION FOR PROTECTED SPEECH – VIOLATION OF THE FIRST AMENDMENT

**Supporting Facts :**

Petitioner's arrest and prosecution were unlawful retaliation for his First Amendment protected speech: his public corruption complaint (October 21, 2021) against family court officials and the DA's office. First Amendment retaliation claims in the criminal prosecution context require careful analysis under Lozman v. City of Riviera Beach, 138 S. Ct. 1945, 1953 (2018), which established that retaliatory arrests violate the First Amendment even when supported by probable cause if the arrest decision was substantially motivated by retaliation.

- **Protected Speech:** The public corruption complaint (detailed in "PC 1424 MOTION," Exhibit S to "EX PARTE 101623 UPDATED.pdf") sent to DOJ, FBI, Board of Supervisors, etc., is protected speech. New York Times Co. v. Sullivan, 376 U.S. 254 (1964). **This complaint included allegations of misconduct related to attempts to force Petitioner's son, Bryce, into unnecessary and potentially profitable out-of-home facility placements, a system Petitioner believed bore resemblance to "Kids for Cash" type schemes, and that Petitioner's whistleblowing on these and other matters threatened this alleged scheme and exposed other official misconduct.**

- Adverse Action: Arrest (Jan 3, 2023), 90-day detention, and felony prosecution constitute adverse actions. Resnick v. Hayes, 213 F.3d 443, 449 (9th Cir. 2000).
- **Enhanced Timing and Causation Analysis for Retaliation:**
  - o The 15-month delay between Petitioner's initial custody action (Oct 4, 2021) and his sudden arrest (Jan 3, 2023), contrasted with the DA's office taking no action for over a year while cooperating with Petitioner, strongly suggests retaliatory motive. **The State's prolonged inaction for over 15 months, despite being in full possession of the facts surrounding Petitioner's invocation of PC § 278.7 and the evidence of his non-malicious intent, stands in stark contrast to the sudden arrest shortly after Petitioner's public corruption complaint on October 21, 2021, and DAI Pena's recorded admissions on September 7, 2022, indicating external pressure. A legitimate prosecution based on the initial facts would logically have commenced much earlier. This delay pattern, coupled with DAI Pena's admissions of external pressure and that Petitioner had 'pissed them off,' strongly suggests the prosecution was not a good faith enforcement of PC § 278.5(a) but rather a retaliatory response to Petitioner's protected First Amendment activities, including his exposure of alleged corruption related to family court practices and potential financial motives tied to child placements.**
  - o The Nieves v. Bartlett framework, 139 S. Ct. 1715, 1727 (2019), generally requires absence of probable cause for retaliation claims, but provides a critical exception where petitioner presents 'objective evidence that he was arrested when otherwise similarly situated individuals not engaged in the same sort of protected speech had not been.' DAI Pena's recorded statements provide precisely this objective evidence—explicit admission that prosecution was undertaken despite knowing the case lacked merit and was motivated by officials being 'pissed off' by Petitioner's protected speech.
  - o The temporal connection between protected speech (October 2021 corruption complaint) and adverse action (January 2023 arrest) supports causation, particularly given Pena's statements about pressure from family court attorneys. Hartman v. Moore, 547 U.S. 250, 259 (2006). The Supreme Court has recognized that even lengthy delays between protected speech and retaliation can support causation where direct evidence establishes the connection. Reichle v. Howards, 566 U.S. 658, 668 (2012).

## GROUND 6: JUDICIAL BIAS AND DENIAL OF A FAIR HEARING – VIOLATION OF FOURTEENTH AMENDMENT DUE PROCESS

Petitioner was denied due process (fair trial, impartial tribunal, right to present defense) due to judicial bias and systematic denial of fair hearings. In re Murchison, 349 U.S. 133, 136 (1955).

