ROBERT EMERT
Respondent, In Pro Per
2351 VISTA LAGO TERRACE
ESCONDIDO, CA 92029
TELEPHONE: 760-612-9328
robemert@msn.com



FILED

OCT 1 7 2025

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY_____ DEPUTY

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

**Case No. 3:25-cv-00820-TWR-BLM**

Robert Emert

        Plaintiff,

   v.

San Diego Probation Department

        Defendant.

**PETITIONER'S APPLICATION FOR EXTENSION OF TIME TO FILE TRAVERSE BASED ON RESPONDENT'S NON-COMPLIANCE WITH COURT ORDERS AND SAFE HARBOR NOTICE**

DATE:
TIME;
JUDGE: ROBINSON
DEPARTMENT:

## Contents

TABLE OF AUTHORITIES ........................................... 4

    CASES ........................................... 4

    STATUTES ........................................... 4

    RULES ........................................... 4

    OTHER AUTHORITIES ........................................... 4

PETITIONER'S APPLICATION FOR EXTENSION OF TIME TO FILE TRAVERSE ............... 5

EXECUTIVE SUMMARY ........................................... 5

Good Cause for Length and Extension: ........................................... 5

    Strict Compliance with Fed. R. Civ. P. 11(c)(2) Safe Harbor ........................................... 6

    The Context: Respondent's Prejudicial Framing ........................................... 7

    Why This Extension Is Necessary ........................................... 7

    What Respondent Won't Supply ........................................... 8

    Why They Won't Supply It ........................................... 8

    Why They're Required to Supply It ........................................... 9

    The Catch-22 Respondent Created ........................................... 9

    What This Application Demonstrates ........................................... 9

    The Simple Truth That Contradicts Respondent's "Lacks Merit" Claim ........................................... 9

I. THE ONGOING OBSTRUCTION ........................................... 10

II. TIMELINE OF SERVICE VIOLATIONS ........................................... 11

    Cumulative Impact on Petitioner's Ability to File Adequate Traverse ........................................... 11

III. RESPONDENT'S INFLAMMATORY MISCHARACTERIZATION ........................................... 12

IV. THE EVIDENCE OF PROSECUTORIAL BAD FAITH THAT COMPELS THIS EXTENSION ........................................... 12

    A. The Initial Plan: Voluntary Resolution (DAI Steven McIntosh) ........................................... 12

    B. The State's Lead Investigator Admits No Crime Occurred (DAI Luis Peña) ........................................... 13

    C. The Suppressed 32-Minute Interview with Bryce ........................................... 15

D. The FBI "No Threat" Assessment and the Suppressed FBI Call Transcript ........................................... 15

    The Critical Timeline of Suppression ........................................... 15

The Context: DOJ Directed Petitioner to FBI ........................................................16

What the Suppressed FBI Transcript Actually Shows ...........................................16

The FBI's Actual Response: In-Person Meeting and Full Clearance ......................17

Proof of Deliberate Suppression..........................................................................18

The Absurdity of the "Threat" Narrative ...............................................................18

The Constitutional Violation ................................................................................18

The Year-Long Delay That Proves No Threat Existed ............................................19

The Devastating Outcome: Mission Accomplished for DDA Balerio .....................20

E. The Complete PC § 278.7 Email Chain and the Evidence the DA Ignored.............21

Bryce's Ignored Letters to the Court and DA's Office ...........................................22

Andrea Schuck's Prior Domestic Violence Arrest - Completely Ignored ...............22

The Missing Discovery: Where Are All the Emails? ...............................................23

What This Evidence Proves...................................................................................23

F. The False Promises That Coerced the Plea............................................................24

The Core Promise: Bryce Would Come Home........................................................25

Recorded Evidence of the Promise ......................................................................25

The Promises That Were Made .............................................................................26

Every Single Promise Was Broken ........................................................................26

The DA's Bad Faith is Proven ...............................................................................27

The Pattern of Deception .....................................................................................27

Legal Significance................................................................................................28

G. The Ultimate Proof: Bryce's Choice ...................................................................28

H. Why Respondent Is Hiding the Prosecution File...............................................29

V. RESPONDENT'S VIOLATIONS NECESSITATING THIS EXTENSION .........................29

A. Three Violations of This Court's Explicit Orders.................................................29

B. Two Violations of Federal Service Requirements................................................30

C. Improper Sealing or Restriction of Public Records - Ongoing Obstruction .......30

VI. COMPLIANCE WITH RULE 11(c)(2) SAFE HARBOR PROVISION ...........................31

The Safe Harbor Process ......................................................................................31

What This Extension Achieves ..................................................................32

VII. WHY THE INCOMPLETE RECORD PREVENTS A COMPLETE TRAVERSE ..............32

    The Missing Documents Are Essential to Responding to Respondent's Answer ...32

    A. What Petitioner Must Be Prepared to Address....................................32

    B. Why Specific Categories of Missing Documents Are Essential.........................33

    C. The Fundamental Unfairness of This Situation ..................................37

VIII. RESPONDENT'S APPROACH APPEARS STRATEGIC, NOT INADVERTENT ..........37

    Why Respondent Appears Reluctant to Provide the Complete Record ...............37

    The Impossible Catch-22 Respondent's Position Creates ....................................38

    Issues of National Importance ..........................................................38

IX. THE EXTENSION MUST RUN FROM COMPLETE LODGMENT..................................39

    A. Why 60 Days from Complete Lodgment..............................................39

    B. Alternative: Extension Pending Resolution of Sanctions Motion .....................39

X. RESPONDENT WILL NOT BE PREJUDICED ..........................................40

    A. No Prejudice from Proper Extension....................................................40

    B. What Would Cause Prejudice ..........................................................40

XI. CONCLUSION ....................................................................................41

XII. PRAYER FOR RELIEF .........................................................................42

    PRIMARY REQUEST: ..........................................................................42

    FIRST ALTERNATIVE: ........................................................................42

    SECOND ALTERNATIVE: ....................................................................42

    THIRD ALTERNATIVE: ........................................................................42

    ADDITIONAL RELIEF:..........................................................................42

CERTIFICATE OF SERVICE ......................................................................43

EXHIBIT A ..............................................................................................44

# TABLE OF AUTHORITIES

## CASES

Bracy v. Gramley, 520 U.S. 899, 904 (1997) .................................................................. 3

Habeas Corpus Resource Center v. DOJ, 816 F.3d 1241, 1249 (9th Cir. 2016) ........... 3

## STATUTES

28 U.S.C. § 2254(e)(2)(A)(ii) ........................................................................................... 8

## RULES

Fed. R. Civ. P. 5(a)(1) ..................................................................................................... 2

Fed. R. Civ. P. 11(c)(2) ............................................................................................. 1, 15

Rule 5, Rules Governing § 2254 Cases ......................................................................... 3

Rule 5(d), Rules Governing § 2254 Cases .................................................................... 3

Southern District of California Local Rule 7.1(h) ......................................................... 1

## OTHER AUTHORITIES

Americans with Disabilities Act (ADA) ......................................................................... 8

ECF No. 8 (Court's Order dated May 16, 2025) ..................................................... 1, 2, 3

ECF No. 14 (Respondent's Extension Request filed August 28, 2025) ......................... 2

ECF No. 15 (Respondent's Answer filed September 22, 2025) ..................................... 2

ECF No. 15-1 (Respondent's Memorandum) ................................................................ 2

ECF No. 16 (Respondent's Notice of Lodgment) .......................................................... 2

ECF Nos. 16-1 through 16-27 (Respondent's Lodgments) ........................................... 2

Legal Maxim: *Nemo auditur propriam turpitudinem allegans*
(no one can be heard to allege his own wrongdoing) ................................................... 11

# PETITIONER'S APPLICATION FOR EXTENSION OF TIME TO FILE TRAVERSE

Petitioner Robert Emert respectfully requests a 60-day extension of the Traverse deadline, currently due October 30, 2025. This extension is necessary due to Respondent's ongoing procedural violations:

**Service Failures:** Respondent twice filed documents without serving Petitioner (August 28 and September 22, 2025), depriving him of 18 days to review the Answer.

**Access Obstruction:** The lodgments filed September 22, 2025 remain inaccessible on PACER as of this filing (October 14, 2025), with no explanation from Respondent despite multiple requests.

**Incomplete Record:** Respondent failed to lodge discovery compliance documentation despite three explicit Court orders requiring "all records bearing on the merits of Petitioner's claims." (ECF No. 8)

Petitioner has made extensive good-faith efforts to resolve these issues cooperatively through email correspondence with Respondent's counsel (Exhibit A). Respondent has not responded substantively. This motion is therefore necessary.

