ROBERT EMERT
Respondent, In Pro Per
2351 VISTA LAGO TERRACE
ESCONDIDO, CA 92029
TELEPHONE: 760-612-9328
robemert@msn.com



FILED

NOV 1 0 2025

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY_____DEPUTY

### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF CALIFORNIA

**ROBERT EMERT,**

**Petitioner,**

**v.**

**SAN       DIEGO       PROBATION
DEPARTMENT,**

**Respondent.**

Case No.: 3:25-cv-00820-TWR-BLM

**THIS FILING CONTAINS:**

**1. Motion for Sanctions and to Compel
Complete Lodgment Fed. R. Civ. P.
11(c)(2); 28 U.S.C. § 2254 Rule 5**

**2. Application for Leave to Exceed Page
Limitations and ADA Accommodation
Request (Supporting Integrated Format
for Judicial Economy) Civ. L.R.
7.1(e)(1); 28 U.S.C. § 12132; Fed. R. Civ.
P. 83(a)(1)**

**3. Memorandum of Points and
Authorities
  Civ. L.R. 7.1(a)**

**4. Declaration of Robert Emert in
Support of Motion   Fed. R. Civ. P.
11(b); 28 U.S.C. §1746**

**5. Proposed Order
  Fed. R. Civ. P. 5(d)(1)**

## CASE-AT-A-GLANCE

**THE ISSUE:**   Respondent violated three court orders over five months

**THE ORDERS:**  May 16, 2025 - "All records bearing on merits" (ECF No. 8, ¶¶4, 5, 6)

**THE LODGMENT:** Incomplete - only transcripts, no prosecution files

**THE PROOF:**   Same materials produced in related §1983 case
(Case No. 3:24-cv-00671-JO-MSB - 2,000+ page SER) and my exhibits with irrefutable audio
recordings that was withheld by DDA Balerio and DAI Pena from the court and my defense
attorney. I was held 90 days without bail based on a fabricated threat that Balerio refused to even
charge. The State used that coerced detention to extract a guilty plea and now hides behind it
while withholding discovery proving the violations.  Zero flight risk, zero criminal record,
lifelong San Diego resident with all family and friends here in San Diego who was simply
waiting for his proper day in court and all the evidence proves this!

**THE SMOKING GUN:** AG won't answer: "Did you request the DA file?"

**THE TRILEMMA:** Materials were (1) never created → Brady violation
(2) destroyed → spoliation - (3) withheld → contempt
**Under any scenario, sanctions are mandatory.**

**RELIEF SOUGHT:**
• Compel complete lodgment within 30 days
• Adverse inferences on constitutional claims
• Graduated monetary sanctions for continued non-compliance

## ROADMAP FOR EFFICIENT REVIEW

|  |  |
|---|---|
| **Essential Reading:** | **Pages 10-13   (Executive Summary)** |
| **Application/ADA** | Pages 3-9 |
| **Core Argument:** | Pages 17-36 (The Trilemma + Six Smoking Guns) |
| **If Time Permits:** | Pages 37-94 (Complete legal analysis) |
| **Proposed Order:** | **Page 95** |

**APPLICATION FOR LEAVE TO EXCEED PAGE LIMITS**

Petitioner respectfully requests leave to file this Motion for Sanctions and to
Compel Complete Lodgment as a single integrated document of approximately 90
pages, exceeding standard page limitations. Good cause exists for the following
reasons and while this motion could be split into a few different documents to
conform to the standard rules of court, this encompassing document is written for
judicial economy.

I. THE ALTERNATIVE REJECTED: DATA DUMPING

Petitioner could have mirrored opposing counsel's approach and simply lodged
thousands of pages of unorganized documents as "evidence":

  • Respondent's September 22, 2025 lodgment: ~3,500 pages with minimal
organization, no searchable PDFs, and portions apparently sealed on PACER

  • County's § 1983 production (Case No. 3:24-cv-00671-JO-MSB): ~2,000 pages
as "Supplemental Excerpt of Record" with minimal indexing.  However, at least
the county attorney supplied some of the District Attorney's files that that the AG
refuses to lodge so there will be a section on this court taking judicial notice of this
related case.

Combined: Over 5,500 pages of largely unorganized materials that Petitioner, as a
pro se disabled litigant, was forced to review manually.

Petitioner could have filed a 10-page motion stating: "Respondent violated court
orders; see attached  (2,000+ pages from § 1983 SER)." This would have complied
with page limits while shifting the burden to the Court to search through 2,000
pages for relevant evidence.

Petitioner rejected this approach. Instead, Petitioner has synthesized 5,500+ pages
into approximately 90 pages of organized analysis with precise citations—a
compression ratio of approximately 110:1. If the State can dump 5,500
unorganized pages on a disabled pro se litigant, this Court can permit that litigant
to file 90 organized pages explaining why the State's production violates court
orders.

Moreover, Petitioner's own habeas exhibits—containing critical evidence such as
DAI Peña's 47 recorded admissions, FBI call transcripts, and Public Defender
correspondence—remain inaccessible on PACER despite being properly filed with
the Court. See Civil Local Rule 5.4.3 (requiring clerk to upload exhibits to
PACER); Rule 5(a), Rules Governing § 2254 Cases (same). Because these exhibits
are not currently viewable on PACER, Petitioner must quote and explain this
evidence within the motion itself rather than simply citing to exhibit page numbers.
If Petitioner's exhibits were accessible as required by local rules, this motion could
be substantially shorter. The Court cannot expect Petitioner to file a bare-bones
motion that simply references inaccessible exhibits—that would shift the burden to
the Court to hunt through unfiled materials, the exact problem Petitioner avoids by
synthesizing evidence here.

## II. WHY INTEGRATED FORMAT SERVES JUDICIAL ECONOMY

This motion presents an inescapable trilemma: under any scenario (materials never
created, materials destroyed, or materials exist but withheld), sanctions are
mandatory. This argument builds cumulatively from fact foundation through legal
standards to specific relief requested.

Splitting into separate motion and memorandum would risk:
- Court reading motion but deferring memo review
- AG filing response addressing motion while ignoring memo
- Loss of cumulative persuasive force
- Fragmented briefing requiring reply to incorporate memo points

The integrated format prevents strategic evasion. AG cannot selectively respond to easy issues while ignoring hard ones. Everything is in one record. This serves judicial economy: one filing to review, complete argument with internal cross-references, clean docket, no overlooked points scattered across multiple documents.

## III. COMPLEXITY REQUIRES COMPREHENSIVE TREATMENT

This motion addresses:
- Three separate sources of sanctions authority (Rules 11, 37, inherent)
- Three separate court orders violated (ECF No. 8, ¶¶4, 5, 6)
- Six categories of missing evidence with § 1983 SER citations proving existence
- Five-month chronology of non-compliance requiring documentation
- Two related federal cases requiring careful cross-reference
- Multiple constitutional claims affected by missing evidence
- Preemptive responses to anticipated defenses (LaGrand, Tollett, Pinholster)

Each element requires factual detail, legal analysis, and application to standards. Compressing into 25 pages would sacrifice either essential detail (making verification impossible), legal analysis (making ruling difficult), or organization and clarity (making review burdensome).

## IV. ADA ACCOMMODATION

Petitioner is a federally-adjudicated disabled individual with documented PTSD and after-effects of two STEMI heart attacks. These disabilities affect cognitive processing and ability to synthesize complex information into artificially compressed formats.

The Americans with Disabilities Act requires reasonable modifications to ensure meaningful access. Tennessee v. Lane, 541 U.S. 509, 522-23 (2004). For Petitioner, meaningful access requires:

  ✓ Clear sections with headers (aids processing)

✓ Complete chronology (reduces cognitive load)

✓ Explicit connections between evidence and claims (no implicit reasoning)

✓ Strategic white space and formatting (readability)

The current 90-page format represents Petitioner's best effort to present complex material in an organized manner that accommodates cognitive limitations while providing everything needed for adjudication. Compression to 25 pages would require removing organizational structure and explanatory scaffolding—precisely what Petitioner's disabilities make necessary.

As a reasonable accommodation under Title II of the ADA, Petitioner requires searchable PDFs for all lodgments. 28 C.F.R. § 35.160 (requiring effective communication for disabled individuals in court proceedings); Duvall v. Cnty. of Kitsap, 260 F.3d 1124 (9th Cir. 2001) (ADA applies to judicial access).

V. PRO SE LENIENCY

Federal courts routinely afford pro se litigants reasonable leniency regarding page limits. Erickson v. Pardus, 551 U.S. 89, 94 (2007). This reflects practical realities: pro se litigants lack training in legal writing compression, cannot delegate work to associates, and often need more pages to convey what trained attorneys express more concisely.

Petitioner has made substantial efforts at concision:

✓ No repetitive arguments

✓ No lengthy string citations

✓ No extended quotations

✓ Tight paragraphs with clear topic sentences

✓ Strategic use of organizational tools

Despite these efforts, the complexity of issues and volume of evidence requiring synthesis necessitate approximately 90 pages. This is precisely where pro se leniency should apply: highly complex procedural motion requiring synthesis of 5,500+ pages of materials, extensive legal analysis, clear factual development, and accommodation of documented disabilities.

VI. GOOD CAUSE EXISTS

Under Fed. R. Civ. P. 83(a)(1), this Court has discretion to modify page limits when good cause exists. Good cause is established by:

1. Exceptional complexity (three authorities × three orders × six evidence categories × five-month chronology × cross-referenced cases)

2. ADA accommodation (documented disabilities requiring organizational structure)

3. Pro se status (lack of training in legal compression techniques)

4. Judicial economy (integrated format prevents fragmented briefing)

5. Proportionality (90 organized pages vs. 5,500 unorganized pages demonstrates restraint)

6. Importance (willful violation of court orders affecting constitutional rights and federal habeas integrity)

7. No prejudice to Respondent (AG had five months to comply, received 21-day safe harbor notice, chose strategic silence)

Alternative approaches would be worse: data dumping 2,000 pages would shift burden to Court; fragmenting across multiple filings would total 75+ pages and

create inefficient briefing cycle; compressing to 25 pages would sacrifice clarity and completeness.

## VII. CONCLUSION OF APPLICATION

Petitioner has invested substantial effort to compress 5,500+ pages of materials into 50 pages of organized argument and has represented there is still the most important material missing from the record due to the AG refusing to comply with basic court orders to upload the entire lower court record that bears merits to my claims. This represents a good-faith effort to balance thoroughness with concision while accommodating disabilities and pro se status. The Court is respectfully requested to grant leave to file this integrated motion, which serves judicial economy and ensures comprehensive treatment of serious issues involving willful violation of three court orders over five months.

Alternatively, if the Court is not inclined to permit this integrated format, Petitioner respectfully requests the Court indicate which portions should be separated, and Petitioner will promptly comply. However, for the reasons stated, Petitioner believes the integrated format best serves judicial economy and ensures the AG cannot selectively respond to portions while ignoring others.

**NOTICE OF MOTION**

TO RESPONDENT AND ITS ATTORNEY OF RECORD:

PLEASE TAKE NOTICE that Petitioner Robert Anthony Emert will moves this Court for an Order:

1. IMPOSING SANCTIONS against Respondent for willful violation of this Court's three separate orders requiring complete lodgment of the state court record;

2. COMPELLING Respondent to lodge the complete prosecution file, discovery compliance documentation, Brady materials, and all other materials ordered by this Court within 30 days or file a sworn declaration explaining why production is impossible;

3. DRAWING ADVERSE INFERENCES that the missing evidence establishes Petitioner's constitutional claims;

4. EXTENDING Petitioner's Traverse deadline to 60 days from the date of complete lodgment; and

5. GRANTING such other and further relief as the Court deems just and proper.

This Motion is made pursuant to Fed. R. Civ. P. 11(c), Rule 37(b)(2), this Court's inherent authority, Rule 5 of the Rules Governing § 2254 Cases, and is based on this Notice of Motion, the Memorandum of Points and Authorities filed concurrently herewith, the Declaration of Robert Emert, all papers and pleadings on file in this action, and such oral and documentary evidence as may be presented at the hearing.

PROCEDURAL COMPLIANCE - RULE 11(c)(2) SAFE HARBOR

This Motion was served on Respondent's counsel on October 17, 2025, pursuant to Fed. R. Civ. P. 11(c)(2), providing the required twenty-one day safe harbor period. That period expired on November 7, 2025, without any cure, supplementation, or response from Respondent addressing the document production deficiencies. This Motion is therefore ripe for adjudication.

**EXECUTIVE SUMMARY**

THE PATTERN: Three Court Orders, Five Months, Zero Compliance

On and around May 16, 2025, this Court issued three separate, explicit orders requiring Respondent to lodge the complete state court record:

• ORDER #1: "Respondent is directed to lodge the relevant state court records..."
• ORDER #2: "Respondent must lodge with the Court all records bearing on Respondent's contention..."
• ORDER #3: "Respondent must lodge with the Court all records bearing on the merits of Petitioner's claims."

Five months later, Respondent has violated all three orders by withholding:

X Complete prosecution file from San Diego District Attorney
X Discovery compliance documentation (logs, certificates, Brady checklists)
X Investigator files with audio recordings (DAI Peña's 47 admissions)
X FBI transcript and threat assessment proving no threats were made
X DDA Balerio's interview with victim proving case lacked merit
X Public Defender correspondence proving fabricated "limited scope"
X All Brady/Giglio materials bearing on constitutional claims

THE PROOF: Respondent's Written Admissions

On October 10, 2025, Deputy Attorney General Chenelia made three devastating written admissions:

1. "I would not expect to find these documents in the court record" - admitting narrow interpretation of Court's order

2. "I would suggest contacting your defense attorney..." - improperly deflecting the AG's court-ordered duty onto Petitioner

3. "We have lodged...all documents in our possession" - falsely certifying completeness without ever requesting the complete DA file – notably, the related circuit court case does have some of the information from the District Attorney's files.

When Petitioner asked the simple question: "Did the Attorney General's office request the complete prosecution file from the San Diego District Attorney's office?" — Respondent's answer was, and continues to be, complete silence.

THE EVIDENCE EXISTS: Parallel § 1983 Case Proves It

This is not a dispute about whether documents exist. In the related federal civil rights case (Case No. 3:24-cv-00671-JO-MSB), San Diego County Counsel produced a 2,000+ page Supplemental Excerpt of Record (SER) from the exact same District Attorney's prosecution file. While that record is incomplete as well, that production proves:

- The prosecution file exists and is accessible to State attorneys
- The file contains all the materials this Court ordered lodged
- The AG's failure to produce these materials here is willful and deliberate

THE SAFE HARBOR: 21 Days of Strategic Silence

On October 17, 2025, Petitioner served a Rule 11(c)(2) safe harbor motion identifying every missing document category and providing 21 days to cure. During this period, Respondent:

✗ Made no supplemental lodgment

✗ Provided no sworn explanation

✗ Did not request additional time

✗ Maintained complete strategic silence

The safe harbor period expired November 7, 2025. This Motion is now ripe.

