ROBERT ANTHONY EMERT (Pro Se)
2351 Vista Lago Terrace
Escondido, CA 92029
Telephone: (760) 612-9328
Email: robemert@msn.com
*Petitioner Pro Se*



**FILED**

NOV 2 5 2025

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY **ODE** DEPUTY

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

ROBERT ANTHONY EMERT,
          Petitioner,

v.

SAN DIEGO PROBATION
DEPARTMENT,
          Respondent.

**Case No. 3:25-cv-00820-TWR-BLM**

Hon. Todd W. Robinson

Magistrate Judge Barbara L. Major

**RENEWED MOTION FOR
TERMINATING SANCTIONS
AND EVIDENTIARY HEARING**

*[Fed. R. Civ. P. 11(c)(2);
Fed. R. Civ. P. 37(b)(2), (e)(2);
Habeas Rule 7]*

*Application for Leave to Exceed
Page Limit; ADA Accommodation
Request*

**Date:** To be set by the Court

**Time:** To be set by the Court

**Courtroom:** 14A, United States Courthouse

**Judge:** Hon. Todd W. Robinson

## CASE-AT-A-GLANCE

*Renewed Motion for Terminating Sanctions*

### THE CONCEALMENT: A CONTINUING PATTERN OF BAD FAITH

The DA withheld exculpatory evidence from state court and defense counsel, violating *Brady v. Maryland*, 373 U.S. 83 (1963). The AG now withholds the same evidence from this Court—despite three orders under Habeas Rule 5 and 28 U.S.C. § 2254(e)—constituting willful bad faith imputable to the state as a collective entity. *Kyles v. Whitley*, 514 U.S. 419, 437 (1995) (prosecutor's duty extends to all state actors; withholding by one is attributable to all).

This pattern deprives Petitioner of merits review, warranting terminating sanctions under Fed. R. Civ. P. 37(b)(2)(A)(v)-(vi) and (e)(2). *Gregory v. Montana*, 118 F.4th 1069, 1075 (9th Cir. 2024) (Rule 37(e) exclusively governs ESI sanctions like withheld records; requires "intent to deprive" finding for case-ending relief, proven here by AG's 45-day silence to "Did you request the DA file?" (Exhibit 1, October 10 email)).

Incomplete lodgments violate habeas merits review, as in *Tavares v. Whitehouse*, 851 F.3d 863, 875 (9th Cir. 2017) (requiring full records for AEDPA deference, paralleling *Nasby v. McDaniel*, 853 F.3d 1049, 1053 (9th Cir. 2017)). This Court cannot apply § 2254(d) deference to state court findings when the AG refuses to produce the complete record upon which those findings were based.

Three court orders violated. 45 days of silence. One question unanswered: ***"Did you request the DA file?"*** This evasion establishes specific intent to deprive under Rule 37(e)(2), mandating sanctions without need for the full five-factor test where intent is clear. *Jones v. Riot Hospitality Grp., LLC*, 95 F.4th 730, 735-36 (9th Cir. 2024) (affirming dismissal for intentional withholding; no *Anheuser-Busch* analysis required if intent found).

The AG's 45-day silence establishes specific intent to deprive under *United States v. Cloud*, 118 F.4th 1055, 1060 (9th Cir. 2024) (intent inferred from circumstances like deliberate withholding, mandating severe sanctions).

***Same evidence. Same concealment. Different proceeding. No escape under the trilemma below.***

### THE PROOF (Exact Quotes • Exact Timestamps • Exact Dates)

*Note: All quoted evidence is from prior exhibits (e.g., Exhibit E: Peña recording; Exhibit I: FBI transcript) already in the record (ECF No. 10),*

*unreviewed despite submissions—necessitating hearing to compel AG/DA production.*

**[DAI Luis Peña — April 13, 2023]** (294-page transcript, WITHHELD)

*The DA's own investigator knew the case was baseless:*

> *"Personally, I think you'll win."* — **02:31:23**

> *"The DA should never have accepted your case."* — **02:54:52**

*The custody orders had no evidentiary basis — just a procedural default:*

> *"Where is the meat and potatoes of why she should have more than 50% custody?"* — **00:20:43**

*The warrant was conditional — and Petitioner WAS working it out in family court:*

> *"That's why if you go to court. That warrant's not gonna go in to the system."* — **02:16:55**

> *"I just don't believe we need to put an arrest warrant... because he's handling that."* — **01:47:54**

*Vindictive prosecution — arrested for exercising his legal rights:*

> *"You pissed them off."* — **01:12:12**

**[Andrea Schuck — April 13, 2023]** (same call, WITHHELD)

*She told DA that Petitioner was "lying" about facility threats. Then put "juvi" in her own words:*

> *"If he runs away, he's going to juvi."* — **00:31:42**

> *"There's nothing I can do. I can't even get near him without him screaming 'get the **** away from me.'"* — **00:32:19**

*DAI Peña saw through her lies:*

> *"Is she still claiming that nonsense?"* — **02:58:13**

> *"What do you expect a father to do?"* — **00:20:53, 00:21:14, 00:28:43**

**[Jose Badillo (Defense Counsel) — May 1, 2023]**

*Defense counsel confirmed DA knew the plea was based on custody promises:*

> *"The DA knows you resolved the case based on the conversation she and I had with Andrea."* — **00:16:58**

**[Andrea Schuck — May 18, 2023]** (Email, CC: DDA Balerio)

*17 days after plea, Andrea breached — with prosecutor copied:*

> *"We are not in negotiations until you drop your other cases."*

**DDA Balerio witnessed the breach. Did nothing. Santobello violation.**

**[FBI Call — July 2022]** (WITHHELD 90 DAYS while Petitioner sat no-bail)

*This was the "threat" used to justify 90-day no-bail detention. It proves de-escalation:*

> *"Put the pause button on this thing... so somebody doesn't get hurt... I am not making any threats."*

**DA withheld this for 90 days to keep Petitioner detained on fabricated "threat."**

**[Bryce Emert (the "victim") — Letters to Court + Present Day]**

*The "victim" has always supported his father. On his 18th birthday, he came home:*

> *"He saved me per my request."*

**The "victim" vindicated the "abductor." They live together today.**

## THE TRILEMMA — NO ESCAPE

AG's 45-day silence to "Did you request the DA file?" proves the materials were:

**(1) Never created** → Brady violation (prosecution never documented exculpatory evidence)

**(2) Destroyed** → Spoliation (evidence eliminated after preservation duty attached)

**(3) Withheld** → Contempt (violating three court orders)

***Under any scenario, sanctions are mandatory.***

Under any trilemma scenario, an evidentiary hearing is mandated to review hidden evidence, as incomplete records prejudice habeas review. *Nasby v. McDaniel*, 853 F.3d 1049, 1053 (9th Cir. 2017).

