FILED
JAN 13 2026
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY         DEPUTY

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROB EMERT,<br><br>    Petitioner,<br><br>v.<br><br>SAN DIEGO PROBATION DEPARTMENT,<br><br>    Respondent. | Case No. 3:25-cv-00820-TWR-BLM<br><br>**PETITIONER'S REPLY TO RESPONDENT'S OPPOSITION TO RULE 72(a) OBJECTION**<br><br>District Judge: Hon. Todd W. Robinson<br><br>Magistrate Judge: Hon. Barbara Lynn Major |

## INTRODUCTION

The Magistrate Judge found the lodgment "complete." But the Attorney General has never stated—under oath or otherwise—whether she *requested the prosecution file*. After 70+ days of direct questions, silence is the only answer.

    This matters because Petitioner's habeas claims include Brady violations. To evaluate those claims, this Court needs the District Attorney's prosecution file—their discovery log, correspondence records, interview notes, and Brady compliance documentation. The AG's lodgment contains none of this. Instead, it contains materials Petitioner himself filed in state court after his release.

    This is not record completeness. This is recycling.

    The AG cannot certify "complete" lodgment without ever requesting the prosecution file. That certification is either knowingly false or made without any factual basis. Either way, the Magistrate Judge's finding cannot stand.

## I. THE RELIEF REQUESTED

    Petitioner asks this Court for one thing: a sworn declaration.

**REQUESTED ORDER:**

Respondent shall file, within 14 days, a declaration under penalty of perjury stating:

(a) Whether the San Diego District Attorney's prosecution file was requested in connection with this habeas proceeding;

(b) If yes, the date(s), method(s), person(s) contacted, and what materials were received;

(c) For each of the categories identified in Section VI, whether the item: EXISTS, DOES NOT EXIST, or CANNOT BE LOCATED after reasonable inquiry.

This is the least drastic adequate remedy. It requires no production, no discovery, and no merits determination—only truthful disclosure of what Respondent did or did not do.

## II. THE AG'S LODGMENT CONTAINS ONLY PETITIONER'S OWN FILINGS

The AG's lodgment is circular. Every document she lodged falls into one of two categories:

1. Official court records (transcripts, minute orders, clerk's entries); or

2. Materials Petitioner himself filed in state court after his release.

What the lodgment does not contain is any document from the DA's internal files—the very repository where Brady material would be found.

This distinction is fatal to the "complete" finding. Petitioner's Brady claims are not that he was unaware of his own evidence. His claims are that:

• The DA possessed exculpatory evidence and withheld it from defense counsel;

• The DA's own investigators concluded the case was meritless—and documented that conclusion;

• The DA failed to disclose recordings, interview notes, and correspondence proving Petitioner's complete defense under PC § 278.7.

These claims cannot be evaluated by looking at what Petitioner filed. They can only be evaluated by examining what the DA had—and what the DA disclosed to defense counsel.

The AG's lodgment *assumes its own conclusion*: "We lodged everything in the state court record, therefore the record is complette." But the question is whether the DA's

prosecution file—containing Brady material *not* filed in court—should have been lodged pursuant to this Court's order for "all records bearing on the merits."

## III. THE AG'S MISREPRESENTATIONS TO THIS COURT

The AG has not merely failed to lodge the prosecution file. She has actively mischaracterized evidence to justify withholding it. The following comparison demonstrates that the AG knows what this evidence contains—and is deliberately misrepresenting it to avoid lodgment.

### A. The Peña Recording: "Sympathizing" vs. What Peña Actually Said

In her opposition, the AG characterized DAI Peña's statements as merely "sympathizing" with Petitioner. This characterization proves the AG has reviewed the recording. It also proves the AG is misrepresenting what the recording contains.

Here is what the DA's lead investigator actually said after reviewing the complete file:

| Timestamp | DAI Peña Statement | Legal Significance |
|---|---|---|
| [00:27:12-15] | "Just finish the damn warrant and don't worry about it." | Ordered to prosecute despite merit assessment |
| [01:12:12] | "You pissed them off." | Admission of vindictive motive |
| [01:20:35-43] | "No reason for us to even open the case." | File review showed no basis |
| [02:21:50] | "Family Court not Criminal Court." | No criminal conduct |
| [02:31:23] | "Personally, I think you'll win that." | Predicted acquittal |
| [02:38:13] | "I think you have good cause for sure." | PC § 278.7 defense confirmed |

| | | |
|---|---|---|
| [02:54:47] | "They shouldn't have accepted your case." | Policy violation |

None of this is "sympathizing." These are contemporaneous admissions by the DA's lead investigator that: (1) the file showed Petitioner had a complete defense; (2) there was no reason to open the case; (3) the prosecution was vindictive; and (4) Peña was *ordered* to file the warrant despite his assessment.

