

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

| ROBERT EMERT, | Case No. 3:25-cv-00820-TWR-BLM |
|---|---|
| Petitioner, | NOTICE OF SUPPLEMENTAL EVIDENCE IN SUPPORT OF PETITION FOR WRIT OF HABEAS CORPUS |
| v. | |
| SAN DIEGO PROBATION DEPARTMENT, | |
| Respondent. | Hon. Todd W. Robinson |

Petitioner Robert Emert, proceeding pro se, respectfully submits this Notice of Supplemental Evidence pursuant to Rule 7 of the Rules Governing Section 2254 Cases in the United States District Courts, which provides that a court may direct the parties to expand the record by submitting additional materials relevant to the petition.

Attached hereto as **Appendix A** is Petitioner's Motion for Leave to File Supplemental Brief in Support of Petition for Panel Rehearing, filed simultaneously in the United States Court of Appeals for the Ninth Circuit, Case No. 24-5856. This document contains evidence directly relevant to Petitioner's habeas claims, including:

> 1. Recorded admissions proving the guilty plea was induced by promises of a custody agreement that was never finalized or delivered;
>
> 2. Contemporaneous documentation proving Petitioner complained—in writing and on recording—that he never received a copy of the plea deal and the terms were 'nothing like what was discussed';
>
> 3. Evidence that the prosecutor knew the plea was conditional on the custody arrangement and offered to intervene when the agreement collapsed— proving the side agreement existed; and
>
> 4. Evidence of the coercive circumstances of the plea—90 days pretrial detention on an uncharged offense, plea offer made the morning of jury trial while Petitioner was ill with COVID-19.

**Relevance to Habeas Claims:** This evidence establishes that Petitioner's guilty plea was (1) involuntary under *Boykin v. Alabama*, 395 U.S. 238 (1969), because it

1

was induced by unfulfilled promises; (2) obtained through fraud in the inducement; and (3) subject to withdrawal under *Santobello v. New York*, 404 U.S. 257 (1971), due to the prosecutor's breach. These grounds independently support habeas relief.

Petitioner respectfully requests that this Court consider the attached Appendix A as part of the record in evaluating the Petition for Writ of Habeas Corpus.

DATED: February 2, 2026

Respectfully submitted,

/s/ Robert Emert
**ROBERT EMERT**
Petitioner, Pro Se
2351 Vista Lago Terrace
Escondido, CA 92029
Telephone: (760) 612-9328
Email: robemert@msn.com

# PROOF OF SERVICE

## Case No. 3:25-cv-00820-TWR-BLM

I, Robert Emert, declare as follows:

I am over the age of 18 years and not a party to this action. My address is 2351 Vista Lago Terrace, Escondido, CA 92029. I am a citizen of the United States and a resident of the State of California.

On February 2, 2026, I served the following documents:

> 1. Notice of Supplemental Evidence in Support of Petition for Writ of Habeas Corpus
>
> 2. Appendix A: Motion for Leave to File Supplemental Brief in Support of Petition for Panel Rehearing (9th Cir. Case No. 24-5856)
>
> 3. Proof of Service

on the following party by the method indicated:

**VIA EMAIL:**
Kristen Chenelia
Deputy Attorney General
Office of the Attorney General
State of California
Kristen.Chenelia@doj.ca.gov

*Counsel for Respondent*

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on February 2, 2026, at Escondido, California.

/s/ Robert Emert
**ROBERT EMERT**
Petitioner, Pro Se

# APPENDIX A

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

ROBERT EMERT,
*Plaintiff-Appellant,*
v.
DAWN BALERIO, et al.,
*Defendants-Appellees.*

**Case No. 24-5856**

District Court Case No. 3:24-cv-00002-AGS-AHG

**MOTION FOR LEAVE TO FILE SUPPLEMENTAL BRIEF
IN SUPPORT OF PETITION FOR PANEL REHEARING**

## EXECUTIVE SUMMARY: THIS IS NOT WHAT 'FRIVOLOUS' LOOKS LIKE:

On January 22, 2026, this Court dismissed Appellant's case as 'frivolous' without citing a single case or addressing recorded evidence. *Santobello v. New York*, 404 U.S. 257 (1971), requires prosecutors to honor plea agreements. *Miroth v. County of Trinity*, 136 F.4th 1141 (9th Cir. 2025), permits claims challenging prosecutorial fraud in obtaining judgments. These binding authorities make 'frivolous' legally impossible under *Neitzke v. Williams*, 490 U.S. 319 (1989).

