

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

ROBERT EMERT,

Petitioner,

v.

SAN DIEGO PROBATION DEPARTMENT,

Respondent.

Case No.:  25-cv-0820-TWR-BLM

**REPORT AND RECOMMENDATION FOR ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

This Report and Recommendation is submitted to United States District Court Judge Todd W. Robinson pursuant to 28 U.S.C. § 636(b) and Civil Local Rules 72.1(d) and HC.2 of the United States District Court for the Southern District of California. Petitioner Robert Emert ("Emert") filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254, naming the San Diego Probation Department as Respondent, on April 7, 2025. ECF No. 1. On July 9, 2025, Emert, proceeding *pro se*, filed an amended petition ("Pet"). ECF No. 13. The Court has reviewed all of the filed pleadings, including the amended petition, the Answer and Memorandum of Points and Authorities in Support of the Answer [ECF Nos. 16, 16-1], and the lodgments [ECF No. 17].  For the reasons discussed below, the Court **RECOMMENDS** the amended petition be **DENIED**.

## I.    FACTUAL BACKGROUND

The following facts are taken from the California Court of Appeal opinion on direct appeal:

> Defendant and his ex-wife, Andrea S. (Mother), have two children together, B.E. (Son) and S.E. In 2021, defendant and Mother were involved in divorce

1

proceedings in which the family court entered custody orders. On October 4, 2021, defendant abducted Son and refused to return him to Mother's custody despite the family court repeatedly ordering him to do so.

District attorney investigators spoke with defendant by telephone several times to negotiate — unsuccessfully — Son's return to Mother. The FBI's National Threat Operation Center later notified one of the district attorney investigators that defendant had contacted the FBI about his case and made veiled threats to district attorney personnel about defendant's knowledge of his "Second Amendment rights." The investigator obtained an arrest warrant for defendant.

On January 3, 2023, defendant was arrested, and Son was subsequently reunited with Mother. By then, defendant had kept Son from Mother for about 15 months.

ECF No. 17-20, at 2-3. This Court gives deference to state court findings of fact and presumes them to be correct. See 28 U.S.C. § 2254(e)(1); see also Rice v. Collins, 546 U.S. 333, 338-39 (2006) (stating that state court factual findings are entitled to statutory presumption of correctness).

## II.    PROCEDURAL BACKGROUND[1]

On April 4, 2023, Emert pled guilty to one count of child abduction in violation of Cal. Pen. Code § 278.5(a). ECF No. 17-20, at 3.  On August 9, 2023, Emert filed a motion to withdraw his guilty plea.  ECF No. 17-1, at 87-100.  After an evidentiary hearing, Superior Court Judge Aaron Katz denied Emert's motion to withdraw his guilty plea and set sentencing in December 2023.  ECF No. 17-15.

On December 13, 2023, Emert filed a petition for writ of habeas corpus in the California Court of Appeal alleging he was innocent and his plea was involuntary because it "was unlawfully coerced through prosecutorial misconduct and ineffective assistance of counsel in violation of the 5th and 14th Amendments." ECF No. 17-23, at 9. Two days later, the appellate court summarily denied the petition. ECF No. 17-24.

On December 18, 2023, Judge Katz sentenced Emert to three years of probation with a variety of conditions. ECF No. 17-20, at 3; ECF No. 17-6, at 241-44. Relevant to Emert's amended

---

[1] The Court is including only the pleadings that are relevant to the instant case.

petition, the probationary conditions included a requirement that Emert "comply with CWS and family court orders" and have "no negative contact" with his son.  ECF No. 17-6, at 243.  During the plea colloquy, Judge Katz advised Emert that "[t]his Court will defer to any visitation and custody orders of family court" and confirmed that Emert understood that he must comply with the family court orders.  ECF. No. 17-1, at 109-112.

On July 8, 2024, Emert filed a direct appeal challenging the reasonableness of the conditions authorizing a probation officer to impose curfew and alcohol-related restrictions and asserting that his lawyer[2] provided ineffective assistance by failing to object to the challenged probation conditions. ECF 17-17. On June 30, 2025, the California Court of Appeal affirmed the judgment of the trial court. ECF 17-20.

On April 3, 2024, Emert filed a petition for writ of habeas corpus in the California Supreme Court seeking "to vacate his conviction" alleging, *inter alia*, factual innocence, involuntary guilty plea, and ineffective assistance of counsel regarding his plea. ECF No. 17-25, at 7. On February 11, 2025, the California Supreme Court denied the petition in a brief opinion citing People v. Duvall[3], In re Dixon[4], In re Lindley[5], and In re Swain[6].  ECF No. 17-54, at 3.

On April 7, 2025, Emert filed a petition for writ of habeas corpus in this district. ECF No. 1. On July 9, 2025, Emert filed the operative pleading, an amended petition for writ of habeas corpus alleging six violations.  ECF No. 13.  On September 22, 2025, Respondent filed an Answer to the First Amended Petition for Writ of Habeas Corpus ("Ans") [ECF No. 16] and the Memorandum of Points and Authorities in support of the Answer ("Resp") [ECF No. 16-1]. On

---

[2] The lawyer who represented Emert for sentencing was different from the lawyer who represented him during his guilty plea. See ECF No. 17-20, at 5 n. 1 ("Defendant changed counsel several times in 2023. . . . From January to June, he was represented by retained counsel Jose Badillo. From June to September, defendant was represented by the public defender's office. From September to October, defendant represented himself. And from October to December, defendant was represented by [T. Matthew] Phillips.").
[3] 9 Cal.4th 464, 474 (1995).
[4] 41 Cal.2d 756, 759 (1953).
[5] 29 Cal.2d 709, 723 (1947).
[6] 34 Cal.2d 300, 304 (1949).

25-cv-0820-TWR-BLM

the same day, Respondent lodged the state court record. ECF No. 17.