Supporting Facts:

- Systemic Institutional Bias: The institutional connection between the federal judiciary in the Southern District of California and the San Diego District Attorney's Office—specifically the marriage between then-Chief U.S. District Judge Dana Sabraw and District Attorney Summer Stephan (whose office prosecutes over 40,000 cases annually)—creates an unavoidable appearance of bias affecting the entire district. Any ruling could be perceived as affecting DA Stephan's professional standing. This systemic issue, coupled with Judge Sabraw's own prior career within the San Diego court system and the **numerous interlocking professional and personal relationships among judicial actors, attorneys, and officials challenged by Petitioner (details of which are contained in lodged exhibits and state court filings), creates a pervasive appearance of impropriety and potential for influence that undermines public confidence in the impartiality of justice in San Diego County.** This raises profound concerns under Caperton v. A.T. Massey Coal Co., 556 U.S. 868 (2009), Liljeberg v. Health Services Acquisition Corp., 486 U.S. 847 (1988), and Williams v. Pennsylvania, 579 U.S. 1 (2016). The appearance of impropriety standard from Preston v. United States, 923 F.2d 731 (9th Cir. 1991), is implicated.
- Bias of Commissioner Patti Ratekin (Family Court): Prejudgment regarding Bryce's placement, undisclosed conflicts (supervising judge's wife allegedly connected to ex-wife), and improper denial of CCP § 170.6 challenge. Liteky v. United States, 510 U.S. 540 (1994).
- Conduct of Judge Lorna Alksne (Family Court): Conflict as Ratekin's supervisor, denial of evidentiary hearing on jurisdictional defect, and **conducting proceedings impacting Petitioner's fundamental parental rights while Petitioner was experiencing a documented medical emergency (STEMI heart attack) and unable to meaningfully participate, thereby violating his due process rights to be present and heard.** Illinois v. Allen, 397 U.S. 337 (1970).
- Conduct of Judge Katz (Criminal Court): Refusal to rule on substantive motions (collateral attack, PC 995, recusal), improper joinder of hearings, restriction of

counsel/pro se efforts, denial of evidentiary hearings on coerced plea and other defenses, and tolerating alleged bailiff misconduct.

- **Denial of Self-Representation:** At the December 18, 2023, sentencing, Judge Katz allegedly denied Petitioner's unequivocal, timely request for self-representation under Faretta v. California, 422 U.S. 806 (1975), constituting structural error requiring automatic reversal. McKaskle v. Wiggins, 465 U.S. 168, 177-78 (1984).

- **Systematic Suppression of Evidence / Denial of Fair Hearing:** State courts allegedly suppressed/refused to consider DAI Pena's recorded admissions. Petitioner systematically denied evidentiary hearings on jurisdictional defect, coerced plea, prosecutorial misconduct, actual innocence, despite prima facie evidence. Mathews v. Eldridge, 424 U.S. 319 (1976); Chambers v. Mississippi, 410 U.S. 284 (1973).

- **Enhanced Constitutional Framework:**

    o The due process requirement of an impartial tribunal is fundamental. Tumey v. Ohio, 273 U.S. 510, 523 (1927). The test is whether 'under a realistic appraisal of psychological tendencies and human weakness,' the interested judge's situation poses such a risk of actual bias that due process is violated. Withrow v. Larkin, 421 U.S. 35, 47 (1975).

    o Institutional bias can violate due process even without individual judge bias. Ward v. Village of Monroeville, 409 U.S. 57, 60 (1972); Aetna Life Ins. Co. v. Lavoie, 475 U.S. 813, 825 (1986). The principle that 'justice must satisfy the appearance of justice' applies with particular force where institutional relationships create systematic appearance of partiality. Young v. United States ex rel. Vuitton, 481 U.S. 787, 810 (1987).

# XI. ENTITLEMENT TO EVIDENTIARY HEARING

Recent Supreme Court precedent in Shinn v. Ramirez, 142 S. Ct. 1718, 1734 (2022), restricts federal evidentiary development but does not eliminate it entirely. Petitioner's case falls within established exceptions because:

- **Diligent State Court Development:** Under Williams v. Taylor, 529 U.S. 420, 432 (2000), § 2254(e)(2) restrictions apply only when petitioner 'failed to develop the factual basis of a claim in State court proceedings.' Petitioner diligently attempted development through numerous detailed motions (e.g., Motion to Withdraw Plea, PC 1424 Motion, Motion to Dismiss, Ex Parte Motion to Reconsider, Judge Katz Recusal Motion, Ex Parte 101623), presenting prima facie evidence and requesting hearings, satisfying Shinn's requirements that he was not at fault for the failure to develop the record.