## EXECUTIVE SUMMARY

**This Application is lengthy by necessity, not choice.** Petitioner apologizes to the Court for the substantial length of this filing, but the extraordinary circumstances—including Respondent's ongoing violations of this Court's explicit orders and federal service requirements—require detailed documentation to create an accurate record for this Court and future appellate review.

### Good Cause for Length and Extension:

While Southern District Local Rule 7.1(h) generally limits memoranda to 25 pages, Petitioner has **good cause** to exceed that limit here: (1) this Application responds to

Respondent's ongoing violations of this Court's three explicit orders and two violations of federal service requirements—violations that necessitate detailed documentation for the record; (2) Petitioner is a federally-adjudicated disabled pro se litigant entitled to reasonable accommodations under the ADA and requires additional space to present complex constitutional claims without the benefit of legal training; (3) this Application corrects Respondent's prejudicial mischaracterization in her extension request (ECF No. 14), filed without serving Petitioner, which dismissed this case as lacking merit when the evidence proves otherwise; (4) it establishes a complete factual and legal record essential for this Court's review and for preservation across multiple related federal proceedings, including Ninth Circuit Case No. 25-3694 and Civil Rights Case No. 3:24-cv-00671; and (5) **most critically**, the length is directly caused by Respondent's refusal to provide the complete prosecution file this Court ordered three times—requiring Petitioner to explain in detail what evidence exists, why Respondent won't produce it, and why it's essential to filing an adequate Traverse. **Good cause for the extension itself is established by these same violations:** Petitioner cannot file a meaningful Traverse until Respondent complies with this Court's orders and provides the complete record, and Petitioner has been deprived of 18 days due to service violations plus ongoing access obstruction to 3,500+ pages of lodgments sealed on PACER. Should the Court determine any section unnecessary, Petitioner respectfully offers to comply with any direction to condense the filing.

To facilitate the Court's review of this detailed Application, Petitioner has provided a courtesy copy in searchable PDF format with an indexed table of contents and bookmarks on a USB drive for easy review and navigation to specific sections.

## Strict Compliance with Fed. R. Civ. P. 11(c)(2) Safe Harbor

**To demonstrate good faith and provide Respondent every opportunity to cure her violations without court intervention, Petitioner is strictly complying with Federal Rule of Civil Procedure 11(c)(2)'s 21-day "safe harbor" provision.** On October 14, 2025, Petitioner served Respondent's counsel with a complete draft Motion for Sanctions (attached as Exhibit A to this Application) detailing all violations and the relief sought. **Respondent has until November 5, 2025, to cure the violations by:** (1) providing complete lodgment of the prosecution file from the San Diego District Attorney's office; (2) explaining and remedying the PACER access obstruction; and (3) confirming compliance with this Court's three orders requiring lodgment of "all records bearing on the merits of Petitioner's claims." **If Respondent cures within the 21-day period, Petitioner will not file the sanctions motion and will instead file his Traverse based on the now-complete**

**record.** If Respondent refuses to cure, Petitioner will file the sanctions motion on or after November 5, 2025, and request that the Traverse deadline be extended to 60 days from the date this Court orders complete lodgment. **This approach serves judicial efficiency** by giving Respondent one final opportunity to comply voluntarily before requiring this Court's intervention, while ensuring Petitioner receives the complete record necessary to file an adequate Traverse.

## The Context: Respondent's Prejudicial Framing

**When Respondent sought her own extension (ECF No. 14, filed August 28, 2025—without serving Petitioner), she dismissed this case as simple and meritless:** essentially arguing that because "Petitioner pled guilty to abducting his son," the Court should grant her more time simply because she was busy with other work.

**Respondent's message was clear:** This case lacks merit, Petitioner is guilty, nothing to see here, just grant us an extension for administrative convenience.

**That gross oversimplification—filed without serving Petitioner, denying him any opportunity to respond—demanded this detailed correction.** When the State characterizes a case as lacking merit while simultaneously:

- Violating this Court's orders three times
- Violating federal service rules twice
- Suppressing evidence of prosecutorial misconduct
- Hiding their own investigator's 47 admissions that the defendant would "probably win at trial"

**Then the complete factual record must be established.**

## Why This Extension Is Necessary

Petitioner cannot file a meaningful Traverse by October 30, 2025, because:

1. **Respondent violated federal service rules twice** (August 28 and September 22, 2025), depriving Petitioner of 18 days to review the Answer
2. **The lodgments remain inaccessible on PACER** despite being filed September 22, 2025—over three weeks ago

3. **Respondent failed to lodge the complete prosecution file** despite three explicit Court orders requiring "all records bearing on the merits of Petitioner's claims"

**Unlike Respondent's request for administrative convenience, Petitioner's extension is necessary because of Respondent's own violations and ongoing obstruction.**

## What Respondent Won't Supply

The missing materials are not peripheral—they are the evidence proving Petitioner's innocence:

- **Discovery compliance logs** showing what was withheld from defense counsel
- **Complete investigator files** containing DAI Peña's 47 admissions that Petitioner would "probably win at trial"
- **All audio recordings** (not just selected transcripts) proving prosecutorial knowledge of the case's lack of merit
- **Internal prosecution communications** showing the retaliatory motive
- **Brady compliance checklists** (or their absence) proving systematic suppression

## Why They Won't Supply It

**The prosecution file proves this Court is looking at a coerced guilty plea of a factually innocent man** extracted through:

- 90 days of unconstitutional detention based on fabricated "threats"
- Suppression of six categories of exculpatory evidence
- False promises that were broken immediately after the plea
- The State's own investigator admitting 47 times the case lacked merit

**Respondent's strategic obstruction is designed to prevent this Court from seeing the evidence of prosecutorial misconduct** documented in their own files.

**This explains why Respondent characterized this case as "lacking merit" in her extension request—if the Court never sees the complete record, Respondent can maintain that false narrative.**

## Why They're Required to Supply It

This Court **ordered Respondent three times** (ECF No. 8) to lodge "all records bearing on the merits of Petitioner's claims." Federal habeas law is unambiguous: 28 U.S.C. § 2254 Rule 5(d) requires respondents to lodge complete state court records. *Habeas Corpus Resource Center v. DOJ*, 816 F.3d 1241, 1249 (9th Cir. 2016).

**Respondent cannot simultaneously argue the prosecution was proper while refusing to produce the prosecution file that would prove or disprove that claim.**

## The Catch-22 Respondent Created

Petitioner must prove Brady violations to challenge his guilty plea, but Respondent refuses to provide the prosecution files that would prove those violations. This circular reasoning would effectively immunize prosecutors from accountability in all guilty plea cases— precisely what Supreme Court precedent forbids.

## What This Application Demonstrates

This filing is necessarily detailed because it must establish:

1. **A complete timeline** of Respondent's violations for the record
2. **Good faith efforts** to resolve issues cooperatively (extensive email correspondence)
3. **Strict compliance** with Fed. R. Civ. P. 11(c)(2)'s 21-day safe harbor provision
4. **Why the missing materials are essential** to responding to Respondent's Answer
5. **The evidence of actual innocence** that Respondent is concealing
6. **A factual correction** to Respondent's prejudicial characterization that this case "lacks merit"

## The Simple Truth That Contradicts Respondent's "Lacks Merit" Claim

**The State's own lead investigator admitted 47 times on a recorded call that Petitioner would "probably win at trial" and the DA "should never have taken this case."** That recording was withheld from defense counsel. The FBI conducted a face-to-face threat assessment and concluded Petitioner posed no threat. That assessment was withheld from the bail court while DDA Balerio secured 90 days of no-bail detention. On his 18th birthday—the moment he had legal autonomy—Bryce chose to live with Petitioner, the alleged "abductor."

This is not a case lacking merit. This is not a simple guilty plea. This is a documented campaign of prosecutorial coercion and evidence suppression to secure a conviction the State knew was baseless.

Respondent sought an extension for administrative convenience while dismissing this case as meritless. Petitioner seeks an extension because Respondent's violations have made it impossible to respond adequately—and because the complete record will prove this case has substantial merit that Respondent is desperate to conceal.

Petitioner respectfully requests 60 days from the date complete lodgment is provided—the minimum time necessary for a disabled pro se litigant to review thousands of pages and file an adequate Traverse addressing Respondent's arguments with the complete evidentiary record this case demands.

# I. THE ONGOING OBSTRUCTION

**As of the filing of this Extension Request, Petitioner still does not have full access to the materials Respondent claims to have lodged.** Despite "lodging" 27 documents totaling approximately 3,500 pages on September 22, 2025, these documents remain sealed or restricted on PACER. Petitioner cannot access them electronically, cannot search them, and has received no explanation despite multiple requests dating back to October 10, 2025.