THE INESCAPABLE TRILEMMA

Respondent now faces three scenarios, each warranting sanctions:

### SCENARIO 1: Materials Never Created

If discovery logs and Brady documentation were never created, this proves no
systematic Brady review occurred,
establishing Petitioner's Ground Two Brady claims as a matter of law.

**Because a Brady review cannot have occurred without creation of compliance
documentation, their non-existence is dispositive evidence that the review
never took place.**

The State cannot benefit from failing to create required records.

### SCENARIO 2: Materials Destroyed

If records existed but were destroyed, this constitutes spoliation warranting
severe sanctions and adverse inferences that destroyed materials would have been
favorable to Petitioner.

### SCENARIO 3: Materials Exist But State Refuses Production

If materials exist and Respondent refuses to produce them despite three explicit court orders over five months, this constitutes willful defiance warranting the most severe sanctions available.

Under any scenario, sanctions are mandatory. Respondent's five-month strategic silence proves Respondent cannot provide an acceptable explanation.

**The Relief Requested**

Petitioner seeks measured, graduated relief: an order compelling complete lodgment within 30 days; adverse inferences that missing evidence establishes constitutional violations; extension of the Traverse deadline to 60 days from complete lodgment; and escalating monetary sanctions for continued non-compliance. The proposed order at the end of this motion provides a four-tier structure that prioritizes compulsion over terminating sanctions, giving the AG multiple opportunities to comply before severe consequences take effect. This approach is consistent with *Henry v. Gill Indus., Inc.*, 983 F.2d 943, 946 (9th Cir. 1993), and serves both judicial economy and the interests of justice.

## TABLE OF CONTENTS

### Contents

**APPLICATION FOR LEAVE TO EXCEED PAGE LIMITS** ........ 3
IV. ADA ACCOMMODATION ........ 5
VI. GOOD CAUSE EXISTS ........ 7
**NOTICE OF MOTION** ........ 9
PROCEDURAL COMPLIANCE - RULE 11(c)(2) SAFE HARBOR ........ 10
**EXECUTIVE SUMMARY** ........ 11
**TABLE OF CONTENTS** ........ 14
**TABLE OF AUTHORITIES** ........ 16

MEMORANDUM OF POINTS AND AUTHORITIES ...........................................................21

I. INTRODUCTION ...........................................................................................................21

II. STATEMENT OF FACTS: THE TIMELINE OF DEFIANCE ....................................25

The silence is an admission............................................................................................32

III. LEGAL STANDARDS ................................................................................................36

A. Rule 11(c): Sanctions for Baseless Factual Contentions ........................................36

B. Rule 37(b): Sanctions for Violating Court Orders....................................................38

Available Sanctions Under Rule 37(b)(2) .....................................................................39

"Why This Case Warrants Sanctions Beyond Mere Supplementation" .......................41

C. Inherent Authority: Bad Faith Obstruction..............................................................42

D. Rule 5: Mandatory Lodgment in § 2254 Cases........................................................44

E. Adverse Inference Doctrine .......................................................................................45

The withheld materials are directly relevant to every constitutional claim:....................47

Appropriate Adverse Inferences .......................................................................................48

F. Brady's Affirmative Duty to Search and Disclose ....................................................48

G. Banks v. Dretke: State Cannot Benefit from Own Failure...............................................49

IV. ARGUMENT ................................................................................................................50

A. The Trilemma: Every Scenario Warrants Sanctions .................................................50

1. Brady Compliance Documentation (Smoking Gun #1) ............................................53

2. DAI Peña's 47 Recorded Admissions (Smoking Gun #2) ........................................55

3. FBI Transcript (full transcript) and FBI Threat Assessment – never provided to this day! (Smoking Gun #3) ........................................................................................................58

4. DDA Balerio Interview with Victim (Smoking Gun #4)............................................60

5. Breached Plea Agreement Evidence (Smoking Gun #5) ...........................................62

6. Public Defender Fabricated "Limited Scope" (Smoking Gun #6)..............................64

The Timeline Proves Willfulness ....................................................................................67

ADMISSION #1: ..............................................................................................................68

ADMISSION #2: ..............................................................................................................68

ADMISSION #3: ..............................................................................................................68

D. All Requirements for Sanctions Are Satisfied ..........................................................70

E. Respondent's Predictable Defenses Fail ...............................................................71

The AG will likely raise two defenses. Both fail as a matter of law. .......................................71

Defense #1: "These materials are not in our possession" .................................................71

Defense #2: "Tollett bars production of these materials" ..................................................73

FAILS because: ...............................................................................................73

The "Knowledge" Argument is a Logical and Legal Fraud ......................................73

Moreover: Antecedent Constitutional Violations Are Not Waived ...........................75

The AG Cannot Invoke Tollett to Avoid Lodging the Very Evidence That Defeats
Tollett...............................................................................................................76

V. RELIEF REQUESTED .................................................................................77

DECLARATION OF ROBERT EMERT.................................................................86

CERTIFICATE OF SERVICE............................................................................90

[PROPOSED] ORDER GRANTING...................................................................92

MOTION FOR SANCTIONS AND TO................................................................92

COMPEL COMPLETE LODGMENT .................................................................92

I. FINDINGS .................................................................................................93

II. TIER 1 – IMMEDIATE RELIEF (EFFECTIVE UPON ENTRY OF ORDER) ...........94

III. TIER 2 – IF NO COMPLIANCE WITHIN 30 DAYS .................................................95

IV. TIER 3 – IF NO COMPLIANCE WITHIN 60 DAYS.................................................96

V. TIER 4 – IF NO COMPLIANCE WITHIN 90 DAYS .................................................97

VI. GENERAL PROVISIONS.............................................................................97

## TABLE OF AUTHORITIES

CASES

Akiona v. United States, 938 F.2d 158 (9th Cir.
1991) .......................................................................................... 17

Banks v. Dretke, 540 U.S. 668
(2004) ........................................................................... 6, 18, 19, 21

Blackledge v. Allison, 431 U.S. 63
(1977) .......................................................................................... 28

Brady v. Maryland, 373 U.S. 83
(1963) .................................................................. 1, 4, 5, 6, 9, passim

Chambers v. NASCO, Inc., 501 U.S. 32
(1991) .......................................................................................... 16

Cullen v. Pinholster, 563 U.S. 170
(2011) ..................................................................................... 2, 28

Duvall v. Cnty. of Kitsap, 260 F.3d 1124 (9th Cir.
2001) ..................................................................................... 3, 35

Erickson v. Pardus, 551 U.S. 89
(2007) ............................................................................................ 3

Fink v. Gomez, 239 F.3d 989 (9th Cir.
2001) .................................................................................... 15, 27

Gaston v. Palmer, 417 F.3d 1030 (9th Cir.
2005) .......................................................................................... 27

Giglio v. United States, 405 U.S. 150
(1972) ........................................................... 5, 9, 10, 18, 20, passim

Glover v. BIC Corp., 6 F.3d 1318 (9th Cir.
1993) .......................................................................................... 17

Gulbrandson v. Ryan, 738 F.3d 976 (9th Cir.
2013) .......................................................................................... 16

Harris v. Nelson, 394 U.S. 286
(1969) ................................................................................ 17, 27, 31

Henry v. Gill Indus., Inc., 983 F.2d 943 (9th Cir. 1993) ............................................................. 6, 14, 28, 34, 37

Hibbler v. Benedetti, 693 F.3d 1140 (9th Cir. 2012) ........................................................................................ 15

Hill v. Lockhart, 474 U.S. 52 (1985) ........................................................................................................ 28

Hoffman v. Arave, 236 F.3d 523 (9th Cir. 2001) ....................................................................... 9, 16, 28

In re Brown, 17 Cal. 5th 1223 (2022) .................................................................................. 18, 19, 20

In re Napster, Inc. Copyright Litig., 462 F. Supp. 2d 1060 (N.D. Cal. 2006) ........................................................................... 14

Kyles v. Whitley, 514 U.S. 419 (1995) .................................................................................. 18, 19, 20

LaGrand v. Stewart, 133 F.3d 1253 (9th Cir. 1998) ............................................................. 2, 11, 17, 26, 27

Lavi v. Superior Court, 4 Cal. 5th 68 (2017) ........................................................................................................ 28

Leon v. IDX Systems Corp., 464 F.3d 951 (9th Cir. 2006) .................................................................... 16, 17, 19, 27

Majoy v. Roe, 296 F.3d 770 (9th Cir. 2002) ........................................................................................................ 17

Manuel v. City of Joliet, 580 U.S. 357 (2017) .................................................................................. 22, 23, 28

Martinez v. Ryan, 566 U.S. 1 (2012) ........................................................................................................ 25

Napue v. Illinois, 360 U.S. 264 (1959) ........................................................................................................ 23

Payne v. Exxon Corp., 121 F.3d 503 (9th Cir. 1997) ............................................................ 15

Pennsylvania v. Ritchie, 480 U.S. 39 (1987) ................................................................. 18, 19, 21

Santobello v. New York, 404 U.S. 257 (1971) ............................................................................ 24

Strickland v. Washington, 466 U.S. 668 (1984) ............................................................................ 25

Styers v. Schriro, 547 F.3d 1026 (9th Cir. 2008) ............................................................................ 16

Tennessee v. Lane, 541 U.S. 509 (2004) ............................................................................... 3

Tollett v. Henderson, 411 U.S. 258 (1973) ........................................................... 2, 15, 28

STATUTES

28 U.S.C. § 2254 .......................................... 4, 6, 16, 18, 30, passim

Cal. Gov't Code § 12511 ....................................................................... 27

Cal. Penal Code § 1054 ....................................................................... 17, 18, 19, 20

Cal. Penal Code § 1054.9 .................................................................. 17, 19

RULES

Fed. R. Civ. P. 5 .......................................... 4, 6, 8, 10, 11, passim

Fed. R. Civ. P. 11 .......................................... 4, 5, 6, 7, 12, passim

Fed. R. Civ. P. 37 ................................................................... 4, 6, 14, 15, 16, passim

Fed. R. Civ. P. 83 ...................................................................................... 3

Rules Governing Section 2254 Cases, Rule 5 ................................................. 4, 16

REGULATIONS

28 C.F.R. § 35.160 .................................................................................. 3, 35

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

"Federal courts do not issue orders as suggestions."

This Court ordered complete lodgment three times. The Attorney General violated those orders three times. The evidence exists—the County already produced it in the parallel § 1983 case. The AG refuses to lodge it here because it proves Petitioner's constitutional claims.

This motion asks whether the State may treat explicit judicial orders as discretionary suggestions. If the State can ignore explicit judicial directives for five months without consequence, federal habeas corpus becomes an empty formality.

The Systematic Nature of the Violation

This is not a single oversight or good-faith misunderstanding. This is a calculated, five-month pattern of defiance:

Stage 1 (May-September 2025): This Court issues three separate orders with escalating breadth, culminating in a mandate to produce "all records bearing on the merits of Petitioner's claims." Respondent has four months to comply.

Stage 2 (September 22, 2025): Respondent files an incomplete lodgment containing only clerk's and reporter's transcripts—the minimum possible compliance—while withholding all prosecution files, discovery documentation, and exculpatory evidence.

Stage 3 (October 8-10, 2025): When Petitioner informally inquires about the missing materials, Respondent's counsel makes written admissions revealing the AG never requested the complete prosecution file and interpreted this Court's order as limited to "documents in the court record"—a definition that excludes the very materials most relevant to habeas review.

Stage 4 (October 17-November 7, 2025): Petitioner serves a formal Rule 11(c)(2) safe harbor motion providing 21 days to cure. Respondent's response: complete strategic silence. No supplementation, no explanation, no cure.

Stage 5 (November 7, 2025): The safe harbor period expires. This Motion is filed.

At each stage, Respondent chose obstruction over compliance. This pattern demonstrates willfulness—the essential element for sanctions.

The Evidence That Proves Bad Faith

Respondent cannot claim ignorance about what materials exist or where they are located. In the related § 1983 case (Case No. 3:24-cv-00671-JO-MSB), San Diego County Counsel—representing overlapping State interests—produced a 2,000+ page Supplemental Excerpt of Record from the exact same District Attorney's prosecution file that Respondent refuses to lodge here.

This parallel production proves three critical facts:

1. The materials exist and are preserved;
2. State attorneys have access to the complete prosecution file; and
3. The AG's failure to lodge these materials in this habeas case is a deliberate strategic choice, not an unavoidable circumstance.

The Written Admissions

On October 10, 2025, Petitioner asked Deputy Attorney General Chenelia a direct question:

"Did the Attorney General's office request the complete prosecution file from the San Diego District Attorney's office?"

Ms. Chenelia's response was revealing—not for what it said, but for what it refused to say. She responded: "We have lodged with the Court...all documents in our possession pertaining to your case."

This non-answer is an admission. If the AG had requested the complete file, Ms. Chenelia would have said so. Her evasion proves the AG never made the request, which means the AG never complied with this Court's orders.

Ms. Chenelia also made two other damaging admissions:

1. "I would not expect to find these documents in the court record" — revealing the AG interprets "state court record" to exclude prosecution files, in direct contravention of Rule 5 and controlling Ninth Circuit authority.

2. "I would suggest contacting your defense attorney...or the district attorney's office" — improperly attempting to shift the AG's court-ordered duty onto Petitioner, creating a Kafkaesque impossibility where Petitioner must prove prosecutorial suppression by asking the prosecutors for evidence of their own misconduct.

These admissions, made in writing and unrebutted, establish bad faith as a matter of law.

Why This Matters: The Statute of Limitations

This is not an academic dispute about discovery obligations. The stakes are concrete and urgent. The AEDPA one-year statute of limitations expires in April 2026. Each day of the AG's obstruction brings Petitioner closer to permanent procedural default on meritorious constitutional claims.

The AG's strategy is transparent: withhold the evidence that proves Petitioner's claims until the limitations period expires, then argue the claims are time-barred. This Court has the authority—and the duty—to end this obstruction.

The Relief Requested

Petitioner seeks measured, appropriate relief:

1. An order compelling complete lodgment within 30 days;
2. If lodgment is impossible, a sworn declaration from the AG explaining why;
3. Adverse inferences that missing evidence establishes constitutional violations;
4. Extension of the Traverse deadline to 60 days from complete lodgment;
5. Sanctions sufficient to vindicate this Court's authority; and
6. ADA accommodation requiring searchable electronic format.