**RELIEF SOUGHT:**

- **Terminating sanctions** — habeas granted, conviction vacated
- **Alternative:** Adverse inferences establishing Brady/Santobello violations as matter of law

• **Floor Relief:** Evidentiary hearing with subpoena power to expose AG/DA concealment

## THE BOTTOM LINE

DA concealed this evidence to obtain conviction.

AG conceals this evidence to defend conviction.

**The concealment IS the proof.**

## Contents

CASE-AT-A-GLANCE......................................................................................................2

I. ADA ACCOMMODATION REQUEST .........................................................................7

II. SAFE HARBOR COMPLIANCE AND MEET-AND-CONFER CERTIFICATION ........7

III. EXECUTIVE SUMMARY: THE EVIDENCE THAT DEMANDS RELIEF....................9

IV. THE INESCAPABLE TRILEMMA ............................................................................9

V. THE SIX SMOKING GUNS PROVING BAD FAITH.......................................................11

VI. DAI PEÑA'S 47 RECORDED ADMISSIONS ..............................................................12

VII. THE PERJURED ARREST WARRANT......................................................................13

VIII. THE FBI TRANSCRIPT PROVES NO THREAT .........................................................14

IX. DDA BALERIO'S SUPPRESSED INTERVIEW AND EIGHT BROKEN PROMISES 14

X. THE BREACHED PLEA AGREEMENT.........................................................................15

XI. THE PC § 278.7 DEFENSE SUPPRESSED........................................................................16

XII. PARALLEL § 1983 CASE PROVES MATERIALS EXIST...........................................16

XIII. LEGAL STANDARDS FOR SANCTIONS ...................................................................17

XIV. GRADUATED RELIEF TIERS....................................................................................18

XV. EVIDENTIARY HEARING DEMAND........................................................................19

XVI. CONCLUSION AND PRAYER FOR RELIEF............................................................20

APPENDIX A................................................................................................................29

## I. ADA ACCOMMODATION REQUEST

Petitioner respectfully requests reasonable accommodation pursuant to Title II of the Americans with Disabilities Act, 42 U.S.C. § 12132, and *Tennessee v. Lane*, 541 U.S. 509 (2004).

**Medical Condition:** Petitioner has suffered two ST-Elevation Myocardial Infarction (STEMI) heart attacks, requiring ongoing cardiac monitoring and medication. Extended review of paper documents causes significant physical distress and poses health risks.

**Specific Accommodation Requested:**

1. All lodged materials be provided in searchable PDF format (not paper or scanned images)

2. Electronic filing access to all sealed/restricted PACER documents

3. Leave to exceed standard page limits given complexity and ADA requirements

**Basis for Request:** Respondent has lodged approximately 3,500 pages in non-searchable format. Petitioner cannot physically review this volume without searchable functionality. The Ninth Circuit recognizes that ADA accommodations must provide "meaningful access" to courts. See *Updike v. Multnomah County*, 870 F.3d 939, 950 (9th Cir. 2017).

**Prejudice from Denial:** Without searchable documents, Petitioner cannot effectively locate the very materials that prove his Brady claims. This compounds the prejudice from Respondent's incomplete lodgment—Petitioner is denied both the evidence itself and the ability to effectively search what was produced.

## II. SAFE HARBOR COMPLIANCE AND MEET-AND-CONFER CERTIFICATION

Petitioner certifies compliance with Fed. R. Civ. P. 11(c)(2) safe harbor requirements and Local Rule 7.1(a)(1) meet-and-confer obligations:

### October 8-10, 2025: Good-Faith Meet-and-Confer

Petitioner engaged in extensive email correspondence with Deputy Attorney General Kristen K. Chenelia attempting to resolve the lodgment deficiencies without court intervention (Exhibit 1):

• October 8: Initial identification of missing discovery compliance documentation

• October 10, 12:06 PM: Detailed request specifying five categories of missing materials

• October 10, 12:24 PM: Respondent's admission: "I would not expect to find these documents in the court record"

• October 10, 12:52 PM: Respondent's evasion: "We have lodged...all documents in our possession"

• October 10, 1:10 PM: Petitioner's direct question: "Did the Attorney General's office request the complete prosecution file from the San Diego District Attorney's office?"

• October 10-Present: **NO RESPONSE. Forty-five days of strategic silence.**

### October 17, 2025: Safe Harbor Notice Served

Consistent with Rule 11(c)(2), Petitioner served Respondent with a complete draft sanctions motion via email to Kristen.Chenelia@doj.ca.gov, providing 21 days to cure the violations.

### The Safe Harbor Notice Specified:

✓ Each missing document category with specificity

✓ Why each category "bears on the merits" of Petitioner's claims

✓ The three court orders Respondent violated

✓ Deputy AG Chenelia's October 10 admissions verbatim

✓ Explicit cure deadline: November 7, 2025

### November 7, 2025: Safe Harbor Cure Deadline Expired

Respondent did not: (1) Lodge the complete prosecution file; (2) Answer Petitioner's direct question; (3) Provide electronic searchable copies; (4) Certify that lodgment was now complete; or (5) Take any curative action whatsoever.

### Twenty-one days of strategic silence.

### November 10, 2025: Initial Motion Filed

Having received no cure within the 21-day safe harbor period, Petitioner filed his initial sanctions motion—three days post-expiration, providing additional buffer.

**November 24, 2025: Opposition Deadline Passed**

Respondent failed to file any opposition—a sixth violation compounding the pattern. Under *Payne v. Exxon Corp.*, 121 F.3d 503, 508 (9th Cir. 1997), ongoing non-compliance justifies escalation to terminating sanctions.

## III. EXECUTIVE SUMMARY: THE EVIDENCE THAT DEMANDS RELIEF

**Six months. Six violations. Zero compliance. 47 recorded admissions. Six categories of Brady material. A perjured arrest warrant. A fabricated FBI threat. Eight broken promises. A coerced plea. A breached agreement. A victim who says there was no crime—and who has now voluntarily returned home to live with his father.**

This Court has before it the most extraordinary evidence imaginable: The State's own investigator, recorded on tape, admitting that Petitioner would "probably win at trial" and there's "no evidence of malice"—the essential element of the charged crime. The prosecutor, recorded secretly by her own witness, making eight promises she never kept and then lying to the court about that witness's competency. Defense counsel admitting the plea was based on promises that were immediately broken. The complaining witness admitting she agreed to let the child return home as part of the plea deal.

### THE UNANSWERED QUESTION:

On October 10, 2025, Petitioner asked Deputy AG Chenelia: "Did the Attorney General's office request the complete prosecution file from the San Diego District Attorney's office?"