The AG's characterization as "sympathy" is itself evidence that she has reviewed this recording, understood its significance, and is deliberately withholding it by misrepresenting its contents.

### B. The Balerio Interview: What the AG Will Not Acknowledge

On February 17, 2023, DDA Balerio interviewed Bryce Emert—the alleged "victim." Bryce stated:

> **"My dad didn't do anything wrong."** *[15:48]*

> **"I want to be his witness for my dad."** *[20:43]*

DDA Balerio described Bryce as "sociable," "articulate," and "intelligent" [21:26]. Yet Balerio later told the Court that Bryce was "incompetent" to testify. This contradiction establishes a Napue violation—but only if the interview notes are lodged.

Has the AG lodged these interview notes? No. Has the AG stated whether they exist? No. Has the AG explained whether this interview was ever disclosed to defense counsel? No.

### C. Defense Counsel Confirms the Suppression

Petitioner's defense counsel, Jose Badillo, confirmed on tape what the DA claimed:

> **"They've turned over everything they have."** *[00:08:22]*

When Petitioner asked Badillo whether DDA Balerio disclosed her interview with Bryce, Badillo's answer was one word:

> **"No."** *[00:07:51]*

The DA claimed to have "turned over everything." Defense counsel confirmed they did not receive the Bryce interview. The AG has not lodged the discovery index that would show what was actually disclosed. This is not a gap in the record—it is suppression.

### D. The McIntosh Email: Disclosed, Then Recanted

On April 11, 2022, DA Investigator Steven McIntosh sent Petitioner an email:

> **"If you could give me a call, your ex-wife is willing to give over custody of Bryce to you..."**

The DA disclosed this email—they had to, because Petitioner had a copy. They then had McIntosh testify he "worded it poorly."

But the Peña recording proves McIntosh was right. Peña reviewed the same file and reached the same conclusion: there was no crime. The DA disclosed McIntosh's email and forced a recantation. They withheld the Peña recording because it proves the recantation was false.

## IV. THE COMPLETE TIMELINE SHOWS WHY THE PROSECUTION FILE MATTERS

The following timeline explains why the DA's internal files—not just court records—must be examined:

| Date | Event | Where Evidence Exists |
|---|---|---|
| Oct 12, 2021 | Petitioner CC's DA on family court email | **DA Correspondence File** |
| Nov 10, 2021 | Petitioner emails DA with medical docs, ADA form | **DA Correspondence File** |
| Apr 11, 2022 | McIntosh email: custody resolution imminent | **DA Correspondence File** |
| Sept 7, 2022 | Peña reviews file, concludes case is meritless | **DA Investigation File** |

| Dec 2022 | Balerio uses fabricated "threat" for 90-day no-bail | **DA Bail File / FBI Transcript** |
|---|---|---|
| Feb 17, 2023 | Balerio interviews Bryce; he says "dad did nothing wrong" | **DA Interview Notes** |

Every item in the right column exists in the DA's prosecution file—not in court records Petitioner filed after release. The AG's "complete" lodgment contains none of it.

## V. THE 90-DAY DETENTION: CONTEXT FOR WHY PETITIONER COULD NOT DEVELOP THE RECORD

The AG may argue that Petitioner should have raised these issues in state court. But Petitioner was incarcerated for 90 days on a fabricated "threat" that was never charged. This detention prevented him from accessing, organizing, and presenting his evidence.

The complete FBI transcript shows:

**"I am not making any threats. I need to make that perfectly clear."** *[00:06:33-36]*

The FBI operator's response:

**"Thank you for calling the FBI. I hope you have a great day today."** *[00:11:56-57]*

No alarm. No threat assessment. DDA Balerio used fragments of this call to obtain 90-day no-bail detention, but never charged PC § 422 (criminal threats). She knew there was no threat.

Moreover, Petitioner subsequently met with the FBI in person, where agents conducted a formal threat assessment and determined Petitioner was not a threat. This assessment report—which would have directly contradicted the basis for no-bail detention—was never disclosed to defense counsel or the Court. The logical impossibility is obvious: if Petitioner was so dangerous he required 90-day no-bail detention based on an "FBI threat," why did the FBI itself determine he was not a threat? And why was he immediately safe to release the moment he pleaded guilty?

The "threat" did not change—only his legal status changed. This confirms the detention was coercive, not protective.

This context matters because under *Banks v. Dretke*, 540 U.S. 668, 692 (2003), Petitioner's inability to access evidence while detained excuses any claimed failure of diligence. The AG cannot argue Petitioner should have developed the state court record when the State prevented him from doing so. His inability to recall and organize details while incarcerated for 90 days further underscores the prejudicial impact of the suppression. *Strickler v. Greene*, 527 U.S. 263, 289 (1999).