**But forget the law for a moment. Here is what 'frivolous' looks like in this case—recorded statements from the parties themselves:**

**Defense Counsel Jose Badillo:**

> *"The DA knows that you resolved the case based on the conversation she and I had with Andrea."*
> [05/01/23, 00:16:58]

> *"She's on the record talking to the DA and I. That's why I'm asking if you have those emails because if she's backtracking on that, obviously that could be an assistance for you in regards to whether you have a viable motion to withdraw your plea."*
> [05/01/23, 00:07:14]

> *"They were going to propose something and provide that to you, which they haven't done so yet, right?"*
>
> [05/03/23, 00:02:19]
>
> *"The other option is I can contact the DA and say we're going to be requesting a continuance of the sentencing so that that agreement can be finalized before you're sentenced."*
>
> [05/03/23, 00:13:19]
>
> *"She told that directly to myself and to the DA."*
>
> [04/25/23, 00:08:01]

### The Critical Exchange—Appellant Tells Counsel He Never Received the Paperwork:

> *"I never even got to copy the plea deal and from what I can tell it's nothing even like what we've discussed."*
>
> [Appellant to Badillo, 05/01/23]

*Badillo's response: He did not deny it. He did not say 'Yes, you did.' He did not produce a receipt or point to an email. His silence is an admission.*

### Andrea Schuck (Ex-Wife, CC'ing DDA Balerio):

> *"We are not in negotiations nor will we be until you do as I have requested and drop your other cases."*
>
> [Email, 05/18/23]
>
> *"I will not send an offer for shared child custody change with Bryce until you drop the civil and appeal case. FULL STOP... You will need to show good faith and do that first."*
>
> [Email, 05/04/23]
>
> *"I offered you, I offered you the moon."*
>
> [04/13/23]

### Appellant's Contemporaneous Complaints:

> *"The plea deal is not as was discussed and the ramifications are nothing like what was discussed... Please email me my entire file immediately."*
>
> [Email to Badillo, 04/10/23—seven days after plea]

**This is not frivolous. This is fraud with timestamps.** A welched plea deal—supported by the defendant's own attorney admitting the agreement was never finalized, refusing to deny that his client never received a copy, and the prosecutor knew the plea was conditional—presents a certiorari-worthy question of national importance. Over 90% of criminal convictions come from plea deals. If prosecutors can welch without consequence, *Santobello* is a dead letter.

# I. INTRODUCTION

The only possible defense to recorded evidence of a plea agreement is the Integration Clause—the standard language in plea forms stating 'no other promises have been made.' Appellees will argue that because no custody agreement appears in the written plea, none existed.

That defense fails as a matter of law when the signature on the plea form was obtained through fraud. Courts routinely hold that an Integration Clause cannot shield a party from fraud in the inducement. When the prosecutor knew the plea was conditional on outside promises, deliberately failed to memorialize those promises, and then let the defendant sign a document claiming no other promises existed—that is not contract law. That is a confidence scheme with a notary stamp.

This Supplemental Brief presents three categories of evidence that destroy the Integration Clause defense, followed by a comprehensive catalog of recorded admissions that no court has addressed on the merits.

# II. THE COERCIVE CONTEXT: WHY APPELLANT SIGNED

To understand why Appellant signed a plea form containing an Integration Clause while believing a custody agreement existed, this Court must understand the circumstances of the plea.

### A. The Manufactured Prosecution

Appellant was charged under California Penal Code § 278.5(a)—a 'wobbler' offense that is typically charged as a misdemeanor. The District Attorney 'wobbled' it to a felony. Appellant was not hiding; he was in open communication with the District Attorney's office throughout the underlying family court dispute. Indeed, the DA's office had previously advised him to handle the custody matter in family court—which he was actively doing when they arrested him.