Emert did not file a traverse by January 30, 2026, the final deadline set by Magistrate Judge Major.  ECF No. 25.  On February 2, 2026, Emert filed a Notice of Supplemental Evidence in Support of Petition for Writ of Habeas Corpus attaching a motion filed in the Ninth Circuit as part of an appeal of a different case. ECF No. 30. On February 11, 2026, District Judge Todd W. Robinson filed an order denying Emert's motion to overrule Magistrate Judge Major's December 11, 2025 discovery order. ECF No. 33. Judge Robinson also extended the deadline for Emert's traverse to March 13, 2026. Id. ("Petitioner **MAY FILE** an optional traverse, if any, within thirty (30) days of the date of this Order.") (emphasis in original). On February 11, 2026, Emert filed a notice that included a statement that he had filed a traverse on January 16, 2026.  ECF No. 34.  Because the docket did not reflect that filing, the Court directed Emert to re-file the traverse or clarify which filing was his traverse.  ECF No. 35. Emert did not respond to the Court's order and did not file a traverse by the deadline imposed by Judge Robinson. See Docket.

## III.    STANDARD OF REVIEW

Emert's petition is governed by the provisions of the Anti-Terrorism and Effective Death Penalty Act of 1996, 28 U.S.C. § 2254 ("AEDPA").  See Lindh v. Murphy, 521 U.S. 320 (1997). Pursuant to AEDPA, a state prisoner is not entitled to federal habeas relief on a claim that the state court adjudicated on the merits, unless the adjudication "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C § 2254(d)(1)-(2); see Harrington v. Richter, 562 U.S. 86, 97-98 (2011).

A decision is "contrary to" clearly established law if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts."  Williams v. Taylor, 529 U.S. 362, 413 (2000).  A decision involves an "unreasonable application" of clearly established federal law if "the state court identifies the correct governing

25-cv-0820-TWR-BLM

legal principle . . . but unreasonably applies that principle to the facts of the prisoner's case." Id.; Bruce v. Terhune, 376 F.3d 950, 953 (9th Cir. 2004).

With respect to section 2254(d)(2), "[t]he question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." Schriro v. Landrigan, 550 U.S. 465, 473 (2007) (citing Williams, 529 U.S. at 410). "State-court factual findings, moreover, are presumed correct; the petitioner has the burden of rebutting the presumption by 'clear and convincing evidence.'" Rice, 546 U.S. at 338-39 (quoting 28 U.S.C. § 2254(e)(1)).

Significantly, a federal court is not called upon to decide whether it agrees with the state court's determination; rather, the court applies an extraordinarily deferential review. See Yarborough v. Gentry, 540 U.S. 1, 4 (2003). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Richter, 562 U.S. at 101 (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)). "If this standard is difficult to meet, that is because it was meant to be. As amended by AEDPA, § 2245(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings. . . . It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents." Id. at 102.

Where there is no reasoned decision from the state's highest court, the Court "looks through" to the last reasoned state court decision and presumes it provides the basis for the higher court's denial of a claim or claims. See Ylst v. Nunnemaker, 501 U.S. 797, 804-06 (1991). If the dispositive state court order does not "furnish a basis for its reasoning," federal habeas courts must conduct an independent review of the record to determine whether the state court's decision is contrary to, or an unreasonable application of, clearly established Supreme Court law. See Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2000), overruled on other grounds; accord Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003).

25-cv-0820-TWR-BLM

## IV.    DISCUSSION

### A. Ground One: Factual Innocence and Baseless Prosecution

In Ground One, Emert contends that he is factually innocent because he had no "malice" in abducting his son, which is an element of child abduction under California Penal Code §278.5(a)[7]. Pet at 14-17. He further contends that the prosecution knew that the abduction of his son was without "malice" but prosecuted him merely to coerce a guilty plea. Id. at 14, 17-19. Emert alleges that because he was innocent, the prosecution of him violated his Fourteenth Amendment Due Process right. Id. at 14.

Emert did not include this argument in his direct appeal. See ECF Nos. 17-17, 17-19, 17-20. He did present the argument to the California Superior Court and Court of Appeal in habeas petitions filed prior to sentencing. ECF Nos. 17-21, 17-23. The Superior Court did not resolve the challenge because Emert was "not subject to restraint or confinement and a petition for writ of habeas corpus is not the appropriate avenue to seek to withdraw a plea." ECF No. 17-22. The appellate court denied the petition without reasoning. ECF No. 17-24. After sentencing, Emert presented these arguments to the California Supreme Court in a habeas petition. ECF No. 17-25, at 18. The Supreme Court denied the petition citing several authorities, including Lindley[8] and Dixon[9].

Respondent argues that Emert's claim of insufficient evidence (namely, lack of malice in abduction) is procedurally barred because he did not raise the issue on direct appeal. Resp at 14-16. Respondent further contends that Emert's claims of insufficient evidence and baseless,

---

[7] Cal. Pen. Code § 278.5(a):
> Every person who takes, entices away, keeps, withholds, or conceals a child and maliciously deprives a lawful custodian of a right to custody, or a person of a right to visitation, shall be punished by imprisonment in a county jail not exceeding one year, a fine not exceeding one thousand dollars ($1,000), or both that fine and imprisonment, or by imprisonment pursuant to subdivision (h) of Section 1170 for 16 months, or two or three years, a fine not exceeding ten thousand dollars ($10,000), or both that fine and imprisonment.

[8] 29 Cal.2d at 723.
[9] 41 Cal.2d at 759.

25-cv-0820-TWR-BLM

vindictive prosecution are barred because he pled guilty. Id. at 16-18.

### 1. Insufficiency of Evidence (Lack of Malice)

A federal habeas court generally should refuse to hear claims defaulted in state court "pursuant to an independent and adequate state procedural rule." Johnson v. Lee, 578 U.S. 605, 606 (2016) (quoting Coleman v. Thompson, 501 U.S. 722, 750 (1991)). State rules are "adequate" if they are "firmly established and regularly followed." Id. (quoting Walker v. Martin, 562 U.S. 307, 316 (2011)).  "Independent" means the state law "is not interwoven with federal law." Bennett v. Mueller, 322 F.3d 573, 581 (9th Cir. 2003). California state law requires criminal defendants to raise available claims on direct appeal and a defendant procedurally defaults a claim raised for the first time on state collateral review if he could have raised it earlier on direct appeal. See Carter v. Giurbino, 385 F.3d 1194, 1196 (9th Cir. 2004); Lindley, 29 Cal.2d at 709, 723.