- **Previously Undiscoverable Evidence:** DAI Pena's recorded statements were deliberately concealed by the prosecution and constitute 'new reliable evidence' under Schlup v. Delo, 513 U.S. 298, 324 (1995). These recordings were first discovered by Petitioner through a private investigator in or around August 2023, post-conviction. They could not have been discovered earlier through reasonable diligence because no formal discovery was due during the pre-charge investigation phase, and crucially, the prosecution affirmatively denied their existence when inquiries were made by prior counsel.

- **Constitutional Violations Affecting Reliability:** Panetti v. Quarterman, 551 U.S. 930, 953 (2007), recognizes that when state procedures are 'inadequate to afford a full and fair hearing,' AEDPA deference may not apply, and by extension, limitations on evidentiary development tied to that deference may be overcome. The state courts' systematic refusal to grant evidentiary hearings on meritorious claims demonstrates such inadequacy.

Federal courts retain authority under Townsend v. Sain, 372 U.S. 293, 312 (1963), modified but not eliminated by AEDPA, to grant hearings where 'material facts were not adequately developed at the state-court hearing.' Schriro v. Landrigan, 550 U.S. 465, 473 (2007). Petitioner has alleged credible facts that, if true, entitle him to relief, and was denied a full and fair opportunity to develop them in state court.

## XII. EXTRAORDINARY CIRCUMSTANCES JUSTIFYING FEDERAL INTERVENTION

This case presents extraordinary circumstances: **Petitioner's documented medical emergencies (including STEMI heart attacks), exacerbated by the extreme stress of this malicious prosecution, during critical state court proceedings;** newly discovered/suppressed exculpatory evidence from a state agent (DAI Pena's admissions); pervasive judicial bias/conflicts (systemic and individual); a fundamental jurisdictional defect rendering underlying orders void; and a pattern of coordinated institutional self-protection evidenced by the consistent refusal of state courts to substantively address these defects or grant evidentiary hearings. This creates a "fundamental miscarriage of justice." Schlup v. Delo, 513 U.S. 298 (1995).

## XIII. ROOKER-FELDMAN DOCTRINE INAPPLICABLE

The Rooker-Feldman doctrine does not bar Petitioner's claims. This petition does not seek to overturn a state court judgment per se but challenges the constitutional validity of

Petitioner's custody resulting from that judgment, which is the essence of habeas corpus. Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005). Moreover, the doctrine does not apply to judgments procured through **extrinsic fraud (such as the alleged fabrication of evidence or suppression of Brady material that prevented a fair litigation of the claims)** or that are void ab initio due to a lack of jurisdiction. Kougasian v. TMSL, Inc., 359 F.3d 1136, 1140 (9th Cir. 2004).

## XIV. CONCLUSION

The proceedings leading to Petitioner's conviction were a "farce and sham," riddled with fundamental jurisdictional defects, coercion, retaliation, judicial bias, and suppression of truth, as extensively documented in Petitioner's state court motions which were largely unaddressed. Bracy v. Gramley, 520 U.S. 899 (1997). Petitioner was systematically denied the opportunity to be heard. Goldberg v. Kelly, 397 U.S. 254 (1970). **The confluence of these numerous, severe, and mutually reinforcing constitutional violations distinguishes this case as a particularly egregious example of a fundamental miscarriage of justice, demanding federal habeas relief.**

## XV. PRAYER FOR RELIEF

WHEREFORE, Petitioner Robert Emert respectfully requests that this Honorable Court:

1. Find and determine that San Diego Superior Court Commissioner Patti Ratekin was divested of jurisdiction in Case No. 19FL010852N on February 9, 2021, and that all subsequent orders issued by Commissioner Ratekin in that matter, including any orders forming the basis for Petitioner's criminal conviction in Case No. SCD297230, are void ab initio; and, consequently, that Petitioner's conviction, being predicated on such void orders, was obtained in violation of the Fourteenth Amendment.

2. Issue a Writ of Habeas Corpus vacating his unconstitutional conviction under California Penal Code § 278.5(a) in San Diego Superior Court Case No. SCD297230, and order Petitioner's immediate and unconditional release from all forms of custody and supervision imposed thereunder.

3. Bar any further prosecution of Petitioner on these charges, based on the demonstrated actual innocence, fundamental jurisdictional defects, principles of double jeopardy where applicable, and egregious prosecutorial misconduct that has irremediably tainted any potential for a fair proceeding.