**Federal law imposes a clear duty on respondents to lodge complete state court records.** See 28 U.S.C. § 2254 Rule 5(d). The Ninth Circuit has recognized that incomplete records warrant sanctions. Habeas Corpus Resource Center v. DOJ, 816 F.3d 1241, 1249 (9th Cir. 2016). Federal courts may compel production of complete records when necessary for meaningful habeas review. Bracy v. Gramley, 520 U.S. 899, 904 (1997).

The evidence demonstrates a pattern: file documents claiming compliance, but ensure Petitioner cannot actually access or use them effectively. This ongoing procedural non-compliance, combined with Respondent's refusal to lodge the complete prosecution file, makes it impossible for Petitioner to file a meaningful Traverse.

## II. TIMELINE OF SERVICE VIOLATIONS

- **August 28, 2025**: Respondent files extension request (ECF No. 14) - **NOT SERVED ON PETITIONER**
- **September 22, 2025**: Respondent files Answer, Memorandum, Notice of Lodgment, and 27 lodgments (ECF Nos. 15, 15-1, 16, 16-1 through 16-27) - **NOT SERVED ON PETITIONER**
- **October 8-10, 2025**: Petitioner discovers non-service through PACER, sends multiple emails demanding copies and compliance with this Court's Order (ECF No. 8, ¶ 10)
- **October 10, 2025**: Respondent finally provides paper copies via email - **18 DAYS LATE**
- **October 10, 2025 - Present**: Petitioner repeatedly requests explanation for sealed/restricted lodgments on PACER - **NO RESPONSE FROM RESPONDENT**
- **October 14, 2025**: Petitioner **STILL CANNOT ACCESS** lodgments electronically on PACER

**Result**: Petitioner has been deprived of:

- 18 days to review Answer and begin preparing Traverse (September 22 - October 10)
- Any electronic access to 3,500+ pages of lodgments for efficient searching and cross-referencing
- Ability to work efficiently as a disabled pro se litigant with documented medical conditions

### Cumulative Impact on Petitioner's Ability to File Adequate Traverse

These violations, taken together, have made it impossible for Petitioner to file an adequate Traverse by October 30, 2025:

- **Lost 18 days** due to service failures (September 22 - October 10)—time that should have been spent reviewing the Answer and beginning Traverse preparation
- **Cannot efficiently analyze 3,500+ pages** without electronic search functionality due to ongoing PACER access obstruction
- **Cannot respond to Respondent's arguments** without the complete record showing what evidence existed and what was disclosed to defense counsel
- **Need reasonable time** to review the complete record once Respondent finally complies with this Court's three explicit orders

As a federally-adjudicated disabled pro se litigant, Petitioner requires reasonable accommodation under the Americans with Disabilities Act. A 60-day extension from the date complete lodgment is provided is the minimum necessary to ensure meaningful access to justice under these circumstances.

## III. RESPONDENT'S INFLAMMATORY MISCHARACTERIZATION

Critically, this extension is also necessary to address Respondent's own mischaracterization of this case. In her extension request (ECF No. 14, filed August 28, 2025, without serving Petitioner), Respondent's counsel improperly attempted to prejudice the Court by framing this case as a simple matter where "Petitioner pled guilty to abducting his son." This gross oversimplification ignores the mountain of suppressed exculpatory evidence that proves the plea was the product of unconstitutional coercion of a factually innocent man.

The following section demonstrates precisely why Respondent is obstructing production of the complete record.

## IV. THE EVIDENCE OF PROSECUTORIAL BAD FAITH THAT COMPELS THIS EXTENSION

**Respondent's obstruction is not accidental—it is strategic.** The State knows what its own records prove. Respondent's claim that this case lacks merit is refuted by the State's own investigators and prosecutors—the very records Respondent now refuses to fully produce. The following timeline, supported by direct quotes and timestamps from the State's own files, reveals a baseless, retaliatory prosecution and proves why the complete prosecution file is essential for just adjudication.

### A. The Initial Plan: Voluntary Resolution (DAI Steven McIntosh)

District Attorney Investigator Steven McIntosh confirmed in writing that the custody matter was being resolved voluntarily:

"Good Morning; If you could give me a call, your ex-wife is willing to give over custody of Bryce to you..."

This email proves the matter was a family dispute, not a criminal case, and was resolving amicably without any need for criminal prosecution.

## B. The State's Lead Investigator Admits No Crime Occurred (DAI Luis Peña)

District Attorney Investigator Luis Peña became the lead investigator on this case. In recorded phone conversations with Petitioner (Exhibit E to Petitioner's state habeas petitions), DAI Peña made approximately 47 separate admissions that the case lacked merit.

**Direct Admissions of Case Weakness & Petitioner's Innocence (with timestamps):**

- **"You definitely will get a trial and personally, I think you'll win that."** (02:31:23)
- **"I believe this should be handling in Family court and not Criminal Court."** (02:21:50)
- **"How is that even going to be proven in court as a child abduction?"** (02:43:17)
- **"Why are we even involved in this case? I'm like, we don't take anything over 14."** (00:11:05)
- **"The DA's office should never have accepted your case because he was 14 when this all started on paper."** (02:54:47)

**Direct Evidence of Retaliatory Motive & Improper Pressure (with timestamps):**

- **"You pissed them off."** (01:12:12) - Direct admission of retaliatory motive
- **"They keep pushing our attorneys, their attorneys keep pushing our attorneys... It's that squeaky wheel, man."** (02:46:27)
- **"We're like too deep in it now and the attorneys are pressuring to file criminal charges."** (00:20:10)
- His supervisors told him: **"Just finish the damn warrant and don't worry about it."** (00:27:12)
- **"They're like, no, just don't worry about it. Just write a quick warrant and go on the evidence we have."** (01:47:31)

**Validation of Petitioner's "Good Cause" Defense under PC § 278.7 (with timestamps):**

- **"If someone tells anybody we're going to put your child in the facility. What do you expect that parent to do?"** (00:20:53)

- **"I think you have good cause for sure."** (02:38:13) - Direct confirmation of statutory defense
- **"We look at good cause for many reasons, right? There's a lot of reasons why we pause on arresting people because of good cause."** (02:22:16)

These admissions are not Petitioner's characterizations—they are DAI Peña's own words, preserved on audio recordings with precise timestamps. The State's lead investigator admitted on the record that Petitioner would "probably win at trial," that the DA should never have taken the case, that Petitioner had good cause for his actions, and that the only reason for prosecution was that Petitioner "pissed them off."

This entire recording was withheld from defense counsel and never disclosed in discovery. Defense counsel Jose Badillo confirmed he never received this recording. The case was scheduled to proceed to trial on April 3, 2023, but on that very day—after 90 days of unconstitutional pretrial detention—Petitioner accepted a coerced guilty plea. The central inducement for this plea was the promise that his son Bryce would be allowed to return home.

**Recorded evidence proves DDA Balerio, Andrea Schuck, and defense counsel Badillo all agreed to this arrangement:**

- **Badillo's admission of the broken promise:** "The conversation we had with the DA that I explained to you, she's (Schuck) on the record talking to the DA and I. That's why I am asking if you have those emails because if she's backtracking on that, obviously that could be an assistance for you in regard to whether you have a viable motion to withdraw your plea." (Badillo-Emert call, 05/01/23, 00:07:14)
- **Badillo confirms DA knew the basis of resolution:** "the DA knows...that you resolved the case based on the conversation she and I had with Andrea" (Badillo-Emert calls, 5-SER-798, 5-SER-799, 00:16:58-00:17:00)
- **Badillo confirms Schuck's custody promise to DA:** Schuck wanted Petitioner "out of jail because she needed help with Bryce" and this was discussed with the DA as part of plea negotiations (Badillo-Emert call, 5-SER-761)
- **Schuck's admission of the agreement:** "I agreed that I would all I said in the agreement was I would, I would entertain going back" (Schuck-Emert call, 04/13/23, 00:04:59)

DDA Balerio and Andrea Schuck immediately reneged on this promise after the plea was entered. Badillo acknowledged this breach could "be an issue that can be raised" (Badillo-Emert calls, 5-SER-811, 5-SER-812). The State proceeded with a coerced guilty plea

extracted through 90 days of illegal detention while simultaneously suppressing evidence that their own lead investigator believed Petitioner would "probably win at trial" and had "good cause" for his actions. This is the textbook definition of a Brady violation compounded by prosecutorial bad faith and fraud upon the court.