This relief serves multiple purposes: ensuring this Court has the complete record it ordered, preventing the AG from running out the clock, establishing consequences for defying court orders, and protecting Petitioner's due process rights.

Federal habeas review is meaningless if the State can refuse to produce the state court record and suffer no consequences. This Court's orders must mean something. Compliance cannot be optional.

## II. STATEMENT OF FACTS: THE TIMELINE OF DEFIANCE

A. On and around May 16, 2025: This Court's Three Explicit Orders

On May 16, 2025, this Court issued its Order to Show Cause and Order Directing Response (ECF No. 8). The Order contained three separate directives requiring lodgment of the state court record, each using increasingly comprehensive language:

ORDER #1 (ECF No. 8, Page 4, ¶4):
"Respondent is directed to lodge the relevant state court records in San Diego Superior Court Case No. SCD297230, including any documents related to direct appeals and/or applications for collateral relief filed in state court, along with its response to the Petition."

ORDER #2 (ECF No. 8, Page 5, ¶5):
"At the time the motion to dismiss is filed, Respondent must lodge with the Court all records bearing on Respondent's contention in this regard."

ORDER #3 (ECF No. 8, Page 5-6, ¶6):
"At the time the answer is filed, Respondent must lodge with the Court all records bearing on the merits of Petitioner's claims."

The final order is dispositive: "all records bearing on the merits of Petitioner's claims." This necessarily includes:

- Complete prosecution files from San Diego District Attorney;
- Discovery compliance documentation (logs, certificates, Brady checklists);
- Investigator files and witness statements;
- All Brady/Giglio materials relevant to Petitioner's constitutional claims; and

• Any materials the state courts "relied on" or "could have relied on" in adjudicating Petitioner's claims. Hoffman v. Arave, 236 F.3d 523, 530 (9th Cir. 2001).

These orders were clear, unambiguous, and mandatory. The Court's use of "must" and "shall" left no room for discretion.

B. September 22, 2025: Incomplete Lodgment and Service Violations

Respondent had four months to comply—from May 16 to September 22, 2025. On September 22, Respondent filed:

- Answer to Petition (ECF No. 15)
- Memorandum of Points and Authorities (ECF No. 15-1)
- Notice of Lodgment (ECF No. 16)
- Twenty-seven lodgments (ECF Nos. 16-1 through 16-27)

Critical Problem #1: None of these documents were served on Petitioner.

This Court's May 16 Order (ECF No. 8, ¶10) explicitly states: "All documents filed with the Court, including lodgments, must be accompanied by a proof of service...Documents without an accompanying certificate of service will be returned to the submitting party and will be disregarded by the Court."

Despite this clear warning, Respondent filed the Answer and lodgments without serving Petitioner. Petitioner discovered these filings only through independent PACER monitoring on October 8, 2025—sixteen days after filing.

Critical Problem #2: The lodgment was incomplete.

Upon review, the lodgment consisted entirely of clerk's transcripts and reporter's transcripts from the criminal proceedings in San Diego Superior Court Case No. SCD297230. It did not include:

✗ Any prosecution files

✗ Any discovery compliance documentation

✗ Any investigator files or recordings

✗ Any Brady/Giglio materials

✗ Any correspondence proving the Public Defender fabricated "limited scope"

✗ Any materials from the District Attorney's file proving prosecutorial knowledge

This was not substantial compliance. This was minimal compliance—lodging only the materials that would have been public regardless of this Court's order, while withholding everything that would prove Petitioner's constitutional claims.

Critical Problem #3: PACER Access Obstruction

Significant portions of the lodgment appear to be sealed or restricted on PACER, preventing Petitioner—a pro se disabled litigant—from accessing materials that should be part of the public habeas record. Petitioner requested clarification from Respondent about the sealing and any sealing order. Respondent never responded.

This creates an additional barrier: even the incomplete materials Respondent did lodge are effectively concealed from Petitioner through PACER restrictions.

Compounding these record access problems, Petitioner's own habeas exhibits—filed with the petition and containing critical evidence such as DAI Peña's 47 recorded admissions, FBI call transcripts, and Public Defender correspondence proving prosecutorial misconduct—remain inaccessible on PACER despite Civil Local Rule 5.4.3 and Rule 5(a), Rules Governing § 2254 Cases, requiring the Clerk

to upload exhibits to the electronic docket. This forces Petitioner to extensively quote and explain evidence within this motion rather than simply citing to exhibit page numbers, contributing to the length but necessary for the Court's meaningful review of Petitioner's constitutional claims. The AG's incomplete lodgments are restricted, and Petitioner's own exhibits are unavailable—creating a complete record access failure from both directions.

This Court acknowledged the service violation in its October 28, 2025 Order (ECF No. 22), noting that "Respondent admits that Petitioner received those filings nearly three weeks late due to their clerical error."

But this was not the first service violation. On August 28, 2025, Respondent filed an Application for Extension of Time (ECF No. 14) without serving Petitioner. This established a pattern: Respondent routinely files documents in federal court without providing notice to the opposing party, in direct violation of basic procedural rules and this Court's explicit orders.

C. October 8-10, 2025: Email Exchange Reveals Bad Faith

Upon finally receiving the Answer and incomplete lodgment in early October, Petitioner attempted informal resolution through email correspondence with Deputy Attorney General Kristen K. Chenelia. This exchangereveals the AG's calculated strategy of evasion and deflection.

October 8, 2025, 1:51 PM — Petitioner's Initial Email

Petitioner sent an email to Ms. Chenelia demanding copies of the Answer and lodgments that had been filed without service, documenting the violation of Fed. R. Civ. P. 5 and this Court's Order (ECF No. 8, ¶10).

October 8, 2025, 4:28 PM — AG Acknowledges Service Failure

Ms. Chenelia responded: "I have looked into this, and it appears my staff failed to include you when serving these documents."

This admission establishes notice that Respondent's office has systemic compliance problems with basic procedural requirements.

October 8, 2025, 4:51 PM — AG Refuses Electronic Copies

Petitioner requested electronic copies of the lodgments (as ADA accommodation for a disabled pro se litigant who requires searchable documents). Ms. Chenelia refused: "It is not our policy to provide lodgments because they should already be in your possession."

This response is revealing. If Respondent believed lodgments "should already be in Petitioner's possession," why were they not served? The circular logic exposes bad faith.

October 9, 2025, 9:59 AM — Petitioner Explains Court's Three Orders

Petitioner sent a comprehensive email explaining this Court's three explicit orders requiring complete lodgment and identifying specific missing document categories. Petitioner quoted ECF No. 8 verbatim, emphasizing that the final order required "all records bearing on the merits of Petitioner's claims."

Petitioner then listed specific categories of documents that "bear on the merits" and should have been lodged:

- All motions filed in Superior Court Case No. SCD297230
- All hearing transcripts
- Complete records from Court of Appeal habeas (D083239)
- Complete records from California Supreme Court habeas (S284407)

• All exhibits submitted to or considered by state courts
• Recorded statements referenced in state court filings
• Family court records bearing on jurisdictional defect
• Communications with DA's office proving cooperation
• Discovery compliance documentation

October 10, 2025, 12:06 PM — Petitioner's Specific Request on Discovery Documentation

Petitioner sent another email specifically addressing discovery compliance documentation:

"In reviewing the approximately 3,500 pages provided, I cannot locate standard discovery compliance documentation that should be part of the criminal case file. Specifically, I do not see:

1. Discovery Index/Log
2. Certificate of Discovery Compliance
3. Proof of Service to defense counsel
4. Defense Receipt/Acknowledgment
5. Brady Compliance Documentation

These documents are standard components of criminal case files in California and document what was provided to defense counsel prior to the April 26, 2023 plea."

This was a specific, reasonable request focused on standard prosecution file materials that directly bear on Petitioner's Brady claims in Ground Two of the habeas petition.

October 10, 2025, 12:24 PM — AG's Three Devastating Admissions

Ms. Chenelia's response contained three statements that form the evidentiary foundation for this motion:

ADMISSION #1: "I would not expect to find these documents in the court record."

This proves Respondent interpreted this Court's order narrowly, limiting "state court record" to formal court filings while excluding prosecution files and discovery documentation—in direct violation of Rule 5 and Ninth Circuit authority. LaGrand v. Stewart, 133 F.3d 1253, 1258 (9th Cir. 1998).

ADMISSION #2: "The matter of discovery is generally handled between your defense attorney and the district attorney's office...I would suggest contacting your defense attorney about locating these documents, or if you believe the documents were filed with the court, you may wish to contact the superior court clerk's office."

This is an improper deflection. The Court ordered the AG to lodge the record, not Petitioner. The AG cannot transfer its court-ordered duty to Petitioner or to Petitioner's former defense counsel.

Moreover, this creates a Kafkaesque impossibility: Petitioner's claims allege Brady violations by the District Attorney. The AG is asking Petitioner to prove prosecutorial suppression by requesting evidence from the prosecutors who allegedly suppressed it.

ADMISSION #3: "We have lodged with the Court and supplied you with all documents in our possession pertaining to your case."

This is a false certification. The AG conflates "documents in our possession" with "documents in the State's possession"—a distinction without legal difference. The AG represents the State of California, not just the AG's office. If the San Diego

District Attorney has materials bearing on this case, those materials are in the State's possession and must be lodged.

Most critically, this statement reveals the AG never requested the complete prosecution file from the San Diego District Attorney's office.

October 10, 2025, 1:10 PM — Petitioner's Direct Question

Petitioner then asked the question that exposes the entire strategy:

"Did the Attorney General's office request the complete prosecution file from the San Diego District Attorney's office?"

Ms. Chenelia's response to this direct, yes-or-no question was, and continues to be, complete silence.

No response on October 10.
No response during the 21-day safe harbor period.
No response in the five months since this Court's initial order.

The silence is an admission. If the AG had requested the complete file, Ms. Chenelia would have said so. Her refusal to answer—maintained through five months of litigation—proves the AG never made the request, never obtained the materials, and therefore never complied with this Court's orders.

Why the Silence Matters

This strategic silence is not protected attorney work product or privileged information. Whether the AG requested materials from another State agency is a basic fact question directly relevant to compliance with court orders.

The AG's refusal to answer proves one of two things:

1. The AG never requested the materials (establishing willful non-compliance); OR
2. The AG requested them, received them, and is now concealing them (establishing bad faith).

Either way, sanctions are warranted.

D. October 17-November 7, 2025: Safe Harbor Period Expires Without Cure

Recognizing that Ms. Chenelia's October 10 admissions proved Rule 11(b) violations (factual contentions lacking evidentiary support), Petitioner prepared this Motion for Sanctions.

Consistent with Fed. R. Civ. P. 11(c)(2), which requires service twenty-one days before filing to provide an opportunity to cure, Petitioner served Respondent with a complete draft of this Motion on October 17, 2025.

The safe harbor motion:

✓ Identified each missing document category with specificity
✓ Explained why each category bears on the merits
✓ Cited the three court orders Respondent violated
✓ Quoted Ms. Chenelia's October 10 admissions
✓ Provided 21 days to cure (through November 7, 2025)
✓ Specified exactly what cure required:
  • Lodge complete prosecution file from San Diego DA
  • Explain PACER sealing/restriction

• Provide electronic copies (ADA accommodation)
• Certify in writing that lodgment is now complete

October 20, 2025 — Respondent's Strategic Silence

Three days after receiving the safe harbor motion, Respondent filed a response (ECF No. 20) to Petitioner's request for extension of time to file Traverse.

The response addressed only the time extension issue. It made no mention of:

✗ The document production deficiencies
✗ The missing prosecution files
✗ The incomplete lodgment
✗ Any intent to supplement
✗ Any explanation for non-compliance

This selective response was strategic. Respondent engaged with the easy issue (time extension) while maintaining complete silence on the hard issue (why haven't you produced the ordered materials?).

This was not oversight. This was calculated avoidance. Respondent knew about the document production issue—Petitioner had served a 40-page safe harbor motion three days earlier. Respondent chose to ignore it.

October 20-November 7, 2025 — The Silence Continues

For the remainder of the safe harbor period—eighteen more days—Respondent:

✗ Made no supplemental lodgment

X Filed no declaration explaining non-compliance

X Requested no additional time

X Provided no certification of completeness

X Made no attempt to cure any deficiency

November 7, 2025 — Safe Harbor Period Expires

The twenty-one day safe harbor period expired on November 7, 2025, without any cure, correction, or even acknowledgment from Respondent.

Under Fed. R. Civ. P. 11(c)(2), this Motion may now be filed.

E. The Five-Month Pattern of Calculated Non-Compliance

Respondent has now had three explicit opportunities to comply with this Court's lodgment orders:

OPPORTUNITY #1: After this Court's May 16, 2025 initial order, Respondent had four months (until September 22) to obtain and lodge the complete file.

Result: Incomplete lodgment filed without serving Petitioner.

OPPORTUNITY #2: After Petitioner's informal October 8-10 inquiry noting the incompleteness, Respondent could have supplemented the lodgment immediately.

Result: Strategic evasion through email, no supplementation.

OPPORTUNITY #3: During the October 17-November 7 safe harbor period (21 days), Respondent had formal notice and specific instructions on what to produce.

Result: Complete strategic silence.

At each stage, Respondent chose obstruction over compliance. This five-month pattern demonstrates:

- Willfulness (multiple opportunities to comply, all ignored)
- Bad Faith (strategic silence rather than good-faith explanation)
- Prejudice to Petitioner (cannot file Traverse without complete record)
- Defiance of Court Authority (three separate orders violated)

The pattern is the proof. This is not inadvertence. This is policy.

III. LEGAL STANDARDS

A. Rule 11(c): Sanctions for Baseless Factual Contentions

Federal Rule of Civil Procedure 11(b) requires that an attorney's signature on any court filing certifies:

(1) It is not being presented for any improper purpose;
(2) The legal contentions are warranted by existing law;
(3) The factual contentions have evidentiary support; and
(4) The denials of factual contentions are warranted on the evidence.

Fed. R. Civ. P. 11(b)(3)-(4) .

The AG's Answer (ECF No. 15) denies Petitioner's factual contentions regarding Brady violations, prosecutorial knowledge, and suppressed exculpatory evidence.

But the AG has no evidentiary basis for these denials because the AG admittedly never requested or reviewed the complete prosecution file.

Deputy AG Chenelia's October 10, 2025 email admission—"We have lodged...all documents in our possession"—proves the AG did not request materials from the District Attorney before filing denials. This violates Rule 11(b)'s requirement of reasonable inquiry.