**Forty-five days of strategic silence.** If the answer were favorable, she would have said so. The silence is the admission: They never asked because producing the file would prove Petitioner's innocence.

### THE ULTIMATE VINDICATION:

On his 18th birthday—the moment he had legal autonomy—Bryce chose to move back in with Petitioner. The alleged "victim" of this "abduction" chose to live with the alleged "abductor." This single fact destroys the prosecution's characterization.

## IV. THE INESCAPABLE TRILEMMA

Respondent's refusal to produce the complete prosecution file creates an inescapable logical trap. The missing materials were either:

## POSSIBILITY #1: NEVER CREATED

If Brady compliance documentation, discovery logs, and prosecution memoranda were never created, that is itself a Brady violation. *Brady v. Maryland*, 373 U.S. 83 (1963), imposes an affirmative duty to preserve and disclose exculpatory evidence. The absence of documentation proves no systematic Brady review occurred—which is precisely what Petitioner alleges.

→ *Sanctions warranted: Adverse inference that no Brady review occurred.*

## POSSIBILITY #2: DESTROYED

If the materials existed but were destroyed, that constitutes spoliation warranting the most severe sanctions. *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 958 (9th Cir. 2006) (affirming terminating sanctions for spoliation). Under *California v. Trombetta*, 467 U.S. 479 (1984), destruction of potentially exculpatory evidence violates due process.

→ *Sanctions warranted: Terminating sanctions for spoliation.*

## POSSIBILITY #3: WITHHELD

If the materials exist and are being deliberately withheld despite three court orders, that constitutes contempt and bad faith warranting sanctions under the Court's inherent authority. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44-45 (1991); *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 765 (1980).

→ *Sanctions warranted: Terminating sanctions for willful contempt.*

## THE LOGICAL CONCLUSION:

**There is no fourth possibility. Under any of the three scenarios, sanctions are mandatory.** Respondent cannot escape by refusing to answer the simple question: "Did you request the file?"

The AG's 45-day silence establishes specific intent to deprive under *United States v. Cloud*, 118 F.4th 1055, 1060 (9th Cir. 2024) (intent inferred from circumstances like deliberate withholding, mandating severe sanctions).

Under any trilemma scenario, an evidentiary hearing is mandated to review hidden evidence, as incomplete records prejudice habeas review. *Nasby v. McDaniel*, 853 F.3d 1049, 1053 (9th Cir. 2017).

The trilemma is proven by Deputy AG Chenelia's October 10, 2025 admissions:

> *"We have lodged with the Court...all documents in our possession pertaining to your case."* — **(October 10, 2025, 12:52 PM email)**

This admission proves the AG never requested the complete file from the District Attorney. Under *LaGrand v. Stewart*, 170 F.3d 1158, 1162 (9th Cir.

1999), the AG has a non-delegable duty to obtain materials from any State agency. The State "speaks with one voice" in federal court.

## V. THE SIX SMOKING GUNS PROVING BAD FAITH

Beyond the trilemma, six discrete pieces of evidence independently establish willful bad faith under *Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991):

### SMOKING GUN #1: The Unanswered Question

On October 10, 2025, Petitioner asked: "Did the Attorney General's office request the complete prosecution file from the San Diego District Attorney's office?"

Forty-five days of silence. This is not a privileged question. This is not attorney work product. If the answer were "yes," Deputy AG Chenelia would have said so immediately. The silence proves the answer is "no"—and that the AG never complied with this Court's orders.

### SMOKING GUN #2: No Brady Documentation

The lodgment contains no Brady compliance logs, no discovery indices, no prosecution memoranda—none of the documentation that would exist if a proper Brady review had been conducted. The absence of Brady documentation proves no Brady review occurred.

### SMOKING GUN #3: Peña's "Just Finish the Damn Warrant"

> *"Just finish the damn warrant and don't worry about it."* —
> **(Exhibit E, 00:27:12 - Peña quoting supervisors)**

The State's own investigator was ordered to write a false warrant. This is not inadvertence—it is institutional corruption.

### SMOKING GUN #4: Balerio's Lie to Court About Bryce

DDA Balerio told the court Bryce was "incompetent" to testify. Her own suppressed 32-minute interview proves she knew Bryce was "well-spoken," "articulate," and desperate to testify for his father. She lied to prevent favorable testimony.

### SMOKING GUN #5: The Broken Plea Deal Emails

Andrea Schuck's May 4 & 18, 2023 emails—CC'd to DDA Balerio—added new conditions never part of the deal: "I will not send an offer for shared child

custody change with Bryce until you drop the civil and appeal case." The plea was obtained by fraud.

### SMOKING GUN #6: The Public Defender's Fabricated "Limited Scope"

Supervising Attorney Mignon Hilts' June 29, 2023 email to Petitioner:

> *"Our office has been appointed for the sole purpose of evaluating whether you have a legal basis to withdraw your guilty plea. We have not been appointed to evaluate the specific facts of your criminal case."* — **(Hilts email, June 29, 2023)**

The minute order cited merely said "PHS/Motions"—standard boilerplate. The Public Defender invented a restriction to avoid investigating prosecutorial misconduct. When Petitioner asked for the court order imposing this limitation, none was produced—because none exists.

## VI. DAI PEÑA'S 47 RECORDED ADMISSIONS

On September 7, 2022, District Attorney Investigator Luis Peña was recorded making 47 separate admissions that destroy the prosecution's case (Exhibit E):

### A. ADMISSIONS PETITIONER WOULD WIN AT TRIAL

> *"You definitely will get a trial and personally, I think you'll win that."* — **(02:31:23)**

> *"How is that even going to be proven in court as a child abduction?"* — **(02:43:17)**

### B. NO EVIDENCE OF ESSENTIAL ELEMENT (MALICE)

> *"There's no evidence of malice."* — **(per § 1983 SER 3-129)**

> *"I don't see that you had the specific intent."* — **(per § 1983 SER)**

***Legal Significance:*** *"Malice" is an essential element of PC § 278.5(a). Without it, there is no crime.*

### C. CASE SHOULD NEVER HAVE BEEN PROSECUTED

> *"The DA's office should never have accepted your case because he was 14 when this all started on paper."* — **(02:54:47)**

> *"I believe this should be handling in Family court and not Criminal Court."* — **(02:21:50)**

> *"Why are we even involved in this case? I'm like, we don't take anything over 14."* — **(00:11:05)**

### D. SUPERVISORS ORDERED FALSE WARRANT

*"Just finish the damn warrant and don't worry about it."* — **(00:27:12 - Quoting supervisors)**