## VI. THE AG'S INESCAPABLE TRILEMMA

For 70+ days, Petitioner has asked one question: Did you request the prosecution file?

There are only three possible answers:

| If the AG Says... | Then... |
|---|---|
| "We have the file" | She is withholding evidence of vindictive prosecution and Brady violations |
| "Nothing exists" | The DA destroyed months of correspondence and investigation files |
| "We never requested it" | "Complete" certification has no factual basis |

Each answer supports reversing the Magistrate Judge's finding. A declaration would resolve this dispute immediately by forcing the AG to commit, under penalty of perjury, to one of these positions.

## VII. THE DECLARATION CATEGORIES

Petitioner requests a declaration under penalty of perjury stating, for each category, whether the item EXISTS, DOES NOT EXIST, or CANNOT BE LOCATED:

1. DA correspondence file (Oct 2021–Dec 2022) including emails from Petitioner

2. Discovery index/log (PC § 1054)

3. Proof of service of discovery to defense counsel

4. DAI Peña's notes, reports, or communications

5. Any recording of DAI Peña's September 7, 2022 conversation

6. The warrant affidavit filed by DAI Peña

7. Brady/Giglio compliance documentation

8. DDA Balerio's notes from Bryce interview (Feb 17, 2023)

9. Complete FBI transcript

10. Records of plea negotiations

11. FBI threat assessment report from in-person meeting with Petitioner

Additionally:

(d) Was the Peña recording disclosed to defense counsel?

(e) Was the Balerio-Bryce interview disclosed to defense counsel?

(f) Was Petitioner's October-November 2021 correspondence disclosed to defense counsel?

(g) Was the FBI threat assessment report disclosed to defense counsel or the Court?

## VIII. WHY ADVERSE INFERENCES ARE APPROPRIATE

Petitioner is not asking this Court to make merits findings in a Rule 72(a) posture. But this Court can and should draw procedural inferences from 70+ days of silence on a simple question.

Under *Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991), federal courts have inherent authority to manage their proceedings and ensure compliance with orders. The Magistrate Judge's "complete" finding rested on the AG's certification. That certification is meaningless if the AG never actually requested the prosecution file.

The appropriate inferences are:

- Respondent did not request the prosecution file before certifying completeness;
- The prosecution file contains materials not lodged with this Court;
- Respondent's "complete" certification was made without good-faith factual basis.

These are procedural inferences about the completeness finding—not merits determinations about Brady violations. The merits will be addressed in the traverse.

## IX. CONCLUSION

Petitioner wasn't hiding. In October 2021—before the DA ever contacted him—he CC'd them on family court filings. In November 2021, he sent them medical documentation and legal filings. The DA knew who he was, where he was, and what he was fighting for.

Two DA investigators reviewed this file. Both concluded there was no crime. McIntosh documented it in an email. Peña said it on tape. The DA disclosed the email and forced McIntosh to recant. They withheld the tape because it proves the recantation was false.

On his 18th birthday, Bryce moved back home with Petitioner. The "deprivation" the State prosecuted gave Bryce a father willing to risk everything to protect him.

**The AG must answer: Did you request the prosecution file, and what is in it?**

## X. RELIEF REQUESTED

1. REVERSE the Magistrate Judge's finding that the lodgment is "complete";

2. ORDER Respondent to file, within 14 days, a declaration answering the questions in Section VII; and

3. DRAW PROCEDURAL INFERENCES from 70+ days of silence.


Dated: January 13 2026


Respectfully submitted,

/s/ Rob Emert

ROB EMERT, Pro Se Petitioner

2351 Vista Lago Terrace

Escondido, CA 92029

Tel: (760) 612-9328

Email: robemert@msn.com

# MINI-APPENDIX A

# VERIFIED TRANSCRIPT EXCERPTS AND DOCUMENTARY EVIDENCE

## PART I: DEFENSE COUNSEL CONFIRMATION OF NON-DISCLOSURE

### EXCERPT A: Badillo Confirms DA Claimed Complete Disclosure

Source: Jose Badillo Telephone Call

Date: April 19, 2023

Timestamp: [00:08:22]

> BADILLO: "They've turned over everything they have."

*Significance: Defense counsel confirmed the DA represented complete disclosure. This establishes the DA's affirmative misrepresentation.*

### EXCERPT B: Badillo Confirms Bryce Interview Not Disclosed

Source: Jose Badillo Telephone Call

Date: April 19, 2023

Timestamp: [00:07:51]

> ROB EMERT: "Did she ever tell you about her conversation with Bryce?"
>
> BADILLO: "No."