### B. The 90-Day Illegal Detention

Appellant was held in pretrial detention for 90 days—not on the § 278.5(a) charge, but on a purported 'threat' that the prosecution *never charged*. They used the

uncharged threat allegation to deny bail, kept Appellant incarcerated for three months, and then never filed the charge. The FBI evaluated the alleged threat and found Appellant was not dangerous—a report that was withheld from the defense and used to justify continued detention.

### C. The Morning of Trial

For 90 days, Appellant refused to plead guilty to something he did not do. On April 3, 2023—the morning jury selection was to begin—the prosecution made its final offer. Appellant was ill with COVID-19. His attorney told him, in substance: *If this is all about your son, and your son can come home now, sign the deal. Get out. Fight from the outside. Take care of your son.* Counsel made clear the DA would never release him without a guilty plea.

Appellant signed. He was going through a stack of documents while sick, trusting his attorney, believing the custody agreement—the entire reason for the plea—was either in the paperwork or would follow. He verbally asked for the custody agreement. He was told it was coming.

**It never came.**

### D. The Immediate Complaints

Seven days later, Appellant emailed his attorney: *"The plea deal is not as was discussed and the ramifications are nothing like what was discussed... Please email me my entire file immediately."* One month later, he told Badillo on a recorded call: *"I never even got to copy the plea deal."* Badillo did not deny it. Instead, he admitted the agreement still needed to be 'finalized.'

This is not a sophisticated defendant gaming the system. This is a sick father, detained for 90 days on an uncharged offense, trying to get home to his son, trusting his lawyer that the deal was real. The Integration Clause does not protect fraud perpetrated on the desperate.

## III. THE INTEGRATION CLAUSE CANNOT SAVE APPELLEES

An Integration Clause is void when the contract was procured by fraud. See *Riverisland Cold Storage, Inc. v. Fresno-Madera Prod. Credit Ass'n*, 55 Cal. 4th 1169 (2013) (parol evidence rule does not bar evidence to prove fraud). The following three categories of evidence establish fraud in the inducement:

### A. The 'Linked Knowledge' Grenade: The Prosecutor Knew

The Integration Clause is a lie because the prosecutor knew the plea was conditional on an outside custody agreement and let Appellant sign the standard form anyway.

> *"The DA knows that you resolved the case based on the conversation she and I had with Andrea."*
> — Jose Badillo, 05/01/23 [00:16:58]

> *"She told that directly to myself and to the DA."*
> — Jose Badillo, 04/25/23 [00:08:01]

If the prosecutor knows you are pleading 'based on' a side deal, she cannot later claim that the written form—which says there is no side deal—is accurate. Her knowledge makes the written clause a fraudulent misrepresentation.

### B. The 'Missing Paperwork' Grenade: The Agreement Was Never Delivered

The Integration Clause claims the written deal is 'complete.' But Appellant told his counsel—on recording—that he never received a copy of the plea deal. Counsel did not deny it.

**The Exchange (May 1, 2023):**

> *"I never even got to copy the plea deal and from what I can tell it's nothing even like what we've discussed."*
> — Appellant to Badillo

**Badillo's Response:** Nothing. He did not say 'Yes, you did receive it.' He did not say 'Check your email from April 3rd.' He did not produce any evidence that Appellant had received the custody terms in writing. *His silence is an admission by omission.* If Appellant were mistaken, his own attorney would have corrected him.

Two days later, Badillo confirmed the paperwork was still missing:

> *"They were going to propose something and provide that to you, which they haven't done so yet, right?"*
> — Jose Badillo, 05/03/23 [00:02:19]

> *"Her lawyers were going to draft something and propose it to you, correct? And you have not received that yet."*
> — Jose Badillo, 05/03/23 [00:13:07]

> *"The other option is I can contact the DA and say we're going to be requesting a continuance of the sentencing so that that agreement can be finalized before you're sentenced."*
> — Jose Badillo, 05/03/23 [00:13:19]

You cannot have a valid Integration Clause on April 3 when defense counsel admits on May 3 that the agreement still needs to be 'finalized.' You cannot 'finalize' something that doesn't exist. You cannot request a continuance to memorialize a phantom.