In 1947, the California Supreme Court held that challenges to "the sufficiency of the evidence to warrant the conviction of the petitioner is not a proper issue for consideration" upon habeas corpus review. Lindley, 29 Cal.2d at 722-24.  This procedural bar has been utilized in California state courts for decades to mandate that a "claim of insufficiency of evidence can only be considered on direct appeal, not in habeas proceedings." Carter, 385 F.3d at 1196 (affirming the district court's holding that the Lindley rule was an independent and adequate state procedural bar and that appellant had defaulted his sufficiency of evidence claims by failing to pursue them on direct appeal); see Smart v. Hedgpeth, 476 F. App'x 803-04 (9th Cir. 2012) (holding that the petitioner procedurally defaulted his "new" sufficiency of the evidence claim and citing Carter, 385 F.3d at 1196).

Emert did not raise the insufficiency of the evidence claim on direct appeal. ECF No. 17-17 (opening brief); ECF No. 17-19 (reply). Accordingly, Emert's insufficiency of the evidence challenge in Ground One is barred.

### 2. Impact of Guilty Plea

Emert's challenge to the sufficiency of the evidence also is barred by his guilty plea. See

25-cv-0820-TWR-BLM

Tollett v. Henderson, 411 U.S. 258, 267 (1973).[10] "The focus of federal habeas inquiry is the nature of the advice [of the counsel] and the voluntariness of the plea, not the existence as such of an antecedent constitutional infirmity." Id. at 266. "[A] guilty plea represents a break in the chain of events which has preceded it in the criminal process." Id. at 267. "When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." Id.

Because Emert pled guilty, his challenge to the sufficiency of the evidence is barred by Tollett. See United States v. Chavez-Diaz, 949 F.3d 1202, 1206 (9th Cir. 2020) (stating that the Ninth Circuit has "routinely held that defendants who pleaded guilty unconditionally cannot raise on appeal various claims of antecedent legal error"); Turner v. Stainer, 2012 WL 5389762, at *5-7 (C.D. Cal. Nov. 5, 2012) ("In general, when a criminal defendant pleads guilty to an offense, he cannot later claim deprivations of constitutional rights that occurred prior to the entry of his guilty plea.").

### 3. Baseless Prosecution

While Tollett generally precludes habeas challenges to conduct that occurred prior to the entry of a guilty plea, the Supreme Court has identified limited exceptions to that rule. In Blackledge v. Perry[11], the Supreme Court held that if the initiation of criminal proceedings against the defendant operated to deny him due process, the defendant's guilty plea could not foreclose a habeas petition attacking the subsequent conviction. The Supreme Court subsequently stated that "so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion." Bordenkircher v. Hayes, 434 U.S. 357, 364 (1978). The Ninth Circuit explained that the exception to the Tollett bar is limited

---

[10] As discussed below in detail, infra Sections IV.A.3, IV.C, and IV.D, the California Supreme Court's denial of Emert's claim that his guilty plea was not "voluntary and intelligent" was neither contrary to, nor an unreasonable application of, clearly established federal law.
[11] 417 U.S. 21, 30-31 (1974).

8

25-cv-0820-TWR-BLM

to "those claims in which, judged on the face of the indictment and record, the charge in question is one which the state may not constitutionally prosecute." United States v. Johnston, 199 F.3d 1015, 1020 n. 3 (9th Cir. 1999); see United States v. Chavez-Diaz, 949 F.3d 1202, 1208 (9th Cir. 2020) ("[Those exceptions] appl[y] where the judge could determine at the time of accepting the plea, from the face of the indictment or from the record, that the government lacked the power to bring the indictment.") (internal quotation omitted).

In the underlying criminal prosecution of Emert, there was a preliminary examination hearing on February 10, 2023, during which the prosecutor presented evidence and testimony addressing each element of the crime of child abduction, including malice. ECF No. 17-7, at 4-19. Defense counsel cross-examined the testifying agent and was given the opportunity to present evidence. Id. at 19-24. At the conclusion of the hearing, Judge Gaston found "there is probable cause to believe that the offense charged in Count 1 [child abduction] has been committed and that defendant is guilty thereof. And he will therefore be bound over for further proceedings in the Superior Court." Id. at 25. In addition, during the evidentiary hearing on Emert's motion to dismiss and to withdraw his guilty plea, Judge Katz noted that he had reviewed the preliminary examination hearing transcript and agreed with Judge Gaston that there was "sufficient evidence to hold Mr. Emert to answer on the charges alleged in the Complaint." ECF No 17-15, at 103. Finally, during the plea colloquy, Judge Katz confirmed there was a factual basis for Emert's guilty plea, including that Emert "did unlawfully and maliciously take, entice away, keep, withhold and conceal [his son] and deprive a lawful custodian of a right to custody." ECF No. 17-1, at 114.

Based on the evidence presented during the preliminary examination hearing and the trial court's finding of "probable cause," the initiation of the criminal charge was not unconstitutional and the exception to the Tollett bar is not applicable to this case. See Bordenkircher, 434 U.S. at 364 ("[S]o long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion."); United States v. JDT, 762 F.3d 984, 996 (9th Cir. 2014) (citing Bordenkircher, 434 U.S. at 364).

25-cv-0820-TWR-BLM

This conclusion is further supported by Judge Katz's findings after Emert's guilty plea and at the conclusion of the hearing on Emert's motion to withdraw his guilty plea. See ECF Nos. 17-1, at 114; 17-15, at 103.

For the reasons set forth above, the California Supreme Court's denial of Emert's claims in Ground One was neither contrary to, nor an unreasonable application of, clearly established federal law. Accordingly, the Court recommends that Ground One be denied.

**B. Ground Two: Family Court's Jurisdiction**

In Ground Two, Emert asserts that the Superior Court judges who presided over his family court proceedings lacked jurisdiction to enter a variety of orders.  Pet at 19-20. Emert explains that he filed a California Code of Civil Procedure § 170.6 challenge against Judge Patti Ratekin, which automatically divested her of jurisdiction.  Id.  He asserts that Judge Ratekin improperly denied this challenge and continued to issue orders in his family court proceedings.  Id.  Emert argues that Judge Ratekin's orders, including ones later confirmed by Judge Lorna Alksne, were void.  Id.  He further argues that the family court rulings infected the subsequent criminal proceedings and violated his Fourteenth Amendment rights.  Id.

Respondent argues that Ground Two should be denied because the claims are not exhausted and do not present a federal claim. Resp at 19-21.

Emert does not state that he presented this argument to any state court and a review of the lodgments indicates that he is presenting this argument for the first time in this habeas proceeding.