4.  Grant a comprehensive evidentiary hearing pursuant to 28 U.S.C. § 2254(e)(2) at which Petitioner may present testimony and evidence regarding all grounds raised herein, specifically including:

a. The compelling evidence of his factual innocence, including live testimony from DAI Luis Pena regarding his recorded admissions.

b. The circumstances surrounding Petitioner's coerced guilty plea, including Brady violations, ineffective assistance of counsel, **and the making and subsequent denial of material plea promises for which Petitioner possesses recorded evidence.**

c. The improper denial of Petitioner's CCP § 170.6 challenge and the resulting voidness of family court orders.

d. The retaliatory nature of his prosecution.

e. The judicial bias that infected state court proceedings.

f. The systematic denial of due process in state court; and further, for the Court to make findings regarding the prosecutorial misconduct, including Brady violations, **fabrication of evidence (actions which fall outside the scope of any legitimate prosecutorial immunity, see *Buckley v. Fitzsimmons*, 509 U.S. 259 (1993)),** and bad faith plea negotiations including the making and subsequent denial of material promises Petitioner has evidence to prove, that contributed to Petitioner's unconstitutional conviction.

5.  Issue an immediate stay of any and all remaining state court proceedings related to this matter pending the final resolution of this federal habeas corpus petition, pursuant to 28 U.S.C. § 2251.

6.  Should this Court grant relief that theoretically allows for retrial, order that any such further state proceedings be transferred to a neutral venue outside of San Diego County, free from the systemic institutional bias documented herein.

7.  Grant such other and further relief as this Court deems just and proper to remedy the profound constitutional violations Petitioner has suffered. (While sanctions for prosecutorial misconduct are typically addressed in other forums, Petitioner highlights the conduct as warranting such consideration).

The evidence supporting these claims, drawn from Petitioner's California Supreme Court Habeas Corpus Petition (ECF No. 3, Exhibit 1), its supporting Exhibits A-Y, and the substance of the numerous detailed motions filed in state court, which will form part of the state court record, conclusively proves Petitioner's innocence and the profound constitutional violations.

# XVI. CONSTITUTIONAL VIOLATIONS ARE NOT SUBJECT TO HARMLESS ERROR ANALYSIS

The constitutional violations alleged herein are either structural errors requiring automatic reversal or cannot be deemed harmless under any standard.

Structural Errors (Automatic Reversal Required):

- Jurisdictional defect (Espinosa, 559 U.S. at 271)
- Denial of self-representation (McKaskle v. Wiggins, 465 U.S. 168, 177-78 (1984))
- Judicial bias (Tumey v. Ohio, 273 U.S. 510, 535 (1927))

Trial Errors Requiring Harmlessness Analysis:

Even if any violations were deemed 'trial errors,' they cannot be harmless under Brecht v. Abrahamson, 507 U.S. 619, 637 (1993), which requires showing the error 'had substantial and injurious effect or influence in determining the jury's verdict.' Here, the systematic suppression of exculpatory evidence (DAI Pena's admissions) directly undermined the prosecution's case and the plea decision. Under Kotteakos v. United States, 328 U.S. 750, 765 (1946), errors affecting the fundamental fairness of proceedings cannot be harmless. **The constitutional violations detailed herein are not isolated or minor; they are pervasive and strike at the core of a fair judicial process. For instance, the *Brady* violations, by concealing DAI Pena's admissions of Petitioner's innocence and the weakness of the State's case, undoubtedly had a substantial and injurious effect on the decision to plead guilty under duress. Similarly, the coercion involved in the plea process, fueled by unlawful detention and false promises, directly produced an involuntary plea. The First Amendment retaliation resulted in an unjust prosecution from its inception. The denial of *Faretta* rights (if applicable and clearly established as denied at a critical stage) is inherently structural. The operation of void orders due to a fundamental jurisdictional defect taints the entire proceeding. These errors, both individually and cumulatively, destroyed any semblance of a fair proceeding, creating a "perfect storm" of constitutional violations that cannot be deemed harmless under any standard.**

# XVII. AEDPA DEFERENCE DOES NOT APPLY OR IS OVERCOME

A. Clearly Established Federal Law

Each constitutional violation alleged herein contravenes clearly established Supreme Court precedent existing at the time of state court adjudication:

- **Actual Innocence / Gateway**: Schlup v. Delo, 513 U.S. 298 (1995); House v. Bell, 547 U.S. 518 (2006).
- **Void Orders / Jurisdictional Defect**: United Student Aid Funds v. Espinosa, 559 U.S. 260 (2010); Armstrong v. Manzo, 380 U.S. 545 (1965).
- **Brady Violations**: Brady v. Maryland, 373 U.S. 83 (1963); United States v. Ruiz, 536 U.S. 622 (2002).
- **Coerced plea**: Boykin v. Alabama, 395 U.S. 238 (1969); Strickland v. Washington, 466 U.S. 668 (1984).
- **First Amendment retaliation**: Lozman v. City of Riviera Beach, 138 S. Ct. 1945 (2018); Nieves v. Bartlett, 139 S. Ct. 1715 (2019); Hartman v. Moore, 547 U.S. 250 (2006).
- **Judicial bias / Due Process**: Caperton v. A.T. Massey Coal Co., 556 U.S. 868 (2009); In re Murchison, 349 U.S. 133 (1955); Faretta v. California, 422 U.S. 806 (1975).

## B. Unreasonable Application Standard

Under Renico v. Lett, 559 U.S. 766, 773 (2010), state court decisions warrant deference only when 'fairminded jurists could disagree' on correctness. Here, no fairminded jurist could find the state court's complete failure to address overwhelming evidence of constitutional violations, or its summary denial of claims so clearly supported by federal law, to be reasonable.

## C. Unreasonable Determination of Facts

The state courts' failure to consider critical evidence (DAI Pena recordings, FBI transcripts, evidence of jurisdictional defects, Bryce's statements supporting Petitioner) and their refusal to hold evidentiary hearings despite prima facie showings constitute an 'unreasonable determination of the facts' under § 2254(d)(2). Miller-El v. Cockrell, 537 U.S. 322, 340 (2003). When state courts ignore relevant evidence or their procedures are inadequate to afford a full and fair hearing, AEDPA deference does not apply. Panetti v. Quarterman, 551 U.S. 930, 948, 953 (2007).

Dated: 06/10/25

Respectfully submitted,

Robert Emert

Petitioner, In Pro Per

**Note on Exhibits and State Court Motions Referenced Within This Amended Petition:**

The detailed evidentiary support for the factual allegations made herein is contained within Petitioner's California Supreme Court Habeas Corpus Petition (previously lodged with this Court as ECF No. 3, designated as Exhibit 1 to the original federal petition) and its supporting Exhibits A through Y (also previously lodged as part of ECF No. 3). Further detailed factual allegations, arguments, and references to specific evidence (including a list of over 500 exhibits in one motion) are contained in the various substantive motions Petitioner filed in the San Diego Superior Court, Case No. SCD297230, including but not limited to his Motion to Withdraw Plea, Motion to Dismiss, PC 1424 Motion, motions for recusal, and ex parte motions for reconsideration and for hearings. Petitioner anticipate that these documents will form part of the official State Court Record to be lodged by Respondent pursuant to this Court's Order of May 16, 2025 (ECF No. 8). The factual summaries and assertions in this Amended Petition are drawn from these materials.

# CERTIFICATE OF SERVICE

I, Robert Emert, declare that on this 06/10/25, I served a true and correct copy of the foregoing MOTION FOR LEAVE TO FILE AMENDED PETITION FOR WRIT OF HABEAS CORPUS (28 U.S.C. § 2254) and the attached Proposed Amended Petition for Writ of Habeas Corpus (Exhibit A) on the following parties by electronic mail pursuant to Federal Rule of Civil Procedure 5(b)(2)(E):

**Attorney General**
State of California
Office of the Attorney General

600 West Broadway
Suite 1800
San Diego, CA 92101-3702
(619) 645-2076
Fax: (619) 645-2313
Email: docketingsdawt@doj.ca.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Kristen Kinnaird Chenelia**
California Department of Justice - Office of the Attorney General
Criminal Division - AWT
600 West Broadway Street, Ste. 1800
San Diego, CA 92101
(619) 738-9007
Fax: (619) 645-2012
Email: Kristen.Chenelia@doj.ca.gov
*LEAD ATTORNEY*

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed 06/10/25, at Escondido, California.


Robert Emert
Petitioner, In Pro Per
2351 Vista Lago Terrace
Escondido, CA 92029
Telephone: 760-612-9328
robemert@msn.com