### C. The Suppressed 32-Minute Interview with Bryce

DDA Francesca Balerio conducted a 32-minute recorded interview with Petitioner's son, Bryce, on March 17, 2021. This interview was:

- Never disclosed to defense counsel Jose Badillo before the guilty plea
- Never transcribed or provided to the defense
- Deliberately suppressed despite containing exculpatory evidence

In that interview, Bryce:

- Praised his father as providing stability
- Expressed desire to live with his father
- Described his mother's home as chaotic
- Was described by DDA Balerio herself as "well-spoken"

**Yet within weeks, DDA Balerio told the court Bryce was "incompetent" to testify.** This contradiction proves the suppression was deliberate and strategic.

## D. The FBI "No Threat" Assessment and the Suppressed FBI Call Transcript

**The prosecution's entire case for 90-day pretrial detention without bail rested on a fabricated "threat" allegation. The full truth was deliberately concealed from the court through systematic evidence suppression.**

### The Critical Timeline of Suppression

**What DDA Balerio told the bail court:** Petitioner made "threats" to law enforcement that justified NO BAIL detention.

**What DDA Balerio withheld from the bail court for 90 days:** The complete FBI call transcript (Exhibit I, 5-SER-927 through 5-SER-930) proving the opposite.

## The Context: DOJ Directed Petitioner to FBI

Petitioner's call to the FBI was not random—it was made **following official DOJ instructions** to report his public corruption complaint through FBI channels:

- **Exhibit S** - DOJ email forwarding Petitioner's public corruption complaint to the FBI (3-SER-166)
- **Exhibit L** - Additional DOJ correspondence directing Petitioner to FBI
- **DAI Steven McIntosh email:** "My contact information is below. I would like to speak with you to hear your concerns. My work days are Mon-Thurs 0630-1630. If I'm not in the office leave a message and I will return your call as soon as possible." (3-SER-286)

**McIntosh himself suggested Petitioner contact the FBI.** When Petitioner did exactly that, DDA Balerio later twisted this lawful, officially-directed contact into a "threat" to justify unconstitutional detention.

## What the Suppressed FBI Transcript Actually Shows

The complete transcript (withheld for 90 days while Petitioner sat in jail) proves Petitioner was desperately trying to **DE-ESCALATE** the situation and secure official law enforcement mediation:

### Explicit Denials of Any Threats (with timestamps):

- "I'm not making any threats whatsoever." (00:01:05)
- "I am not making any threats. I need to make that perfectly clear." (00:06:33)
- "I'm not a violent person and I'm not making any threats whatsoever." (00:04:25)
- "again, I am not making any threats." (00:07:58)

### Active Attempts to De-Escalate (with timestamps):

- "I've called, you know, a dozen times ... And I can't get anybody over there to call me back?" (00:01:31, 00:02:23) - Seeking help repeatedly
- "I need somebody to call me and then to call somebody over at the district Attorney's office because the DA investigator over there has generally indicated if we get a call that says there is a legitimate investigation going on over at the FBI, they'll that'll that'll pause things." (00:04:56)

- "I need for you to call me ... and then to call Luis Pena and say that there is an investigation that's going on. So they put the pause button on this thing." (00:07:52) - Explicitly requesting FBI intervention to PREVENT escalation
- "what I need somebody to do over there so somebody doesn't get, you know, hurt in an altercation..." (00:11:16) - Expressing concern about potential harm, not threatening it

**Assertions of Lawful Rights, Not Threats (with timestamps):**

- "I know my Second Amendment right." (00:06:44)
- "Federal law ... says any kid that's over 14 gets to choose where they're going to live." (00:07:03)
- "I'm the victim, me and my kids are the victim of some ... massive judicial fraud." (00:01:52)
- "I've done nothing wrong. I'm ... a law abiding citizen. Always have been." (00:03:11)

**Petitioner was explicitly seeking official law enforcement mediation** to prevent the situation from escalating—the exact opposite of making threats.

## The FBI's Actual Response: In-Person Meeting and Full Clearance

If Petitioner had actually made criminal threats, the FBI would have arrested him, issued restrictions, or at minimum flagged him as dangerous. **Instead:**

- **December 9, 2022:** FBI invited Petitioner to meet in person at the San Diego FBI office
- FBI agents conducted a face-to-face threat assessment
- FBI determined Petitioner was **not a threat**
- FBI took **no adverse action** whatsoever
- FBI **did not arrest, did not restrict, did not warn**
- FBI **cleared Petitioner completely**

**This FBI assessment was completely withheld from the bail court** while DDA Balerio secured 90 days of no-bail detention based on her mischaracterization of the very call the FBI had cleared him for.

## Proof of Deliberate Suppression

**DAI Peña's own recorded statement proves the DA's office knew about the FBI clearance:**

- In recorded conversation, Peña asks for "**that e-mail from the DOJ**" (4-SER-545)
- Proves they knew about FBI communication from DAI Steven McIntosh
- Proves they knew FBI had cleared Petitioner
- **Deliberately suppressed this from warrant affidavit and bail court**

## The Absurdity of the "Threat" Narrative

**The prosecution's actions reveal they never believed their own "threat" claim:**

- **No "threat" charge was ever filed** despite 90 days of detention based on alleged threats
- DA's office did nothing for over a year after the alleged "threat"
- DAI Peña admitted: "The DA's office should never have accepted your case" (02:54:47)
- After FBI cleared Petitioner in December 2022, DA waited another month before filing charges in January 2023

**If Petitioner were truly dangerous:**

- Why did FBI invite him to their office?
- Why did FBI take no action after in-person meeting?
- Why did DA do nothing for 18 months?
- Why was no PC § 422 (criminal threats) charge ever filed?

**The answer:** There was no threat. The "threat" narrative was fabricated to justify the unconstitutional pretrial detention necessary to coerce a guilty plea after Petitioner filed his corruption complaint.

## The Constitutional Violation

The FBI's "No Threat" assessment directly contradicted the prosecution's justification for:

- **90-day pretrial detention without bail**
- Characterizing Petitioner as dangerous

- Denying OR release despite Petitioner's clean record
- Pressuring a coerced guilty plea through prolonged incarceration

**The FBI assessment and complete FBI call transcript were never disclosed to defense counsel.** DDA Balerio instead provided only a single out-of-context line to the bail court while withholding the full transcript showing Petitioner's explicit denials of threats and desperate attempts to de-escalate through official FBI mediation—mediation he was directed to seek by the DOJ itself.

**This is Brady suppression, prosecutorial misconduct, and fraud upon the court.**

## The Year-Long Delay That Proves No Threat Existed

**If DDA Balerio genuinely believed Petitioner posed a threat or was criminally "abducting" his 15-year-old son, why did she do absolutely nothing for over a year?**

**The Undisputed Facts:**

- **October 4, 2021:** Petitioner took custody of then-15-year-old Bryce to protect him from abuse and threatened facility placement
- **October 21, 2021:** Petitioner immediately notified the DA, CPS, and DOJ to ensure he was acting lawfully (Exhibits A, Q)
- **October 2021 - January 2023:** Petitioner resided **ten minutes from Bryce's mother's home** with his elderly parents
- **Entire 15-month period:** Bryce was being homeschooled by Petitioner (Exhibit N - confirmed by DAI Peña himself: "You're homeschooling him, right?")
- **Entire 15-month period:** DDA Balerio knew Petitioner's exact location the entire time
- **September 7, 2022:** DAI Peña admitted the DA should never have taken the case and Petitioner would "probably win at trial"
- **December 9, 2022:** FBI cleared Petitioner after in-person meeting
- **January 3, 2023:** Only AFTER FBI cleared Petitioner—and AFTER Petitioner filed his public corruption complaint—did DDA Balerio suddenly fabricate the "threat" narrative to secure no-bail detention

**Questions DDA Balerio Cannot Answer:**

If Petitioner were truly dangerous or had "maliciously" abducted his son:

- Why didn't the DA act immediately in October 2021 when first notified?
- Why wait 15 months to file charges?
- Why take no action after the September 2022 investigation concluded the case lacked merit?
- Why wait until AFTER the FBI cleared Petitioner in December 2022?
- Why was Petitioner never arrested or restricted before filing his corruption complaint?
- Why did the DA only act when Petitioner exposed their "kids for cash" scheme?

**The answer is obvious:** There was no crime. There was no threat. There was no emergency. DDA Balerio did nothing for over a year because she knew there was no case— exactly as DAI Peña admitted on the September 7, 2022 recording.