Rule 11(c)(2) Safe Harbor

Rule 11(c)(2) requires that sanctions motions:

   • Be served separately on the opposing party;
   • Describe the specific conduct allegedly violating Rule 11(b);
   • Not be filed or presented to the court if the challenged paper is withdrawn or corrected within 21 days; and
   • Be filed if no cure occurs within 21 days.

All requirements are satisfied:

   ✓ Service: October 17, 2025
   ✓ Specific conduct described: Missing prosecution files, discovery logs, Brady materials
   ✓ 21-day period: October 17-November 7, 2025
   ✓ No cure within 21 days: Respondent remained silent

This Motion is properly before the Court.

Appropriate Sanctions Under Rule 11(c)

Rule 11(c)(4) authorizes monetary and non-monetary sanctions "limited to what suffices to deter repetition." Appropriate sanctions include:

- Monetary sanctions (attorney's fees for bringing this motion);
- Non-monetary sanctions (adverse inferences); and
- Compulsion to comply with court orders.

The Ninth Circuit has approved adverse inferences as Rule 11 sanctions where a party's misrepresentations prevent discovery of evidence. In re Napster, Inc. Copyright Litig., 462 F. Supp. 2d 1060, 1078 (N.D. Cal. 2006).

B. Rule 37(b): Sanctions for Violating Court Orders

Although habeas cases do not involve formal discovery, Rule 37 applies to enforce court orders requiring document production. Henry v. Gill Industries, Inc., 983 F.2d 943, 947 (9th Cir. 1993).

Lodgment orders in habeas proceedings are analogous to discovery orders under Rule 37, as both compel production of materials essential for merits review. See Hibbler v. Benedetti, 693 F.3d 1140, 1147 (9th Cir. 2012) (requiring complete records for habeas adjudication); Payne v. Exxon Corp., 121 F.3d 503, 507 (9th Cir.1997) (sanctions appropriate for willful violation of production orders). Respondent&#39;s failure to lodge the prosecution file and Brady materials despite three explicit court directives constitutes such willful non-compliance, warranting remedies under Rule 37(b)(2)(A).

This Court issued three orders requiring complete lodgment on May 16, 2025 (ECF No. 8, ¶¶4, 5, 6). Each order remains unfulfilled. The AG's partial lodgments constitute willful violations justifying Rule 37(b)(2) sanctions.

Available Sanctions Under Rule 37(b)(2)

When a party fails to obey a court order, the court may:

    (A) Direct that designated facts be taken as established (adverse inferences);
    (B) Prohibit the disobedient party from supporting or opposing designated claims;
    (C) Strike pleadings in whole or in part;
    (D) Stay proceedings until the order is obeyed;
    (E) Dismiss the action or proceeding; or
    (F) Render default judgment.

Fed. R. Civ. P. 37(b)(2)(A)-(F).

The Fink Factors

The Ninth Circuit applies a multi-factor test (the "Fink factors") to determine which sanctions are appropriate:

    (1) The public's interest in expeditious resolution of litigation;
    (2) The court's need to manage its docket;
    (3) The risk of prejudice to the party seeking sanctions;
    (4) The public policy favoring disposition on the merits; and
    (5) The availability of less drastic sanctions.

Fink v. Gomez, 239 F.3d 989, 992 (9th Cir. 2001).

All five factors favor sanctions here:

Factor 1 — Public Interest in Expeditious Resolution

The public has a profound interest in preventing wrongful incarceration and ensuring constitutional rights are vindicated. The AG's five-month obstruction prevents expeditious resolution by withholding evidence necessary to adjudicate the merits.

Factor 2 — Docket Management

The AG's suppression prevents this case from proceeding. Petitioner cannot file a meaningful Traverse without the complete record. The Court cannot rule on actual innocence, Brady violations, or Tollett waiver without the suppressed evidence. Compelled production is necessary for docket management.

Factor 3 — Risk of Prejudice

Petitioner faces catastrophic prejudice. The AEDPA statute of limitations expires in April 2026. Each day of AG obstruction brings Petitioner closer to permanent procedural default on meritorious constitutional claims. The prejudice is irreparable.

Factor 4 — Policy Favoring Merits Disposition

Ironically, compelling complete lodgment serves this policy. The AG's suppression prevents merits disposition by hiding evidence necessary for adjudication. The remedy that best serves merits review is the remedy Petitioner seeks: complete production.

Factor 5 — Less Drastic Sanctions

This Court has already tried lesser measures—three separate orders over five months. Petitioner attempted informal resolution through email. Petitioner provided 21-day safe harbor notice. The AG ignored all of it. No lesser sanction remains available. Adverse inferences and compelled production are the minimum necessary to vindicate this Court's authority.

"Why This Case Warrants Sanctions Beyond Mere Supplementation"

Courts typically respond to incomplete habeas lodgments by simply ordering supplementation. *See, e.g., Nettles v. Grounds*, 830 F.3d 922 (9th Cir. 2016). This Court might reasonably ask: why not just order the AG to supplement here?

**Three reasons:**

**First,** this Court already tried that approach—three times. The May 16, 2025 orders (ECF No. 8, ¶¶4, 5, 6) were explicit, comprehensive directives requiring "all records bearing on the merits." The AG violated all three. A fourth order without consequences would make this Court's orders meaningless.

**Second,** this isn't inadvertent incompleteness—it's willful defiance. The AG admitted in writing that it never requested the prosecution file, interpreted the Court's orders narrowly to avoid compliance, and maintained strategic silence through the 21-day safe harbor period. The AG's refusal to answer whether it requested the DA file (October 10, 2025 email exchange) followed by complete silence through the entire 21-day safe harbor period (October 17 - November 7, 2025), combined with the AG's awareness of the DA files' availability in the related §1983 case (3:24-cv-00671-JO-MSB, where the County produced ~2,000 pages including prosecution materials), confirms bad faith obstruction, not confusion about lodgment requirements.

**Third,** the graduated relief structure ensures proportionality. Tier 1 relief *is* supplementation—exactly what courts typically order. Sanctions only escalate if the AG continues to defy this Court after receiving yet another explicit order with specific deadlines. This approach balances judicial restraint with the need to vindicate court authority.

Unlike typical incompleteness from oversight (as in *Nettles*, where remand sufficed for jurisdictional clarification), here the AG's pattern—violating three explicit orders over five months, despite knowing the materials' relevance from the §1983 SER—warrants deterrence under *Chambers*. While Rule 37 applies to habeas proceedings through incorporation under Habeas Rule 12 (to the extent consistent with habeas statutes), and the Ninth Circuit has expressly applied it to enforce habeas lodgment orders (*Henry v. Gill Industries*, 983 F.2d 943, 947 (9th Cir. 1993)), this Court need not rely solely on Rule 37. The Court's inherent authority to sanction bad-faith conduct that "abuse[s] the judicial process" applies with full force here. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44-45 (1991); *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 765 (1980).

The Consequences of Incomplete Lodgment The Ninth Circuit has granted habeas relief based on incomplete state lodgment combined with suppression of exculpatory evidence. Apelt v. Ryan, 878 F.3d 800, 825-26 (9th Cir. 2017) (vacating conviction where state withheld Brady materials and failed to provide complete record). Here, as in Apelt, the AG's withholding of exculpatory materials—DAI Peña's 47 recorded admissions, FBI threat assessment, Brady compliance documentation—prevents this Court from conducting meaningful AEDPA review and warrants adverse inferences that these materials would establish Petitioner's constitutional claims.

C. Inherent Authority: Bad Faith Obstruction

Even without Rule 11 or Rule 37, this Court possesses inherent authority to sanction bad-faith conduct that abuses the judicial process. Chambers v. NASCO, Inc., 501 U.S. 32, 44-45 (1991).

Inherent authority extends to sanctioning parties who "willfully abuse the judicial process" or engage in conduct "tantamount to bad faith." Id. at 46-47.

The AG's conduct meets this standard:

✓ Defied three direct court orders

✓ Withheld evidence proving Petitioner's constitutional claims

✓ Made false certifications that lodgment is complete

✓ Admitted never requesting materials this Court ordered

✓ Maintained strategic silence through 21-day safe harbor period

✓ Perpetuated obstruction for five months despite repeated opportunities to cure

This is not negligence. This is calculated obstruction of federal habeas review—precisely the type of conduct inherent authority sanctions are designed to remedy.

The Court's inherent authority extends to civil contempt sanctions to compel compliance with court orders. Shillitani v. United States, 384 U.S. 364, 370 (1966) ("Civil contempt is designed to coerce compliance...and may be employed when a party has violated a definite and specific order"). Here, Respondent has violated three definite and specific orders over five months, making contempt sanctions appropriate.

Available Inherent Authority Sanctions

The Supreme Court has recognized that inherent authority sanctions may include:

• Attorney's fees
• Dismissal of claims
• Entry of default judgment
• Adverse inferences

Chambers, 501 U.S. at 44-50; Leon v. IDX Systems Corp., 464 F.3d 951, 958 (9th Cir. 2006) (approving adverse inferences as inherent authority sanctions where party's misconduct prevents fact-finding).

## D. Rule 5: Mandatory Lodgment in § 2254 Cases

Rule 5 of the Rules Governing Section 2254 Cases requires respondent to lodge "the parts of the state-court record that are relevant to the court's determination of the petition."

This duty is reinforced by SD Cal Civ. L.R. HC.2, which specifically mandates in non-capital habeas cases: "respondent shall...lodge with the Clerk all records from the state proceedings." The local rule eliminates any ambiguity about the scope of lodgment—it must be complete.

This duty is mandatory. The State cannot pick and choose which materials to produce based on strategic considerations.

Scope of "State Court Record"

The Ninth Circuit has repeatedly emphasized that Rule 5's lodgment requirement extends beyond the appellate record to encompass "all materials the state court relied on or could have relied on" in adjudicating petitioner's claims. Hoffman v. Arave, 236 F.3d 523, 530 (9th Cir. 2001).

This includes:

- Prosecution files containing Brady materials
- Discovery compliance documentation
- Investigator files and witness statements
- Trial exhibits not in the appellate record
- Any materials bearing on constitutional claims

Gulbrandson v. Ryan, 738 F.3d 976, 993 (9th Cir. 2013); Styers v. Schriro, 547 F.3d 1026, 1034 (9th Cir. 2008).

The AG Cannot Disclaim Responsibility

The AG represents the State of California for all purposes in federal habeas proceedings. The AG cannot disclaim responsibility for materials held by other State agencies such as the District Attorney.

"The State speaks with one voice in federal court." Harris v. Nelson, 394 U.S. 286, 299 (1969).

"The Attorney General must obtain and lodge materials from any State agency, including prosecutors and trial courts." LaGrand v. Stewart, 133 F.3d 1253, 1258 (9th Cir. 1998).

Deputy AG Chenelia's attempt to deflect responsibility—"I would suggest contacting your defense attorney...or the district attorney's office"—directly violates LaGrand. The AG's duty to lodge is non-delegable and comprehensive.

Where, as here, the State withholds records bearing on constitutional claims, courts may draw adverse inferences favoring the petitioner. Majoy v. Roe, 296 F.3d 770, 777 (9th Cir. 2002) (adverse inference appropriate in habeas for non-production of exculpatory materials); see also Akiona v. United States, 938 F.2d 158, 161 (9th Cir.1991). The Court should presume the missing discovery logs and Brady compliance documentation would show suppression of evidence proving Petitioner&#39;s actual innocence and coerced plea.

E. Adverse Inference Doctrine

When a party destroys, conceals, or fails to produce relevant evidence despite a court order, the court may presume the missing evidence would be unfavorable to that party.

Leon v. IDX Systems Corp., 464 F.3d 951, 959 (9th Cir. 2006); Unigard Sec. Ins.
Co. v. Lakewood Eng'g & Mfg. Corp., 982 F.2d 363, 377 (9th Cir. 1992); Glover
v. BIC Corp., 6 F.3d 1318, 1329 (9th Cir. 1993).

Three-Part Test for Adverse Inferences

The Ninth Circuit applies a three-part test:

(1) The party having control over the evidence had an obligation to preserve it
when the duty to preserve arose;

(2) The records were destroyed or not produced with a culpable state of mind;
and

(3) The destroyed or missing evidence was relevant to the claims or defenses of
the party seeking discovery.

Leon, 464 F.3d at 959; Glover, 6 F.3d at 1329.

All three elements are satisfied here:

Element 1 — Duty to Preserve and Produce

The AG has multiple overlapping duties:

• Statutory duty to preserve materials bearing on innocence claims (Cal. Penal
Code § 1054.9);
• Constitutional duty under Brady v. Maryland, 373 U.S. 83 (1963);
• Court-ordered duty under this Court's May 16, 2025 orders (ECF No. 8);

• Rule 5 duty to lodge complete state court record.

The AG cannot reasonably claim it had no duty to preserve and produce these materials.

Element 2 — Culpable State of Mind

Deputy AG Chenelia's October 10, 2025 emails prove culpable state of mind. She admitted the AG:

- • Never requested the complete prosecution file;
- • Interpreted this Court's order narrowly to exclude prosecution files;
- • Believed lodgment was complete despite omitting all Brady materials;
- • Deflected the AG's court-ordered duty onto Petitioner.

This is not negligence. This is intentional non-compliance with knowledge of the Court's orders and the materials' relevance.

Moreover, the AG's strategic silence during the 21-day safe harbor period—despite formal notice and explicit opportunity to cure—demonstrates a deliberate choice to maintain the suppression rather than comply.

Element 3 — Relevance

The withheld materials are directly relevant to every constitutional claim:

- • **Brady compliance logs → Ground Two (Brady violations)**
- • **DAI Peña recordings → Ground One (illegal arrest without probable cause)**
- • **FBI transcript → Grounds One and Two (fabricated threat narrative)**

• **DDA Balerio interview → Ground Two (prosecutorial knowledge)**
• **Plea agreement evidence → Ground Four (involuntary plea)**
• **Public Defender correspondence → Ground Three (ineffective assistance)**

Without these materials, the Court cannot evaluate whether the state court adjudication was "based on an unreasonable determination of the facts" under 28 U.S.C. § 2254(d)(2).

Appropriate Adverse Inferences

**The Court should infer that the withheld evidence would establish:**

**1. No Brady compliance review was ever conducted by prosecution;**

**2. Exculpatory evidence was systematically suppressed;**

**3. Prosecutors knew the case lacked merit but proceeded anyway;**

**4. The guilty plea was coerced through fabricated threats and illegal detention;**

**5. Defense counsel provided ineffective assistance by refusing to investigate; and**

**6. Petitioner's constitutional claims have merit and warrant relief.**

F. Brady's Affirmative Duty to Search and Disclose

The prosecution has an affirmative constitutional duty to search for and disclose Brady material. This duty is not satisfied by passive non-interference with defense investigation.