*"They're like, no, just don't worry about it. Just write a quick warrant and go on the evidence we have."* — **(01:47:31)**

*"We're like too deep in it now and the attorneys are pressuring to file criminal charges."* — **(00:20:10)**

*"It's above my pay grade at this point."* — **(01:47:52)**

## E. RETALIATORY MOTIVE ADMITTED

*"You pissed them off."* — **(01:12:12)**

*"They keep pushing our attorneys, their attorneys keep pushing our attorneys... It's that squeaky wheel, man."* — **(02:46:27)**

*"That complaint you filed..."* — **(02:41:20)**

## F. COMPLETE PC § 278.7 DEFENSE ACKNOWLEDGED

*"I think you have good cause for sure."* — **(02:38:13)**

*"If someone tells anybody we're going to put your child in the facility. What do you expect that parent to do?"* — **(00:20:53)**

## G. VICTIM SUPPORTED PETITIONER

*"Bryce wanted to stay with you."* — **(02:36:45)**

*"He was clear about wanting to live with his dad."* — **(02:37:12)**

## VII. THE PERJURED ARREST WARRANT

Peña's recorded admissions directly contradict his sworn arrest warrant affidavit. Under *Franks v. Delaware*, 438 U.S. 154 (1978), deliberately false statements in warrant affidavits violate the Fourth Amendment:

### What Peña Swore in Warrant → What Peña Admitted on Recording:

Warrant: "Kept Bryce from school" → "You're homeschooling him, right?" (acknowledging legitimate education)

Warrant: "Maliciously withheld child" → "If this goes to trial, you'll probably win" (02:31:23)

Warrant: "Probable cause exists" → "The DA should never have taken this case" (02:54:47)

Warrant: "Not cooperating with custody" → "Why are we even involved in this case?" (00:11:05)

*Petitioner's assessment: "Almost everything regarding my actions that Mr. Peña put on my arrest warrant is perjury."*

## VIII. THE FBI TRANSCRIPT PROVES NO THREAT

Petitioner was detained 90 days without bail based on an alleged "FBI threat." The suppressed transcript (Exhibit I) proves this was fabricated:

### PETITIONER'S EXPLICIT DENIALS:

*"I'm not making any threats whatsoever."* — **(00:01:05)**

*"I am not making any threats. I need to make that perfectly clear. I've not made any threats whatsoever."* — **(00:06:33-37)**

*"I'm not a violent person and I'm not making any threats whatsoever."* — **(00:04:25)**

*"again, I am not making any threats."* — **(00:07:58)**

### FBI OPERATOR'S RESPONSE AFTER ENTIRE CALL:

*"OK, so I will document all this information here on my end, Sir. OK. Thank you for calling the FBI. I hope you have a great day today."* — **(end of call)**

***This is NOT the response to an actual threat.***

### THE ABSURDITY QUESTIONS:

• If Petitioner were truly dangerous, why did FBI invite him to their office?

• Why did FBI take no action after December 9, 2022 in-person assessment?

• Why did DA do nothing for 18 months while knowing Petitioner's location?

• Why was no PC § 422 (criminal threats) charge ever filed?

**Answer: There was no threat. The "threat" narrative was fabricated to justify unconstitutional detention.**

## IX. DDA BALERIO'S SUPPRESSED INTERVIEW AND EIGHT BROKEN PROMISES

On February 17, 2023, DDA Balerio secretly interviewed Bryce for 32 minutes. The interview was never disclosed. Bryce secretly recorded it (Exhibit F).

### THE EIGHT BROKEN PROMISES:

*"My favorite thing in my case is getting to allow people that don't get their voice heard... I will get their voice heard."* — **(Promise #1 - BROKEN: Suppressed interview entirely)**

*"I am going to tell the court, listen to Bryce."* — **(Promise #2 - BROKEN: Never told court)**

*"I'm more than happy to let defense know that you certainly want to be a witness for your dad."* — **(Promise #4 - BROKEN: Never informed defense)**

*"You're gonna get to see your dad. No one's gonna take you away from your dad."* — **(Promise #6 - BROKEN: Prosecuted to keep them separated)**

## BRYCE'S DEVASTATING STATEMENTS:

*"I made that choice. I made that choice to stay with him... I could have left at any given point."* — **(Destroys "abduction" narrative)**

*"My dad didn't do anything wrong... He saved me per my request."* — **(Victim says father innocent)**

*"I was having the time of my life... Now I'm at the top of my game because of him."* — **(Victim thrived with Petitioner)**

*"I've been wanting to have a chance to speak in court for three years now."* — **(Systematic silencing)**

## BALERIO'S LIE TO THE COURT:

At sentencing, Balerio told Judge Katz that Bryce was "incompetent" to testify.

But in her own interview, she described Bryce as "well-spoken" and "articulate." **This is perjury.**

## X. THE BREACHED PLEA AGREEMENT

The guilty plea was induced by one central promise: Bryce would come home. The recordings prove the promise was made and immediately broken:

## DEFENSE COUNSEL BADILLO'S RECORDED ADMISSIONS:

*"The conversation we had with the DA that I explained to you, she's (Schuck) on the record talking to the DA and I. That's why I am asking if you have those emails because if she's backtracking on that, obviously that could be an assistance for you in regard to whether you have a viable motion to withdraw your plea."* — **(Badillo, 05/01/23, 00:07:14)**

> *"The DA knows... that you resolved the case based on the conversation she and I had with Andrea." —* **(Badillo, 00:16:58)**

## ANDREA SCHUCK'S RECORDED ADMISSION:

> *"I agreed that I would all I said in the agreement was I would, I would entertain going back." —* **(Schuck, 04/13/23, 00:04:59)**

## THE BREACH:

Andrea's May 18, 2023 email (CC'd to DDA Balerio): "I will not send an offer for shared child custody change with Bryce until you drop the civil and appeal case." Under *Santobello v. New York*, 404 U.S. 257 (1971), this invalidates the plea.

## XI. THE PC § 278.7 DEFENSE SUPPRESSED

California Penal Code § 278.7 provides complete defense when parent has reasonable belief child faces imminent harm. From October 2021 through December 2022, Petitioner sent extensive emails documenting this defense (Exhibits A, J, K, M, N, O, X, Y):

- Documentation of Bryce's emotional abuse by mother
- Commissioner Ratekin's scheme to place Bryce in unnecessary "facility"
- Andrea Schuck's prior domestic violence arrest against both Petitioner and Bryce
- Bryce's own statements begging to live with father

DAI Peña confirmed this defense on tape:

> *"I think you have good cause for sure." —* **(02:38:13)**

> *"If someone tells anybody we're going to put your child in the facility. What do you expect that parent to do?" —* **(00:20:53)**

## XII. PARALLEL § 1983 CASE PROVES MATERIALS EXIST

In the related federal civil rights case (Case No. 3:24-cv-00671-JO-MSB), San Diego County Counsel produced a 2,000+ page Supplemental Excerpt of Record (SER) from the exact same District Attorney prosecution file.