*Significance: One word establishes the suppression.*

## PART II: DAI PEÑA RECORDING - COMPLETE EXCERPTS

Source: DAI Luis Peña Telephone Call

Date: September 7, 2022

Context: Peña reviewed the complete prosecution file before this call.

**EXCERPT C: [00:00:27]**
>    PEÑA: "I'm so glad you called."

**EXCERPT D: [00:00:47]**
>    PEÑA: "I don't believe that needs to happen."

*Context: Referring to arrest.*

**EXCERPT E: [00:11:05-07]**
>    PEÑA: "Why are we even involved? We don't take anything over 14."

*Significance: DA policy violation.*

**EXCERPT F: [00:27:12-15]**
>    PEÑA: "Just finish the damn warrant and don't worry about it."

*Significance: Peña was ORDERED to prosecute despite his assessment.*

**EXCERPT G: [01:12:12]**
>    PEÑA: "You pissed them off."

*Significance: Admission of vindictive prosecution motive.*

**EXCERPT H: [01:20:35-43]**
>    PEÑA: "No reason for us to even open the case."

**EXCERPT I: [02:21:50]**
>    PEÑA: "Family Court not Criminal Court."

**EXCERPT J: [02:31:23]**
>    PEÑA: "Personally, I think you'll win that."

*Significance: Lead investigator predicted acquittal.*

**EXCERPT K: [02:38:13]**
>    PEÑA: "I think you have good cause for sure."

*Significance: Confirms PC § 278.7 defense.*

### EXCERPT L: [02:44:11-14]

> PEÑA: "Should have never been with this case."

### EXCERPT M: [02:54:47]

> PEÑA: "They shouldn't have accepted your case."

## PART III: BRYCE EMERT - THE ALLEGED "VICTIM"

### EXCERPT N: DDA Balerio Interview - Feb 17, 2023

Timestamp: [15:48]

> BRYCE EMERT: "My dad didn't do anything wrong."

### EXCERPT O: [20:43]

> BRYCE EMERT: "I want to be his witness for my dad."

### EXCERPT P: Balerio's Assessment [21:26]

> DDA BALERIO: "Yeah, I mean you're very sociable. I can speak with you. You're very articulate. Like I said you're intelligent. You are advocating for yourself."

*Significance: Balerio called Bryce "articulate" and "intelligent"—then told the Court he was "incompetent" to testify.*

### EXCERPT Q: Bryce Letter to Court

> BRYCE EMERT (written): "Please dismiss criminal charges from my Dad. He did not do anything wrong. He saved me per my request and he is a great dad."

## PART IV: FBI CALL - THE FABRICATED "THREAT"

Source: FBI Call Transcript

Date: December 2022

**EXCERPT R: [00:04:16]**

>  PETITIONER: "I'm not a violent person and I'm not making any threats whatsoever, but I know my federal rights."

**EXCERPT S: [00:06:33-36]**

>  PETITIONER: "Well, like I said, I am not making any threats. I need to make that perfectly clear."

**EXCERPT T: FBI Operator Response [00:11:56-57]**

>  FBI OPERATOR: "Thank you for calling the FBI. I hope you have a great day today."

*Significance: No alarm. No threat assessment. DDA Balerio used fragments of this call for 90-day no-bail detention while suppressing the repeated denials.*

## PART V: SANTOBELLO VIOLATION

**EXCERPT U: Badillo - May 1, 2023 [00:16:58]**

>  BADILLO: "The DA knows... that you resolved the case based on the conversation she and I had with Andrea."

**EXCERPT V: Andrea Schuck - April 13, 2023 [00:52:41]**

>  ANDREA SCHUCK: "I offered you the moon."

*Significance: Andrea admitted she promised custody to induce the plea. She then breached the promise and CC'd DDA Balerio on the email refusing to honor the agreement.*

## CERTIFICATION

I, Rob Emert, certify under penalty of perjury that the foregoing excerpts are true and accurate transcriptions from the identified recordings and documents, which are in my possession and available for verification.

Dated: January 13 2026

/s/ Rob Emert

ROB EMERT, Pro Se Petitioner

*END OF MINI-APPENDIX A*

## PROOF OF SERVICE

I, Rob Emert, hereby certify that on January 13, 2026, I served a true and correct copy of the foregoing PETITIONER'S REPLY TO RESPONDENT'S OPPOSITION TO RULE 72(a) OBJECTION, along with Mini-Appendix A and [Proposed] Order, by electronic mail upon:

**Kristen Chenelia**

Deputy Attorney General

Office of the Attorney General

600 West Broadway, Suite 1800

San Diego, CA 92101

Email: Kristen.Chenelia@doj.ca.gov


I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on: January 13, 2026

/s/ Rob Emert

ROB EMERT, Pro Se Petitioner