Appellant also complained in writing, seven days after the plea:

> *"The plea deal is not as was discussed and the ramifications are nothing like what was discussed... Please email me my entire file immediately."*
> — Email from Appellant to Badillo, April 10, 2023

This is not Appellant reconstructing history years later. This is contemporaneous documentation proving the written plea form was incomplete at the time of signing.

### C. The 'Post-Plea Ratification' Grenade: The Prosecutor Treated It As Her Problem

If the Integration Clause were true—if the custody arrangement was never part of the plea—then the prosecutor would have said 'Not my problem' when the custody deal fell apart. Instead, she offered to intervene.

> *"[DDA Balerio] would be willing to talk to Andrea again to make sure that she's on the same page and not backing out based on the conversation that we have with her."*
> — Jose Badillo, 05/03/23 [00:02:06]

A prosecutor does not offer to mediate a private custody dispute unless that custody arrangement was part of the consideration for the plea. Her willingness to enforce it proves it existed. Her job is prosecuting crimes—not calling ex-wives to 'make sure she's on the same page.' The only reason this became the prosecutor's concern is because *it was the prosecutor's concern*—she had made it part of the bargain.

## IV. THE EVIDENCE CATALOG

The following tables present the recorded and documented evidence, organized by category. Every quote includes the exact date and timestamp. No court has addressed this evidence on the merits.

### A. Category 1: The Agreement Was Incomplete / Never Delivered

| Date | Speaker | Quote | Significance |
|---|---|---|---|
| 05/01/23 | Appellant | *I never even got to copy the plea deal and from what I can tell it's nothing even like what we've discussed.* | Counsel does NOT deny this |
| 05/03/23 | Badillo | *They were going to propose something and provide that to you, which they haven't done so yet, right?* | Paperwork never delivered |
| 05/03/23 | Badillo | *And you have not received that yet.* | Confirms no document |
| 05/03/23 | Badillo | *So that that agreement can be finalized before you're sentenced.* | Deal was unfinished |
| 04/13/23 | Badillo | *They're trying to include that in the... some type of stipulation.* | Side document existed |
| 04/10/23 | Appellant | *[Email] The plea deal is not as was discussed... Please email me my entire file immediately.* | Written complaint 7 days post-plea |

### B. Category 2: The Prosecutor Knew About the Side Terms

| Date | Speaker | Quote | Significance |
|---|---|---|---|
| 05/01/23 | Badillo | *The DA knows that you resolved the case based on the conversation she and I had with Andrea.* | DA knowledge admitted |
| 04/25/23 | Badillo | *She's on record talking to myself and the DA... She told that directly to myself and to the DA.* | DA heard firsthand |

| Date | Speaker | Quote | Significance |
|---|---|---|---|
| 05/03/23 | Badillo | *[DDA Balerio] would be willing to talk to Andrea again to make sure that she's on the same page.* | DA offered to enforce |

### C. Category 3: The Breach Was Documented

| Date | Speaker | Quote | Significance |
|---|---|---|---|
| 04/25/23 | Badillo | *Now she's trying to backtrack... that's a whole different ball game... It puts her in a tight spot.* | Attorney recognizes breach |
| 05/01/23 | Badillo | *...if she's backtracking on that, obviously that could be an assistance for you in regards to whether you have a viable motion to withdraw your plea.* | Remedy identified |
| 05/04/23 | Andrea | *[Email] I will not send an offer... until you drop the civil and appeal case. FULL STOP.* | Refuses to perform |
| 05/18/23 | Andrea | *[Email, CC: Balerio] We are not in negotiations nor will we be until you do as I have requested.* | Flat refusal, DA witness |

### D. Category 4: Inducement Was Admitted

| Date | Speaker | Quote | Significance |
|---|---|---|---|
| 04/13/23 | Andrea | *I offered you, I offered you the moon.* | Admits making promises |
| 04/13/23 | Andrea | *I agreed that I would... all I said in the agreement was I would entertain going back.* | Admits agreement existed |
| 04/11/23 | Appellant | *On my Honor, I took that deal because they said that you wanted to work something out.* | Contemporaneous reliance |
| 05/01/23 | Appellant | *That's the only reason I took the deal.* | Proves inducement |

## V. CONCLUSION

This Court dismissed as 'frivolous' a case where:

- Appellant told his attorney: *"I never even got to copy the plea deal"*—and counsel did not deny it.