For the following reasons, the Court finds the claims asserted in the Ground Two are not reviewable in this proceeding. First, AEDPA bars the granting of habeas corpus relief "unless it appears that the applicant has exhausted the remedies available in the courts of the State." Gray v. Netherland, 518 U.S. 152, 161-63 (1996); Akopyan v. Cates, 2024 WL 487722, at *1 (9th Cir. Feb. 8, 2024) ("A petitioner satisfies the exhaustion requirement by fully and fairly presenting each claim to the highest state court.") (quoting Scott v. Schriro, 567 F.3d 573, 582 (9th Cir. 2009)); see also Ortiz v. Sec'y of Corr., CDCR, 2023 WL 7486742, at *2 (9th Cir. Nov. 13, 2023) (holding that petitioner's "failure to exhaust preclude[d] review of [his] prosecutorial

misconduct claim" because he "did not raise his prosecutorial misconduct claim" in state courts); 28 U.S.C. § 2254(b). A convicted state court defendant must give the state courts an opportunity to act on the claims before presenting those claims in a federal habeas petition. O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999); see Akopyan, 2024 WL 487722 at *1. Because Emert never presented this claim to the California state courts, this claim is unexhausted and must be denied. See Gray, 518 U.S. at 161-63; O'Sullivan, 526 U.S. at 842; Akopyan, 2024 WL 487722 at *1.

Second, Emert's claim does not present a federal claim; it merely challenges the handling of his California Code of Civil Procedure § 170.6 challenge to state court judges and their subsequent decisions. "[F]ederal habeas corpus relief does not lie for errors of state law." Estelle v. McGuire, 502 U.S. 62, 67 (1991) (internal quotation omitted); Burrell v. Lewis, 172 F.3d 875 (9th Cir. 1999) ("To the extent [petitioner] challenges the application of California state law, his claim is not cognizable in a federal habeas petition."); Villaneda v. Santoro, 2023 WL 2158808, at *1 (9th Cir. Feb. 22, 2023) ("To the extent [petitioner]  challenges the state court's application of California Civil Procedure Code § 237, his claim is not cognizable on federal habeas review. . . . [F]ederal habeas corpus relief does not lie for errors of state law.") (internal quotation omitted); Chambers v. Grounds, 2012 WL 5391859, at *15 (C.D. Cal. Sept. 21, 2012), report and recommendation adopted, 2012 WL 5391730 (C.D. Cal. Nov. 2, 2012) ("Because petitioner's challenge to the denial of his § 170.6 motion only involves state law, it is not cognizable in this habeas proceeding as it is well settled that a federal habeas court does not have the authority to review a state's application of its own laws.").

Third, this argument also is not reviewable because it does not concern Emert's criminal judgment and sentence.  See Dominguez v. Kernan, 906 F.3d 1127, 1136-37 (9th Cir. 2018) (concluding that "§ 2254 requires a nexus between 'the judgment of a State court' and the 'custody' the petitioner contends is 'in violation of the Constitution or laws or treaties of the United States'" and holding that "[b]ecause [the petitioner's] pretrial detention is not attributable in any way to a state court judgment, his [] claim does not fall under § 2254").  Emert's argument addresses a challenge he made to family court judges and to decisions made by them in family court; it does not address a challenge to his criminal conviction or sentence. While there is

11

overlap between the children involved in the family court proceedings and the abducted child in the criminal charge, the criminal proceedings are separate from the family court proceedings and any challenges in this habeas proceeding must be to Emert's criminal conviction and sentence.

The Court therefore recommends that Ground Two be denied.

### C. Ground Three: Brady v. Maryland[12] Violations

In Ground Three, Emert alleges that the prosecutor withheld exculpatory evidence in violation of Brady, 373 U.S. at 83. Pet at 20-21. Emert identifies the exculpatory evidence as 1) a September 7, 2022 recording of conversation(s) between Emert and the District Attorney's Investigator in which Emert alleges the Investigator's statements were admissions that undermined the prosecution, 2) the transcript of a call that Emert made to the FBI and a subsequent FBI threat assessment, and 3) the contents of the prosecution's interview of Emert's son. Pet at 20-21.  Emert asserts that these Brady violations denied him his constitutional due process right and contributed to his coerced plea.  Id.

Respondent contends that the claim is procedurally barred by Tollett because Emert was aware of the alleged Brady materials before pleading guilty. Resp at 21-22. Respondent asserts that even if the claim was not barred, there were no Brady violations because Emert was aware of the conversations with Investigator Peña and the FBI call because he was a participant and that the prosecution's interview with Emert's son was irrelevant to the criminal charge under the California state law. Resp at 22-24.

Emert presented this argument to the California Supreme Court. ECF No. 17-25, at 18-19. The Court denied the petition without providing reasoning specific to this argument.  ECF No. 17-54.  The Court therefore will conduct an independent review of the record. See  Delgado, 223 F.3d at 982.

A defendant who pled guilty generally cannot later "raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." Tollett,

---

[12] 373 U.S. 83 (1963).

12

411 U.S. at 266-67. Accordingly, to the extent Emert is asserting an independent Brady violation, the Court recommends that the claim be denied. However, a defendant's decision to plead guilty is heavily influenced by his appraisal of the prosecution's case, and a guilty plea cannot be deemed "intelligent and voluntary" if entered without knowledge of material information withheld by the prosecution. Sanchez v. United States, 50 F.3d 1448, 1453 (9th Cir. 1995). The Ninth Circuit therefore held that "a defendant challenging the voluntariness of a guilty plea may assert a Brady claim." Id. Because Emert alleges Brady violations "contributed[ed] to his coerced plea" [Pet at 20], the Court will consider the merits of Emert's allegations.