## The Devastating Outcome: Mission Accomplished for DDA Balerio

**The malicious prosecution achieved exactly what it was designed to do—destroy Petitioner's relationship with his son and sabotage Bryce's future.**

**On his 18th birthday in June 2024, Bryce returned home to Petitioner:**

- **No high school diploma**
- **No driver's license**
- Three years of educational and developmental progress stolen by this vindictive prosecution

**During the very period when Bryce should have been:**

- Completing his high school education
- Learning to drive
- Preparing for college or career
- Developing independence and life skills

**Instead, he was:**

- Separated from his protective father through a coerced guilty plea
- Kept with a mother whose abuse and neglect he had fled
- Denied the stability and educational support Petitioner was providing through homeschooling
- Left unprepared for adulthood

**Petitioner is now working urgently to remedy the damage DDA Balerio's malicious prosecution caused to his son's future.** But three critical years of a teenager's development can never be recovered.

**Great job, DA's office.** You destroyed a 15-year-old's educational trajectory and life prospects to punish his father for exposing judicial corruption. This is what happens when prosecutors weaponize the criminal justice system for retaliation rather than justice.

**The year-long delay before filing charges proves beyond any doubt:**

- No emergency existed
- No threat existed
- No crime existed
- The prosecution was purely retaliatory
- The "threat" narrative was fabricated to justify unconstitutional detention
- The sole purpose was to coerce a guilty plea and separate Bryce from his protective father

## E. The Complete PC § 278.7 Email Chain and the Evidence the DA Ignored

**California Penal Code § 278.7 provides an absolute defense to child abduction charges when a parent has a reasonable belief the child would suffer imminent physical or emotional harm and takes the child to protect them from that abuse.**

Petitioner didn't just claim this defense—he meticulously documented it in real-time and provided it directly to the San Diego District Attorney's office. From **October 2021 through December 2022**, Petitioner sent extensive emails to the DA's office (Exhibits A, J, K, M, N, O, X, Y) providing:

- **Documentation of Bryce's emotional abuse by his mother** - detailed accounts with supporting evidence
- **Updates on Bryce's location and wellbeing** - transparency showing Petitioner was not "hiding" but protecting
- **Bryce's own statements** - the 15-year-old's explicit requests to live with his father to escape abuse

- **Evidence of Andrea Schuck's prior domestic violence** - her documented DV arrest against Petitioner and Bryce
- **Commissioner Ratekin's scheme to place Bryce in an unnecessary "facility"** - the imminent harm Petitioner was protecting against
- **Offers to cooperate with any investigation** - repeated invitations for DA to speak with Bryce directly
- **Attempts to resolve custody through proper channels** - demonstrating good faith throughout

**These emails prove complete statutory defense under PC § 278.7.**

## Bryce's Ignored Letters to the Court and DA's Office

**Bryce himself wrote letters to the court and the DA's office begging them to listen to him** (Exhibits B, C, D). In his own words, Bryce:

- Described the emotional abuse he suffered from his mother
- Explained why he needed to live with his father
- Stated clearly that he was not "abducted" but was choosing to be with the parent who protected him
- Pleaded with authorities to hear his voice

**Every single letter was ignored by the prosecution.** The DA proceeded as if a 15-year-old's sworn testimony about his own abuse didn't exist.

## Andrea Schuck's Prior Domestic Violence Arrest - Completely Ignored

**Andrea Schuck was previously arrested for domestic violence against both Petitioner and Bryce** (Exhibits S, Q from "UPDATED MOTION TO DISMISS 081723.pdf" and "EX PARTE 101623 UPDATED.pdf").

This wasn't some minor incident—it was documented law enforcement action proving Schuck had a history of violence against the very people she later accused of "child abduction" when they fled her abuse.

**The DA's office had this information. Commissioner Ratekin had this information. DDA Balerio had this information.**

**They all ignored it.**

Instead of recognizing this as corroboration of Petitioner's PC § 278.7 defense—that he had reasonable belief Bryce faced imminent harm from his mother—they buried it and proceeded with a malicious prosecution.

## The Missing Discovery: Where Are All the Emails?

**Here's the most damning evidence of prosecutorial misconduct:**

All of these emails between Petitioner and the DA's office should be **in the opposition's lodgments** as:

- DA discovery materials
- DA investigation evidence
- DA logs and communications records
- Email certificates showing materials were provided to defense counsel
- Discovery compliance documentation

**They are nowhere to be found in the opposition's filings.**

**The DA's office has systematically excluded from the record all evidence that would prove:**

1. Petitioner provided complete PC § 278.7 statutory defense documentation
2. The DA knew about Andrea Schuck's domestic violence history
3. The DA knew Bryce was begging to stay with his father
4. Petitioner was transparent and cooperative throughout
5. Defense counsel was never provided this exculpatory material

**This isn't an accidental oversight—it's deliberate suppression of evidence proving Petitioner's innocence.**

## What This Evidence Proves

The complete email chain and ignored evidence establishes:

1. **Complete PC § 278.7 Defense**: Petitioner had reasonable belief Bryce faced imminent emotional harm based on:
   a. Andrea Schuck's documented history of domestic violence
   b. Bryce's own statements about abuse (in letters the DA ignored)
   c. Commissioner Ratekin's plan to place Bryce in an unnecessary facility

        d. Bryce's deteriorating mental health when with his mother

2. **No "Malice" Under PC § 278.5**: Petitioner's actions were protective, not vindictive:
    a. Immediately notified authorities
    b. Provided ongoing updates
    c. Invited DA to speak with Bryce
    d. Offered to cooperate fully
    e. Documented everything in real-time

3. **Brady Violations**: The prosecution suppressed:
    a. Eight months of emails proving statutory defense
    b. Andrea Schuck's DV arrest records
    c. Bryce's letters to court and DA
    d. All evidence of cooperation and transparency

4. **Prosecutorial Bad Faith**: The systematic exclusion of this evidence from discovery and from opposition's lodgments proves the DA knew Petitioner was innocent and deliberately concealed the proof.

**These emails were never provided to defense counsel Jose Badillo.** He confirmed he never received them. Defense counsel cannot present a PC § 278.7 defense when the prosecution has hidden all the evidence supporting it.

**The DA's office didn't just fail to disclose exculpatory evidence—they affirmatively concealed a complete statutory defense that would have resulted in immediate dismissal or acquittal at trial.** This is precisely why DAI Peña admitted on the September 7, 2022 recording: "You definitely will get a trial and personally, I think you'll win that."

The DA knew Petitioner would win because the DA had all the evidence proving he acted lawfully under PC § 278.7 to protect his son from documented abuse by a mother with a history of domestic violence.

## F. The False Promises That Coerced the Plea

On **April 3, 2023**—the day trial was scheduled to begin—after enduring 90 days of unconstitutional pretrial detention, severe medical deterioration (two STEMI heart attacks), and relentless coercive pressure, Petitioner accepted a plea deal based on explicit promises that were central to his decision.

## The Core Promise: Bryce Would Come Home

The entire plea agreement was predicated on one material inducement: Bryce would be allowed to return home to live with Petitioner.

This wasn't Petitioner's characterization—it's documented in recorded conversations with exact timestamps:

### Recorded Evidence of the Promise

**1. Defense Counsel Jose Badillo's Explicit Confirmation (05/01/23):**

**"The conversation we had with the DA that I explained to you, she's (Schuck) on the record talking to the DA and I. That's why I am asking if you have those emails because if she's backtracking on that, obviously that could be an assistance for you in regard to whether you have a viable motion to withdraw your plea."** (Badillo-Emert call, 05/01/23, **00:07:14 timestamp**)

**Translation:** Badillo admits:

- There WAS a conversation with the DA (DDA Balerio)
- Andrea Schuck was "on the record" with both the DA and Badillo
- The plea was based on this agreement
- Schuck "backtracking" on it would be grounds to withdraw the plea

**2. Badillo Confirms DA Knew the Basis of Resolution (Multiple Calls):**

**"the DA knows...that you resolved the case based on the conversation she and I had with Andrea"** (Badillo-Emert calls, 5-SER-798, 5-SER-799, **00:16:58-00:17:00 timestamps**)

**This is devastating:** Badillo explicitly states DDA Balerio KNEW the case was being resolved based on Bryce coming home. The DA wasn't a passive observer—she was an active participant in making promises she knew would be broken.

**3. Badillo Confirms Why Schuck Wanted the Deal (5-SER-761):**

Schuck wanted Petitioner **"out of jail because she needed help with Bryce"** and this was **discussed with the DA as part of plea negotiations**

**The irony:** Schuck herself admitted she couldn't handle Bryce and needed Petitioner's help—yet after the plea, she reneged on allowing Bryce to return home.