Kyles v. Whitley, 514 U.S. 419, 437 (1995): "The prosecution's Brady duty extends to evidence known to others acting on the government's behalf, including

police. Prosecutors must therefore learn of favorable evidence known to investigating agencies."

Pennsylvania v. Ritchie, 480 U.S. 39, 57 (1987): "The prosecution must review its files for Brady material, not simply produce what defense requests."

In re Brown, 17 Cal. 5th 1223, 1234-35 (2022): "Prosecutors must establish procedures for Brady compliance."

Absence of Compliance Documentation Proves Violation

If prosecutors fail to create documentation of Brady review, that failure proves the duty was breached. The State cannot benefit from failing to document its own constitutional compliance.

Here, Respondent's inability or refusal to produce:

- Discovery compliance logs
- Brady/Giglio checklists
- Certificates of compliance with Cal. Penal Code § 1054
- Proof of service to defense counsel
- Supervisory review of disclosure decisions

...creates a powerful inference that no systematic Brady review ever occurred. The absence of such documentation, in combination with the AG's five-month refusal to produce it despite three court orders, supports an adverse inference that prosecutors violated their constitutional obligations.

G. Banks v. Dretke: State Cannot Benefit from Own Failure

In Banks v. Dretke, 540 U.S. 668 (2004), the Supreme Court established a critical principle: the State cannot benefit from its own failure to preserve or produce evidence.

Banks, 540 U.S. at 696: "A rule declaring 'prosecutor may hide, defendant must seek,' is not tenable in a system constitutionally bound to accord defendants due process."

This principle applies with full force here. The AG cannot:

- Benefit from never requesting the prosecution file;
- Benefit from narrow interpretation of court orders;
- Benefit from deflecting production duty onto Petitioner;
- Benefit from strategic silence during safe harbor period; or
- Benefit from five months of obstruction by arguing "too late now."

Banks compels rejection of any defense based on the AG's own misconduct or neglect.

**IV. ARGUMENT**

A. The Trilemma: Every Scenario Warrants Sanctions

Respondent now faces three possible scenarios. Under every scenario, sanctions are mandatory. There is no fourth option.

SCENARIO 1: Materials Never Created

If discovery logs, Brady checklists, and compliance documentation were never created, this establishes Ground Two Brady violations as a matter of law.

Prosecutors have an affirmative duty to establish procedures for Brady compliance. Kyles v. Whitley, 514 U.S. 419, 437 (1995); In re Brown, 17 Cal. 5th 1223, 1234-35 (2022).

Failure to create any documentation of Brady review proves no systematic review occurred—which is itself a Brady violation. Pennsylvania v. Ritchie, 480 U.S. 39, 57 (1987).

The State cannot benefit from failing to create required records. Banks v. Dretke, 540 U.S. 668, 696 (2004).

If this is the explanation for non-production, the appropriate remedy is:

→ Adverse inference that no Brady review was conducted
→ Finding that Ground Two Brady claims are established
→ Order to show cause why habeas relief should not be granted on Ground Two

SCENARIO 2: Materials Destroyed

If discovery logs and compliance documentation once existed but were destroyed, this constitutes spoliation warranting severe sanctions.

The State has statutory and constitutional duties to preserve materials bearing on innocence claims. Cal. Penal Code § 1054.9; Brady v. Maryland, 373 U.S. 83 (1963).

Destruction of evidence—particularly compliance documentation that would prove or disprove constitutional violations—demonstrates a culpable state of mind warranting the strongest adverse inferences. Leon v. IDX Systems Corp., 464 F.3d 951, 959 (9th Cir. 2006).

If this is the explanation for non-production, the appropriate remedy is:

 → Adverse inference that destroyed materials proved Brady violations
 → Monetary sanctions against the State for spoliation
 → Finding that Ground Two claims are established by virtue of destruction

SCENARIO 3: Materials Exist But State Refuses Production

If materials exist and Respondent refuses to produce them despite:

• Three explicit court orders over five months,
• Informal inquiry from Petitioner,
• 21-day safe harbor notice with specific cure instructions, and
• Multiple opportunities to explain non-production...

...this constitutes willful defiance of court authority warranting the most severe sanctions available.

The AG cannot claim ignorance: the § 1983 case proves these materials exist and are accessible to State attorneys.

The AG cannot claim confusion: Petitioner's emails and safe harbor motion identified every missing category with precision.

The AG cannot claim inability: the AG has subpoena power and access to all State agencies.

If this is the explanation for non-production, the appropriate remedy is:

→ Order compelling production within 14 days
→ Daily monetary sanctions for each day of continued non-compliance
→ Adverse inferences on all constitutional claims
→ Referral for contempt proceedings if order is not obeyed

The Inescapable Logic

Respondent must choose one of these three scenarios. Each scenario warrants sanctions. The choice is Respondent's, but the consequence is inevitable: sanctions are mandatory regardless of which explanation the AG provides.

The AG's five-month strategic silence suggests the AG knows any explanation will be damaging. But silence is not a fourth option. The Court can and should draw adverse inferences from the AG's refusal to explain.

B. What Respondent Is Concealing (And Why It Matters)

The following six categories of evidence—"smoking guns"—directly support Petitioner's constitutional claims. Each category exists (proven by the § 1983 production), is in the State's possession, and was ordered lodged by this Court. Each category's continued suppression warrants sanctions.

1. Brady Compliance Documentation (Smoking Gun #1)

WHAT IS MISSING:

• Discovery Index/Log — itemized list of materials provided to defense pursuant to Cal. Penal Code § 1054

• Certificate of Discovery Compliance — prosecutor's declaration of compliance with mandatory disclosure requirements

• Proof of Service — documentation showing when and how discovery was delivered to defense counsel (Jose Badillo)

• Defense Receipt/Acknowledgment — defense counsel's acknowledgment of receiving discovery

• Brady/Giglio Checklists — documentation of prosecutor's review for exculpatory/impeachment evidence

WHAT IT PROVES:

If such documentation exists, it will show what materials prosecutors disclosed (or failed to disclose) before the plea.

If such documentation does not exist, this proves no systematic Brady review was conducted—establishing Ground Two Brady claims as a matter of law. Kyles v. Whitley, 514 U.S. 419, 437 (1995); In re Brown, 17 Cal. 5th 1223, 1234-35 (2022).

WHY THIS MATTERS:

Ground Two of Petitioner's habeas petition alleges Brady violations. The AG's Answer denies these allegations. But the AG has no evidentiary basis for these denials because the AG admittedly never reviewed the prosecution file to determine what Brady review was conducted.

The AG cannot deny Brady violations without first determining whether Brady review occurred. Rule 11(b) requires factual contentions to have evidentiary

support. The AG violated Rule 11(b) by filing denials without conducting reasonable inquiry.

LEGAL STANDARD:

Prosecutors must establish procedures for Brady compliance and maintain documentation of disclosure decisions. Pennsylvania v. Ritchie, 480 U.S. 39, 57 (1987). Absence of such documentation creates an inference that no Brady review occurred. Banks v. Dretke, 540 U.S. 668, 696 (2004).

The State cannot benefit from failing to document its own constitutional compliance. If prosecutors failed to create compliance records, that failure is itself evidence of constitutional violation.

REMEDY REQUESTED:

→ Order AG to produce Brady compliance documentation within 14 days
→ If documentation does not exist, adverse inference that no Brady review was conducted
→ Finding that Ground Two Brady claims are established as a matter of law

2. DAI Peña's 47 Recorded Admissions (Smoking Gun #2)

WHAT IS MISSING:

Complete investigator file for Detective Alfredo Israel (DAI) Luis Peña, including all audio recordings (not just transcripts) of his admissions that:

• The case lacked merit and probable cause
• He was pressured by attorneys to "just finish the damn warrant"

- The victim (Petitioner's son) was competent and wanted to live with Petitioner
- The charges should never have been filed
- Petitioner would likely prevail at trial
- The investigation was deficient

WHAT THE EVIDENCE PROVES (citing § 1983 SER):

Per the production in Case No. 3:24-cv-00671-JO-MSB, these recordings contain 47 separate admissions, including:

- "You definitely will get a trial and personally, I think you'll win that." (SER 3-129, Timestamp: 02:31:23)

- "I believe this should be handling in Family court and not Criminal Court." (Timestamp: 02:21:50)

- "How is that even going to be proven in court as a child abduction?" (Timestamp: 02:43:17)

- "Why are we even involved in this case? I'm like, we don't take anything over 14." (Timestamp: 00:11:05)

- "The DA's office should never have accepted your case because he was 14 when this all started on paper." (Timestamp: 02:54:47)

- "You pissed them off." (Timestamp: 01:12:12)

- "We're like too deep in it now and the attorneys are pressuring to file criminal charges." (Timestamp: 00:20:10)

- His supervisors told him: "Just finish the damn warrant and don't worry about it." (Timestamp: 00:27:12)

• "They're like, no, just don't worry about it. Just write a quick warrant and go on the evidence we have." (Timestamp: 01:47:31)

• "If someone tells anybody we're going to put your child in the facility. What do you expect that parent to do?" (Timestamp: 00:20:53)

• "I think you have good cause for sure." (Timestamp: 02:38:13)

WHY THIS MATTERS:

These recordings are quintessential Brady material—direct evidence that the investigating officer knew the case lacked probable cause and was being prosecuted for improper reasons ("you pissed them off").

This evidence directly supports:

• Ground One (illegal arrest without probable cause)
• Ground Two (Brady violation—suppression of exculpatory evidence)
• Ground Four (involuntary plea—coerced by illegal 90-day detention)
• Actual innocence gateway claim

LEGAL STANDARD:

Brady v. Maryland, 373 U.S. 83, 87 (1963): Evidence is "material" when there is a reasonable probability that its disclosure would have changed the outcome. Evidence that the investigating officer believed the case lacked merit is per se material.

Giglio v. United States, 405 U.S. 150, 154 (1972): Impeachment evidence regarding the credibility of key government witnesses must be disclosed. Peña's

admissions constitute impeachment evidence that would have destroyed his credibility.

WHY AG MUST LODGE:

These recordings were produced in the § 1983 case from State files (SER 3-129-131), proving:

1. The recordings exist
2. State attorneys have access to them
3. The AG's failure to lodge them here is deliberate

REMEDY REQUESTED:

→ Order AG to lodge complete Peña investigator file with all audio recordings
→ Adverse inference that Peña's admissions establish lack of probable cause
→ Finding that Ground One (illegal arrest) and Ground Two (Brady) claims have merit

3. FBI Transcript (full transcript) and FBI Threat Assessment – never provided to this day! (Smoking Gun #3)

WHAT IS MISSING:

• Complete FBI call transcript from December 9, 2022 call
• FBI threat assessment report clearing Petitioner
• FBI determination that no criminal investigation would be initiated

WHAT THE EVIDENCE PROVES (citing § 1983 SER):

The prosecution justified the 90-day no-bail detention by claiming Petitioner made "threats to the FBI." The full transcript (SER 5-927-930) proves this was a fabrication:

• Petitioner explicitly stated: "I'm not making any threats whatsoever." (Timestamp: 00:01:05)

• Petitioner was calling to de-escalate the situation, asking the FBI to "put the pause button on this thing." (Timestamp: 00:07:52)

• Petitioner was seeking law enforcement mediation to prevent escalation: "what I need somebody to do over there so somebody doesn't get, you know, hurt in an altercation..." (Timestamp: 00:11:16)

• The FBI subsequently conducted an in-person assessment, cleared Petitioner, and took no adverse action.

WHY THIS MATTERS:

DDA Francesca Balerio told the bail court that Petitioner made "threats to the FBI" to justify the 90-day no-bail detention that produced the guilty plea. This was a knowing misrepresentation.

The FBI transcript proves:

• No threats were made
• Petitioner was seeking official mediation
• FBI cleared Petitioner after assessment

This evidence directly supports:

• Ground Two (Brady violation—suppression of exculpatory evidence)

• Ground Four (involuntary plea—coerced by illegal detention based on fabricated threats)

• Manuel v. City of Joliet claim (pretrial detention based on fabricated evidence)


LEGAL STANDARD:


Brady v. Maryland, 373 U.S. 83, 87 (1963): Suppression of evidence that directly contradicts the prosecution's narrative is a per se Brady violation.


Manuel v. City of Joliet, 580 U.S. 357 (2017): "Pretrial detention based on fabricated evidence constitutes an independent Fourth Amendment violation."

WHY AG MUST LODGE:


The FBI transcript was produced in the § 1983 case (SER 5-927-930), proving State access to these materials.


REMEDY REQUESTED:


→ Order AG to lodge the full FBI transcript and threat assessment done by the FBI that concluded NO THREAT – that still has not been produced to this day.

→ Adverse inference that DDA Balerio knowingly misrepresented facts to bail court

→ Finding that 90-day detention was unconstitutional and plea was coerced


4. DDA Balerio Interview with Victim (Smoking Gun #4)


WHAT IS MISSING:

The 32-minute recorded interview DDA Francesca Balerio conducted with the alleged victim—Petitioner's son, Bryce Emert—on February 17, 2023.

WHAT THE EVIDENCE PROVES (citing § 1983 SER):

DDA Balerio told the court that Bryce was "incompetent" and incapable of expressing his wishes regarding custody. Her own interview (SER 5-751) proves this was false:

• Bryce stated: "I want to live with my dad. He's the only one who listens to me."

• Bryce stated: "I'm old enough to decide where I want to live."

• Balerio herself called Bryce "well-spoken" and promised to "assist him to have his voice heard in court."

• Petitioner's prior counsel (Jose Badillo) confirmed on recording that Balerio never disclosed this interview to the defense (SER 5-775).

WHY THIS MATTERS:

The prosecutor suppressed an interview with the alleged victim that directly contradicted the prosecution theory. This is textbook Brady and Napue:

• Brady violation: suppression of exculpatory evidence (victim wanted to live with Petitioner)
• Napue violation: prosecutor knowingly presented false narrative to court (victim was incompetent)

This evidence supports Ground Two (Brady) and Ground Four (involuntary plea based on suppressed evidence).

LEGAL STANDARD:

Brady v. Maryland, 373 U.S. 83, 87 (1963): Evidence favorable to the defense
must be disclosed.

Napue v. Illinois, 360 U.S. 264, 269 (1959): Due process is violated when
prosecution knowingly allows false testimony or representations.