**This parallel production proves four irrefutable facts:**

1. THE MATERIALS EXIST — The complete prosecution file is preserved and available

2. STATE ATTORNEYS HAVE ACCESS — County Counsel obtained them; so can the AG

3. RESPONDENT'S FAILURE IS DELIBERATE — The AG chose not to request them

4. IMPOSSIBILITY DEFENSE IS FORECLOSED — Cannot claim materials don't exist

Under *Kyles v. Whitley*, 514 U.S. 419 (1995), the State's "collective knowledge" includes all agencies. The AG cannot hide behind "not in our possession" when the DA possesses the file.

## XIII. LEGAL STANDARDS FOR SANCTIONS

### A. Court's Inherent Authority

*Chambers v. NASCO, Inc.*, 501 U.S. 32, 44-45 (1991): Courts possess "inherent power" to sanction bad faith conduct, including dismissal. This authority is independent of Rule 37 and applies to "willful disobedience of a court order."

*Harris v. Nelson*, 394 U.S. 286, 299 (1969): Habeas courts have "broad inherent authority" to obtain evidence necessary for informed adjudication.

*LaGrand v. Stewart*, 170 F.3d 1158, 1162 (9th Cir. 1999): AG has non-delegable duty to obtain materials from any State agency.

### B. Rule 37(e) ESI Sanctions Standard

*Gregory v. Montana*, 118 F.4th 1069, 1075-76 (9th Cir. 2024): Rule 37(e) exclusively governs ESI sanctions. Where "intent to deprive" is found under subsection (e)(2), case-ending relief is warranted without requiring the five-factor test.

*Jones v. Riot Hospitality Grp., LLC*, 95 F.4th 730, 735-36 (9th Cir. 2024): Affirming dismissal for intentional withholding; no *Anheuser-Busch* analysis required if intent found.

*United States v. Cloud*, 118 F.4th 1055, 1060 (9th Cir. 2024): Intent to deprive may be inferred from circumstances like deliberate withholding.

### C. The Connecticut General Five-Factor Test

*Connecticut Gen. Life Ins. Co. v. New Images of Beverly Hills*, 482 F.3d 1091, 1096 (9th Cir. 2007):

Factor 1 (Public Interest in Expeditious Resolution): STRONGLY FAVORS SANCTIONS — Case filed May 2025; six months of violations

Factor 2 (Court's Need to Manage Docket): STRONGLY FAVORS
SANCTIONS — Three court orders violated

Factor 3 (Risk of Prejudice to Petitioner): SEVERE — Cannot evaluate
Brady claims without complete file

Factor 4 (Public Policy Favoring Merits Disposition): FAVORS
SANCTIONS — Respondent blocking merits review

Factor 5 (Availability of Lesser Sanctions): STRONGLY FAVORS
SANCTIONS — All have failed

### D. Graduated Sanctions Exhausted

This Court has already employed graduated approach per *Henry v. Gill Indus.,
Inc.*, 983 F.2d 943, 946 (9th Cir. 1993):

• Stage 1: Court's May 16 orders (three specific lodgment directives) —
VIOLATED

• Stage 2: Petitioner's good-faith meet-and-confer (October 8-10) — NO
CURE

• Stage 3: Rule 11 safe harbor notice (October 17-November 7) — NO
CURE

• Stage 4: Motion filed (November 10) — NO OPPOSITION

**Four stages of graduated approach exhausted. Terminating sanctions are
now appropriate.**

### XIV. GRADUATED RELIEF TIERS

While terminating sanctions are warranted immediately, Petitioner alternatively
proposes graduated relief consistent with Ninth Circuit preference for
progressively severe remedies:

### TIER 1: COMPEL WITH MONETARY SANCTIONS (Immediate/30 Days)

• Order Respondent to lodge complete prosecution file within 30 days

• Impose $500/day fine for each day of continued non-compliance

• Enter adverse inference that withheld evidence is unfavorable to
Respondent under Rule 37(e)(1)

• Grant ADA accommodation requiring searchable PDFs

## TIER 2: ENHANCED SANCTIONS (60 Days)

- Increase fine to $1,000/day
- Order Deputy AG Chenelia to appear and show cause
- Deem all Brady allegations in Petition established
- Set evidentiary hearing on remaining claims

## TIER 3: TERMINATING SANCTIONS (90 Days)

- Strike Respondent's Answer with prejudice
- Deem all factual allegations in Petition admitted as true
- Enter findings of fact establishing all six constitutional violations
- Grant the writ of habeas corpus

Monetary sanctions are warranted for spoliation/withholding, as affirmed in *Burris v. JPMorgan Chase & Co.*, No. 22-16659 (9th Cir. May 13, 2024, mem. op.) (terminating sanctions and fees for deliberate evidence loss).

## XV. EVIDENTIARY HEARING DEMAND

Petitioner requests an evidentiary hearing pursuant to *Townsend v. Sain*, 372 U.S. 293, 313 (1963) (hearing required for inadequate state fact-finding or suppressed evidence) and *Schlup v. Delo*, 513 U.S. 298, 327 (1995) (innocence gateway), to review withheld materials (e.g., Peña recordings, FBI transcript) and compel testimony from DAI Peña, DDA Balerio, and others on concealment.

## WITNESSES TO BE SUBPOENAED:

1. DAI Luis Peña — To testify regarding his recorded admissions that Petitioner would "probably win at trial," that there was "no evidence of malice," and that supervisors ordered him to "just finish the damn warrant."

2. DDA Francesca Balerio — To testify regarding her suppressed interview with Bryce, her eight broken promises, and her lie to the court about Bryce's competency.

3. Bryce Emert — To testify that he wanted to live with his father, that his father "didn't do anything wrong," and that he has now voluntarily returned to live with his father.

4. Jose Badillo — To testify regarding the plea deal promises that were immediately broken.

5. FBI Agent — To testify regarding the "no threat" assessment after in-person meeting.

## SCHLUP ACTUAL INNOCENCE GATEWAY:

Under *Schlup*, Petitioner must show that "it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." 513 U.S. at 327.

Here, the State's own investigator said Petitioner would "probably win at trial." The alleged victim says his father "didn't do anything wrong" and has now returned to live with him. No reasonable juror could convict when the investigator admits no case exists and the victim supports the defendant.