- Defense counsel admitted: *"The DA knows that you resolved the case based on the conversation she and I had with Andrea."*

- Defense counsel admitted: *"They were going to propose something and provide that to you, which they haven't done so yet."*

- Defense counsel admitted: *"That agreement can be finalized before you're sentenced."*

- Defense counsel admitted: *"She's backtracking... that could be an assistance for you in regards to whether you have a viable motion to withdraw your plea."*

- The prosecutor offered to intervene in a private custody dispute—because it was her problem.

- The ex-wife CC'd the prosecutor on emails refusing to honor the custody agreement.

- No defendant filed any responsive pleading at any level.

Moreover, the "frivolous" designation rests on a procedurally defective foundation. When Appellant appealed, this Court referred the IFP determination back to the same district judge who had dismissed the case. That judge was then asked to certify whether the appeal of his own ruling was frivolous. Asking a judge to evaluate the merit of an appeal from his own decision creates an inherent conflict that violates due process. *Tumey v. Ohio*, 273 U.S. 510 (1927); *In re Murchison*, 349 U.S. 133 (1955). The resulting "frivolous" certification cannot be relied upon.

**At minimum, this evidence warranted an evidentiary hearing.** This Court dismissed as 'frivolous' without ever listening to a single recording. That is not adjudication—it is abdication.

**This is not frivolous. This is fraud with timestamps.**

The Integration Clause defense—that the written plea form contains the complete agreement—is destroyed by defense counsel's own admissions that (1) Appellant never received a copy of the deal, (2) the paperwork 'hasn't been done so yet,' and

(3) the agreement needed to be 'finalized' a month after the plea was entered. You cannot enforce a 'complete agreement' clause when the defendant's own lawyer admits the agreement was incomplete.

### *The Ultimate Vindication*

The deal Appellant sought was for his son Bryce to come home. For two and a half years after the breach, Bryce remained with his mother—during which time he received no high school diploma, no driver's license, and no college plan, while being terrorized with threats of juvenile detention if he tried to return to his father.

On Bryce's eighteenth birthday, he came home to Appellant. In six months under his father's care: high school diploma completed, driver's permit obtained (license to follow), and enrolled in college.

That is not the outcome of a dangerous parent. That is the vindication of a father who was right all along—and who was coerced into a guilty plea to get his son back, only to have the system welch on its promise.

Appellant respectfully requests that this Court grant leave to file this Supplemental Brief, consider the evidence presented herein, and grant rehearing. In the alternative, if this Court denies rehearing, Appellant intends to seek certiorari from the United States Supreme Court on the question of whether a court of appeals may dismiss as 'frivolous' an appeal supported by recorded party admissions and invoking binding Supreme Court and circuit precedent, without addressing either the evidence or the law.

DATED: February 1, 2026

Respectfully submitted,

/s/ Robert Emert
**ROBERT EMERT**
Plaintiff-Appellant, Pro Se
390 Oak Avenue, Suite C
Carlsbad, CA 92008
Telephone: (760) 612-9328
Email: robemert@msn.com

## CERTIFICATE OF SERVICE

I hereby certify that on February 1, 2026, I electronically filed the foregoing Motion for Leave to File Supplemental Brief in Support of Petition for Panel Rehearing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the CM/ECF system.

I further certify that I served a copy of the foregoing document via email on the following counsel of record:

**Austin Uhler**, Deputy County Counsel

Office of County Counsel, County of San Diego
1600 Pacific Highway, Room 355
San Diego, CA 92101
Email: Austin.Uhler@sdcounty.ca.gov

*Counsel for Defendant-Appellee Dawn Balerio*

**Jon R. Williams**
Williams Iagmin LLP
Email: williams@williamsiagmin.com

*Counsel for Defendant-Appellee Andrea Schuck*


/s/ Robert Emert
ROBERT EMERT, Pro Se