In Brady, the Supreme Court held that the prosecution must provide to a criminal defendant all evidence that is favorable to the defendant and material to guilt or punishment. 373 U.S. at 87 ("We now hold that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."). Failure to do so violates the defendant's due process right. Raley v. Ylst, 470 F.3d 792, 804 (9th Cir. 2006). Materiality "in a case involving a guilty plea is whether there is a reasonable probability that but for the failure to disclose the Brady material, the defendant would have refused to plead and would have gone to trial." Sanchez, 50 F.3d at 1454; see also Kyles v. Whitley, 514 U.S. 419, 434 (1995) (stating that a "reasonable probability" is a probability sufficient to undermine confidence in the outcome). When the defendant is aware of "the essential facts enabling him to take advantage of any exculpatory evidence, the [prosecution] does not commit a Brady violation by not bringing the evidence to the attention of the defense." Raley, F.3d at 804; see also Dorsey v. Cullen, 2012 WL 6952837, at *8 (C.D. Cal. July 5, 2012), report and recommendation adopted, 2013 WL 355762 (C.D. Cal. Jan. 28, 2013) (finding no materiality because the "petitioner and his counsel were fully aware of the Brady evidence" at the time the defendant entered into the stipulated sentence).

With regard to the conversations involving Emert, the Court finds there was no Brady violation because Emert was a participant in the conversations, the conversations occurred long before Emert pled guilty, and Emert therefore knew what was discussed and was able to consider

25-cv-0820-TWR-BLM

the allegedly exculpatory information before he made his decision to plead guilty. The conversation between Emert and Investigator Peña occurred on September 7, 2022, before Emert was charged with a crime and while Investigator Peña was attempting to negotiate the return of Emert's son to the custodial parent. Pet at 20; Resp at 23; ECF Nos. 17-32 ("DAI Luis Pena[sic] call transcript that was not disclosed"), 17-7 (preliminary examination hearing).The transcript of the call between Emert and Investigator Peña, which was created and submitted by Emert, is lengthy and confusing but it does include statements by Investigator Peña that are the same or similar to the allegedly exculpatory statements identified by Emert. See ECF No. 17-32. However, a review of the entire transcript reveals that the statements were made to connect with Emert and to convince Emert to voluntarily return the abducted child to the custodial parent without the involvement of the criminal court. See id. As Investigator Peña explained, the goal of the Child Abduction Unit is to assist parents in resolving child custody issues in family court without arresting or criminally prosecuting anyone. ECF No. 17-7, at 6, 15.  As such, and contrary to Emert's arguments, Investigator Peña's statements are not exculpatory admissions that undercut the validity of the prosecution, do not establish Emert's innocence, and do not establish a Brady violation.

Similarly, Emert alleges that the "misleading account of the FBI call" was "used as a pretext for arrest and bail denial." Pet at 21. Emert initiated the call to the FBI well before any charges were filed. In fact, Investigator Peña testified that he sought an arrest warrant based upon statements made by Emert during the call. ECF No. 17-7, at 15-18. As such, Emert was aware of any exculpatory information discussed during the call. Moreover, Emert's lawyer used the contents of the FBI call, and the rest of the Child Abduction Unit's investigation of and interactions with Emert, during the preliminary examination hearing.[13] Id. at 19-23. Accordingly,

---

[13] With regard to the FBI threat assessment, Emert has not established that such a document exists.  Respondent states that "there does not appear to be an actual threat assessment made by the FBI" and there is no indication in the record that it exists. See Resp at 22.  Emert also has not established that such an assessment would be exculpatory.  Finally, because the threat assessment would have been based on the conversation between Emert and the FBI, Emert knew of the information before pleading guilty.  As such, there is no Brady violation.

the Court finds that there is no Brady violation as the information was not withheld, Emert was aware of any exculpatory information, and Emert has not established materiality to his guilty plea or sentence.

Emert asserts that the prosecutor's interview with his son constituted Brady material because the son "expressed competence and desire to live with Petitioner due to emotional abuse." Pet at 21. The Court finds that there was no Brady violation because Emert has not and cannot show materiality or prejudice because the son's feelings and desires are irrelevant to the crime of child abduction under the California law (Cal. Pen. Code § 278.5(a)). See People v. Coulthard, 90 Cal. App. 5th 743, 761 (2023) ("California's long-standing criminal prohibition against child abduction in section 278 is directed at punishing any person who, without a right to custody, maliciously takes a child with the intent to keep that child from their lawful custodian. . . . As such, section 278 vindicates the rights of the victimized custodian, not the child."). Here, the lawful custodian was the child's mother and Emert's admitted conduct was designed to keep the boy from his mother's lawful custody and the fact that the boy may have preferred to live with Emert is not exculpatory. Moreover, before his guilty plea, Emert emailed the prosecution multiple times expressing his son's desire to live with Emert and urging the prosecution to interview the son. See ECF No. 17-28, at 21-24. In addition, during the preliminary examination hearing, Investigator Peña testified that the abducted son wanted to live with Emert. ECF No. 17-7, at 21. This conduct establishes that Emert knew about his son's preference to live with him before he pled guilty and therefore Emert cannot show materiality of the information as it would not reasonably alter his decision to plead guilty. See Sanchez, 50 F.3d at 1454.

Accordingly, the California Supreme Court's decision to deny Emert's claim of Brady violations and the allegedly involuntary, coerced, and non-intelligent guilty plea due to the Brady violations is neither contrary to, nor an unreasonable application of, clearly established law. The Court therefore recommends Ground Three be denied.

**D. Ground Four: Guilty Plea Was Not "Voluntary and Intelligent" Due to Coercion by State Actors and Ineffective Assistance of Counsel**

In Ground Four, Emert alleges that his guilty plea was "involuntary, unknowing, and

25-cv-0820-TWR-BLM

unintelligent, the product of unconstitutional coercion by state actors (DDA Balerio, DAI Pena[sic]) and ineffective assistance of counsel (Jose Badillo) [in violation of] his Fifth, Sixth, and Fourteenth Amendment rights." Pet at 22. Emert alleges that he was held in custody without bail based upon a fabricated threat allegedly made during his call with the FBI. Id. Emert also alleges that his defense attorney provided ineffective assistance of counsel by advising Emert that if he pled guilty, his son would be returned to him and by failing to advise him that his guilty plea could result in a permanent loss of parental rights. Id. Emert also alleges that the Brady violations undermined the validity of his guilty plea. Id. at 22-23. Finally, Emert alleges that the totality of these circumstances establishes coercion that invalidated his guilty plea. Id. at 23.

Respondent refutes Emert's claims and explains that the charges were not fabricated as there was probable cause for Emert's arrest and no Brady material was withheld. Resp at 25. Respondent also states that Emert has not "shown ineffective assistance of counsel." Id. at 25-30.