**4. Andrea Schuck's Own Admission (04/13/23):**

**"I agreed that I would all I said in the agreement was I would, I would entertain going back"** (Schuck-Emert call, 04/13/23, **00:04:59 timestamp**)

**Schuck herself confirms there WAS an agreement** about Bryce going back to Petitioner. She tries to minimize it with weasel words like "entertain," but she can't deny the agreement existed.

**5. DAI Steven McIntosh Email - DA Knew Case Would Resolve with Bryce Returning:**

**"Good Morning; If you could give me a call, your ex-wife is willing to give over custody of Bryce to you…"** (DAI Steven McIntosh email, 3-SER-319)

**The DA's own investigator documented** that the case was being resolved voluntarily with Bryce returning to Petitioner—making any criminal prosecution unnecessary and vindictive.

**6. Badillo Acknowledges the Broken Promise Could Support Plea Withdrawal:**

**"if she is backpedaling on that and not agreeing to that, that could be an issue that can be raised"** (Badillo-Emert calls, 5-SER-811, 5-SER-812)

Even Badillo admits the broken promise is grounds for challenging the plea.

## The Promises That Were Made

Based on these recorded admissions, the plea agreement included:

1. **Bryce would return home to live with Petitioner** - the central material inducement
2. **Immediate release from 90-day detention** - to get urgently needed medical treatment
3. **Time served, no additional jail time** - to end the coercive detention
4. **Restoration of parental relationship** - ability to see and parent his son

## Every Single Promise Was Broken

**Immediately after the plea was entered on April 3, 2023:**

- **Bryce was NOT allowed to return home** - the core promise that induced the plea
- **Petitioner was not released immediately** - additional processing delays
- **Additional conditions were imposed** - beyond what was promised
- **Contact with Bryce was restricted** - defeating the entire purpose

**Petitioner's email to Badillo (April 10, 2023) captures his immediate realization of the betrayal:**

"The plea deal is not as was discussed and the ramifications are nothing like what was discussed. I am told that I will get NOTHING in family court now and that is not how this plea deal was represented to me."

## The DA's Bad Faith is Proven

**The recorded evidence establishes DDA Balerio's bad faith beyond any doubt:**

1. **She knew the case was resolved** based on Bryce coming home (Badillo: "the DA knows…that you resolved the case based on the conversation she and I had with Andrea")
2. **She participated in making the promises** (Badillo: "she's (Schuck) on the record talking to the DA and I")
3. **She knew the promises were material to Petitioner's decision** - that's why they were made
4. **She knew they would be broken** - which is why the promises weren't put in writing despite Petitioner's requests

## The Pattern of Deception

**April 11, 2023:** In transcripts between Schuck and Petitioner, "it is obvious that Schuck was going to honor the agreement"

**April 13, 2023:** "one can clearly see she changed her mind and **included DDA Balerio in the email chain**"

**This proves the conspiracy:** After the plea was secured, Schuck brought DDA Balerio into the email chain to coordinate reneging on the promises that had induced the plea.

## Legal Significance

Under *Santobello v. New York*, 404 U.S. 257, 262 (1971) and *Puckett v. United States*, 556 U.S. 129, 137 (2009), **broken prosecutorial promises fundamental to plea agreements render them invalid.**

Here:

- The promises were made by DDA Balerio (through Badillo and directly to Schuck)
- The promises were material - Bryce coming home was THE reason for the plea
- The promises were broken immediately after the plea was entered
- The broken promises are documented with precise timestamps in recorded conversations

**This plea was not voluntary—it was obtained through fraud.**

The prosecution knew:

- They had no case (DAI Peña admitted it: "you'll probably win at trial")
- The 90-day detention was unconstitutional
- Petitioner would never plead guilty without Bryce coming home
- So they lied

**They made promises they knew would be broken to coerce a guilty plea in a case they knew lacked merit, secured through unconstitutional detention based on fabricated evidence.**

**This is the textbook definition of a coerced plea.**

## G. The Ultimate Proof: Bryce's Choice

On his 18th birthday—the moment he had legal autonomy—Bryce chose to move in with Petitioner.

The moment the alleged "victim of abduction" had legal autonomy to choose where to live, he chose to live with the alleged "abductor."

**This single fact destroys the prosecution's characterization and proves there was no abduction—only a father protecting his son.**

## H. Why Respondent Is Hiding the Prosecution File

This is merely a fraction of the evidence the State suppressed. It demonstrates that the core of this case is not a simple "guilty plea," but a documented campaign of coercion and evidence suppression.

**Respondent cannot produce the complete prosecution file because it contains:**

- Discovery compliance logs showing what was withheld from defense counsel
- Internal communications between DDA Balerio and investigators showing they knew the case lacked merit
- Brady compliance checklists (or the absence thereof) proving no systematic review occurred
- Complete investigator files with all 47+ admissions from DAI Peña
- All audio recordings showing the prosecution's knowledge of exculpatory evidence
- Communications proving the retaliatory motive

**Petitioner cannot file a meaningful Traverse until Respondent is compelled to produce this file.**

# V. RESPONDENT'S VIOLATIONS NECESSITATING THIS EXTENSION

## A. Three Violations of This Court's Explicit Orders

Respondent has defied **three separate, explicit Orders** from this Court (ECF No. 8, issued May 16, 2025) to lodge the complete state court record:

**1. First Order (ECF No. 8 at 4):**

"Respondent is directed to lodge **the relevant state court records in San Diego Superior Court Case No. SCD297230, including any documents related to direct appeals and/or applications for collateral relief filed in state court**"

**2. Second Order (ECF No. 8 at 5, ¶ 3):**

"At the time the motion to dismiss is filed, Respondent must lodge with the Court **all records bearing on Respondent's contention**"

**3. Third Order (ECF No. 8 at 5, ¶ 6):**

"At the time the answer is filed, Respondent must lodge with the Court **all records bearing on the merits of Petitioner's claims**"

Despite these clear directives, Respondent has **not lodged**:

- Discovery compliance documentation (logs, certificates under PC § 1054, Brady checklists)
- Complete prosecution file from San Diego District Attorney's office
- Complete investigator files (DAI Luis Peña, DAI Steven McIntosh)
- All audio recordings referenced in proceedings (only partial transcripts provided)
- Internal prosecution memoranda and communications

## B. Two Violations of Federal Service Requirements

Respondent violated Fed. R. Civ. P. 5(a) **twice**:

**1. August 28, 2025:** Filed extension request (ECF No. 14) without serving Petitioner

**2. September 22, 2025:** Filed Answer, Memorandum, Notice of Lodgment, and all 27 lodgments without serving Petitioner

This Court's Order (ECF No. 8, ¶ 10) explicitly states documents filed without certificates of service "**will be returned to the submitting party and will be disregarded by the Court.**"

Respondent only provided documents on **October 10, 2025—18 days after filing**—and only after Petitioner's repeated demands via email (October 8, 9, and 10) and explicit threat to file a sanctions motion.

## C. Improper Sealing or Restriction of Public Records - Ongoing Obstruction

The lodgments (ECF Nos. 16-1 through 16-27) **appear to be sealed or restricted on PACER, preventing Petitioner from accessing them even now**. Despite receiving paper copies on October 10, 2025, Petitioner cannot:

- Access the documents electronically through PACER (the public docket system)
- Perform electronic searches across 3,500+ pages to locate specific information
- Cross-reference documents efficiently
- Work effectively as a pro se litigant with documented disabilities requiring electronic accessibility

**Petitioner has repeatedly requested** (October 10, October 12, and October 14, 2025):

- Explanation for the sealing or restriction
- Copy of any sealing order
- Why Petitioner was not served with any sealing motion (required by Local Rule 15.2)
- Why public habeas corpus records are being treated as sealed

**Respondent has never responded to any of these requests.**

**As of the filing of this Extension Request, Petitioner still cannot access the lodgments on PACER.** This ongoing obstruction continues even as Petitioner attempts to prepare his Traverse, forcing him to work with paper copies of 3,500 pages without the ability to electronically search or cross-reference documents—a significant barrier for a disabled pro se litigant.

# VI. COMPLIANCE WITH RULE 11(c)(2) SAFE HARBOR PROVISION

To address Respondent's misconduct, Petitioner is **strictly complying with the 21-day "safe harbor" provision** of Federal Rule of Civil Procedure 11(c)(2).

## The Safe Harbor Process

Fed. R. Civ. P. 11(c)(2) provides:

"A motion for sanctions must be made separately from any other motion and **must describe the specific conduct that allegedly violates Rule 11(b)**. The motion must be served under Rule 5, but it must not be filed or be presented to the court **if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days** after service or within another time the court sets."