WHY AG MUST LODGE:

This interview was referenced in the § 1983 SER (5-751) and was conducted by a
State employee (DDA Balerio) as part of the criminal case. It is unquestionably
part of the prosecution file.

REMEDY REQUESTED:

→ Order AG to lodge Balerio-Bryce interview recording and transcript
→ Adverse inference that prosecution suppressed exculpatory victim statement
→ Finding that Ground Two Brady claims are established

5. Breached Plea Agreement Evidence (Smoking Gun #5)

WHAT IS MISSING:

• Audio recordings of prior defense counsel Jose Badillo admitting the DA knew
the plea was induced by custody resolution promise
• Email from Andrea Schuck (victim's mother) refusing to honor the agreement
and adding new demands
• Email showing DDA Balerio was cc'd on the breach notification

WHAT THE EVIDENCE PROVES (citing § 1983 SER):

The guilty plea was induced by a false promise that custody would be resolved immediately and Bryce would "come home." The plea was breached.

Badillo was recorded admitting (SER 5-798-799):

  • "the DA knows...that you resolved the case based on the conversation she and I had with Andrea [Schuck]" (Timestamp: 00:16:58-00:17:00)
   • Schuck wanted Petitioner "out of jail because she needed help with Bryce" and this was "discussed with the DA as part of plea negotiations" (SER 5-761)

  • The breach was grounds to withdraw the plea: "if she is backpedaling on that and not agreeing to that, that could be an issue that can be raised" (SER 5-811-812)

Email Evidence of Breach (SER reference):

May 18, 2023 email from Andrea Schuck (22 days after plea), cc'd to DDA Balerio, refused to honor custody agreement and added new demands (drop civil cases) that were never part of plea negotiations.  What is important to note here is that petitioner said he would drop everything and just to write that into the agreement and Schuck said in this email that this simple request documenting the agreement would not be added into the agreement and she would stop the purposed agreement if petitioner did not comply with this changing of the agreement – Schuck included DDA Balerio in this email.,

WHY THIS MATTERS:

This is a Santobello v. New York violation. The prosecution participated in inducing a plea based on a promise that was immediately breached, with the prosecutor's knowledge (she was cc'd on the breach email).

This evidence supports Ground Four (involuntary plea induced by false promise).

LEGAL STANDARD:

Santobello v. New York, 404 U.S. 257, 262 (1971): "When a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled."

WHY AG MUST LODGE:

These recordings and emails were produced in the § 1983 case (SER 5-798-799, 5-761, 5-811-812), proving State access.

REMEDY REQUESTED:

&rarr; Order AG to lodge Badillo recordings and Schuck breach emails
&rarr; Adverse inference that plea was induced by false promise
&rarr; Finding that Ground Four (involuntary plea) claim is established

6. Public Defender Fabricated "Limited Scope" (Smoking Gun #6)

WHAT IS MISSING:

• Complete Public Defender file from plea withdrawal proceedings
• Email correspondence between Petitioner and Supervising Attorney Mignon Hilts

• Emails between Petitioner and Deputy Public Defender Matthew Ferrara
• The minute order the Public Defender cited as basis for "limited scope" and INDICATING THAT THE PUBLIC DEFENDER WOULD NOT INVESTIGATE PETITIONERS CLAIMS DUE TO THE COURT SAYING THEY COULD NOT. THIS IS IN EMAILS BETWEEN PETITIONER AND THE SUPERVISOR OF THE PUBLIC DEFENDERS' OFFICE.

WHAT THE EVIDENCE PROVES:

When Petitioner tried to withdraw his plea and provided all of this exculpatory evidence, the Public Defender's office refused to investigate, claiming a "limited scope" restriction from the court.

This was a fabrication. The minute order cited merely said "PHS/Motions" (standard boilerplate for post-sentence habeas/motions appointment). The Public Defender invented a restriction that did not exist to avoid investigating prosecutorial misconduct.

Hilts' Email (June 29, 2023): "We have not been appointed to evaluate the specific facts of your criminal case...the facts and evidence regarding the substance of your case are currently not at issue."

This is a stunning admission: appointed counsel refusing to investigate facts proving actual innocence and prosecutorial misconduct.

Petitioner's Objection (Sept. 5, 2023): "so your not going to bring any of the evidence... You're not going to call witnesses? Such as DDA Balerio... Your not going to call Bryce's mom... Are you joking. That is egregious ineffective counsel right there."

Public Defender Ferrara's Response: "See you on 9/21."

WHY THIS MATTERS:

This proves Strickland ineffective assistance. The Public Defender actively refused to investigate and present dispositive evidence of innocence and prosecutorial misconduct based on a fabricated court order.

This evidence supports:

- Ground Three (ineffective assistance of post-conviction counsel)
- Excuse for procedural default (ineffective state habeas counsel)
- Martinez v. Ryan claim

LEGAL STANDARD:

Strickland v. Washington, 466 U.S. 668, 687-88 (1984): Counsel must conduct reasonable investigation or make reasonable decision to limit investigation. Refusing to investigate based on fabricated restriction is per se deficient performance.

Martinez v. Ryan, 566 U.S. 1, 9 (2012): Ineffective assistance of state post-conviction counsel can excuse procedural default.

WHY AG MUST LODGE:

These emails exist in Public Defender files (State agency). They were referenced in state court proceedings and are part of the state court record.

REMEDY REQUESTED:

→ Order AG to lodge Public Defender correspondence and fabricated minute order

→ Adverse inference that counsel fabricated restriction to avoid investigation

→ Finding that Ground Three (ineffective assistance) claim is established

The Consequences of Incomplete Lodgment The Ninth Circuit has granted habeas relief based on incomplete state lodgment combined with suppression of exculpatory evidence. Apelt v. Ryan, 878 F.3d 800, 825-26 (9th Cir. 2017) (vacating conviction where state withheld Brady materials and failed to provide complete record). Here, as in Apelt, the AG's withholding of exculpatory materials—DAI Peña's 47 recorded admissions, FBI threat assessment, Brady compliance documentation—prevents this Court from conducting meaningful AEDPA review and warrants adverse inferences that these materials would establish Petitioner's constitutional claims.

## C. Respondent's Conduct Is Willful and in Bad Faith

This is not inadvertence. This is not confusion. This is a calculated pattern of obstruction spanning five months.

### The Timeline Proves Willfulness

**May 16, 2025:** This Court issues three explicit orders requiring complete lodgment

**Four months later...**

**September 22, 2025:** AG lodges incomplete record without service to Petitioner

**Two and a half weeks later...**

**October 8-10, 2025:** Email exchange where AG admits never requesting DA file

**One week later...**

**October 17, 2025:** Petitioner serves Rule 11 safe harbor motion

**Three days later...**

**October 20, 2025:** AG files response on time issue, strategically silent on documents

**Eighteen days later...**

**November 7, 2025:** Safe harbor period expires with no cure, no explanation, no supplementation

At every stage, Respondent had opportunity and notice. At every stage, Respondent chose obstruction.
The Written Admissions Prove Bad Faith

Deputy AG Chenelia's October 10, 2025 emails contain three admissions that, taken together, establish bad faith:

ADMISSION #1: "I would not expect to find these documents in the court record."

This reveals the AG's strategy: interpret this Court's order as narrowly as possible to exclude materials that would prove Petitioner's claims.

ADMISSION #2: "I would suggest contacting your defense attorney...or the district attorney's office."

This is a Kafkaesque deflection. The Court ordered the AG to lodge the record. The AG cannot transfer that duty to Petitioner or suggest Petitioner request evidence from the very prosecutors whose misconduct is at issue.
ADMISSION #3: "We have lodged...all documents in our possession."

This false certification conflates "documents in our possession" with "documents in the State's possession"—a legally meaningless distinction. The AG represents

the State and must obtain materials from State agencies. LaGrand v. Stewart, 133 F.3d 1253, 1258 (9th Cir. 1998).

The Strategic Silence Proves Calculation

When confronted with direct questions, the AG went silent:

Question: "Did the Attorney General's office request the complete prosecution file from the San Diego District Attorney's office?"

Answer: [Silence for five months and counting]

This silence is strategic. If the AG had requested the file, Ms. Chenelia would have said so. If the AG had attempted to obtain the file but encountered obstacles, Ms. Chenelia would have explained. The only explanation for complete silence is that answering truthfully would reveal non-compliance.

The silence continued through the entire 21-day safe harbor period. Respondent received explicit notice, specific instructions on how to cure, and three full weeks to respond. The AG chose silence over compliance—the hallmark of bad faith.

The Parallel Suppression Proves Coordination

The AG is not merely failing to produce materials. The AG is actively concealing materials that were already produced in a related case.

In Case No. 3:24-cv-00671-JO-MSB, San Diego County Counsel produced a 2,000+ page SER from the District Attorney's prosecution file. Every document Petitioner requests in this motion exists in that SER and was produced to federal court.

The AG knows these materials exist. The AG knows where they are. The AG simply refuses to lodge them here because they prove Petitioner's constitutional claims.

This is not passive non-compliance. This is active suppression of known exculpatory evidence—precisely the conduct Brady prohibits and Banks condemns.

### D. All Requirements for Sanctions Are Satisfied

Rule 11(c)(2) Requirements: ✓ All Met

   ✓ Service of motion on opposing party (October 17, 2025)
   ✓ Description of specific conduct violating Rule 11(b) (safe harbor motion detailed each missing category)
   ✓ Twenty-one day opportunity to cure (October 17 - November 7, 2025)
   ✓ No cure within 21 days (Respondent remained silent)

Rule 37(b)(2) Requirements: ✓ All Met

   ✓ Court order requiring specific action (ECF No. 8, ¶¶4, 5, 6)
   ✓ Party subject to order failed to comply (incomplete lodgment)
   ✓ Willfulness (five-month pattern, strategic silence)
   ✓ Prejudice to moving party (cannot file Traverse without complete record)

Inherent Authority Requirements: ✓ All Met

✓ Conduct tantamount to bad faith (calculated obstruction)

✓ Abuse of judicial process (defying three court orders)

✓ Interference with court's fact-finding function (suppressing evidence)

Adverse Inference Requirements (Leon Test): ✓ All Met

✓ Obligation to preserve and produce (multiple overlapping duties)

✓ Culpable state of mind (written admissions + strategic silence)

✓ Relevance to claims (directly supports all constitutional claims)

All Fink Factors: ✓ All Favor Sanctions

✓ Public interest in expeditious resolution (AG's delay prevents adjudication)

✓ Court's need to manage docket (cannot proceed without complete record)

✓ Risk of prejudice (statute of limitations running; irreparable harm)

✓ Policy favoring merits disposition (suppression prevents merits review)

✓ Less drastic sanctions unavailable (three court orders, informal inquiry, safe harbor notice all failed)

Every procedural prerequisite is satisfied. Every substantive requirement is met. Sanctions are mandatory.

E. Respondent's Predictable Defenses Fail

The AG will likely raise two defenses. Both fail as a matter of law.

Defense #1: "These materials are not in our possession"

Respondent may claim the requested materials are not part of the state court record.   This defense fails, as habeas review requires the full record, including prosecution files bearing on constitutional claims. Gaston v. Palmer, 417 F.3d 1030, 1037 (9thCir. 2005) (state must provide complete materials for AEDPA analysis). Moreover, the AG has a statutory duty to obtain DA files.  AG supervises district attorneys in state matters. The §1983 SER production confirms accessibility, rendering non-lodgment inexcusable.

FAILS because:

The AG represents the State of California in federal habeas proceedings. The State includes all State agencies—District Attorney, Public Defender, Sheriff, etc.

LaGrand v. Stewart, 133 F.3d 1253, 1258 (9th Cir. 1998): "The Attorney General must obtain and lodge materials from any State agency. The AG cannot disclaim responsibility for materials held by other State offices."

Harris v. Nelson, 394 U.S. 286, 299 (1969): "The State speaks with one voice in federal court."

If materials are in the District Attorney's possession, they are in the State's possession. The AG's duty to lodge is comprehensive and non-delegable.

Moreover, the AG admitted never requesting the materials. The AG cannot claim "not in our possession" when the AG never attempted to obtain them.

Defense #2: "Tollett bars production of these materials"

FAILS because:

**First:** *Tollett v. Henderson*, 411 U.S. 258 (1973), addresses **which claims are waived by guilty plea**—not whether the State must lodge the record in federal habeas proceedings. These are separate questions:

- **Tollett Question:** Are Petitioner's claims barred by his guilty plea?
- **Lodgment Question:** Must the AG produce materials this Court ordered?

The answer to the lodgment question is **always yes**. Rule 5 requires lodging "all records bearing on the merits of Petitioner's claims." This duty exists regardless of whether *Tollett* ultimately bars some claims. **The Court—not the AG—determines what materials are relevant and what claims survive** *Tollett*.

**Second:** The AG cannot pre-judge which evidence is relevant to *Tollett* analysis. To determine whether a claim is barred by *Tollett*, this Court must examine:

- What Petitioner knew at the time of the plea
- Whether counsel advised Petitioner about constitutional violations
- Whether the plea was truly knowing and voluntary
- Whether antecedent constitutional violations existed

**The AG is withholding the very evidence needed to make that determination.** This is circular reasoning: "We don't have to give you evidence of constitutional violations because your plea waived claims about constitutional violations—and we won't give you evidence to prove the plea was invalid."

**The "Knowledge" Argument is a Logical and Legal Fraud**

If the AG argues "Petitioner knew about these issues so *Tollett* applies," that argument fails both factually and legally:

**Factual Failure:**

Petitioner was illegally detained for 90 days without bail. During that detention:

✗ Petitioner knew Detective Peña made admissions on recorded calls ✗ Petitioner knew DDA Balerio interviewed the alleged victim

✗ Petitioner knew prosecutors had FBI transcripts

**BUT:**

✗ Petitioner had **no access** to these recordings while incarcerated ✗ DDA Balerio **withheld these materials from defense counsel** Jose Badillo ✗ Defense counsel **never reviewed** these recordings before advising on the plea ✗ The plea was **coerced by 90-day illegal detention** based on fabricated threats

**"Knowing something exists while you're locked up without access to it is not meaningful knowledge—it's torture."**

**Legal Failure:**

*Brady v. Maryland*, 373 U.S. 83 (1963), imposes an affirmative duty on prosecutors to disclose exculpatory evidence **to defense counsel**—not to the defendant personally.

- If DDA Balerio withheld DAI Peña's admissions from defense counsel Badillo, that is a *Brady* violation **regardless of whether Petitioner "knew" the recordings existed**.
- If the FBI transcript was withheld from defense counsel, that is a *Brady* violation **regardless of Petitioner's awareness**.
- If DDA Balerio's interview with the victim was concealed from defense counsel, that is a *Brady* violation **regardless of Petitioner's knowledge**.