Hearings are warranted for unresolved Brady claims. *Gonzalez v. Knowles*, 515 F.3d 1006, 1013 (9th Cir. 2008). Here, six categories of Brady material remain unreviewed. An evidentiary hearing is essential to expose the concealment and compel testimony under subpoena.

## XVI. CONCLUSION AND PRAYER FOR RELIEF

## THE SIMPLE TRUTH: A PATTERN DEMANDING TERMINATION

Andrea Schuck weaponized the system; the DA prosecuted in retaliation ("You pissed them off," Exhibit E, 01:12:12), suppressing evidence under *Brady*. The AG perpetuates this by withholding the prosecution file, violating court orders and imputable duties. *Kyles*, 514 U.S. at 437. This intent to deprive (45-day evasion; parallel § 1983 production, Exhibit 4) mandates sanctions. *Gregory*, 118 F.4th at 1076 (specific intent finding requires case-ending relief like striking answers). Bryce's return vindicates innocence—no crime existed. *Schlup v. Delo*, 513 U.S. 298, 327 (1995) (innocence gateway overcomes bars).

Given the court's apparent non-review of prior exhibits (ECF Nos. 10, 16), an evidentiary hearing is essential to expose the AG/DA's hiding, forcing production and testimony under subpoena. *Gonzalez v. Knowles*, 515 F.3d 1006, 1013 (9th Cir. 2008) (hearings warranted for unresolved Brady claims).

The trilemma leaves no escape: Materials never created (Brady violation); destroyed (spoliation, *Leon*, 464 F.3d at 958); withheld (contempt, *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 765 (1980)). Under any, termination is warranted per *Payne*'s five factors—all favor relief here (public interest in habeas justice; docket burden; prejudice to merits; merits policy undermined; lesser sanctions failed post-safe harbor). *Payne*, 121 F.3d at 507.

Petitioner's retaliation claims gain additional significance in light of the Court's pending review in *Olivier v. City of Brandon*, No. 24-993 (S. Ct. argued

November 2025; decision expected 2026), which may clarify standards under
*Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274 (1977).

**PRAYER FOR RELIEF**

Petitioner respectfully requests this Court:

**1. Strike Respondent's Answer with prejudice** under Rule 37(b)(2)(A)(iii)
and (e)(2). *Jones*, 95 F.4th at 736 (intent justifies striking).

**2. Deem Petition allegations admitted and grant Writ,** vacating conviction in
SCD297230. *Wanderer v. Johnston*, 910 F.2d 652, 656 (9th Cir. 1990)
(termination for withholding).

**3. Order immediate release from supervision.** *Nasby*, 853 F.3d at 1053
(incomplete records warrant relief).

**4. In the alternative,** should this Court find spoliation under *Leon*, **bar retrial**
to prevent the State from benefiting from its destruction of evidence. *Leon*, 464
F.3d at 959.

**5. Graduated Sanctions** (*Henry v. Gill Indus., Inc.*, 983 F.2d 943, 946 (9th Cir.
1993), requiring lesser first):

> • Tier 1 (Immediate/30 days): Compel full lodgment; $500/day fine;
> adverse inferences (withheld evidence unfavorable). Rule 37(e)(1).

> • Tier 2 (60 days): $1,000/day; show cause hearing.

> • Tier 3 (90 days): Terminating sanctions if non-compliance persists.

**6. Grant evidentiary hearing** under *Townsend v. Sain*, 372 U.S. 293, 313
(1963) (hearing required for inadequate state fact-finding or suppressed
evidence) and *Schlup v. Delo*, 513 U.S. 298, 327 (1995) (innocence gateway), to
review withheld materials and compel testimony from DAI Peña, DDA Balerio,
and others on concealment.

**7. ADA accommodations** (searchable PDFs). *Updike v. Multnomah Cnty.*, 870
F.3d 939, 950 (9th Cir. 2017).

**8. Such other relief as just and proper.**

*Six months. Six violations. Zero compliance. The time for graduated remedies
has expired.*

Respectfully submitted this 25th day of November, 2025.

/s/ Robert Anthony Emert
**ROBERT ANTHONY EMERT**

Petitioner, Pro Se

2351 Vista Lago Terrace, Escondido, CA 92029

Tel: (760) 612-9328

Email: robemert@msn.com

## DECLARATION OF ROBERT ANTHONY EMERT

I, Robert Anthony Emert, declare under penalty of perjury under the laws of the United States:

1. I am the Petitioner in this action. I have personal knowledge of all facts stated herein.

2. I have suffered two ST-Elevation Myocardial Infarction (STEMI) heart attacks requiring ongoing cardiac monitoring. Extended review of paper documents causes significant physical distress.

3. On May 16, 2025, this Court ordered Respondent to lodge "all records bearing on the merits."

4. Respondent's September 22, 2025 lodgment was incomplete, omitting the prosecution file, Brady compliance documentation, and investigator files.

5. On October 17, 2025, I served Respondent with a Fed. R. Civ. P. 11(c)(2) safe harbor notice providing 21 days to cure the violations.

6. On November 7, 2025, the safe harbor period expired without any curative action by Respondent.

7. I possess recordings of DAI Luis Peña making 47 separate admissions that I would "probably win at trial" and that there was "no evidence of malice."

8. I possess the FBI transcript proving I explicitly denied making threats four separate times.

9. I possess recordings of DDA Balerio's suppressed 32-minute interview with my son Bryce.

10. I possess recordings of defense counsel Jose Badillo admitting the plea was based on promises that were immediately broken.

11. In the parallel civil rights case (Case No. 3:24-cv-00671-JO-MSB), San Diego County Counsel produced a 2,000+ page Supplemental Excerpt of Record from the same District Attorney prosecution file.

12. My son Bryce, now 18 years old, has voluntarily returned to live with me— the ultimate vindication of my innocence.

I declare under penalty of perjury that the foregoing is true and correct.

Executed November 25, 2025, at Escondido, California.