Emert presented portions of this claim to the trial court (Judge Katz) in his motion to withdraw his guilty plea. ECF No. 17-1, at 97-99. On November 20, 2023, Judge Katz presided over an evidentiary hearing on Emert's motion to withdraw his guilty plea, including hearing testimony from Jose Badillo, Emert's counsel during the plea negotiations and guilty plea, Emert himself, and Mark Fidelman, one of Emert's friends who helped hire Mr. Badillo to represent Emert. ECF No. 17-15. At the conclusion of the hearing, Judge Katz denied Emert's motion to withdraw his guilty plea, finding that his plea was "free and voluntary" and made without duress or coercion, that counsel advised Emert of "all the primary and direct consequences of the plea" without any misrepresentations, and that Emert's claim of ineffective assistance of counsel was without merit. Id. at 96-99.

Emert also presented these claims to the California Supreme Court, which denied the claims without reasoning or specific citation. ECF Nos. 17-25, at 18-19; 17-54.

### 1. Coercion by State Actors

Emert's first argument is that his guilty plea was coerced by the misconduct of state

25-cv-0820-TWR-BLM

actors, including the prosecutor and Investigator Peña.  For the reason set forth in Ground One, supra Section IV.A.3, there was "probable cause" for the criminal charge and Emert's arrest, meaning that his arrest, detention, and subsequent prosecution were not unlawful. Similarly, for the reasons set forth in Ground Three, supra Section IV.C, there were no Brady violations and Emert's guilty plea was not coerced by the alleged conduct. For the reasons set forth in these sections, the Court finds the California Supreme Court's denial of this claim was not contrary to, nor an unreasonable application of, clearly established federal law.

### 2.  Ineffective Assistance of Counsel

Emert alleges that Jose Badillo, his attorney at the time of plea negotiations and guilty plea, provided ineffective assistance of counsel in violation of the Sixth Amendment, which lead to his plea not being "voluntary and intelligent." Pet at 22. Specifically, Emert alleges that Mr. Badillo "misrepresented that if [Emert] pleaded guilty, [his son] would be returned home" and "failed to advise [Emert] that the plea could lead to permanent loss of parental rights."  Id. Emert alleges that these statements were "material inducements" to his guilty plea and that the "promise [that his son would be returned home to Emert] was broken." Id.

To establish ineffective assistance of counsel, a petitioner must first show that his attorney's representation fell below an objective standard of reasonableness. Strickland v. Washington, 466 U.S. 668, 688 (1984). "This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. at 687. Second, the petitioner must show that he was prejudiced by counsel's errors. Prejudice can be demonstrated by a showing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 693-94.  In implementing this standard, the Supreme Court requires that "[j]udicial scrutiny of counsel's performance . . . be highly deferential," and there is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689.

Emert's first allegation is that Mr. Badillo falsely promised him that his son would be returned to him if he pled guilty.  Pet at 22.  During the evidentiary hearing on the motion to

withdraw his guilty plea, Mr. Badillo testified that the plea deal did not include an agreement that Emert's son would be returned home and reside with Emert. ECF No. 17-15 at 35, 39, 45. Mr. Badillo explained that he discussed with Emert that all custody decisions would be made by the family court and that the family court already had awarded custody of the son to Emert's ex-wife. Id. at 39, 45. During the same hearing, Emert testified that "it was very clear between myself and Badillo that [my son] was supposed to come home" and that this promise was part of the plea agreement and a fact upon which Emert relied in deciding to plead guilty. Id. at 50-52, 86-87. Emert emphasized that the promise was made by Mr. Badillo on several occasions, that other people were present during the conversations, and that there was a recording of the conversation between Emert and Mr. Badillo on this topic.[14] Id. at 50-57. Emert also testified that it was "shocking" to him that the term was not included in the written plea agreement. Id. at 59. He explained that he remembered

> asking Mr. Badillo, "If [my son] was coming home, why was the box not marked? Was it still checked that [his son's] protective order was there?" And I went to raised my hand to stop proceedings to clarify that, and Badillo had said, "No. Stop it. You know, I'll take care of that," and that's where I realized something was kind of going sideways, is because something – it just didn't make sense that the child protective order was still there when I was told that [son] was going to be returning home. And he said, basically, "Don't worry about it. We'll take care of that," and I was like – and I believed him, and I believed a deal was going to be

---

[14] Emert did not provide the recording and did not identify where in the record or transcript Mr. Badillo made the alleged promise. ECF No. 17-15, at 73-77. Nonetheless, Emert was permitted to testify about the allegedly-recorded conversation and stated that "the promise that was made by Badillo and Andrea and DDA Balerio was that [my son] was going to come home in some fashion and that needed to be worked out a little bit." Id. at 78. Emert provided additional testimony about the conversations and acknowledged that the transcripts were created by an AI program. Id. at 78-80. Emert subsequently acknowledged the alleged statement made by Mr. Badillo was not recorded but asserted that there were later conversations, after he pled guilty, during which the alleged promise was discussed. Id. at 82-84. As such, there were no recorded conversations and Emert did not present testimony from any other witness to the conversations that supported his position. See ECF No. 17-15; see also ECF No. 30 (in his Notice of Supplemental Evidence, Emert sets forth statements or emails that allegedly occurred after his guilty plea and before the hearing on the motion to withdraw his guilty plea, so they were not part of the plea negotiations but were available to support the motion to withdraw his guilty plea).

25-cv-0820-TWR-BLM

in writing, and it's – again, it never – it never happened." Id. at 69.

With regard to this allegation, after hearing all of the testimony, Judge Katz noted that during the plea colloquy, Emert never indicated that there was a term missing from the plea agreement or plea colloquy. Id. at 99. He also specifically found that Emert never stated that "he understood that a term of the plea bargain [was] that he was to be provided with [son] upon his release to live with him." Id. In fact, during the plea colloquy, Judge Katz asked Emert whether "any other promises [have] been made to you . . . in order to get [you to] change your plea?" and Emert replied "No, Your Honor." ECF No. 17-1 at 112. Emert also confirmed that he had not been threatened and that he was pleading guilty "freely and voluntarily." Id. After the evidentiary hearing, Judge Katz weighed the evidence and concluded that the alleged term was "never stated" and "never agreed upon." ECF No. 17-15 at 99. Judge Katz also found that Mr. Badillo worked diligently for Emert, answered all of his questions, advised him about all of the terms of the agreement and the consequences of the guilty plea, and did not make any misrepresentations. Id. at 96-99. Judge Katz determined that there was no coercion or duress and that Emert fully understood the terms of the agreement and the change of plea process. Id.