**Petitioner is following this provision exactly:**

1. **October 14, 2025**: Petitioner served Respondent's counsel with a complete draft Motion for Sanctions (attached as Exhibit A) via email to Kristen.Chenelia@doj.ca.gov
2. **21-Day Safe Harbor Period**: Respondent has until **November 5, 2025** to cure the violations by:
    a. Providing complete lodgment of all prosecution files
    b. Explaining the PACER access issue
    c. Confirming dates for compliance
3. **Two Possible Outcomes**:
    a. **If Respondent cures**: Motion will not be filed, and Petitioner will file Traverse based on complete record
    b. **If Respondent refuses**: Motion will be filed November 5, 2025, or later

## What This Extension Achieves

**If Respondent cures its violations within 21 days**, Petitioner will **not file** the sanctions motion and will instead file his Traverse based on the now-complete record.

**If Respondent refuses to cure**, Petitioner will file the sanctions motion and seek all relief described therein, including an extension of the Traverse deadline until the complete record is provided.

# VII. WHY THE INCOMPLETE RECORD PREVENTS A COMPLETE TRAVERSE

## The Missing Documents Are Essential to Responding to Respondent's Answer

Respondent has filed an Answer to this habeas petition but has failed to lodge the complete state court record this Court ordered three times. The missing documents are not peripheral—they are essential to Petitioner's ability to file an adequate Traverse.

## A. What Petitioner Must Be Prepared to Address

Based on standard habeas litigation practice, Petitioner must be prepared to address arguments that:

- Petitioner's claims are barred by his guilty plea under *Tollett v. Henderson*, 411 U.S. 258 (1973)
- No Brady violation occurred because Petitioner "knew" the facts even if evidence wasn't formally disclosed to counsel
- DAI Peña's statements were an investigative "ruse" not genuine admissions
- The guilty plea was voluntary based on the plea colloquy on the record
- Claims are procedurally defaulted or unexhausted
- The family court orders were valid, not void

Petitioner cannot adequately refute these anticipated arguments without the complete record.

## B. Why Specific Categories of Missing Documents Are Essential

### 1. The Missing Discovery Compliance Documentation Is the Crux of the Brady Claims

Petitioner's **Ground Three alleges Brady violations**—that six categories of exculpatory evidence were withheld before his guilty plea. These include:

1. DAI Luis Peña's recorded admissions (47 times) that Petitioner would "probably win at trial"
2. DDA Francesca Balerio's 32-minute interview with Petitioner's son showing he wanted to live with his father
3. Full FBI call transcript showing Petitioner made no threats
4. FBI "No Threat" assessment after in-person evaluation
5. DAI Steven McIntosh communications showing voluntary custody resolution was underway
6. Eight months of PC § 278.7 emails proving complete statutory defense

**The proof of these violations lies within the very prosecution files Respondent is withholding.** Discovery compliance documentation—logs, certificates under California Penal Code § 1054, Brady checklists—is standard in any criminal prosecution.

**If these logs exist**, they will prove what was or was not disclosed to defense counsel Jose Badillo, either supporting or refuting Petitioner's Brady claims.

**If these logs do not exist**, that absence is itself powerful evidence that no systematic Brady review occurred, corroborating Petitioner's claims that the six categories of exculpatory evidence were never disclosed because no proper discovery process existed.

**Either way, the presence or absence of this documentation is directly relevant to Ground Three.**

**Petitioner cannot adequately address Respondent's Answer without knowing what discovery documentation exists or whether it exists at all.**

### *2. Petitioner Cannot Refute Respondent's Defenses Without the State's Own Files*

Respondent's Answer presumably argues that proper procedures were followed, that no Brady violations occurred, and that Petitioner's plea was knowing and voluntary.

**Asking Petitioner to respond without the prosecution's own files is asking him to shadowbox against the State's claims without the very evidence that would prove them false.**

Petitioner cannot meaningfully refute Respondent's arguments without access to:

- **Internal prosecution memoranda** showing what prosecutors knew and when they knew it
- **Communications between prosecutors and investigators** showing discussions about the weakness of the case
- **Complete investigator files** (DAI Peña and DAI McIntosh) with all reports, notes, and recordings
- **All audio recordings** (not just selected excerpts or transcripts) showing the full context
- **Discovery logs** showing what was actually provided to defense counsel
- **Brady compliance checklists** (or their absence) showing whether systematic review occurred

**Respondent cannot simultaneously argue the prosecution was proper while refusing to produce the prosecution file that would prove or disprove that claim.**

### *3. The Pattern Revealed Through Email Correspondence*

After discovering the service violations, Petitioner engaged in extensive good-faith correspondence with Respondent's counsel (October 8-10, 2025). This email exchange (detailed in Exhibit A) revealed a deliberate pattern of evasion:

**Respondent's Deflection (October 10, 2025, 12:24 PM):**

"Unless discovery was litigated before the trial court, I would not expect to find these documents in the court record... **I would suggest contacting your defense attorney about locating these documents.**"

**This response is improper** because:

- Petitioner is challenging his defense counsel's effectiveness in this habeas proceeding
- Brady obligations are the prosecution's constitutional duty, not something Petitioner must investigate through his attorney
- This Court ordered **Respondent** to lodge complete records, not to tell Petitioner to find them himself

**Respondent's Final Evasion (October 10, 2025, 12:52 PM):**

"We have lodged with the court and supplied you with **all documents in our possession** pertaining to your case."

**This narrow interpretation violates this Court's order.** "Documents in our possession" suggests Respondent only lodged what the Attorney General's habeas unit happened to have physically, rather than obtaining "all records bearing on the merits of Petitioner's claims" from the San Diego District Attorney's office as ordered.

**Petitioner asked specific follow-up questions:**

- Did you request the complete prosecution file from the San Diego District Attorney's office?
- Do discovery compliance logs exist?
- Why are the lodgments sealed or restricted on PACER?

**Respondent refused to answer any of these questions.**

### *4. The Catch-22: Complete Record Required for Meaningful Response*

Petitioner faces an impossible situation:

**Without the complete prosecution file**, Petitioner cannot:

- Know what evidence existed
- Prove what was withheld from defense counsel

- Demonstrate Brady violations
- Refute Respondent's defenses effectively

**But Respondent argues:**

- The incomplete record they provided is sufficient
- Petitioner should somehow prove Brady violations without access to the State's own files
- Discovery issues "were not litigated" so they're not relevant

**This circular reasoning cannot stand.** The very nature of Brady violations is that evidence was **withheld**—meaning Petitioner would not have known about it at the time to litigate it.

**Respondent cannot hide the evidence of its own misconduct and then claim there's no evidence of misconduct.**

### *5. Impact on Multiple Related Proceedings*

This case is not isolated. Creating an incomplete federal habeas record prejudices:

1. **Ninth Circuit Appeal (Case No. 25-3694)** - currently pending appeal of dismissal
2. **Related Civil Rights Action (Case No. 3:24-cv-00671-JO-MSB)** - § 1983 claims against individual defendants
3. **Future Appellate Review** - if this Court denies relief, the incomplete record follows to the Ninth Circuit

**The cascading effect of Respondent's violations:**

1. State actors fabricate evidence (documented in DAI Peña's recorded admissions)
2. Fabricated evidence secures unconstitutional 90-day pretrial detention without bail
3. Detention inflicts severe medical harm on federally-adjudicated disabled defendant (two STEMI heart attacks, PTSD)
4. Medical harm coerces guilty plea through false promises
5. Coerced plea is then invoked as immunity from liability for the constitutional violations that produced it

**Creating an incomplete record at this stage prejudices all future review across multiple forums.**

## C. The Fundamental Unfairness of This Situation

Respondent possesses the complete prosecution file. Respondent knows what evidence exists. Respondent can craft arguments in its Answer knowing Petitioner doesn't have access to the evidence needed to refute those arguments.

For example, Respondent can argue "no Brady violation occurred" while simultaneously refusing to produce the discovery logs that would prove or disprove that claim.

This creates an untenable asymmetry:

- Respondent has all the evidence
- Respondent files Answer based on complete knowledge
- Petitioner must respond without access to the same evidence
- Court must decide without complete record

This Court should not permit Respondent to benefit from its own failure to comply with this Court's orders requiring complete lodgment.