**The AG's "knowledge" argument confuses the defendant's awareness with defense counsel's receipt of disclosure.** These are not the same. *Brady* requires actual disclosure to counsel, not constructive knowledge by an incarcerated defendant with no access to evidence.

**Moreover: Antecedent Constitutional Violations Are Not Waived**

Even if some claims are barred by *Tollett* (they are not), Petitioner's claims involve **antecedent constitutional violations that cannot be waived** by guilty plea:

**1. Jurisdictional Defects** *Lavi v. Superior Court*, 4 Cal. 5th 68 (2017); *Blackledge v. Allison*, 431 U.S. 63, 75 n.7 (1977)—lack of subject matter jurisdiction cannot be waived and renders all subsequent proceedings void.

**2. Brady Violations Affecting Plea Voluntariness**
*Brady v. Maryland*, 373 U.S. 83 (1963)—suppression of evidence that would have affected the decision to plead guilty challenges the voluntariness of the plea itself, placing the claim outside *Tollett*'s scope.

**3. Coerced Plea Through Illegal Detention** *Manuel v. City of Joliet*, 580 U.S. 357 (2017)—a plea induced by 90 days of illegal detention based on fabricated evidence is not knowing and voluntary, defeating *Tollett* waiver.

**4. Ineffective Assistance Regarding Plea Advice** *Hill v. Lockhart*, 474 U.S. 52 (1985)—when counsel fails to investigate or advise about material exculpatory evidence because prosecutors suppressed it, the plea itself is constitutionally defective.

The Fatal Catch-22 of the AG's Position

The AG's argument creates an impossible situation:

**AG's Position:**

- "You can't raise these constitutional claims because you pled guilty (*Tollett* bar)"
- "We don't have to give you evidence of constitutional violations because your plea waived them (*Tollett* bar)"
- "You can't challenge your plea because you 'knew' about the violations (actual knowledge defeats plea voluntariness challenge)"

**Result:** Federal habeas review is impossible. The State:

1. Withholds exculpatory evidence from defense counsel (*Brady* violation)
2. Coerces guilty plea through illegal 90-day detention (*Manuel* violation)
3. Refuses to produce evidence of these violations (defies court orders)
4. Claims the plea waived all challenges to these violations (*Tollett*)
5. Blocks federal habeas review by withholding the record (this motion)

**This is exactly what** *Banks v. Dretke*, 540 U.S. 668, 696 (2004), **prohibits:**

"A rule declaring 'prosecutor may hide, defendant must seek,' is not tenable in a system constitutionally bound to accord defendants due process."

The AG cannot use *Tollett* as both a sword (to bar claims) and a shield (to avoid producing evidence that defeats *Tollett*).

### The AG Cannot Invoke Tollett to Avoid Lodging the Very Evidence That Defeats Tollett

This is the fundamental flaw in the AG's position:

- **IF** the suppressed evidence proves the plea was coerced/involuntary → *Tollett* doesn't apply
- **IF** the suppressed evidence proves *Brady* violations affected plea voluntariness → *Tollett* doesn't apply
- **IF** the suppressed evidence proves ineffective assistance in plea negotiations → *Tollett* doesn't apply

**The only way to determine whether** *Tollett* **applies is to examine the suppressed evidence.**

By withholding that evidence, the AG is:

1. Violating this Court's orders
2. Preventing this Court from determining *Tollett*'s applicability
3. Bootstrapping a procedural bar to avoid producing evidence that defeats the bar

This Court should reject this circular reasoning and compel production.

Additional Defense: "These are not part of the state court record under
Pinholster**"**

FAILS because:

*Cullen v. Pinholster*, 563 U.S. 170 (2011), limits federal habeas review under 28
U.S.C. § 2254(d) to the record that was before the state court—but that includes **all
materials the state court "relied on" or "could have relied on"** in adjudicating
claims. *Hoffman v. Arave*, 236 F.3d 523, 530 (9th Cir. 2001).

**All materials Petitioner requests were either:**

1. **Filed in state court proceedings** (motions, exhibits, transcripts); **OR**
2. **Available to state courts for consideration** (prosecution files, *Brady*
   materials, investigator files); **OR**
3. **Referenced in state court filings** (DAI Peña recordings, FBI transcript,
   Public Defender correspondence)

*Pinholster* does not exempt the State from Rule 5's lodgment requirement. If
anything, *Pinholster* makes complete lodgment **more important**— the federal
court must know what materials were available to the state court to evaluate
whether state adjudication was reasonable. **Moreover,** *Pinholster*'s limitation does
not apply to Petitioner's actual innocence gateway claim, which permits
consideration of new evidence. *McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013).

## V. RELIEF REQUESTED

Petitioner respectfully requests that this Court issue an Order:

This graduated relief prioritizes compulsion and lesser remedies before terminating
sanctions, consistent with Ninth Circuit preference. Henry v. Gill Indus., Inc., 983
F.2d 943, 946 (9th Cir. 1993) (courts must consider alternatives before dismissal or
striking). Petitioner first seeks complete lodgment with adverse inferences and

extensions, requesting monetary sanctions and more severe remedies only if the AG continues non-compliance. This measured approach demonstrates good faith while ensuring compliance.

A. PRIMARY RELIEF — Sanctions and Compelled Production

1. IMPOSE SANCTIONS against Respondent under Fed. R. Civ. P. 11(c), Rule 37(b)(2), and this Court's inherent authority for three violations of this Court's May 16, 2025 lodgment orders (ECF No. 8, ¶¶4, 5, 6).

2. ORDER Respondent to lodge the complete prosecution file and all materials identified in Section IV.B of this Motion within 30 days, specifically including:

a. Brady Compliance Documentation
  • Discovery Index/Log
  • Certificate of Discovery Compliance
  • Proof of Service to defense counsel
  • Defense Receipt/Acknowledgment
  • Brady/Giglio Checklists

b. Investigator Files
  • Complete DAI Luis Peña file with all audio recordings
  • Complete DAI Steven McIntosh file

c. FBI Materials
  • FBI call transcript (December 9, 2022)
  • FBI threat assessment and clearance report

d. DDA Francesca Balerio Materials
  • Interview recording with Bryce Emert (February 17, 2023)
  • Internal prosecution memoranda and communications

   e. Plea Agreement Materials
     • Audio recordings of Jose Badillo admissions
     • Email from Andrea Schuck breaching plea agreement
     • Email showing DDA Balerio cc'd on breach notification

   f. Public Defender Materials
     • Complete file from plea withdrawal proceedings
     • Email correspondence with Mignon Hilts
     • Email correspondence with Matthew Ferrara
     • Fabricated minute order cited as basis for "limited scope"

   g. All Other Materials Bearing on Constitutional Claims
     • Any materials from the §1983 SER relevant to this petition
     • Any materials from California Supreme Court proceedings
     • Any materials the state courts "relied on" or "could have relied on"

3. IN THE ALTERNATIVE, if complete lodgment is impossible, ORDER
Respondent to file within 30 days a sworn declaration under penalty of perjury
from Deputy Attorney General Chenelia explaining:

  a. Whether Respondent requested the complete prosecution file from the San
Diego District Attorney's office;

  b. If yes, what materials were provided by the DA's office;

  c. If no, why Respondent did not request materials this Court ordered lodged;

  d. Whether Respondent reviewed the 2,000+ page SER from the §1983 case;

  e. For each missing material category, whether materials exist and if not, why
not;

f. Why Respondent remained silent during the 21-day safe harbor period; and

g. Why Respondent believes incomplete lodgment complies with this Court's orders.

## B. ADVERSE INFERENCE RELIEF

4. DRAW ADVERSE INFERENCES from Respondent's failure to produce, specifically finding as established facts that:

a. Brady Compliance: No systematic Brady review was conducted by the prosecution, establishing Ground Two Brady claims as a matter of law;

b. DAI Peña Admissions: Investigator knew the case lacked probable cause and was being prosecuted for improper reasons, establishing Ground One (illegal arrest) has merit;

c. FBI Transcript: No threats were made and DDA Balerio knowingly misrepresented facts to bail court, establishing the 90-day detention was unconstitutional;

d. DDA Balerio Interview: Prosecutor suppressed exculpatory victim statement proving Ground Two Brady violation;

e. Breached Plea: Plea was induced by false promise that was breached with prosecutor's knowledge, establishing Ground Four (involuntary plea) has merit;

f. Public Defender: Counsel fabricated "limited scope" to avoid investigating prosecutorial misconduct, establishing Ground Three (ineffective assistance) has merit; and

g. General Finding: All missing evidence would be favorable to Petitioner and unfavorable to Respondent.

## C. PROCEDURAL RELIEF

5. EXTEND Petitioner's Traverse deadline to 60 days from the date Respondent files certification of complete lodgment under penalty of perjury.

6. ORDER the Clerk to upload Petitioner's habeas exhibits to PACER in compliance with Civil Local Rule 5.4.3 and Rule 5(a), Rules Governing § 2254 Cases, removing any improper PACER restrictions that prevent public access to habeas corpus records.

## D. ADA ACCOMMODATION

7. ORDER Respondent to provide all lodged documents in searchable PDF format as a reasonable accommodation under the Americans with Disabilities Act for Petitioner, a federally-adjudicated disabled pro se litigant.

## E. MONETARY SANCTIONS

8. AWARD Petitioner reasonable expenses incurred in bringing this motion, including:

a. PACER fees for monitoring docket and accessing restricted documents;
b. Postage and service costs;
c. Photocopying expenses; and
d. Such other expenses as the Court deems appropriate to deter future non-compliance.

## F. PACER ACCESS RESOLUTION

9. ORDER Respondent to:

a. Provide the sealing order, if any, that restricts PACER access to lodgments; OR

b. Confirm when public access will be restored; OR

c. Explain the technical issue preventing access and when it will be resolved.

10. ORDER the Clerk to immediately upload Petitioner's habeas exhibits to
PACER in compliance with Civil Local Rule 5.4.3 and Rule 5(a), Rules Governing
§ 2254 Cases. Petitioner's exhibits contain critical evidence referenced throughout
this Motion and the habeas petition—including DAI Peña's recorded admissions,
FBI transcripts, and Public Defender correspondence—and their continued
inaccessibility violates the public's right to access habeas corpus records and
prejudices Petitioner's ability to cross-reference evidence in his briefing.

## G. CERTIFICATION OF COMPLIANCE

10. ORDER Respondent to file a Certification of Complete Compliance under
penalty of perjury within 30 days, attesting that:

  a. All materials ordered by this Court have been lodged;
  b. All materials in the State's possession bearing on Petitioner's claims have been
lodged;
  c. Respondent has requested and received the complete prosecution file from the
San Diego District Attorney's office; and
  d. No additional responsive materials exist.

## H. CONDITIONAL RELIEF

11. IF Respondent fails to comply with any portion of this Court's order within 30 days, ORDER:

a. Daily monetary sanctions of $500 per day for each day of continued non-compliance;

b. Striking of Respondent's Answer in whole or in part;

c. Prohibition on Respondent opposing Petitioner's factual claims regarding Brady violations, prosecutorial knowledge, and suppressed evidence;

d. Referral for contempt proceedings; and/or

e. Such other relief as the Court deems necessary to vindicate its authority.

I. SUCH OTHER AND FURTHER RELIEF AS THIS COURT DEEMS JUST AND PROPER
VI. CONCLUSION

The chronology speaks for itself:

- May 16, 2025: Court orders complete lodgment (three separate orders)
- September 22, 2025: AG lodges incomplete record without service
- October 8-10, 2025: Email exchange reveals AG never requested DA file
- October 17, 2025: Petitioner serves Rule 11(c)(2) safe harbor notice
- October 20, 2025: AG files response on time issue; strategically silent on documents
- November 7, 2025: Safe harbor period expires without cure

At every stage, Respondent had opportunity to comply, explain, or cure. At every stage, Respondent chose obstruction over compliance.

This Court ordered complete lodgment three times. The AG violated those orders three times. The evidence exists—the County already produced it in the § 1983 case. The AG refuses to lodge it here because it proves Petitioner's constitutional claims.

The Trilemma is inescapable. The materials were either:
  (1) Never created — proving Brady violation;
  (2) Destroyed — proving spoliation; or
  (3) Exist but AG refuses production — proving contempt.

Under any scenario, sanctions are mandatory.

Federal habeas review is meaningless if the State can refuse to produce the state court record and suffer no consequences. This Court's orders must mean something. Compliance cannot be optional.

The solution is straightforward:

  • The AG must lodge the complete record within 30 days;
  • If lodgment is impossible, the AG must explain under oath why;
  • Adverse inferences must be drawn from the AG's five-month obstruction;
  • Sanctions must be imposed to vindicate this Court's authority;
  • The Traverse deadline must be extended to allow Petitioner time to review the complete record.

Petitioner has exhausted all informal remedies. Petitioner has complied with all procedural prerequisites. Petitioner has provided explicit notice and full opportunity to cure. The AG has chosen defiance.

This Motion asks the Court to do what federal courts have done for two centuries: enforce the rule of law, vindicate judicial authority, and ensure that habeas corpus

remains "the fundamental instrument for safeguarding individual freedom against arbitrary and lawless state action." Harris v. Nelson, 394 U.S. 286, 290-91 (1969).

The time for voluntary compliance has passed. The time for court-ordered compliance is now.

Respectfully submitted,

DATED: November 7, 2025

/s/ Robert Anthony Emert
ROBERT ANTHONY EMERT
Petitioner, Pro Se

**DECLARATION OF ROBERT EMERT**

I, Robert Anthony Emert, declare under penalty of perjury under the laws of the United States of America:

1. I am the Petitioner in the above-captioned matter and have personal knowledge of the facts set forth in this Motion and Declaration.

2. On May 16, 2025, this Court issued an Order (ECF No. 8) requiring Respondent to lodge the complete state court record, including "all records bearing on the merits of Petitioner's claims."

3. On September 22, 2025, Respondent filed an Answer and Notice of Lodgment without serving these documents on me, in violation of this Court's Order (ECF No. 8, ¶10) requiring service.

4. I discovered these filings through independent PACER monitoring on October 8, 2025—sixteen days after filing.

5. Between October 8-10, 2025, I engaged in email correspondence with Deputy Attorney General Kristen Chenelia regarding the incomplete lodgment and lack of service. Copies of this email exchange are available upon request.

6. In these emails, Ms. Chenelia made three critical admissions:
   a. "I would not expect to find these documents in the court record"
   b. "I would suggest contacting your defense attorney...or the district attorney's office"
   c. "We have lodged...all documents in our possession pertaining to your case"

7. I asked Ms. Chenelia directly: "Did the Attorney General's office request the complete prosecution file from the San Diego District Attorney's office?" She has never answered this question.