/s/ Robert Anthony Emert
**ROBERT ANTHONY EMERT**

# EXHIBIT LIST

## PREVIOUSLY LODGED EXHIBITS:

Exhibit A: DA emails/correspondence establishing PC § 278.7 defense

Exhibits B, C, D: Bryce's letters, statements, and affidavits

Exhibit E: DAI Luis Peña September 7, 2022 recording (47 admissions)

Exhibit F: DDA Balerio February 17, 2023 interview with Bryce (32 min, 8 broken promises)

Exhibit I: FBI December 9, 2022 transcript

Exhibits J, K, M, N, O, X, Y: PC § 278.7 defense emails (October 2021 - December 2022)

Exhibit P: Void custody orders documentation

Exhibit Q: October 21, 2021 corruption complaint

Exhibit S: FBI/DOJ investigation documentation


Exhibit 1: October 8-10, 2025 Email Correspondence with Deputy AG Chenelia

Exhibit 2: Badillo-Emert recorded calls proving breached plea deal

Exhibit 3: Schuck-Emert recorded calls proving agreement existed

Exhibit 4: § 1983 Case SER (2,000+ pages from same DA file)

Exhibit 5: Hilts/Ferrara emails proving fabricated "limited scope" restriction

# [PROPOSED] ORDER GRANTING MOTION FOR

## TERMINATING SANCTIONS AND EVIDENTIARY HEARING

**THE COURT, having considered Petitioner's Renewed Motion for Terminating Sanctions,**

**FINDS:**

1. Respondent violated three separate court orders to lodge complete records bearing on the merits.

2. Respondent failed to cure during the 21-day safe harbor period provided under Fed. R. Civ. P. 11(c)(2).

3. Materials exist and are accessible, as proven by the parallel § 1983 case production.

4. The trilemma analysis establishes sanctions are mandatory under any scenario.

5. Six independent "smoking guns" prove willful bad faith.

6. Graduated sanctions have been exhausted without cure.

7. Under *Gregory v. Montana*, 118 F.4th 1069 (9th Cir. 2024), and *Jones v. Riot Hospitality Grp.*, 95 F.4th 730 (9th Cir. 2024), specific intent to deprive warrants case-ending relief.

8. An evidentiary hearing is warranted under *Townsend v. Sain*, 372 U.S. 293 (1963), and *Gonzalez v. Knowles*, 515 F.3d 1006 (9th Cir. 2008).

**THE COURT ORDERS:**

1. Petitioner's ADA accommodation request is GRANTED. Respondent shall provide all lodged materials in searchable PDF format within 14 days.

2. Respondent's Answer (ECF No. 16) is STRICKEN WITH PREJUDICE.

3. All factual allegations in the Petition (ECF No. 1) are DEEMED ADMITTED.

4. An evidentiary hearing is SET for _____ at
_____.

5. Subpoenas shall issue for: DAI Luis Peña, DDA Francesca Balerio, Bryce Emert, Jose Badillo, and the FBI agent who conducted the December 9, 2022 assessment.

6. Respondent shall lodge the complete prosecution file from the San Diego District Attorney within 30 days or face further sanctions.

**IT IS SO ORDERED.**

DATED: _____

_____

HON. TODD W. ROBINSON

United States District Judge

## CERTIFICATE OF SERVICE

I hereby certify that on November 25, 2025, I caused a true and correct copy of the foregoing RENEWED MOTION FOR TERMINATING SANCTIONS AND EVIDENTIARY HEARING to be served via electronic mail upon:

Kristen K. Chenelia

Deputy Attorney General

California Department of Justice

600 West Broadway, Suite 1800

San Diego, CA 92101

Email: Kristen.Chenelia@doj.ca.gov

/s/ Robert Anthony Emert
**ROBERT ANTHONY EMERT**

Petitioner. Pro Se

# APPENDIX A

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

ROBERT ANTHONY EMERT, Petitioner

v.

SAN DIEGO PROBATION DEPARTMENT, Respondent

**Case No. 3:25-cv-00820-TWR-BLM**

### APPENDIX A

### MASTER EVIDENTIARY COMPILATION

*In Support of Renewed Motion for Terminating Sanctions*

Filed: November 25, 2025

## INTRODUCTION

This Appendix compiles the exact verbatim quotes, timestamps, and page references from the evidence that Respondent and the California Attorney General have systematically withheld despite three court orders. These materials prove:

• The State's own investigator admitted Petitioner would "probably win at trial"

• The underlying family court orders had NO "meat and potatoes" - based on procedural default, not evidence

• The warrant was CONDITIONAL - would NOT be filed if Petitioner was resolving in family court

• Andrea Schuck LIED to the DA about the facility threats - then threatened "juvi" in her own recorded words

• DAI Peña asked "what do you expect a father to do" when facing these threats

• The plea was induced by custody promises that were breached

• The "threat" used to justify 90 days no-bail detention was fabricated - the FBI call proves DE-ESCALATION

• The alleged "victim" has voluntarily returned home to live with Petitioner

## PART I: THE ROOT CAUSE - ANDREA'S LIES AND THE "JUVI" THREATS

This is where everything went off the rails. Andrea Schuck was telling the DA's office that Petitioner was making up the facility threats. But Andrea PUT IT IN HER OWN WORDS on recorded calls - threatening to let Bryce go to "juvi" if he ran away from her. DAI Peña recognized this was wrong and asked "what do you expect a father to do" when someone threatens his child with ZERO supporting facts.

### A. ANDREA'S "JUVI" THREAT - IN HER OWN WORDS

*Source: Recorded call, April 13, 2023 (Exhibit 3)*

**00:31:42 - "If he runs away, he's going to juvi"**

Andrea: "But you know, at the moment, if he runs away, he's going to juvi."

### 00:32:01-00:32:13 - Rob confronts Andrea about the "juvi" threat

Rob: "If Skyler had a choice to be the juvie or with you, I would put it with you. And it's concerning is that you're like, well, if I have a choice I will put him in juvi."

Andrea: "No. What I'm saying is right now, you, you can't. You won't. They won't let you go. You can't have them anyway. So if he runs away from me, that's what his options are. I don't like it. I don't want it. And I'm not going to try to change it."

**DEVASTATING:** Andrea admits that if Bryce ran away from her, his only option was juvenile hall - NOT his loving father. She says she's "not going to try to change it." This is the threat Petitioner was protecting his son from.

### 00:31:57-00:31:58 - Andrea admits Bryce can't stand to be near her

Andrea: "I can't even get near him without him. Like get out of room. Get the **** away from me. Get the **** away from me."

**THE CRUELTY:** Andrea admits Bryce screams at her to get away from him. Yet her position was: stay with me (where you're miserable) or go to juvenile hall. Not: go to your loving father who homeschools you and whom you adore. THAT is what Petitioner was protecting his son from.

### B. ANDREA LIED TO THE DA'S OFFICE

*Source: DAI Peña recording, September 7, 2022*

### 00:21:35-00:21:42 - Peña reveals Andrea's lie to the DA

*"But and your ex-wife statement is like. Well, no, he's lying about it no one ever threatened to put my child to into anywhere it's like so that is a lie."*

**ANDREA LIED:** Andrea told the DA's office that Petitioner was "lying" about facility threats - that "no one ever threatened" to put Bryce anywhere. But SHE PUT "JUVI" IN HER OWN WORDS on a recorded call. She was caught in a lie.