With regard to Emert's second allegation that Mr. Badillo failed to advise him that a guilty plea could result in him losing permanent custody of his son, Mr. Badillo testified that he discussed with Emert all of the consequences of his guilty plea including that the plea could be used against him in custody decisions in family court and "in other courts, in other proceedings" and that he could lose his professional license. Id. at 39-40. He also stated that Emert had already lost custody of his son and that he advised Emert that all custody decisions were at the discretion of the family court. Id. at 39, 45. During his testimony, Emert admitted that he had discussions with Mr. Badillo about pleading guilty but opined that the conversations were not sufficient for him to understand "possible future parental rights being taken from [him]." Id. at 67. At the conclusion of the hearing, Judge Katz found that Mr. Badillo discussed the potential consequences, including the possibility of permanently losing custody, with Emert prior to the

25-cv-0820-TWR-BLM

guilty plea. Id. at 98. Judge Katz explained that Mr. Badillo "went over those consequences with Mr. Emert in detail, and Mr. Emert [understood] those potential consequences." Id.

After a thorough review of the record, the Court finds that the California Supreme Court's denial of this claim was not "contrary to, or involved an unreasonable application of, clearly established Federal law" and that the denial was not "based on an unreasonable determination of the facts." See 28 U.S.C § 2254(d)(1)-(2). During the plea colloquy, Emert admitted all elements of the crime, that no other promises were made to him, and that he was pleading guilty freely and voluntarily. During the hearing on the motion to withdraw Emert's guilty plea, counsel confirmed that he did not make the alleged misrepresentation, that the plea agreement did not include the alleged term, and that he fully advised Emert regarding the plea terms and possible consequences. While Emert contradicted Mr. Badillo's testimony, Emert's testimony was inconsistent, changed over time, and was unsupported by the evidence identified by Emert (audio recording and other witnesses). Moreover, while Emert asserts that Mr. Badillo prevented him from raising the misrepresentation during the plea colloquy, the record reflects no such communication and includes a question asked by Emert to clarify the terms of the agreement. See ECF No. 17-1; Id. at 112. Accordingly, there is ample evidence supporting Judge Katz's findings and decisions and the California Supreme Court's denial of this claim. The Court therefore recommends Ground Four be denied.

### E. Ground Five: Arrest and Prosecution Were Retaliation for Protected Speech

Emert alleges that his "arrest and prosecution were unlawful retaliation for his First Amendment protected speech: his public corruption complaint (October 21, 2021) against family court officials and the DA's office." Pet at 23. He argues that the 15-month delay between his complaint and arrest "strongly suggests retaliatory motive." Id. at 24. In making this argument, Emert again asserts that Investigator Peña's statements prove Emert's innocence and therefore the unlawful prosecution was retaliatory. Id.

Respondent argues that this claim is barred by Tollett because it occurred prior to Emert's guilty plea. Resp at 30. Respondent also asserts that the allegation is conclusory and unsupported by facts and that the state court reasonably denied it. Id. at 30-32.

Emert presented this argument to the California Supreme Court.  ECF No. 17-25, at 18-19.  The Supreme Court denied it without specific reasoning but with a citation to Swain[15], "[a petition for writ of habeas corpus must allege sufficient facts with particularity]." ECF No. 17-54 at 3.

In Swain, the California Supreme Court denied without prejudice a writ of habeas corpus because "the vague, conclusionary allegations of the present petition [we]re insufficient to warrant issuance of the writ" of habeas, for a court "[is] entitled to and [does] require of a convicted defendant that he allege with particularity the facts upon which he would have a final judgment overturned and that he fully disclose his reasons for delaying in the presentation of those facts." 34 Cal. 2d at 303–04; see Sanchez v. Scribner, 428 F. App'x 742 (9th Cir. 2011) ("Because [the petitioner']s state habeas petition was procedurally deficient [when the California Supreme Court denied his state habeas petition as procedurally deficient by citing, inter alia, Swain], the district court properly dismissed [his] federal habeas petition."). "Conclusory allegations which are not supported by a statement of specific facts do not warrant habeas relief." James v. Borg, 24 F.3d 20, 26 (9th Cir.1994).

Emert's allegations in this claim are convoluted and conclusory and do not establish retaliatory conduct or vindictive prosecution.  Emert theorizes that the 15-month delay in prosecution "coupled with DAI Pena's admissions of external pressure and that [Emert] had 'pissed them off,' strongly suggests that the prosecution was not a good faith enforcement of PC § 278.5(a) but rather a retaliatory response to [Emert's] protected First Amendment activities." Pet at 24.  Emert's conclusion is pure speculation and theory, without any supporting facts or evidence.  In addition, as discussed in Ground One, supra Section IV.A.3, there was substantial evidence presented at the preliminary examination hearing that supported the trial court's determination that there was "probable cause" for the criminal charge. Moreover, as discussed above, Investigator Peña's statements were made before Emert's arrest and during Peña's efforts to convince Emert to return his son to the custodial parent, Emert's ex-wife, and

---

[15] 34 Cal. at 304.

were not exculpatory admissions. ECF No. 17-7, at 6, 15; see supra Section IV.C.   Finally, Investigator Peña testified during the preliminary examination hearing that the timing of Emert's arrest was based on the threatening statements made by Emert during the FBI call. ECF No. 17-7, at 15-18; see supra Section IV.C.

Independently, because Emert voluntarily and intelligently pled guilty to child abduction, he may not now seek federal habeas relief on the basis of pre-plea constitutional violations. See Tollett, 411 U.S. at 266-67.

For all of these reasons, the Court finds that the California Supreme Court's denial of this claim was not contrary to, nor an unreasonable application of, clearly established federal law. The Court therefore recommends Ground Five be denied.

**F.  Ground Six: Judicial Bias and Institutional Bias**

In Ground Six, Emert asserts wide-spread institutional bias and judicial bias in violation of his Fourteenth Amendment due process right. Pet 25-26.  Emert challenges the "institutional connection between the federal judiciary in the Southern District of California and the San Diego District Attorney's Office" and the judicial bias of three of the Superior Court judges.  Id.