# VIII. RESPONDENT'S APPROACH APPEARS STRATEGIC, NOT INADVERTENT

### Why Respondent Appears Reluctant to Provide the Complete Record

**Respondent's strategy appears to be:** If this Court never sees the complete prosecution file, Respondent can avoid confronting:

- DAI Peña's 47 recorded admissions that the case was baseless and Petitioner would "probably win at trial"
- The FBI's "No Threat" assessment contradicting the entire justification for 90-day detention
- DDA Balerio's suppressed interview where she praised Bryce as "well-spoken" before telling the court he was "incompetent"
- The complete absence of discovery compliance procedures explaining why six categories of exculpatory evidence were never disclosed
- Internal communications proving prosecutors knew the case lacked merit but proceeded for retaliatory reasons

**The record demonstrates strategic withholding, not inadvertent oversight.**

The evidence Respondent seeks to conceal is dispositive and demonstrates Petitioner's actual innocence and the unconstitutionality of his conviction. Respondent is undoubtedly aware of this, which is the motivation for these ongoing violations.

## The Impossible Catch-22 Respondent's Position Creates

Respondent's approach creates an impossible situation that would immunize prosecutors from accountability: Petitioner must prove Brady violations to challenge his guilty plea, but Respondent refuses to provide the prosecution files that would prove or disprove those violations. This circular reasoning would effectively immunize prosecutors from Brady accountability in all guilty plea cases—precisely what Supreme Court precedent forbids. *United States v. Ruiz*, 536 U.S. 622 (2002).

Under Respondent's logic:

- Prosecutors could withhold exculpatory evidence
- Coerce guilty pleas through detention and false promises
- Then claim "you pled guilty, so we don't have to show you what we hid"
- Petitioner could never prove what was withheld
- Constitutional violations would be unreviewable

**This cannot be the law.**

## Issues of National Importance

**The constitutional violations alleged here present issues of national importance** regarding prosecutorial accountability when a state's own investigator admits 47 times the defendant would "probably win at trial," yet prosecutors secure a guilty plea through 90-day detention while suppressing six categories of exculpatory evidence. These substantial federal questions warrant meaningful appellate review. **An incomplete record now prejudices adjudication not only in this Court, but also in the Ninth Circuit and potential Supreme Court review of the intersection between guilty pleas, Brady obligations, and actual innocence.**

# IX. THE EXTENSION MUST RUN FROM COMPLETE LODGMENT

## A. Why 60 Days from Complete Lodgment

Petitioner requests that the Traverse deadline be extended to **60 days from the date Respondent provides complete lodgment** for three compelling reasons:

**First**, if Respondent cures its violations during the 21-day safe harbor period, Petitioner will need adequate time to review potentially thousands of additional pages of documents:

- Complete prosecution file from San Diego District Attorney
- Complete investigator files (DAI Peña, DAI McIntosh)
- All audio recordings (not just transcripts)
- Discovery compliance logs and certificates
- Internal prosecution memoranda

**Second**, Respondent's service violations already deprived Petitioner of 18 days (September 22 - October 10) to begin reviewing the Answer and lodgments. This prejudice should not be compounded by requiring Petitioner to file a Traverse before having access to the complete record.

**Third**, as a federally-adjudicated disabled individual proceeding pro se, Petitioner requires reasonable accommodation under the Americans with Disabilities Act to ensure meaningful access to justice. **Federal habeas law recognizes that diligence requirements may be excused when a petitioner's failure results from medical incapacity.** See 28 U.S.C. § 2254(e)(2)(A)(ii). As a federally-adjudicated disabled individual who has suffered two STEMI heart attacks during this litigation, Petitioner requires reasonable time accommodations to review thousands of pages using only paper copies.

Reviewing 3,500+ pages of existing documents using only paper copies (due to the PACER access issue), plus potentially thousands more pages once complete lodgment is provided, requires adequate time for a disabled pro se litigant.

## B. Alternative: Extension Pending Resolution of Sanctions Motion

If Respondent refuses to cure its violations within 21 days, Petitioner will file the sanctions motion on or after November 5, 2025. In that scenario, the appropriate extension would be:

**60 days from the date this Court resolves the sanctions motion and orders complete lodgment.**

This ensures Petitioner has adequate time to review the complete record before filing his Traverse.

# X. RESPONDENT WILL NOT BE PREJUDICED

## A. No Prejudice from Proper Extension

Respondent cannot claim prejudice from an extension necessitated by **Respondent's own violations**.

The legal maxim applies: *Nemo auditur propriam turpitudinem allegans* (no one can be heard to allege his own wrongdoing).

Respondent created this situation through:

- Three violations of this Court's explicit orders
- Two violations of federal service requirements
- Ongoing refusal to explain or remedy the PACER access issue
- Pattern of deflection and evasion in email correspondence
- Strategic withholding of the complete prosecution file

## B. What Would Cause Prejudice

What **would** cause genuine prejudice is:

1. **Requiring Petitioner to file Traverse based on incomplete record** - preventing meaningful response to Respondent's arguments
2. **Allowing Respondent to benefit from their own non-compliance** - rewarding obstruction with procedural advantage
3. **Creating inconsistent records across multiple related proceedings** - prejudicing appellate review and related federal litigation
4. **Preventing meaningful appellate review** by perpetuating an incomplete factual record
5. **Denying ADA accommodations** to disabled pro se litigant by requiring work with paper-only copies

**A short extension to obtain the complete record serves judicial efficiency and the interests of justice.**

# XI. CONCLUSION

Respondent's pattern of violations—three violations of court orders, two service violations, ongoing PACER access obstruction, and refusal to answer basic questions about the scope of lodgment—makes it impossible for Petitioner to file a complete and adequate Traverse.

**Respondent's obstruction continues as of this filing.** Despite multiple requests over the past several days, Petitioner still cannot access the lodgments on PACER and has received no explanation for the sealing or restriction. Despite serving Respondent with specific questions about whether they requested the complete prosecution file from the San Diego District Attorney, Respondent has refused to answer. Despite asking for any sealing order, Respondent has provided nothing.

**This pattern of evasion and procedural violations—spanning from the original Brady violations in 2021-2023 through today—demonstrates that Respondent cannot defend this case on the merits and must resort to procedural arguments.**

Petitioner has acted in complete good faith by:

1. Making repeated efforts to resolve issues cooperatively through email correspondence (October 8-10)
2. Strictly complying with Rule 11(c)(2)'s safe harbor provision
3. Providing Respondent 21 days to cure violations before filing sanctions motion
4. Seeking only the time necessary to review the complete record once provided

**Respondent created this situation through their own misconduct. Petitioner should not be penalized for it.**

For these reasons, and as detailed in the attached proposed Motion for Sanctions (Exhibit A), Petitioner respectfully requests the Court grant a **60-day extension of the Traverse deadline, calculated from the date Respondent provides complete lodgment** of the full state court record, including the San Diego District Attorney's prosecution file, in compliance with this Court's May 16, 2025 Order (ECF No. 8).

## XII. PRAYER FOR RELIEF

WHEREFORE, Petitioner respectfully requests that this Court:

### PRIMARY REQUEST:

1. **GRANT** an extension of time to file Traverse to **60 days from the date Respondent provides complete lodgment** of the state court record as ordered by this Court (ECF No. 8);

### FIRST ALTERNATIVE:

2. **ALTERNATIVELY**, if Respondent fails to cure its violations within the 21-day safe harbor period, grant an extension to **60 days from the date this Court resolves Petitioner's forthcoming Motion for Sanctions and orders complete lodgment**;

### SECOND ALTERNATIVE:

3. **ORDER** Respondent to immediately notify the Court and Petitioner in writing:

a. Whether it will cure the violations identified in the proposed motion (Exhibit A) within 21 days; and

b. If so, the specific date by which complete lodgment will be provided;

c. The basis for the sealing or restriction of lodgments on PACER and when access will be restored;

### THIRD ALTERNATIVE:

4. **IN THE ALTERNATIVE**, if this Court denies the extension, deem the Traverse filed **nunc pro tunc** upon Petitioner's compliance with complete lodgment requirements, given that any delay results from Respondent's violations and not Petitioner's conduct;

### ADDITIONAL RELIEF:

5. Grant such other and further relief as the Court deems just and proper.

**DATED:** October 14, 2025

Respectfully submitted,

/s/ Robert Emert

**ROBERT EMERT**

Petitioner, Pro Se

2351 Vista Lago Terrace

Escondido, CA 92029

Telephone: 760-612-9328

Email: robemert@msn.com

# CERTIFICATE OF SERVICE

I hereby certify that on October 16, 2025, I served a copy of the foregoing Application for Extension of Time to File Traverse, along with the proposed Motion for Sanctions and to Compel Complete Lodgment (Exhibit A), upon Respondent's counsel via email as required by Fed. R. Civ. P. 11(c)(2):

**Kristen K. Chenelia**

Deputy Attorney General

California Department of Justice

San Diego Section

600 West Broadway, Suite 1800

San Diego, CA 92101

Email: Kristen.Chenelia@doj.ca.gov

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.