8. On October 17, 2025, I served Respondent with a complete draft of this Motion pursuant to Fed. R. Civ. P. 11(c)(2), providing 21 days to cure the violations. A copy of the service is available upon request.

9. The safe harbor notice specifically identified:
   a. Every missing document category
   b. Why each category bears on the merits of Petitioner's claims
   c. The three court orders Respondent violated
   d. Exactly what cure would require
   e. The deadline for cure (November 7, 2025)

10. On October 20, 2025, Respondent filed a response (ECF No. 20) addressing my request for extension of time to file Traverse. That response made no mention of the document production deficiencies identified in the safe harbor motion served three days earlier.

11. Throughout the remainder of the safe harbor period (October 20 - November 7, 2025), Respondent:
   a. Made no supplemental lodgment
   b. Filed no declaration explaining non-compliance
   c. Requested no additional time
   d. Provided no certification of completeness
   e. Made no attempt to cure any deficiency

12. The 21-day safe harbor period expired on November 7, 2025, without any cure, correction, or acknowledgment from Respondent.

13. I am a federally-adjudicated disabled individual with documented medical conditions including PTSD and after-effects of two STEMI heart attacks. I require searchable electronic documents as a reasonable ADA accommodation to meaningfully participate in this litigation.

14. Significant portions of Respondent's lodgment appear to be sealed or restricted on PACER, preventing me from accessing materials that should be part of the public habeas record. I have repeatedly requested explanation for this restriction. Respondent has never responded.

15. I cannot file a meaningful Traverse without the complete prosecution file, Brady compliance documentation, and other materials this Court ordered lodged.

16. The AEDPA statute of limitations expires in April 2026. Each day of Respondent's obstruction brings me closer to permanent procedural default on meritorious constitutional claims.

17. The evidence I seek exists and is accessible to State attorneys. In the related federal civil rights case (Case No. 3:24-cv-00671-JO-MSB), San Diego County Counsel produced a 2,000+ page Supplemental Excerpt of Record from the exact same District Attorney's prosecution file that Respondent refuses to lodge here.

18. All statements in this Declaration and in the foregoing Motion are true and correct to the best of my knowledge, information, and belief.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on November 7, 2025, at Escondido, California.

/s/ Robert Anthony Emert
ROBERT ANTHONY EMERT
Petitioner, Pro Se

**CERTIFICATE OF SERVICE**

I, Robert Anthony Emert, declare:

I am over the age of 18 and not a party to this action. On November 7, 2025, I served true and correct copies of the foregoing MOTION FOR SANCTIONS AND TO COMPEL COMPLETE LODGMENT, MEMORANDUM OF POINTS AND AUTHORITIES, and DECLARATION OF ROBERT EMERT on the following parties:

Deputy Attorney General Kristen Kinnaird Chenelia
California Department of Justice
600 West Broadway, Suite 1800
San Diego, CA 92101
Email: Kristen.Chenelia@doj.ca.gov

Service was accomplished by:

[X] ELECTRONIC MAIL: By transmitting via email to the email address listed above.

This constitutes service pursuant to Federal Rule of Civil Procedure 5(b)(2)(E) and 5(b)(2)(C).

I further certify that this Motion was previously served on Respondent's counsel on October 17, 2025, as a Rule 11(c)(2) safe harbor notice, providing the required twenty-one day cure period that expired November 7, 2025.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on November 7, 2025, at Escondido, California.


/s/ Robert Anthony Emert
ROBERT ANTHONY EMERT
Petitioner, Pro Se

ROBERT EMERT
Petitioner, Pro Se
2351 Vista Lago Terrace
Escondido, CA 92029
Telephone: 760-612-9328
Email: robemert@msn.com

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

ROBERT ANTHONY EMERT,
Petitioner,
v.
SAN DIEGO PROBATION DEPARTMENT,
Respondent.

Case No. 3:25-cv-00820-TWR-BLM

**[PROPOSED] ORDER GRANTING**

**MOTION FOR SANCTIONS AND TO**

**COMPLETE COMPLETE LODGMENT**

**(With Graduated Relief)**
Judge: The Hon. Barbara L. Major

Having considered Petitioner Robert Anthony Emert's Motion for Sanctions and to Compel Complete Lodgment, Respondent's opposition (if any), the declarations and exhibits submitted, and the entire record in this action,

**THE COURT HEREBY FINDS AND ORDERS AS FOLLOWS:**

## I. FINDINGS

**a.** On May 16, 2025, this Court issued three separate orders (ECF No. 8, ¶¶4, 5, 6) requiring Respondent to lodge the complete state court record, including 'all records bearing on the merits of Petitioner's claims.'

**b.** Respondent's September 22, 2025 lodgment was incomplete, consisting only of clerk's transcripts and reporter's transcripts, while omitting the prosecution file, discovery compliance documentation, Brady materials, investigator files, and other materials ordered by this Court.

**c.** Respondent failed to serve the Answer and lodgments on Petitioner in violation of this Court's explicit service requirements (ECF No. 8, ¶10), requiring Petitioner to discover these filings independently through PACER monitoring.

**d.** Deputy Attorney General Chenelia admitted in writing on October 10, 2025 that the Attorney General's office interpreted this Court's lodgment orders narrowly to exclude prosecution files and discovery materials, and improperly deflected the AG's court-ordered duty onto Petitioner.

**e.** Respondent maintained strategic silence when asked directly whether the Attorney General's office requested the complete prosecution file from the San Diego District Attorney's office, continuing this silence through the entire twenty-one day Rule 11(c)(2) safe harbor period (October 17 - November 7, 2025).

**f.** The materials ordered by this Court exist and are accessible to State attorneys, as demonstrated by San Diego County Counsel's production of a 2,000+ page Supplemental Excerpt of Record from the District Attorney's prosecution file in the related federal case (Case No. 3:24-cv-00671-JO-MSB).

**g.** Respondent's five-month pattern of non-compliance—spanning three court orders, informal inquiry, and safe harbor notice—demonstrates willful violation of this Court's orders warranting sanctions under Fed. R. Civ. P. 11(c), Rule 37(b)(2), and this Court's inherent authority.

**h.** Consistent with Henry v. Gill Indus., Inc., 983 F.2d 943, 946 (9th Cir. 1993), this Court shall impose graduated relief, prioritizing compulsion and lesser remedies before considering terminating sanctions, thereby providing Respondent multiple opportunities to comply before more severe consequences take effect.

## II. TIER 1 – IMMEDIATE RELIEF (EFFECTIVE UPON ENTRY OF ORDER)

**1. COMPELLED PRODUCTION:** Respondent SHALL lodge with this Court within thirty (30) days of this Order the complete prosecution file and all materials identified in Section IV.B of Petitioner's Motion, specifically including:

**a. Brady Compliance Documentation:** Discovery Index/Log, Certificate of Discovery Compliance, Proof of Service to defense counsel, Defense Receipt/Acknowledgment, and all Brady/Giglio Checklists;

**b. Investigator Files:** Complete files for Detective Alfredo Israel Luis Peña and Detective Steven McIntosh, including all audio recordings (not just transcripts);

**c. FBI Materials:** FBI call transcript (December 9, 2022) and FBI threat assessment and clearance report;

**d. DDA Balerio Materials:** Interview recording with Bryce Emert (February 17, 2023) and related internal prosecution memoranda;

**e. Plea Agreement Materials:** Audio recordings of attorney Jose Badillo admissions and email from Andrea Schuck breaching plea agreement (cc'ing DDA Balerio);

**f. Public Defender Materials:** Complete file from plea withdrawal proceedings, email correspondence with Mignon Hilts and Matthew Ferrara, and the minute order cited as basis for fabricated 'limited scope' representation;

**g. All Other Materials:** Any materials from the §1983 Supplemental Excerpt of Record relevant to this habeas petition, materials from California Supreme Court proceedings, and any materials the state courts 'relied on' or 'could have relied on' in adjudicating Petitioner's claims.

**2. ALTERNATIVE SWORN DECLARATION:** If complete lodgment of any category of materials is impossible, Respondent SHALL file within thirty (30) days a sworn declaration under penalty of perjury from Deputy Attorney General Chenelia explaining: (a) whether Respondent requested the complete prosecution file from the San Diego District Attorney's office; (b) if yes, what materials were provided; (c) if no, why Respondent did not request materials this Court ordered lodged; (d) for each missing material category, whether materials exist and if not, why not; and (e) why Respondent remained silent during the twenty-one day safe harbor period.

**3. TRAVERSE EXTENSION:** Petitioner's deadline to file a Traverse is EXTENDED to sixty (60) days from the date Respondent files certification of complete lodgment under penalty of perjury.

**4. ADA ACCOMMODATION:** Respondent SHALL provide all lodged documents in searchable PDF format as a reasonable accommodation under the Americans with Disabilities Act for Petitioner, a federally-adjudicated disabled pro se litigant. 28 C.F.R. § 35.160; Duvall v. Cnty. of Kitsap, 260 F.3d 1124 (9th Cir. 2001).

**5. PACER ACCESS:** The Clerk is ORDERED to upload Petitioner's habeas exhibits to PACER in compliance with Civil Local Rule 5.4.3 and Rule 5(a), Rules Governing § 2254 Cases, removing any improper PACER restrictions. Respondent SHALL within fourteen (14) days provide the sealing order (if any) restricting PACER access to lodgments, or explain when public access will be restored.

**6. CERTIFICATION OF COMPLIANCE:** Respondent SHALL file a Certification of Complete Compliance under penalty of perjury within thirty (30) days, attesting that: (a) all materials ordered by this Court have been lodged; (b) all materials in the State's possession bearing on Petitioner's claims have been lodged; (c) Respondent has requested and received the complete prosecution file from the San Diego District Attorney's office; and (d) no additional responsive materials exist.

### III. TIER 2 – IF NO COMPLIANCE WITHIN 30 DAYS

*If Respondent fails to comply with Tier 1 relief within thirty (30) days, the following additional sanctions SHALL automatically take effect:*

**7. DAILY MONETARY SANCTIONS:** Respondent SHALL pay monetary sanctions of five hundred dollars ($500) per day for each day of continued non-compliance beyond the thirty-day deadline, payable to Petitioner for reasonable expenses incurred in bringing this motion and monitoring compliance.

**8. LIMITED ADVERSE INFERENCES:** The Court draws the following limited adverse inferences on specific factual issues:

**a.** No systematic Brady compliance review was conducted by the prosecution prior to the plea;

**b.** The Attorney General's office never requested the complete prosecution file from the San Diego District Attorney's office;

**c.** The withheld materials contain evidence relevant to Petitioner's constitutional claims;

**d.** Respondent's failure to produce is willful and in bad faith.

**9.** SHOW CAUSE HEARING:** Respondent SHALL appear before this Court within forty-five (45) days to show cause why contempt proceedings should not be initiated for willful violation of court orders. Civil contempt is appropriate to coerce compliance with definite court orders. Shillitani v. United States, 384 U.S. 364, 370 (1966).

## IV. TIER 3 – IF NO COMPLIANCE WITHIN 60 DAYS

*If Respondent fails to comply within sixty (60) days, the following escalated sanctions SHALL automatically take effect:*

**10. INCREASED DAILY SANCTIONS:** Daily monetary sanctions SHALL increase to one thousand dollars ($1,000) per day for each day of continued non-compliance beyond the sixty-day deadline.

**11. STRONGER ADVERSE INFERENCES:** The Court draws the following additional adverse inferences:

**a.** Detective Alfredo Israel Luis Peña knew the case lacked probable cause and was being prosecuted for improper reasons;

**b.** No threats were made to the FBI and DDA Balerio knowingly misrepresented facts to the bail court;

**c.** The prosecution suppressed exculpatory victim statements proving Petitioner's Brady claims;

**d.** The guilty plea was induced by a false promise that was breached with the prosecutor's knowledge;**e.** Post-conviction counsel fabricated a 'limited scope' restriction to avoid investigating prosecutorial misconduct.

**12. PROHIBITION ON CONTESTING FACTS:** Respondent is PROHIBITED from contesting or disputing the factual assertions identified in the adverse inferences above in any subsequent briefing or at any evidentiary hearing.

**13. MANDATORY STATUS CONFERENCE:** A mandatory status conference SHALL be held within seventy-five (75) days to address continued non-compliance and determine whether further sanctions are appropriate.

## V. TIER 4 – IF NO COMPLIANCE WITHIN 90 DAYS

*If Respondent fails to comply within ninety (90) days, demonstrating continued willful defiance of this Court's authority, the following terminating sanctions SHALL be considered:*

**14. PRESUMPTION OF MERIT:** The Court SHALL presume that ALL withheld evidence supports Petitioner's constitutional claims and that all claims alleged in the habeas petition have factual merit.

**15. STRIKING PORTIONS OF ANSWER:** The Court SHALL consider striking those portions of Respondent's Answer that deny factual allegations for which Respondent has failed to provide evidentiary support despite court order.

**16. CONTEMPT REFERRAL:** The matter SHALL be referred for contempt proceedings against the Attorney General's office and Deputy Attorney General Chenelia personally for willful, repeated violations of court orders over a six-month period.

**17. BRIEFING ON HABEAS RELIEF:** The parties SHALL be ordered to brief the question of whether habeas corpus relief should be granted based on the State's obstruction of federal habeas review, the adverse inferences drawn from non-production, and the established factual basis for Petitioner's constitutional claims.

## VI. GENERAL PROVISIONS

**18. GRADUATED APPROACH:** This graduated relief structure prioritizes compulsion and lesser remedies before terminating sanctions, consistent with Henry v. Gill Indus., Inc., 983 F.2d 943, 946 (9th Cir. 1993), providing Respondent multiple opportunities to comply while ensuring consequences escalate appropriately for continued defiance.

**19. AUTOMATIC ESCALATION:** Each tier of sanctions takes effect automatically upon expiration of the specified time period without requiring

additional motion practice by Petitioner, though Petitioner may file a motion to enforce or modify relief at any time.

**20. GOOD FAITH COMPLIANCE:** If Respondent demonstrates substantial good faith compliance before any tier deadline expires, Respondent may file a motion to stay escalation of sanctions, which the Court will consider based on the extent and timing of compliance.

**21. RESERVATION OF AUTHORITY:** The Court reserves the authority to impose additional sanctions, modify existing sanctions, or grant further relief as justice requires and as the circumstances of continued non-compliance may warrant.

IT IS SO ORDERED.

Dated: _____, 2025

_____

Hon. Barbara L. Major
United States Magistrate Judge