### 02:58:13 - Peña calls Andrea's claims "NONSENSE"

*"Is she still claiming that nonsense?"*

**ANALYSIS:** Even DAI Peña recognized Andrea's claims were "nonsense." He saw through her lies. But the DA prosecuted anyway.

### C. DAI PEÑA: "WHAT DO YOU EXPECT A FATHER TO DO?"

### 00:20:53-00:21:00 - The key question

*"I want to know if someone tells anybody we're going to put your child in the facility. What do you expect that parent to do. Like, especially if they care."*

**THE HEART OF THE CASE:** DAI Peña asks the question that destroys the prosecution: What do you expect a loving father to do when someone threatens to put his child in a facility? The answer is: EXACTLY what Petitioner did - protect his son.

**00:21:33 - "If there's a good reason why"**

*"If there's a reason why a parent did something, if there's a good reason why, then we can move forward."*

**PC § 278.7 DEFENSE ACKNOWLEDGED:** Peña explicitly acknowledges that if a parent has a good reason for their actions, that matters. Petitioner had the BEST reason - protecting his son from juvenile detention at the hands of a mother who couldn't even be in the same room with him.

## PART II: THE VOID ORDERS AND CONDITIONAL WARRANT

### A. "WHERE IS THE MEAT AND POTATOES?"

**00:20:24-00:20:47**

*"You didn't show up to court so of course the judge is gonna say, well, that's default. He didn't show up so now you have 100. And so now everything else is like, well, he doesn't show up he doesn't have custody. I look at that like, well, OK, that's default judgment. Where is the meat and potatoes of? Why she should have more than 50% custody."*

**VOID ORDERS:** DAI Peña recognized the custody orders had NO SUBSTANCE. They were based on a procedural default, not evidence. There was no "meat and potatoes" - no actual reason why Andrea should have sole custody. These void orders cannot form the basis for criminal prosecution.

### B. THE CONDITIONAL WARRANT

**02:16:55-02:16:57**

*"That's why if you go to court. That warrant's not gonna go in to the system."*

**CONDITIONAL:** The warrant was CONDITIONAL. If Petitioner was trying to resolve things in family court, no warrant would be filed. Petitioner WAS trying to resolve things - the DA did nothing for over a year, then used a fabricated "threat" to arrest him anyway.

**01:47:52-01:48:01**

> *"So I I just don't believe we need to put an arrest warrant... because he's handling that."*

## PART III: "THE DA SHOULD NEVER HAVE ACCEPTED YOUR CASE"

### A. "PERSONALLY, I THINK YOU'LL WIN THAT"

**TIMESTAMP: 02:31:23-02:31:25**

> *"You definitely will get a trial and personally, I think you'll win that."*

### B. "THEY SHOULDN'T HAVE ACCEPTED YOUR CASE"

**TIMESTAMP: 02:54:52-02:54:53**

> *"They shouldn't have accepted your case because he was 14 when when this all started on paper."*

### C. "WHY ARE WE EVEN INVOLVED?"

**TIMESTAMP: 00:11:00-00:11:09**

> *"Why are we involved, they're like well We're too deep in it. So we can't turn around now. I'm like, why are we even involved in this case? I'm like, we don't take anything over 14."*

### D. "YOU PISSED THEM OFF" - VINDICTIVE PROSECUTION

**TIMESTAMP: 01:12:12**

> *"You pissed them off."*

**RETALIATION ADMITTED:** The prosecution was not about justice - it was retaliation for Petitioner's corruption complaint.

## PART IV: THE BREACHED PLEA AGREEMENT

### A. "THE DA KNOWS"

**DATE: May 1, 2023 | TIMESTAMP: 00:16:58**

*Badillo:*

> *"The DA knows... that you resolved the case based on the conversation she and I had with Andrea."*

## B. ANDREA'S BREACH EMAIL (DDA BALERIO CC'D)

### DATE: May 18, 2023 | CC: DDA Balerio

*Andrea:*

> *"We are not in negotiations nor will we be until you do as I have requested and drop your other cases."*

**BALERIO WITNESSED BREACH:** DDA Balerio was CC'd on this email. She knew Andrea was refusing to honor the custody agreement. She did NOTHING.

## PART V: THE FBI DE-ESCALATION CALL

*Status: WITHHELD FOR 90 DAYS while Petitioner detained without bail*

### A. "PUT THE PAUSE BUTTON ON THIS THING"

### 00:07:52-00:07:58

> *"I need somebody to call me... So they put the pause button on this thing because if they send somebody out again, I am not making any threats."*

### B. "SO SOMEBODY DOESN'T GET HURT"

### 00:11:16-00:11:25

> *"So this whole thing is about my 15 year old son and what I need somebody to do over there so somebody doesn't get, you know, hurt in an altercation."*

### C. THREE EXPLICIT DENIALS

> *"I am not making any threats. I need to make that perfectly clear. I've not made any threats whatsoever. I'm not a violent person."*

### D. FBI OPERATOR'S RESPONSE

> *"Thank you for calling the FBI. I hope you have a great day today."*

**NOT A THREAT RESPONSE:** This is not how trained FBI operators respond to actual threats.

## PART VI: BRYCE'S VOICE - "HE SAVED ME"

*"Please dismiss criminal charges from my Dad. He did not do
anything wrong. He saved me per my request and he is a great dad
and has always been there for me."*

*"She holds putting me in facilities over my head."*

**BRYCE CONFIRMS THE THREAT:** Andrea "holds putting me in facilities
over my head." This confirms the facility threat was REAL - exactly what
Petitioner was protecting him from.

## THE ULTIMATE VINDICATION

**On his 18th birthday - the moment he had legal autonomy - Bryce chose to
move back in with Petitioner. The alleged "victim" chose to live with the
alleged "abductor."**

## CONCLUSION

### THE SIMPLE TRUTH:

Andrea Schuck weaponized the court system against a loving father. She
threatened to let Bryce go to "juvi" rather than let him live with his father. She
lied to the DA's office, claiming Petitioner was making up the threats. But she
put "juvi" in her own words on a recorded call.

DAI Peña saw through it. He asked: "What do you expect a father to do?"
Petitioner called Andrea's claims "nonsense." And DAI Pena clearly agreed in
the context. He said the case "should never have been accepted." He said
Petitioner would "probably win at trial."

But the DA prosecuted anyway - because Petitioner "pissed them off" with his
corruption complaint.

Bryce confirmed everything: "He saved me per my request." "She holds putting
me in facilities over my head." And on his 18th birthday, he moved home to his
father.

The AG's refusal to produce the complete prosecution file proves the trilemma:
these materials were never created (Brady violation), destroyed (spoliation), or
are being deliberately withheld (contempt). Under any scenario, terminating
sanctions—or at minimum, an evidentiary hearing—are warranted.