Respondent asserts that the claims are unexhausted and therefore must be denied.  Resp at 32.  Respondent also argues that the "contentions are vague, unsupported by the record and involve proceedings irrelevant to [Emert's] custody."  Id.

Emert does not state that he presented these claims to the California Supreme Court (or any other state court) and a review of the record confirms that they were not presented to the California Supreme Court.  See ECF No. 17-25.

As previously discussed, section 2254(b) bars the granting of habeas corpus relief "unless it appears that the applicant has exhausted the remedies available in the courts of the State." See Gray, 518 U.S. at 161-63; 28 U.S.C. § 2254(b).  This requirement gives the state courts the opportunity to act on the claims before they are presented in a federal habeas petition. O'Sullivan, 526 U.S. at 842.  Because Emert did not present these claims to the California Supreme Court, they are unexhausted and must be denied.

Additional legal doctrines also require the dismissal of Emert's claims in Ground Six.  With

regard to Emert's first argument, he fails to identify how the marriage between a federal judge and the District Attorney, as well as "numerous interlocking professional and personal relationships among judicial actors, attorneys, and officials challenged by [Emert]" created an appearance of impropriety or undermined the appearance of impartiality.  See James, 24 F.3d at 26 ("Conclusory allegations which are not supported by a statement of specific facts do not warrant habeas relief.").   Emert also fails to identify how the alleged impartiality impacted his conviction or sentence, especially since he pled guilty to a felony crime. See Dominguez, 906 F.3d at 1137 ("§ 2254 requires a nexus between 'the judgment of a State court' and the 'custody' the petitioner contends is 'in violation of the Constitution or laws or treaties of the United States.'"). Similarly, the alleged appearance of impartiality occurred before Emert pled guilty and therefore the claims are barred by Tollett. 411 U.S. at 266-67.

In his second argument, Emert alleges that two family court judges were biased against him: one judge's wife was "allegedly connected to [Emert's] ex-wife" and another judge was allegedly unfair to him in the family proceedings. Pet at 25. Again, Emert does not explain how the alleged biases of these judges impacted his criminal conviction or sentence, especially in light of the fact that he pled guilty.  Because the claim does not satisfy the specificity requirements and does not present a challenge to Emert's conviction and sentence, the claim is not reviewable in this habeas proceeding. See Dominguez, 906 F.3d at 1137 ("§ 2254 requires a nexus between 'the judgment of a State court' and the 'custody' the petitioner contends is 'in violation of the Constitution or laws or treaties of the United States.'"); James, 24 F.3d at 26 ("Conclusory allegations which are not supported by a statement of specific facts do not warrant habeas relief.").

Third, Emert contends that Judge Katz refused to rule on a variety of motions and ruled incorrectly on other motions.  Pet at 25-26.  Again, Emert does not articulate the basis for his claims, did not present them to the California Supreme Court, and does not explain how they impacted the validity of his guilty plea, so this allegation is not reviewable in this proceeding. In addition, it appears that many of Judge Katz's rulings involve state court law, which is not reviewable in this proceeding. See Estelle, 502 U.S. at 67 ("[F]ederal habeas corpus relief does

23

not lie for errors of state law."); Burrell, 172 F.3d at 875 ("To the extent [petitioner] challenges the application of California state law, his claim is not cognizable in a federal habeas petition."). Moreover, the Supreme Court has held that "judicial rulings alone almost never constitute a valid basis for a bias," unless they either "relied upon knowledge acquired outside [judicial] proceedings" or "displayed deep-seated and unequivocal antagonism that would render fair judgment impossible." Liteky v. United States, 510 U.S. 540, 555-56 (1994). Emert has not established such a bias.

Accordingly, the Court recommends Ground Six be denied.

## V. Request for Evidentiary Hearing

Emert requests an evidentiary hearing. Pet at 26-27. AEDPA "substantially restricts the district court's discretion to grant an evidentiary hearing." Carr v. McDowell, 2024 WL 1121798, at *1 (S.D. Cal. Mar. 14, 2024) (quoting Baja v. Ducharme, 187 F.3d 1075, 1077 (9th Cir. 1999)). To determine whether to grant an evidentiary hearing under § 2254(e)(2), the court must first "determine whether a factual basis exists in the record to support the petitioner's claim." Id. (citing Cook v. Kernan, 948 F.3d 952, 970–71 (9th Cir. 2020)). If not, the court must "ascertain whether the petitioner has 'failed to develop the factual basis of the claim in State court.'" Id. "Only when a petitioner demonstrates that he did not fail to develop the factual basis for his claim in state court may a federal court proceed to consider whether a hearing is appropriate or required." Id. Significantly, the Ninth Circuit admonishes that "an evidentiary hearing is pointless once the district court has determined that § 2254(d) precludes habeas relief." Sully v. Ayers, 725 F.3d 1057, 1075 (9th Cir. 2013); see also Carr, 2024 WL 1121798, at *2 (holding that because "[t]his Court ha[d] already determined that a sufficient factual basis existed in the record to refute [the petitioner]'s habeas corpus claims . . . an evidentiary hearing [wa]s both unnecessary and precluded") (citing Cullen v. Pinholster, 563 U.S. 170, 181 (2011) (a federal court's review is limited to the state court record)).

Here, for the reasons set forth above, the Court already has determined there is sufficient factual basis in the record to deny Emert's habeas relief and claims. See Carr, 2024 WL 1121798, at *2. Moreover, Emert has not satisfied the requirements of section 2254(e)(2), so an

25-cv-0820-TWR-BLM

evidentiary hearing is not authorized. Accordingly, Emert's request for an evidentiary hearing is denied.

## VI.       CONCLUSION AND RECOMMENDATION

For all of the foregoing reasons, **IT IS HEREBY RECOMMENDED** that the District Judge issue an order: 1) approving and adopting this Report and Recommendation, and 2) directing that judgment be entered **DENYING** the amended petition.

**IT IS HEREBY ORDERED** that no later than **April 6, 2026**, any party to this action may file written objections and serve a copy on all parties. The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections must be filed and served on all parties no later than **April 20, 2026**. The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order.  See Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998).

**IT IS SO ORDERED.**

Dated:  3/16/2026

Hon. Barbara L. Major
United States Magistrate Judge

25-cv-0820-TWR-BLM