

FILED

APR - 2 2026

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY___ nne ___DEPUTY

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

ROBERT EMERT,

    Petitioner,

v.

SAN DIEGO PROBATION DEPARTMENT,

    Respondent.

Case No. 3:25-cv-00820-TWR-BLM

*Related Ninth Circuit Proceeding: Case No. 26-1808*

---

**PETITIONER'S OBJECTIONS TO REPORT AND RECOMMENDATION**

**(ECF NO. 36)**

*Related Ninth Circuit Proceeding: Case No. 26-1808 In re Robert Emert v. United States District Court for the Southern District of California Emergency Petition for Writ of Mandamus — Docketed March 25, 2026*

Objections Due: April 6, 2026 | Reply Due: April 20, 2026
De Novo Review: 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3)

## I. SUMMARY OF OBJECTIONS

¶ 1 Petitioner objects to the Report and Recommendation ("R&R," ECF No. 36) in its entirety because: (1) it rests on demonstrably false factual premises; (2) it was issued on a manufactured record created by the Clerk's failure to docket 13 of Petitioner's filings, including both traverses and ADA accommodation requests; and (3) it misapplies controlling Supreme Court and Ninth Circuit authority while ignoring critical evidence submitted to this Court. Any one of these three failures independently requires rejection of the R&R.

¶ 2 **First — The R&R's Core Factual Findings Are Demonstrably False.** The R&R states Petitioner "did not file a traverse" and "did not respond" to the Court's Minute Order. The record proves otherwise. Petitioner personally filed Traverse No. 1 on January 16, 2026 and received a court-stamped conformed copy. He then filed Traverse No. 2 by email on February 20, 2026 — 51 minutes after receiving ECF No. 35, which was issued February 13, postmarked February 17,

and delivered on the very deadline date. Neither traverse was ever docketed. Neither ADA accommodation request was ever adjudicated. See Exhibits A and B.

¶ 3  **Second — The R&R Was Written on a Record the Clerk's Office Manufactured.** From January 16 through March 16, 2026, the Clerk's Office docketed every filing from the Attorney General while refusing to docket 13 of Petitioner's filings submitted through the same efile address — including both traverses, ADA/§ 504 accommodation notices, a mandamus notice, and an emergency motion enclosing the March 3, 2026 letter from the San Diego District Attorney certifying that it "did not locate a court filed copy of an arrest warrant application, supporting affidavits, or attachments." On March 16 — the day the R&R was signed — a clerk on tape acknowledged Petitioner's filings were not being processed and admitted: "I don't know why." See Exhibits A through D.

¶ 4  **Third — The R&R Misapplies Controlling Law.** The R&R applies *Cullen v. Pinholster*, 563 U.S. 170 (2011), to bar consideration of Brady evidence without first performing the threshold merits-adjudication inquiry required by *Dickens v. Ryan*, 740 F.3d 1302 (9th Cir. 2014) (en banc). It treats procedurally barred state decisions as merits adjudications. It ignores the *Schlup* actual innocence gateway, fails to analyze the *Franks* warrant challenge despite the missing warrant, does not apply *Santobello v. New York* to the documented breached plea promises — now the subject of a pending petition for certiorari docketed as *Emert v. San Diego Probation Department*, No. 25-6794 — and never cites *Dickens v. Ryan* once.

¶ 5  Because the R&R's core factual findings are false, its record is incomplete by the court's own making, and its legal framework conflicts with *Banks v. Dretke*, *Dickens*, *Amado*, *Schlup*, *Franks*, and *Santobello* — the District Judge must conduct de novo review, reject the R&R, order the Clerk to docket the 13 suppressed filings nunc pro tunc, and adjudicate Petitioner's claims on a complete record.

## II. OBJECTION MAP — CROSS-REFERENCE TO R&R SECTIONS

¶ 6  The following table identifies the R&R section each Objection directly addresses and the controlling authority that section misapplied. Exact CM/ECF page and line numbers may be inserted by reference to ECF No. 36 on PACER.

| R&R Section | Petitioner's Objection | Controlling Authority |
| --- | --- | --- |
| Procedural Background — "No traverse filed" / "No response" (R&R at 4:1–16) | Objection 1 (Ghost Docket, § VI); Objection 2 (Mail Trap, § VII) | Fed. R. Civ. P. 5(d)(4), 79(a) |
| AEDPA Standard — §§ 2254(d)(1), (d)(2), (e)(1), (e)(2) | Objection 3 (Dickens/Pinholster, § VIII); Objection 8 (§ 2254(e)(2) Catch-22, § XIII) | Dickens v. Ryan, 740 F.3d 1302 (9th Cir. 2014) (en banc); Amado v. |

| (R&R at 2:24–28; Pinholster at 24:7–21) | | Gonzalez, 758 F.3d 1119; Cullen v. Pinholster (Step One required) |
|---|---|---|
| Ground One — Factual Innocence / Malice | Objection 4 (Brady, § IX); Objection 7 (Schlup, § XII) | Schlup v. Delo, 513 U.S. 298 (1995); McQuiggin v. Perkins, 569 U.S. 383; House v. Bell, 547 U.S. 518 |
| Ground Two — Family Court Jurisdiction | Section VII-A (Preserved — malice element nexus) | People v. Superior Court (Lavi), 4 Cal.4th 1164 |
| Ground Three — Brady Violations (R&R at 12–16; participant rationale at 13:24–28) | Objection 3 (§ VIII); Objection 4 (§ IX) | Brady v. Maryland, 373 U.S. 83; Banks v. Dretke, 540 U.S. 668, 696; Kyles v. Whitley, 514 U.S. 419; Giglio v. United States, 405 U.S. 150 |
| Ground Four — Coerced Plea / IAC | Objection 4 (Brady/voluntariness, § IX); Objection 6 (Brown/Santobello, § XI) | Sanchez v. United States, 50 F.3d 1448; Blackledge v. Allison, 431 U.S. 63; Brown v. Poole, 337 F.3d 1155 |
| Ground Five — Retaliatory Prosecution | Section XII-A (Preserved — Blackledge v. Perry) | Blackledge v. Perry, 417 U.S. 21 |
| Ground Six — Judicial / Institutional Bias | Section XIV-A (Preserved — Caperton; docket pattern) | Caperton v. A.T. Massey Coal Co., 556 U.S. 868; Tennessee v. Lane, 541 U.S. 509 |
| Franks / Missing Warrant (not addressed in R&R) | Objection 5 (Franks, § X) | Franks v. Delaware, 438 U.S. 154; DA CPRA Letter (Mar. 3, 2026, Exhibit D) |
| Evidentiary Hearing — § 2254(e)(2) / Pinholster | Objection 3 (§ VIII); Objection 8 (§ XIII) | 28 U.S.C. § 2254(e)(2)(A)(ii); Michael Williams v. Taylor, 529 U.S. 420 |
| Welched Plea — Santobello (not addressed as independent ground) | Objection 9 (Santobello, § XIV) | Santobello v. New York, 404 U.S. 257; SCOTUS No. 25-6794 |

## III. PRELIMINARY STATEMENT

¶ 7  Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b)(3), Petitioner Robert Emert respectfully objects to the Report and Recommendation issued by Magistrate Judge Barbara L. Major on March 16, 2026 (ECF No. 36). The R&R recommends denial of the habeas petition on grounds that are factually false, legally incomplete, and legally flawed.

¶ 8  The R&R rests on two findings that the documentary record disproves as a matter of physical fact:

¶ 9  **First**:  The R&R states that Petitioner "did not file a traverse." This is false. Petitioner filed Traverse No. 1 in person on January 16, 2026. The clerk's office stamped the filing and handed back a conformed copy. Judge Robinson acknowledged the filing by extending the traverse deadline to March 13, 2026 via ECF No. 33 (February 11, 2026). A court does not extend a deadline for a filing it believes does not exist.

¶ 10 **Second**: The R&R states that Petitioner "did not respond" to the Court's Order. This is false. ECF No. 35 was issued February 13, 2026, postmarked four days later on February 17, and received by Petitioner on February 20 — the same day printed on the face of the order as the deadline. Petitioner filed Traverse No. 2 within 51 minutes of opening the envelope.

¶ 11 A Magistrate's recommendation built on provably false factual premises has no legal force. The District Judge is required to conduct a de novo review of all objected-to portions. *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc). He cannot "rubber-stamp" the R&R. *Id.* Rubber-stamping false findings is reversible error on its face.

¶ 12 Beyond the false findings, the R&R reflects a record manufactured by the clerk's office over 61 days: 13 filings submitted by Petitioner through the court's email address were never docketed, while filings by the Attorney General through the same address were processed within minutes. On March 16, 2026 — the same day the R&R was signed — a clerk identified on tape as "Selena" confirmed that Petitioner's items were not being docketed and stated: "I don't know" why. The R&R is a recommendation to deny relief based on the absence of evidence the court refused to process.

¶ 13 All nine objections are set forth below. Any one of them independently requires rejection of the R&R.

### A. The False Findings Meet Even the 'Clearly Erroneous' Standard

¶ 14 De novo review is required for all objections. But the two false factual findings at the R&R's core do not merely fail de novo review — they fail the lower "clearly erroneous" standard as well. A finding is clearly erroneous when "on the entire evidence… the reviewing court is left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer City*, 470 U.S. 564, 573 (1985). The court-stamped conformed copy of the January 16 traverse and the 6:51 PM email timestamp of the February 20 response leave no room for any standard of review. The findings are not debatable. They are demonstrably false. AEDPA deference cannot attach to a recommendation premised on incorrect facts. *Taylor v. Maddox*, 366 F.3d 992, 1000 (9th Cir. 2004) (AEDPA deference unavailable where factual determination unreasonable in light of the record).

### B. The Suppression of Filings Constitutes a Denial of Meaningful Access to Courts

¶ 15 The clerk's refusal to docket 13 filings implicates not only ministerial duty but the constitutional right of access to the courts. The Supreme Court has recognized that prisoners and pro se litigants have a fundamental right of meaningful access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821 (1977). That right requires not just theoretical access, but access that has "reasonable adequacy." *Lewis v. Casey*, 518 U.S. 343, 351 (1996). A filing system that dockets

the prosecution's submissions within minutes while systematically suppressing the petitioner's substantive filings for 61 consecutive days is not reasonably adequate. It is the structural denial of the right to be heard.

### C. The § 2254(e)(1) Presumption of Correctness Does Not Apply

¶ 16 The R&R invokes the appellate court's factual recitation to deny Ground One (R&R at 2:24–28) and applies the § 2254(e)(1) presumption of correctness. This reliance is legally defective. The § 2254(e)(1) presumption applies to state court factual findings — but only when those findings were made on a complete record. Where the state court record is incomplete because the prosecution suppressed the evidence the state court needed to review, there is no valid factual finding to which deference can attach. *Banks v. Dretke*, 540 U.S. 668, 696 (2004). No state court has ever seen the Peña recording, the Balerio-Bryce interview, or the FBI clearance — because the prosecution concealed all three. Notably, the R&R itself acknowledges that the FBI threat assessment the prosecution used to justify 90-day no-bail detention may not exist as a discrete document (R&R at 14:24–28, fn. 13). A court cannot simultaneously doubt the prosecution's foundational evidence and invoke a presumption of correctness from a record that evidence never entered. A presumption built on a record the prosecution engineered is not a presumption — it is a reward for misconduct.

### IV. EXHIBITS FILED CONCURRENTLY AND INCORPORATED BY REFERENCE

¶ 17 The following four Exhibits are filed concurrently with these Objections and are incorporated by reference throughout. Each is a document submitted to this Court that was never docketed. They constitute the record on which de novo review must be conducted.

¶ 18 **Exhibit A — Traverse No. 1 (January 16, 2026, 37 pages + Appendix A) [Court-Stamped Conformed Copy].**

¶ 19 Hand-delivered to the Clerk's office on January 16, 2026. Stamped "RECEIVED JAN 16 2026." Included an ADA accommodation request for eight additional pages. Never docketed. ADA request never adjudicated. ECF No. 35 called this filing "allegedly filed" — the court's own stamp on the conformed copy (Exhibit A) refutes that characterization. ECF No. 33 (February 11, 2026) granted a 30-day extension to file a traverse — confirming the Court was unaware the traverse had already been filed, because the Clerk never docketed it.

¶ 20 **Exhibit B — Traverse No. 2 / Amended Traverse with ADA Notice and Proof of Service (February 20, 2026, 25 pages + Appendices A–I).**

¶ 21 Filed by email to efile_robinson@casd.uscourts.gov on February 20, 2026 at 6:51 PM — within 51 minutes of Petitioner receiving ECF No. 35 on the deadline day itself. Exactly 25 pages.

Accompanied by the ADA/Section 504 Accommodation Notice and Proof of Service. Appendices A through I include Appendix G: the court-stamped January 16 Traverse, preserved for the appellate record. Never docketed. No ruling on the ADA request. No confirmation of receipt. The Proof of Service documents transmission to all required parties.

**¶ 22  Exhibit C — Petition for Writ of Mandamus to the Ninth Circuit (March 3, 2026, 966 pages, Bates 000001–000966).**

¶ 23  Filed with the Ninth Circuit emergency docket on March 3, 2026, and provided to this Court via secure OneDrive link on the same date. Contains the 109-page petition and Appendices A through N including 663 pages of audio recording transcripts (Peña admissions, Balerio-Bryce interview, FBI transcript). Documents in comprehensive detail the Dickens threshold violation, the manufactured docket, and the institutional suppression chain from the DA through the AG to this Court. The Notice of Pendency filed in this case was never docketed. The Ninth Circuit confirmed receipt and has requested formal case-opening materials.

**¶ 24  Exhibit D — Emergency Motion for Status Conference and OSC with DA CPRA Letter (March 7, 2026).**

¶ 25  Filed by email March 7, 2026. Documented all 13 undocketed filings over 61 days. Attached as Exhibit 1: the March 3, 2026 San Diego DA CPRA response certifying that its office "conducted a reasonable search of our records but did not locate a court filed copy of an arrest warrant application, supporting affidavits, or attachments." This letter was in the Court's email inbox 13 days before the R&R was signed on March 16, 2026. The R&R never mentions it. Never docketed.

¶ 26  Together, Exhibits A through D prove: both traverses were timely filed and deliberately suppressed; both ADA accommodation requests were submitted and never adjudicated; the mandamus petition documenting all of this pre-dated the R&R; and the prosecution file that Brady review requires cannot be located. The R&R reflects none of this — because the Clerk ensured the docket would be silent.

## V. STANDARD OF REVIEW

¶ 27  When a party timely objects to a Magistrate's report and recommendation, the district court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). The court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." *Id.* De novo means the district judge reviews the objected-to issues independently, without

deference to the Magistrate's analysis. *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc).

¶ 28  Petitioner objects to the R&R's dispositive findings and recommendations and requests de novo review of each objected-to portion. A court "may not simply adopt a Magistrate Judge's findings wholesale." *Id.* It must review the actual record — including the filings the clerk's office refused to docket — not the incomplete docket created by the failure to process 13 of Petitioner's submissions.

¶ 29  Under 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(3), the District Judge may also "receive further evidence" in resolving objections. The Ninth Circuit has confirmed that, in conducting de novo review, the district court has discretion to consider evidence presented with objections. *United States v. Howell*, 231 F.3d 615, 621–22 (9th Cir. 2000). Petitioner also requests that the Court expand the record to include Exhibits A–E pursuant to Rule 7 of the Rules Governing Section 2254 Cases. Exhibits A–E are not "new" evidence: they are the very filings Petitioner timely submitted during the magistrate proceedings that do not appear on the docket. De novo review should be conducted on the complete record, including these exhibits.

¶ 30  The R&R's own citation pattern proves it was written exclusively from the corrupted record. Every factual finding in the R&R cites an ECF number — and the ECF numbers cited include nothing filed by Petitioner after January 16, 2026. The R&R cites ECF No. 33 (Robinson's extension order), ECF No. 34 (Petitioner's notice), and ECF No. 35 (the minute order) — but never cites the traverses, the ADA notices, the mandamus notice, or the emergency motion, because those documents were never docketed. The R&R's citations are a forensic map of the suppression: every document the Clerk processed appears; every document the Clerk suppressed is invisible. De novo review requires this Court to look beyond the forensic map to the actual record.

## VI. OBJECTION 1 — GHOST DOCKET: THE R&R IS BASED ON A MANUFACTURED RECORD

### A. The R&R's Procedural Findings Are Factually Incorrect — With Exact Page and Line Citations

¶ 31  The R&R states that Petitioner "did not file a traverse by January 30, 2026" (R&R at 4:1–3) and that Petitioner "did not respond to the Court's order and did not file a traverse by the deadline imposed by Judge Robinson" (R&R at 4:15–16). Both statements are factually incorrect. Petitioner filed a received-stamped traverse on January 16, 2026 — fourteen days before the deadline the R&R cites — and the Clerk affixed the Court's own "RECEIVED JAN 16 2026" stamp to that filing. See Exhibit A. Petitioner transmitted a second traverse on February 20, 2026 at 6:51 PM in direct response to ECF No. 35. See Exhibit B. The non-appearance of those filings on CM/ECF is a docket-integrity failure, not petitioner noncompliance. Fed. R. Civ. P. 79(a); Fed. R. Civ. P. 5(d)(4).

¶ 32  The R&R itself provides the best evidence against its own conclusion. It acknowledges that Petitioner "filed a notice that included a statement that he had filed a traverse on January 16, 2026" (R&R at 4:10–11) and that "because the docket did not reflect that filing, the Court directed Emert to re-file the traverse" (R&R at 4:12–14). That is an express recognition that the problem was the docket's failure to reflect the filing — not Petitioner's failure to submit it. The R&R then reverses this logic in the very next sentence (R&R at 4:15–16), treating the administrative absence as substantive default. A recommendation built on that reversal cannot stand. Petitioner suffered actual injury: the R&R relied on the absence of a traverse (R&R at 4:1–3, 4:15–16) even though both traverses were timely submitted. *Lewis v. Casey*, 518 U.S. 343, 351–53 (1996).

### A-1. The Clerk Refused to Docket 13 of Petitioner's Filings Over 61 Days

¶ 33  Between January 16, 2026 and March 16, 2026, Petitioner submitted 13 filings to the court's official email address at efile_robinson@casd.uscourts.gov. None were docketed. None generated a confirmation. None appeared on the public docket. The R&R (ECF No. 36) was then written as if those filings did not exist — and used their absence as a basis for recommending denial.

¶ 34  The docket itself proves disparate treatment. The docket as of March 9, 2026 shows the following Petitioner filings **were** docketed through the efile_robinson@casd.uscourts.gov address: ECF No. 20 (October 17, 2025 — Motion for Extension); ECF No. 23 (November 10, 2025 — Motion for Sanctions); ECF No. 24 (November 25, 2025 — Renewed Motion); ECF No. 26 (December 22, 2025 — Objection); ECF No. 29 (January 13, 2026 — Reply); ECF No. 30 (February 2, 2026 — Supplemental Notice of Evidence); ECF No. 31 (February 9, 2026 — CPRA Notice); ECF No. 32 (February 9, 2026 — ADA Motion). Every one of Petitioner's filings before January 16, 2026 was docketed. Every filing from January 16 forward — starting with Traverse No. 1 — was suppressed. The line was crossed exactly when the traverse arrived.

¶ 35  The traverse is the document that closes the pleadings. Its suppression guaranteed there would be no merits record for the R&R to review. ECF No. 29 — a supplemental notice filed January 31, 2026 — was docketed within one business day through the identical email address, proving the address was functional and the Clerk was actively processing Petitioner's emails. ECF No. 30, filed February 2, was docketed the same week. The traverses, filed January 16 and February 20, were not docketed at all. See Exhibit A (court-stamped Traverse No. 1); Exhibit B (Traverse No. 2 with timestamp 6:51 PM February 20, 2026).

### A-1. The R&R Contains an Internal Self-Contradiction That Proves Both Findings False

¶ 36  The R&R's two false findings are not merely unsupported — they contradict each other within the same paragraph. The R&R states at lines 7–8 that Judge Robinson "extended the deadline for Emert's traverse to March 13, 2026" via ECF No. 33. The very next sentences at lines 12–13 state: "Emert did not respond to the Court's order and did not file a traverse by the deadline imposed by Judge Robinson."

¶ 37   This internal contradiction is self-executing proof of both false findings simultaneously. First: a judge does not extend a traverse deadline unless he believes a traverse was expected — but the R&R states earlier in the same paragraph that no traverse had been filed.  Robinson cannot have extended the deadline for a filing he believed did not exist.  The extension of the deadline is the R&R's own acknowledgment that Traverse No. 1 was received.  Second: if Traverse No. 2 was filed within 51 minutes of ECF No. 35 on February 20 — which the Exhibit B timestamp proves — then the statement that Petitioner "did not respond to the Court's order" is false by a margin of 51 minutes, documented by email metadata.  The R&R's own text, read against the record, provides the refutation.

¶ 38   On March 20, 2026, Petitioner transmitted these six documents — including the R&R text, the court stamp, the postmarked envelope, and the 6:51 PM email — simultaneously to nine recipients including the Ninth Circuit emergency clerk, the U.S. Attorney, and two FBI agents. See Exhibit E.  The email body states: "Every recipient of this email is now a documented witness to the existence of these filings that the District Court of Southern California is trying to say do not exist."  As of the date these Objections are filed, no recipient has corrected the record.  The documented witnesses include federal law enforcement.

¶ 39   On March 16, 2026 — the same day the R&R was signed — a court clerk identified on tape as "Selena" confirmed that Petitioner's items were not being processed and stated: "I don't know" why.  This tape exists.  This is not an inference or argument.  It is a recorded admission by court personnel that the non-docketing was known, unexplained, and never corrected before the R&R issued.

### B. The Clerk's Ministerial Duty Is Mandatory

¶ 40   Under Fed. R. Civ. P. 79(a), the Clerk has a non-discretionary duty to enter each paper filed on the civil docket.  Under Fed. R. Civ. P. 5(d)(4), the Clerk must not refuse to file a paper solely because of its form.  These are ministerial obligations.  The Court has inherent authority to direct correction of its docket to ensure that filed papers are entered and considered.  A docket that omits the petitioner's substantive filings while reflecting the opposing party's filings is not a neutral record — it is an incomplete one, and de novo review must account for the complete record, not the recorded one.

¶ 41   To the extent the Clerk attempts to justify the non-docketing of Petitioner's emailed filings as an unauthorized method of electronic filing by a pro se litigant under Rule 5(d)(3)(A), that defense fails on three independent grounds:

¶ 42   (1) **The physically delivered, court-stamped Traverse.**  Rule 5(d)(4) provides that "the clerk must not refuse to file a paper solely because it is not in the form prescribed by these rules or by a local rule or practice."  Fed. R. Civ. P. 5(d)(4).  Traverse No. 1 was hand-delivered to the Clerk's office on January 16, 2026 and stamped "RECEIVED JAN 16 2026."  No method-of-filing objection applies to a physically delivered document.  The Clerk's refusal to docket it has zero legal cover.  See Exhibit A.

¶ 43  (2) **The unadjudicated ADA accommodation request.**  Petitioner specifically requested ADA/Section 504 accommodation for digital and USB filing.  That request was filed with Traverse No. 1 on January 16, 2026 and renewed with Traverse No. 2 on February 20, 2026.  Neither was ever granted, denied, or adjudicated.  The Court cannot simultaneously refuse to adjudicate an ADA request for digital filing accommodation and then invoke the pro se electronic-filing restriction as justification for non-docketing.  *Tennessee v. Lane*, 541 U.S. 509, 533–34 (2004).

¶ 44  (3) **Disparate treatment proving constitutional violation.**  Even if email were an impermissible filing method for a pro se litigant, if the Clerk routinely accepted and docketed emails sent to efile_robinson@casd.uscourts.gov from the Attorney General within minutes — while silently refusing to docket identical emails from Petitioner for 61 consecutive days — the conduct transcends a rule-enforcement decision and becomes a Fifth Amendment due process and equal protection violation.  The Clerk cannot selectively enforce procedural rules against one party while exempting the opposing party from the same requirements.  The Clerk lacked judicial authority to pocket-veto Petitioner's pleadings.  See also Exhibit C (Mandamus Petition, Bates 000001–000109) documenting the full sequence of suppressed filings with email timestamps.

¶ 45  Whatever the explanation for the 61-day docket omission, the administrative result is the same: the Magistrate wrote an R&R based on a docket that omitted the entire substance of Petitioner's case.  The appropriate remedy is not to punish the Clerk — it is to direct the Clerk to enter all omitted filings nunc pro tunc, and for this Court to conduct de novo review on the complete record rather than the incomplete docket.

### C. The R&R Cannot Stand on a Record It Manufactured

¶ 46  A recommendation to deny relief that is premised on the petitioner's "failure" to file documents the court refused to process is not a neutral adjudication — it is the court's own conduct creating the appearance of non-compliance.  Due process requires that a litigant have a meaningful opportunity to be heard.  *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976).  A litigant whose filings are suppressed for 61 days and then denied on that basis has not had that opportunity.

¶ 47  The March 16, 2026 recording of Clerk Selena's admission — that Petitioner's items were not being docketed and that she does not know why — is available and can be provided to this Court on request.  This is not hearsay characterization of a phone call.  It is a recording of court personnel confirming non-docketing of Petitioner's filings on the same day the R&R issued.  The Court is respectfully invited to review it.

¶ 48  The ADA dimension compounds this.  Both Exhibit A (Traverse No. 1) and Exhibit B (Traverse No. 2) contain ADA/Section 504 accommodation requests.  Neither was ever adjudicated.  A court that suppresses the filing containing the accommodation request, and then recommends denial of the underlying petition, has denied the disabled litigant the meaningful access to judicial proceedings that Title II of the ADA and *Tennessee v. Lane*, 541 U.S. 509, 533–34 (2004), require.  There is no written ruling denying the accommodation.  There is no

explanation. There is only silence — the same silence that characterizes the 61-day manufactured docket.

> ¶ 49   *UNANSWERABLE QUESTION 1:   How does this Court adopt a recommendation stating Petitioner failed to respond, when the same clerk's office that processed the Attorney General's filings within 10 minutes through the identical email address refused to process 13 of Petitioner's filings over 61 days, and the clerk confirmed on tape she does not know why?*

## VII. OBJECTION 2 — MAIL TRAP: PHYSICAL IMPOSSIBILITY OF COMPLIANCE

¶ 50  ECF No. 35 was issued on Friday, February 13, 2026. It was not postmarked until Tuesday, February 17, 2026 — four days after issuance. Petitioner, a pro se litigant receiving mail from this court, did not receive the order until February 20, 2026. The face of the order identified February 20 as the response deadline. This is not disputed: ECF No. 35 itself, available on PACER, bears the February 13 issuance date; the postmarked envelope in Petitioner's possession bears the February 17 date; the email transmission bearing the traverse is timestamped 6:51 PM February 20, 2026. All three documents are in the record.

¶ 51  Petitioner filed Traverse No. 2 within 51 minutes of receiving the order. See Exhibit B (Traverse No. 2, timestamp 6:51 PM February 20, 2026, with ADA Notice, Appendices A–I, and Proof of Service). That complete, timely, page-compliant filing was never docketed.

¶ 52  The R&R treats Petitioner's response as non-existent. But even if the response had not been filed — it was — the Constitutional baseline requires that notice be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). A mailing that departs four days after issuance and arrives on the deadline day is not reasonably calculated to provide any opportunity to respond. Federal Rule of Civil Procedure 6(d) provides three additional days when service is made by mail precisely to account for this problem. Fed. R. Civ. P. 6(d).

¶ 53  A court cannot issue an order, delay mailing it by four days, set a response deadline on the day of receipt, and then penalize a pro se litigant for failing to respond in a negative timeframe. The Ninth Circuit requires that pro se litigants receive the benefit of liberal construction. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

> ¶ 54  *UNANSWERABLE QUESTION 2:   How does a pro se petitioner fail to comply with an order he received on the deadline day, when he filed a response within 51 minutes of opening the envelope?*

## VII-A. GROUND TWO (FAMILY COURT JURISDICTION) — PRESERVED FOR APPELLATE RECORD

¶ 55  The R&R holds that Ground Two is unexhausted, does not present a federal claim, and does not concern Emert's criminal judgment and sentence. Petitioner does not devote substantial argument to overturning this procedural holding at the district court level. However, Petitioner expressly preserves Ground Two for the appellate record and objects to the R&R's characterization on the following grounds:

¶ 56  First, Ground Two was not raised as a "pure family-law grievance." It was raised because the void jurisdictional orders of Commissioner Ratekin — issued after a mandatory CCP § 170.6 disqualification that she refused to honor — formed the legal predicate for the prosecution's theory of malice under PC § 278.5(a). Without a lawful custody order, there is no violation of a custody order. *People v. Superior Court (Lavi)*, 4 Cal.4th 1164, 1171 (1993). The family court jurisdictional defect is therefore directly connected to Petitioner's criminal judgment and sentence. The R&R's holding that "the criminal proceedings are separate from the family court proceedings" misses this nexus entirely.

¶ 57  Second, Ground Two is not required for relief if this Court grants the Schlup gateway, Brady relief, or Santobello relief independently. Petitioner raises the preservation objection to protect the appellate record, not to burden this Court with a ground that becomes unnecessary if any of the nine primary objections succeeds.

¶ 58  *PRESERVED QUESTION (Ground Two): If the custody orders underlying the criminal prosecution were void ab initio because Commissioner Ratekin refused to honor a timely CCP § 170.6 disqualification, how does a 'violation' of those orders satisfy the malice element of PC § 278.5(a)?*

## VIII. OBJECTION 3 — PINHOLSTER/DICKENS: THE R&R SKIPPED THE REQUIRED THRESHOLD ANALYSIS

### A. Dickens v. Ryan Requires a Threshold Determination Before Pinholster Applies

¶ 59  The R&R applies *Cullen v. Pinholster*, 563 U.S. 170 (2011), to limit habeas review to the state court record. But *Pinholster* applies only to claims that a state court has "adjudicated on the merits" under 28 U.S.C. § 2254(d). Before *Pinholster* can foreclose new evidence, the federal court must first determine whether any state court actually adjudicated the claims on the merits.

¶ 60   The R&R's application of *Cullen v. Pinholster*, 563 U.S. 170 (2011), constitutes a threshold legal error because it bypasses the mandatory threshold inquiry established by the Ninth Circuit sitting en banc. *Pinholster* is a Step Two analysis. The Magistrate skipped Step One.

¶ 61   *Dickens v. Ryan*, 740 F.3d 1302, 1320–21 (9th Cir. 2014) (en banc), dictates that before *Pinholster* can restrict the federal record, the court must first determine whether the state court actually adjudicated the specific claim on the merits. Here, the state courts denied relief on procedural grounds. Under *Amado v. Gonzalez*, 758 F.3d 1119, 1130 (9th Cir. 2014), a procedural dismissal is not an adjudication on the merits. By wielding *Pinholster* to exclude evidence of prosecutorial misconduct without first satisfying the *Dickens* threshold, the R&R collapses the AEDPA framework and improperly shields unadjudicated constitutional violations from federal review. This is not a technical error — it is the structural error that renders the R&R's analysis legally void. The R&R never cites *Dickens v. Ryan*. Once.

¶ 62   The R&R's internal logic compounds this threshold error. In the Brady section, the R&R acknowledges that key state-court denials were unexplained and that this Court must conduct "independent review of the record" (R&R at 12:20–24). Yet in the evidentiary-hearing section, the R&R treats § 2254(d) as categorically preclusive and invokes *Pinholster* to bar record development (R&R at 24:7–21). The Court cannot simultaneously (i) conduct "independent review" because there is no reasoned state-court merits analysis, while (ii) invoke *Pinholster* as a blanket bar without first determining claim by claim whether a merits adjudication actually occurred. The R&R's own reasoning defeats its *Pinholster* application. See *Cone v. Bell*, 556 U.S. 449, 472 (2009); *Wilson v. Sellers*, 584 U.S. 28, 33–35 (2018).

### B. Procedural Denials Are Not Merits Adjudications — Claim-by-Claim Analysis Required

¶ 63   A federal court may apply *Pinholster*'s record limitation only after determining whether the relevant state-court decision constitutes an 'adjudication on the merits' within the meaning of 28 U.S.C. § 2254(d). See *Cullen v. Pinholster*, 563 U.S. 170, 181–82 (2011). To the extent the state courts rejected Petitioner's Brady claims on an identified state procedural ground, there is no merits adjudication to which § 2254(d) deference applies. See *Cone v. Bell*, 556 U.S. 449, 472 (2009) (where state court did not reach merits, § 2254(d) does not apply).

¶ 63-A   The Supreme Court itself drew the boundary of Pinholster's reach within the opinion's own text. The Court expressly stated: "Because Pinholster's claim was adjudicated on the merits in state court, we have no occasion to decide whether § 2254(e)(2) applies to a claim that was not adjudicated on the merits in state court." Cullen v. Pinholster, 563 U.S. 170, 185 n.10 (2011). That reservation is the precise opening the en banc Ninth Circuit addressed in Dickens v. Ryan, 740 F.3d 1302, 1320–21 (9th Cir. 2014). The R&R applies Pinholster without acknowledging that the Supreme Court expressly declined to decide what happens in this case's exact posture. The R&R leapt over the reserved question — and landed on the wrong side of the en banc answer.

¶ 64   Where the highest state court issued a summary denial, a federal court ordinarily presumes the denial was on the merits. *Harrington v. Richter*, 562 U.S. 86, 99 (2011). But under *Wilson v.*

*Sellers*, 584 U.S. 28, 33–35 (2018), the Court should 'look through' an unexplained order to the last reasoned decision to determine the basis for the denial. Petitioner requests that the Court identify, claim by claim, the last reasoned state-court decision (if any) and determine whether it rested on procedural grounds or reached the merits before applying § 2254(d) or *Pinholster*.

¶ 65  Under *Amado v. Gonzalez*, 758 F.3d 1119, 1135–37 (9th Cir. 2014), a decision that a claim is procedurally barred is not an adjudication on the merits. Where — as here — the Brady claims were consistently disposed of on procedural grounds rather than on the merits, *Pinholster* does not apply, de novo review governs, and new evidence is permitted.

¶ 65-A  The en banc Ninth Circuit could not have been clearer: "Pinholster says nothing about whether a court may consider a 'new' claim, based on 'new' evidence not previously presented to the state courts." Dickens v. Ryan, 740 F.3d 1302, 1320 (9th Cir. 2014) (en banc). Where the state court did not reach the merits of a federal claim, "AEDPA does not apply... In such a case, we review the claim de novo." Id. at 1321. The California Supreme Court returned 300 pages of Petitioner's exhibits unread and issued a form denial (Lodgment 53). No merits adjudication of the Brady claims occurred. The R&R never cites Dickens v. Ryan — an omission that is fatal to its central holding.

¶ 65-B  The Ninth Circuit's command regarding unadjudicated claims is absolute: "when it is clear that a state court has not reached the merits of a properly raised issue, we must review it de novo." Pirtle v. Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002). Because the state courts issued summary Wende and Waltreus/Dixon procedural denials, no state court reached the merits of the Brady or welched plea claims. Pirtle and Dickens together strip away AEDPA deference entirely, rendering the R&R's reliance on Pinholster structurally defective.

¶ 65-C  Respondent may argue — as the Dickens dissent argued — that this framework "essentially eviscerates Pinholster's holding." Dickens, 740 F.3d at 1328 (Callahan, J., dissenting). The en banc majority expressly rejected that argument. A state court record that is empty because the prosecution suppressed the evidence cannot receive AEDPA deference — because there is no merits adjudication to defer to. A prosecutor who hides exculpatory evidence, ensures the state record remains blank, and then invokes Pinholster to bar federal review of that same evidence is doing precisely what Banks v. Dretke, 540 U.S. 668, 696 (2004), prohibits. The dissent would allow it. Nine judges sitting en banc do not.

### C. Structural Impossibility: Brady Evidence Cannot Be Exhausted Through Suppression

¶ 66  The R&R's application of *Pinholster* creates a constitutional paradox. The Brady claims were procedurally barred in state court precisely because the prosecution successfully concealed the evidence. Petitioner filed in 11+ state courts. None addressed the Brady claims on the merits because the prosecution never disclosed the recordings. The very mechanism of Brady suppression prevented the merits adjudication that *Pinholster* requires as its prerequisite.

¶ 67  The Supreme Court addressed this structural impossibility in *Banks v. Dretke*, 540 U.S. 668, 696 (2004):  the prosecution cannot suppress evidence, use the state court's resulting procedural denial to bar federal review, and then invoke *Pinholster* to prevent introduction of the suppressed evidence.  "Prosecutor may hide, defendant must seek" is not, the Court held, a constitutionally tenable framework.  *Id.*

¶ 67-A  The R&R suffers from a fatal internal contradiction. By applying Cullen v. Pinholster to bar evidence while simultaneously acknowledging the state courts never reached the merits of the Brady claims, the Magistrate Judge weaponized a rule explicitly reserved for fully adjudicated claims. Pinholster expressly reserved the question of what evidentiary rules apply when a state court dismisses a claim on procedural grounds. 563 U.S. at 185 n.10. The en banc Ninth Circuit answered that reserved question: if the state court did not reach the merits, § 2254(d) deference does not apply, and the federal court must review the claim de novo with full evidentiary development. Dickens, 740 F.3d at 1321. The R&R's failure to cite Dickens or perform the Step One analysis is not a citation omission — it is the absence of the only en banc authority that governs the R&R's central holding. That holding cannot stand.

¶ 68  The Catch-22 is now documented in the most literal sense: on March 3, 2026 — thirteen days before the R&R was signed — the San Diego District Attorney certified in writing that it "conducted a reasonable search of our records but did not locate a court filed copy of an arrest warrant application, supporting affidavits, or attachments."  See Exhibit D (Emergency Motion with DA CPRA Letter as Exhibit 1).  See also Exhibit C (Mandamus Petition, Bates 000022–000030, documenting the complete suppression timeline).  The R&R never mentions this letter. The prosecution file that would supply the Brady record for state-court merits review does not exist.  The R&R holds this against the Petitioner.

### C-2. The R&R Was Signed While the Ninth Circuit Was Already Reviewing These Identical Issues

¶ 69  The R&R's legal errors were not committed in ignorance.  By March 16, 2026 — the day the R&R was signed — the following had already occurred: the complete 966-page Emergency Petition for Writ of Mandamus had been transmitted to the Ninth Circuit emergency docket on March 3 and again on March 19; a Ninth Circuit clerk had called Petitioner on March 19 and instructed him to mail a paper cover letter to formally open the case; and the district court had been provided courtesy copies of the mandamus petition at both email addresses.  The mandamus petition documented in comprehensive detail the identical manufactured docket, the Dickens threshold violation, and the Brady suppression pattern that form the basis of these Objections.

¶ 69-A The Ninth Circuit has since assigned docket number 26-1808 (*Emert v. United States District Court for the Southern District of California, San Diego*, docketed March 25, 2026), and has incorporated into its appellate record the court-stamped Traverse No. 1, Traverse No. 2, and the DA's March 3, 2026 CPRA certification — as ECF Document 37-1 in the district court below

— making those documents simultaneously part of the Ninth Circuit record and beyond the district court's reach.

¶ 70  The R&R was issued into a situation where a supervisory court had already been placed on notice of the district court's conduct.  Magistrate Judge Major signed the R&R knowing — or constructively knowing — that a petition alleging the exact manufactured record she was relying upon was pending before the Ninth Circuit.  An R&R issued under those circumstances, recommending denial on the basis of the record whose integrity was simultaneously under appellate challenge, compounds rather than cures the constitutional infirmity.

> ¶ 71  *UNANSWERABLE QUESTION 3:  Which state court adjudicated Petitioner's Brady claims on the merits — and how could any state court have done so when the prosecution concealed the Brady evidence from every state court proceeding across 11+ filings, and the DA now certifies the prosecution file cannot be located?*

## IX. OBJECTION 4 — BRADY: PARTICIPATION ≠ KNOWLEDGE ≠ POSSESSION

### A. The State's Argument Conflates Three Legally Distinct Concepts

¶ 72  The R&R improperly places the burden of discovery on the defendant — a standard expressly rejected by the Supreme Court. *Banks v. Dretke*, 540 U.S. 668, 696 (2004): "A rule thus declaring 'prosecutor may hide, defendant must seek,' is not tenable in a system constitutionally bound to accord defendants due process."  The fact that Petitioner participated in a phone call does not cure the State's deliberate suppression of the recording of that call from defense counsel.  The suppression was intentional, as established by DAI Peña's own words on the recording: "I'm not gonna give them this recording" [02:37:34].  Defense counsel Badillo confirmed on tape that this audio was never disclosed.  The State cannot intentionally withhold physical evidence from an attorney, secure a plea under duress, and then claim the defendant waived his right to the suppressed evidence simply because he was in the room when the concealed facts occurred.

¶ 73  The R&R's Brady analysis rests on a categorical rule: because Petitioner "was a participant in the conversations," there was "no Brady violation" (R&R at 13:24–28; 14:11–19).  That is not the governing inquiry.  Brady requires disclosure by the prosecution to defense counsel; it is not satisfied by arguing the accused could have reconstructed the evidence from memory.  The suppressed item is not "what Petitioner remembers was said" — it is the State's withheld recording and disclosure history, precisely the type of objective evidence that shapes counsel's plea advice and litigation strategy.  The materiality question in the plea context is whether there is a reasonable probability that, had the State disclosed the Brady material, the defendant would have refused to plead and gone to trial. *Sanchez v. United States*, 50 F.3d 1448, 1454 (9th Cir. 1995).

¶ 74  Three legally distinct concepts that the R&R conflates must be kept separate:

¶ 75  (1) **Participation** in a conversation does not confer knowledge of the conversation's legal significance.

¶ 76  (2) **Knowledge** of a fact does not satisfy Brady's disclosure requirement.  Brady requires disclosure to *defense counsel*, not to a defendant in a jail cell.  *Brady v. Maryland*, 373 U.S. 83, 87 (1963).

¶ 77  (3) **Possession** of a recording by the prosecution does not equal disclosure.  Defense counsel Jose Badillo confirmed on tape that he never received the Peña recording.  He could not advise his client about evidence he did not know existed.

### B. The Six Categories of Suppressed Evidence

¶ 78  The suppressed evidence is not a single recording.  It is six independent categories, each independently material under *United States v. Bagley*, 473 U.S. 667, 682 (1985):

¶ 79  **Category 1: DAI Peña's 47 Timestamped Admissions.**  On September 7, 2022, the prosecution's own investigator told Petitioner on a recorded call: "You'd probably win at trial" [02:31:23]; "I think you have good cause for sure" [02:38:13]; and "I'm not gonna give them [defense] this recording" [02:37:34].  That last statement is the investigator's recorded admission of deliberate concealment, on the very recording he concealed.  The prosecution produced *other* Peña recordings to defense counsel while withholding *this one*.  Selective disclosure proves consciousness of guilt.

¶ 80  **Category 2: DDA Balerio's 32-Minute Interview with Bryce Emert.**  On February 17, 2023, DDA Balerio interviewed the alleged victim — Petitioner's then-15-year-old son — who stated at [20:43]: "He did nothing wrong."  Bryce stated at [16:35]: "I made that choice to stay with him… he let me stay there and that's what all parents should do" — expressly rejecting the abduction narrative and invoking the PC § 278.7 defense in his own words.  He also stated he wanted to "be a witness for my dad."  DDA Balerio described him as "very well-spoken" and "articulate."  She never disclosed this interview.  She then told the Superior Court that Bryce was "incompetent" to testify — a direct *Napue v. Illinois*, 360 U.S. 264 (1959), violation layered on top of Brady.  Full analysis with timestamps: Exhibit B, Appendix A, Part II; Exhibit C, Bates 000824–000825.  When the alleged victim exonerates the defendant, the prosecution is over.

¶ 81  The R&R dismisses the Bryce interview as "irrelevant" because California child-abduction statutes vindicate the custodian's rights rather than the child's preferences (R&R at 15:1–10).  This rationale is too broad.  PC § 278.5(a) requires malice — a mental state — and the suppressed interview is material to malice because it bears directly on whether Petitioner acted with a "wish to vex, annoy, or injure" Andrea Schuck versus acting to protect the child and respond to the child's express request.  *People v. Kongs*, 30 Cal.App.4th 1741 (1994).  The R&R's statutory-purpose framing does not eliminate the prosecution's burden to prove malice beyond a reasonable doubt, nor does it extinguish Brady materiality as to mens rea and plea voluntariness.

*B-1. Three Independent Sources Corroborate Bryce's Exoneration — All Suppressed*

¶ 82  The Balerio recording does not stand alone.  Three independent documents — none created by Petitioner — corroborate Bryce's exoneration of his father from entirely separate sources with independent authentication:

¶ 83  **Bryce's Sworn Affidavit (November 16, 2023, under penalty of perjury, page 210 of exhibits).**  Bryce declared: "He saved me per my request and he is a great dad and has always been there for me."  "Please dismiss criminal charges from my Dad.  He did not do anything wrong."  The affidavit documents that Bryce attempted to be heard by the DA's office, police, CPS, school counselors, teachers, and court proceedings — and was shut out each time.  It describes the mother threatening facility placement and isolation.  This is the alleged victim, under oath, nearly eight months post-plea, demanding dismissal of criminal charges against his father.

¶ 84  **Bryce's Email to His Teacher, Paul Isbell (September 7, 2023, 9:33 AM, Carlsbad USD institutional account emertb860@carlsbadusd.net, page 211 of exhibits).**  Bryce emailed his teacher documenting that he was "experiencing emotional abuse from my mother" and was "living in our garage, which is far from an ideal environment for studying."  Generated from an institutional school email account with an independent server timestamp.  It cannot have been fabricated by Rob Emert.  It establishes the conditions that caused Bryce to call his father for help.

¶ 85  **Mallory Investigations PI Report (March 21, 2023, PI Riley Mallory, PI License 189447, pages 212–214 of exhibits).**  Prepared for defense counsel Badillo.  The report documents that "Bryce called his father and asked if he could not go to school that Monday and for Emert to pick him up."  They arranged to meet at a Starbucks.  "Bryce always wanted to live with Emert full time."  Bryce described 2022 as "the best year of his life."  Following arrest: 'everything had gotten worse for him... Bryce described his current life as miserable."  The PI report also documents that Schuck forced Bryce to alter his letter to the court, removed sections describing her conduct, and threatened "you will never see your father again" if he did not comply — witness tampering with a minor, documented by a licensed investigator.  This is a professional third-party report establishing that the "abduction" narrative is an inversion: the child called the father and arranged the meeting.

¶ 86  Balerio possessed all three of these through defense counsel Badillo.  The PI report was created for Badillo.  Bryce's communications went to the DA's office directly.  Balerio then represented to the Superior Court that Bryce was "incompetent" to testify — while sitting on a licensed PI report describing a child who was getting straight A's, articulate, consistent, and demanding to testify for his father.  That representation is not a characterization dispute.  It is a *Napue v. Illinois*, 360 U.S. 264 (1959), violation: the prosecutor made a knowingly false statement to the court about a witness's competence while possessing professional documentation directly contradicting it.

¶ 87  **Category 3: FBI Transcript and Threat Assessment.**  Petitioner explicitly told the FBI: "I am not making any threats."  The FBI conducted an in-person threat assessment and cleared him completely.  DDA Balerio used a fabricated "threat" narrative to secure 90 days of pretrial detention while possessing documentation from the FBI proving no threat existed.  She never charged PC § 422 (criminal threats) because she knew the full transcript would destroy her theory.

¶ 88  **Category 4: PC § 278.7 Defense Documentation and Malice Negation.**  From October 2021 through December 2022, Petitioner sent 14 months of correspondence directly to the DA documenting his complete statutory defense under California Penal Code § 278.7.  Peña himself reviewed this documentation and concluded: "I think you have good cause for sure" [02:38:13].  Peña also stated at [02:43:17]: "How is that even going to be proven in court as a child abduction?" — the State's own investigator admitting the statutory elements were not met.  And at [00:11:05]: "Why are we even involved in this case?  I'm like, we don't take anything over 14." — proving the DA violated its own internal charging guidelines to prosecute Petitioner.  This 14-month correspondence was never disclosed to defense counsel.

¶ 89  The 14-month correspondence also included ongoing emails to Lead Investigator Steven McIntosh — Peña's predecessor — in which Petitioner provided his exact address, phone number, and location.  He provided medical documentation, autism diagnoses, and school records proving Bryce's distress.  He never concealed himself or Bryce from law enforcement for a single day.  A parent who openly communicates his exact address, phone number, and medical records to the DA's office for 14 months, provides autism diagnoses and school records, and never conceals his location for a single day fundamentally negates any claim of malicious concealment under PC § 278.5(a).  A parent committing child abduction does not CC the District Attorney's office with his address and medical records for 14 months.  The suppression of this entire correspondence from defense counsel is Brady violation Category 4.

¶ 90  **Categories 5 and 6: Breached Plea Promises and Brady Compliance Documentation.**  Evidence of the specific custody-related promises made to induce the plea — and immediately breached — was suppressed.  The prosecution possesses and has not produced documentation of its own Brady compliance obligations in this case.

### C. Cumulative Materiality

¶ 91  Under *Kyles v. Whitley*, 514 U.S. 419, 434 (1995), materiality is assessed cumulatively.  No reasonable juror convicts when: the prosecution's own investigator says the case was baseless; the alleged victim exonerates the defendant on tape; the FBI clears the defendant; the statutory defense is documented in 14 months of correspondence; and the plea was induced by promises that were immediately broken.

### D. Temporal Impossibility: Brady Survives the Guilty Plea

¶ 92  Petitioner entered his guilty plea on April 3, 2023.  He discovered the Peña recording in August 2023 — four months after the plea — when he finally had access to his files.  A defendant

cannot waive claims about evidence discovered four months after the plea while incarcerated without access to that evidence. *Sanchez v. United States*, 50 F.3d 1448 (9th Cir. 1995) (Brady survives guilty plea as to voluntariness of the plea itself). *Tollett v. Henderson*, 411 U.S. 258 (1973), does not bar Brady claims going to the voluntariness of the plea; it bars only independent constitutional claims predating a knowing and voluntary plea. A plea coerced by suppression of exculpatory evidence is not knowing and voluntary. See *Brady v. United States*, 397 U.S. 742, 755 (1970) (plea must be knowing and voluntary to be constitutionally valid).

¶ 93  To the extent any Brady claim is deemed procedurally defaulted, the State's own suppression supplies 'cause' to excuse the default, and Brady materiality establishes 'prejudice.' See *Strickler v. Greene*, 527 U.S. 263, 282 (1999) (Brady suppression may establish cause and prejudice to excuse procedural default); *Banks v. Dretke*, 540 U.S. 668, 691–98 (2004) (rejecting "prosecutor may hide, defendant must seek" and explaining cause where the State concealed evidence).

¶ 94  Respondent may invoke *United States v. Ruiz*, 536 U.S. 622 (2002), arguing no Brady obligation prior to a guilty plea. But *Ruiz* addressed nondisclosure of impeachment information in a fast-track plea context and did not hold that the prosecution may suppress materially exculpatory evidence that renders a plea unknowing or involuntary. Petitioner's Brady claims are directed to exculpatory evidence and to plea voluntariness — specifically, evidence negating the essential malice element of PC § 278.5(a) and evidence showing the prosecution knew the case was baseless. *Ruiz* does not foreclose these claims.

> ¶ 95  *UNANSWERABLE QUESTION 4:  If Brady is satisfied because Petitioner 'participated' in the Peña call, how does the prosecution explain the investigator's statement on that same call — 'I'm not gonna give them this recording' — proving deliberate concealment from defense counsel on the very recording the prosecution claims was not suppressed?*

## X. OBJECTION 5 — MISSING WARRANT: THE R&R IGNORES THE FRANKS CLAIM ENTIRELY

¶ 96  On March 3, 2026 — thirteen days before the R&R was signed — the San Diego District Attorney certified in writing: "This office conducted a reasonable search of our records but did not locate a court filed copy of an arrest warrant application, supporting affidavits, or attachments." See Exhibit D.

¶ 96-A  The constitutional entitlement to a Franks hearing is triggered by "a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause." *Franks v. Delaware*, 438 U.S. 154, 155–56 (1978). Petitioner

makes that showing through the prosecution's own suppressed evidence: DAI Peña's recorded admission that supervisors ordered him to "just write a quick warrant and go on the evidence we have" [01:47:31], and that supervisors said "just finish the damn warrant and don't worry about it" [00:27:12]. A warrant written on supervisor orders by an investigator who doubted probable cause existed was written with reckless disregard for the truth. The Fourth Amendment requires a hearing. The R&R never ordered one. The R&R never mentioned Franks. The DA's certification that the warrant "cannot be located" arrived thirteen days before the R&R was signed.

¶ 96-B  If a Franks hearing establishes that the affidavit's false material was necessary to probable cause, "the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit." Franks, 438 U.S. at 156. The District Attorney's March 3, 2026 CPRA letter certifies that the prosecution file — including the arrest warrant and supporting affidavits — "cannot be located." Because the State cannot produce the warrant record, it cannot rebut Peña's recorded admissions about how the warrant was written. The absence of the affidavit does not excuse the Franks inquiry — it renders the showing of reckless disregard unrebutted.

¶ 96-C  The suppression of the Peña recordings also strikes at the foundational requirement of probable cause. A magistrate must be provided with sufficient, truthful information to make a practical, common-sense determination. Illinois v. Gates, 462 U.S. 213, 238 (1983). Peña's recorded admissions that supervisors ordered him to "just write a quick warrant and go on the evidence we have" demonstrate that the warrant affidavit was an orchestrated formality — not a truthful presentation of facts to a neutral magistrate. A warrant procured through that process does not satisfy Gates.

¶ 97  A federal habeas court cannot afford AEDPA deference to a state court record that the state itself admits is missing the foundational instruments of the petitioner's detention.  The R&R's recommendation assumes the integrity of the state court record.  That assumption fails the moment the DA certifies the prosecution file cannot be located.  A § 2254(d) reasonableness determination cannot be made in a vacuum — it requires a record, and the record here is admittedly incomplete. The R&R's failure to address the spoliation of the arrest warrant and the concealment of the prosecution file renders its factual findings regarding the legality of Petitioner's detention clearly erroneous under Taylor v. Maddox, 366 F.3d 992, 1000 (9th Cir. 2004).

¶ 98  The R&R never mentions this certification.  The R&R never addresses the Franks claim. The warrant was the instrument of Petitioner's 90-day pretrial detention.  Peña signed the warrant despite telling Petitioner on tape that he did not believe probable cause existed.  His supervisors told him: "Just finish the damn warrant and don't worry about it" [00:27:12].  The warrant affidavit omitted: Peña's own assessment that Petitioner would "probably win at trial"; eight months of PC § 278.7 defense documentation; Bryce's own statements that he wanted to live with his father; and the FBI clearance.  An affidavit that omits all known exculpatory evidence constitutes reckless disregard for the truth. Franks v. Delaware, 438 U.S. 154, 155–56 (1978).

¶ 99  A Magistrate who recommends denial of a habeas petition challenging an arrest warrant — without mentioning that the warrant has disappeared — has not addressed the claim.  The warrant's disappearance is newly discovered evidence independently warranting relief.  The absence of the warrant materials supports an adverse inference and, at minimum, warrants record expansion and a factual inquiry into what materials exist and where they went.  Respondent should be required to lodge the warrant or explain its nonexistence via sworn declaration under Rule 5 of the Rules Governing Section 2254 Cases (requiring Respondent to identify available transcripts and relevant record portions).

> ¶ 100  *UNANSWERABLE QUESTION 5:  How does the R&R address the constitutionality of Petitioner's 90-day detention and conviction without mentioning that the DA certified — 13 days before the R&R was signed — that it cannot locate the arrest warrant Peña signed despite his recorded admission that he did not believe probable cause existed?*

## XI. OBJECTION 6 — OFF-RECORD PLEA PROMISES: BROWN v. POOLE / SANTOBELLO

¶ 101  The plea agreement included custody-related promises regarding Petitioner's son Bryce.  Those promises were breached immediately upon signing.  The prosecution witnessed the breach.  This is documented in the Badillo recordings and in the Andrea Schuck evidence.

¶ 102  The Ninth Circuit holds that off-record plea promises are enforceable.  *Brown v. Poole*, 337 F.3d 1155, 1161 (9th Cir. 2003).  The Supreme Court holds that a broken plea promise independently voids the plea.  *Santobello v. New York*, 404 U.S. 257, 262 (1971) ("[W]hen a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled.").

¶ 103  The R&R does not cite *Brown v. Poole*.  The R&R does not cite *Santobello* as an independent ground for relief.  The R&R never addresses the welched plea as a self-contained constitutional violation.

¶ 104  This is not a minor omission.  The welched plea claim is docketed at the United States Supreme Court as *Emert v. San Diego Probation Department*, No. 25-6794 (petition for certiorari).  A Magistrate's recommendation that ignores a claim before the highest court in the country on certiorari — on identical facts — is not an adequate adjudication of that claim.

### B. The Plea Colloquy Does Not Foreclose Off-Record Promises

¶ 105  The R&R relies on the plea colloquy record to reject coercion claims.  This reliance is legally foreclosed.  *Blackledge v. Allison*, 431 U.S. 63, 74 (1977), holds that a plea colloquy is not conclusive where off-record promises were made that induced the plea.  *Brown v. Poole*, 337 F.3d 1155, 1161 (9th Cir. 2003), enforces exactly such off-record promises.  Petitioner was not asked during the colloquy whether specific custody-related promises had been made.  The colloquy is silent about them — because they were never placed on the record.  That silence is precisely the circumstance *Blackledge* addresses.  The R&R's reliance on plea colloquy silence to reject claims about off-record promises inverts the law.

### C. Brady Suppression and Plea Coercion Are One Unified Theory

¶ 106  The R&R treats Ground Three (Brady) and Ground Four (coercion) as independent claims.  They are not.  Brady suppression and plea coercion arise from the same act: the prosecution withheld evidence that would have prevented a knowing and voluntary plea.  A plea is not knowing and voluntary when the defendant is denied the information necessary to make an informed decision.  *Brady* violations that affect plea voluntariness are cognizable under *Sanchez v. United States*, 50 F.3d 1448 (9th Cir. 1995), regardless of the defendant's subjective awareness of any specific item.  The six categories of suppressed evidence, analyzed collectively under *Kyles*, demonstrate that no rational defendant in possession of all six categories would have pleaded guilty.  Brady and coercion are one claim analyzed through two legal frameworks.

¶ 107  *UNANSWERABLE QUESTION 6:  How does the R&R recommend denial of the welched plea claim without citing Santobello v. New York as an independent ground for relief — when a petition for a writ of certiorari on this exact claim is docketed as No. 25-6794?*

## XII. OBJECTION 7 — SCHLUP ACTUAL INNOCENCE GATEWAY

¶ 108  Actual innocence is not foreclosed by a guilty plea.  *Bousley v. United States*, 523 U.S. 614, 623 (1998) (actual innocence gateway applies in plea cases; petitioner must show factual innocence).  The R&R applies *Tollett* as a blanket bar to Ground One (R&R at 8) and Ground Five (R&R at 22) without conducting any *Schlup* analysis.  Where new reliable evidence shows it is more likely than not that no reasonable juror would convict, the Court must address the actual innocence gateway before enforcing any procedural bar.  *McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013).

¶ 109  The R&R errs by recommending dismissal based on procedural bars without conducting the mandatory gateway analysis required by *Schlup v. Delo*, 513 U.S. 298 (1995), and *McQuiggin v. Perkins*, 569 U.S. 383 (2013).  Actual innocence, if proven, overcomes both procedural default

and the AEDPA statute of limitations. The R&R does not cite *Schlup* once. This omission is not a gap — it is the structural omission that makes the R&R's procedural-bar analysis legally incomplete. If Petitioner satisfies *Schlup*, every procedural bar in the R&R dissolves.

¶ 109-A The Supreme Court confirmed that the actual innocence gateway is a universal solvent: "actual innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar, as it was in Schlup and House, or, as in this case, expiration of the statute of limitations." McQuiggin v. Perkins, 569 U.S. 383, 386 (2013). This gateway applies equally to petitioners who entered guilty pleas. Bousley v. United States, 523 U.S. 614, 623 (1998). The McQuiggin Court confirmed the gateway survived AEDPA by citing Bousley for that proposition. 569 U.S. at 393. Every procedural bar the R&R erects — Tollett, § 2254(d) deference, procedural default — dissolves if Petitioner makes a credible showing of actual innocence. The prosecution's own lodged evidence — the Schuck recordings in AG Lodgments 3, 6, and 35, documenting invitations to Christmas, Disney, church, and dinner — negates the statutory malice required by PC § 278.5(a) as a matter of law. People v. Kongs, 30 Cal.App.4th 1741 (1994). The gateway is satisfied by the prosecution's own exhibits.

¶ 109-B Respondent may invoke McQuiggin's observation that "unexplained delay in presenting new evidence bears on the determination whether the petitioner has made the requisite showing." 569 U.S. at 399. The delay here is not unexplained — it is entirely explained by the State's own conduct. The Peña recording was discovered in August 2023, four months after the April 3, 2023 plea, because it was suppressed until post-conviction. The Bryce interview was discovered post-conviction. The FBI transcript was withheld approximately ninety days. The DA's March 3, 2026 certification that the prosecution file "cannot be located" arrived after all state proceedings concluded. Every category of new evidence was new because the State concealed it. The delay belongs to the prosecution. McQuiggin's credibility factor weighs in Petitioner's favor.

¶ 110 Under *Schlup*, a petitioner passes through the actual innocence gateway by showing "that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." *Id.* at 327. The gateway applies even where procedural defaults would otherwise bar review. *McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013) (actual innocence gateway applies despite statute of limitations).

### *The Schuck Recordings: The Prosecution's Own Lodged Evidence Negates Its Own Essential Element*

¶ 111 PC § 278.5(a) requires malice — defined under *People v. Kongs*, 30 Cal.App.4th 1741 (1994), as a "wish to vex, annoy, or injure" the other parent. The prosecution lodged its own evidence destroying this element. AG Lodgments 3, 6, and 35 — the Schuck recordings now appearing as Exhibit G of the mandamus exhibits — document Petitioner's recorded calls with Andrea Schuck from April 2023. They contain:

¶ 112  **Christmas morning invitation.** Petitioner explicitly invited Andrea to share Christmas morning with Bryce, urging her to "come over and we could put our garbage on hold for that day for the children to see us putting them first." She accepted. A parent harboring malice toward the custodial parent does not invite that parent to Christmas morning.

¶ 113  **Disney trip invitation.** Petitioner offered for Andrea to join him and Bryce on a trip to Disney World — demonstrating an active desire to foster, not sever, the maternal bond.

¶ 114  **Church invitation.** Petitioner invited Andrea to attend church services with him and Bryce. Consistent, documented efforts to integrate Andrea into Bryce's daily life.

¶ 115  **Post-jail dinner invitation.** After 90 days of coercive detention, Petitioner offered to take Andrea and Bryce to dinner to peacefully resolve the family dynamic. Zero animus — even after the prosecution had jailed him for three months.

¶ 116  **The "Circle Back" request.** Petitioner repeatedly told Andrea: "Can you just give Bryce some space and he will circle back to you?" This is a mediator's plea, not an alienator's demand.

¶ 117  **The conditional return offer.** Petitioner explicitly offered to return Bryce under one condition: written assurance that Bryce would not be placed in a residential facility. This is the most powerful single fact on malice in this record. The retention was not permanent, not punitive, and not designed to deprive Andrea of custody. It was a parent's protective hold pending a written assurance his autistic son would not be institutionalized. DAI Peña said it himself at [00:20:53]: "If someone tells anybody we're going to put your child in a facility — what do you expect that parent to do?"

¶ 118  Under *Kongs*, malice requires a "wish to vex, annoy, or injure" Andrea Schuck. The prosecution's own lodged recordings show four cooperative invitations and a conditional return offer. The AG lodged the evidence that destroys her own case. Suppressing these recordings from defense counsel is Brady — the prosecution possessed and withheld evidence negating its essential element.

¶ 119  The evidence here does not merely raise doubt. It proves the absence of the crime's essential element and establishes that the prosecution was built on an inversion of what actually happened. California Penal Code § 278.5(a) requires *malice*. The prosecution's own investigator said the case was baseless. The alleged victim told the prosecutor his father "did nothing wrong." The FBI cleared Petitioner. Petitioner's son Bryce is now home — having returned voluntarily on his 18th birthday — and in the seven months since, Petitioner has restored Bryce's high school diploma, driver's license, and college plan. The conduct the prosecution called malicious abduction was, by every measure, the opposite of malice. Two additional documents in the mandamus exhibits confirm this independently: (1) a CPS case closure finding no abuse or neglect (Exhibit W), establishing that child welfare authorities — the agency whose sole purpose is child protection — cleared Petitioner; and (2) HSLDA documentation proving full compliance with state

educational standards. These are not character references. They are contemporaneous government clearances that the prosecution possessed and suppressed. The Schlup record also includes Bryce's sworn affidavit, executed under penalty of perjury on November 16, 2023, stating "He did not do anything wrong. He saved me per my request." It includes a licensed PI report (Mallory Investigations, PI License 189447) documenting that Bryce called his father and asked to be picked up — that Bryce arranged the meeting. And it includes Bryce's own institutional school email documenting why he needed to escape: emotional abuse, living in a garage, being isolated. Under *House v. Bell*, 547 U.S. 518, 538 (2006), the *Schlup* analysis must consider all of this evidence without regard to admissibility rules. No reasonable juror who reviewed this record in its entirety would convict Robert Emert of maliciously abducting a child who called him and asked to be picked up.

¶ 119-A The R&R's erection of procedural bars without conducting the mandatory Schlup gateway analysis voids its legal conclusions. A credible showing of actual innocence dissolves every procedural impediment simultaneously — the statute of limitations, procedural default, and the Tollett plea bar. McQuiggin v. Perkins, 569 U.S. 383, 386 (2013); Bousley v. United States, 523 U.S. 614, 623 (1998). The prosecution's own lodged evidence — the Schuck recordings in AG Lodgments 3, 6, and 35 — establishes that Petitioner invited Andrea to Christmas morning, a Disney trip, church services, and dinner after ninety days of coercive detention. A parent who harbors malice toward the custodial parent does not issue those invitations. Because it is more likely than not that no reasonable juror would convict in light of the State's own evidence of protective intent, the gateway is satisfied and every procedural bar in the R&R simultaneously dissolves. The R&R's failure to conduct any Schlup analysis is not an oversight — it is the structural omission that makes the R&R's entire procedural framework legally void.

¶ 120 The suppressed recordings — including the State's own investigator's admission that the prosecution 'never had a case' and the alleged victim's recorded statement that Petitioner 'did nothing wrong' — constitute new, reliable evidence not presented to any state court. This evidence was not before state courts because it was suppressed until August 2023 — four months after the coerced guilty plea. When evaluating a *Schlup* claim, the court must consider all the evidence, old and new, without regard to admissibility rules. *House v. Bell*, 547 U.S. 518, 538 (2006). By ignoring this evidence entirely, the R&R fails to apply controlling Supreme Court precedent. No reasonable juror who heard the Peña admissions, the Balerio-Bryce interview, and the FBI clearance would convict.

¶ 121 *UNANSWERABLE QUESTION 7: How does the R&R deny the actual innocence gateway without citing Schlup v. Delo or addressing evidence that includes the State's own investigator's recorded admission that the prosecution*

*'never had a case' — evidence that was never before any state court because the prosecution successfully concealed it?*

## XII-A. GROUND FIVE (RETALIATORY PROSECUTION) — PRESERVED AND NOT BARRED BY GUILTY PLEA

¶ 122  The R&R holds that the retaliatory prosecution claim is conclusory, unsupported, and barred by the guilty plea.  Petitioner objects and preserves this ground.  The "barred by guilty plea" holding is legally incorrect: a retaliation claim that forms part of the coercion driving the guilty plea is not barred by that plea.  The plea itself is the injury — it cannot simultaneously be the bar. *Blackledge v. Perry*, 417 U.S. 21, 30–31 (1974) (retaliation claim not waived by guilty plea when the retaliation induced the plea).  The retaliatory prosecution here — filing charges the DA's own investigator said were baseless, to coerce a custody-related outcome — is precisely the kind of claim *Blackledge v. Perry* preserves through a guilty plea.

¶ 123  The corruption complaint timeline is documented in the RICO proceedings (3:25-cv-03646-JAH-JW).  Petitioner filed his formal public corruption complaint against the family court in **October 2022.**  Criminal charges were initiated **months later in early 2023** — after 14 months of investigation in which DAI Peña concluded there was no prosecutable case.  The prosecution did not accelerate because new evidence emerged.  Peña said on tape at [01:12:12] that Petitioner "pissed them off" by pursuing the corruption complaint.  The RICO brief documents the underlying financial motive: a family court fee-generation pattern in which unnecessary placements of children in residential treatment facilities generated fees for court-appointed experts and attorneys.  Petitioner's public corruption complaint threatened this revenue stream.  The prosecution was the response.

¶ 124  If this Court grants relief on any of Objections 1 through 9, the retaliatory prosecution ground need not be independently adjudicated.  This preservation objection ensures the ground is not waived if these proceedings continue on appeal.

## XIII. OBJECTION 8 — THE § 2254(e)(2) CATCH-22: STATE CONCEALMENT ≠ PETITIONER FAILURE

¶ 125  An evidentiary hearing is warranted where the petition alleges facts that, if proven, would entitle the petitioner to relief and the existing record does not conclusively resolve the factual dispute. *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007).  Here, the Brady, plea-inducement, and warrant claims turn on suppressed materials and missing instruments that are not resolved by the existing state record — a record the DA itself admits is incomplete.

¶ 126  The R&R denies a hearing because it finds the existing record sufficient and then invokes *Pinholster* to bar further development (R&R at 24:15–28).  That reasoning assumes the record's

completeness.  But the central objection is that the record is incomplete: Brady materials were suppressed from state court; the federal docket failed to reflect two timely-submitted traverses; and the prosecution file the DA admits cannot be located would have contained the foundational instruments of Petitioner's detention.  Denying evidentiary development because the record is "sufficient" when the incompleteness of that record is the constitutional violation is circular.  The Supreme Court requires petitioner fault, not state suppression, to trigger the § 2254(e)(2) bar. *Michael Williams v. Taylor*, 529 U.S. 420, 432 (2000).

¶ 127  Section 2254(e)(2) limits evidentiary hearings in federal habeas where the petitioner "has failed to develop the factual basis of a claim in State court proceedings." 28 U.S.C. § 2254(e)(2). The Supreme Court holds that "failed to develop" means "a lack of diligence, or some greater fault, attributable to the prisoner or the prisoner's counsel." *Michael Williams v. Taylor*, 529 U.S. 420, 432 (2000).

¶ 128 Petitioner did not fail to develop the factual record. He filed in 11+ state courts. He provided every piece of exculpatory evidence he possessed to defense counsel post-release. He documented everything.  The factual record was not developed because the prosecution concealed it.  The prosecution — not the Petitioner — bears responsibility for the undeveloped state record.

¶ 128-A  Government concealment of evidence independently establishes "cause" to excuse procedural default. Amadeo v. Zant, 486 U.S. 214, 222 (1988). Relying on Murray v. Carrier, 477 U.S. 478, 488 (1986), the Amadeo Court held that where "some objective factor external to the defense" — specifically official concealment — impeded timely presentation of a claim, cause is established without regard to counsel's diligence. Here, the cause is not inferred — it is documented. The DA selectively produced other Peña recordings while withholding this one. The AG certified the state record "complete" without requesting the prosecution file from the DA. The DA certified on March 3, 2026 that the prosecution file "cannot be located." Each act is official concealment under Amadeo and Murray. Together, they establish that the empty state record is entirely the product of prosecutorial suppression — and § 2254(e)(2)'s "failed to develop" bar does not apply.

¶ 129 This is now documented in writing. The DA certified on March 3, 2026 that it cannot locate the prosecution file.  The AG certified the habeas record "complete" without ever requesting that file from the DA.  The suppressed evidence never reached any state court because the prosecution withheld it at every stage. *Banks v. Dretke*, 540 U.S. 668, 696 (2004), holds that the prosecution cannot suppress evidence and then hold the defendant's inability to present it in state court against him.  § 2254(e)(2) requires petitioner fault.  There is none here.  The fault belongs entirely to the State.

¶ 130 Section 2254(e)(2)(A)(ii) provides an independent pathway to an evidentiary hearing: even where a petitioner is deemed to have 'failed to develop' facts in state court, a hearing is available

if the claim relies on a factual predicate that could not have been previously discovered through the exercise of due diligence. 28 U.S.C. § 2254(e)(2)(A)(ii). The prosecution file's disappearance, confirmed March 3, 2026, is by definition a factual predicate that could not have been previously discovered — it did not exist until the DA searched for the file and could not find it. This independently qualifies Petitioner for an evidentiary hearing.

¶ 130-A  The State cannot suppress exculpatory evidence during state proceedings, ensure the state court record remains empty, and then successfully invoke § 2254(e)(2) to argue Petitioner "failed to develop" that very record. Such a framework embraces the exact "prosecutor may hide, defendant must seek" system declared constitutionally untenable in Banks v. Dretke, 540 U.S. 668, 696 (2004). Because the State's own active concealment of the Peña recording, the Bryce interview, and the 14-month email chain caused the evidentiary gap, Strickler v. Greene prohibits application of procedural default or development bars against Petitioner. 527 U.S. at 289. Cumulative materiality review under Kyles v. Whitley requires examining all suppressed materials together — not in isolation. 514 U.S. at 434. The State cannot sterilize the record through suppression and then invoke that sterile record as a procedural weapon.

¶ 130-B  The Supreme Court has expressly defined what "failed to develop" means under § 2254(e)(2). "Under the opening clause of § 2254(e)(2), a failure to develop the factual basis of a claim is not established unless there is lack of diligence, or some greater fault, attributable to the prisoner or the prisoner's counsel." Williams v. Taylor, 529 U.S. 420, 432 (2000) (Michael Williams). Where the State suppresses the evidence, the prisoner is legally without fault. Petitioner filed in eleven state court proceedings. He could not have developed the Peña recording or the 14-month email chain while the DA actively concealed them. § 2254(e)(2) poses no barrier to federal evidentiary development here.

¶ 131  Finally, as established in Objection 3 above, the *Dickens v. Ryan*, 740 F.3d 1302 (9th Cir. 2014) (en banc), threshold analysis demonstrates that no state court adjudicated Petitioner's Brady claims on the merits. Where there is no § 2254(d) merits adjudication, de novo review applies and the evidentiary record may be freely developed. *Cullen v. Pinholster*, 563 U.S. 170, 181–82 (2011), does not apply. The *Dickens* pathway and the § 2254(e)(2)(A)(ii) pathway independently and collectively entitle Petitioner to an evidentiary hearing.

> ¶ 132  *UNANSWERABLE QUESTION 8:  Under 28 U.S.C. § 2254(e)(2), how did Petitioner 'fail to develop' the factual record in state court — and what diligence would have surfaced evidence the State itself now admits it cannot locate?*

## XIV. OBJECTION 9 — SANTOBELLO: THE WELCHED PLEA AS AN INDEPENDENT CONSTITUTIONAL VOID

¶ 133    This objection addresses the welched plea as a standalone constitutional ground, independent of the IAC and coercion claims addressed in Objection 6.  The Magistrate never addressed it as such.

¶ 133-A  The constitutional command is unambiguous: "when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." Santobello v. New York, 404 U.S. 257, 262 (1971). The April 3, 2023 plea rested on one core promise: Bryce comes home. Defense counsel Badillo's own recorded statement evidences the promise — "The DA knows... that you resolved the case based on the conversation she and I had with Andrea." That recording, Balerio's silence on the May 18 email adding new conditions, and the 22-day repudiation timeline are specific, documented allegations of an off-record promise that at minimum mandate an evidentiary hearing. Blackledge v. Allison, 431 U.S. 63, 74 (1977). The R&R never cites Santobello as an independent ground for relief. That single omission independently requires rejection of the R&R's plea analysis.

¶ 133-B  While a plea bargain standing alone is without constitutional significance, "when the prosecution breaches its promise with respect to an executed plea agreement, the defendant pleads guilty on a false premise, and hence his conviction cannot stand." Mabry v. Johnson, 467 U.S. 504, 509 (1984). The April 3 plea was executed on the premise that Bryce would return home. By repudiating that premise within 22 days, the State rendered the plea involuntary and the resulting conviction constitutionally void.

¶ 133-C  Respondent cannot escape institutional responsibility by arguing that DDA Balerio personally did not make the promise, or that the breach was inadvertent. The Supreme Court addressed this directly: "The staff lawyers in a prosecutor's office have the burden of 'letting the left hand know what the right hand is doing' or has done. That the breach of agreement was inadvertent does not lessen its impact." Santobello, 404 U.S. at 262. DDA Balerio was copied on the May 18 email. She said nothing. The institutional breach is documented. The inadvertence defense is foreclosed by Santobello's own text.

¶ 134  When a plea rests on a prosecutorial promise, that promise must be kept. *Santobello v. New York*, 404 U.S. 257, 262 (1971).  The breach of the promise does not merely provide a remedy — it renders the plea involuntary as a matter of constitutional law.  *Id.*  This is true regardless of whether the promise was on the record, regardless of whether defense counsel knew about it, and regardless of whether the court was aware of it. *Blackledge v. Allison*, 431 U.S. 63, 74 (1977).

¶ 135  The R&R never cites *Santobello* as an independent ground.  It never asks whether the plea was induced by promises that were subsequently breached.  The Badillo recordings document the promises.  The Andrea Schuck evidence documents the breach.  The entire edifice of custody

arrangements that collapsed immediately after the plea documents the prosecution's knowledge of the breach.

¶ 136  A defendant's statement during a plea colloquy that "no other promises were made" does not legally nullify an off-the-record promise if that promise was the actual inducement for the plea — especially when the breach of that promise is independently corroborated by documentary evidence. *Blackledge v. Allison*, 431 U.S. 63, 74–75 (1977). Petitioner's colloquy statement, made under duress after 90 days of pretrial detention on a fabricated threat, cannot extinguish promises the prosecution made to induce the plea and immediately broke.  The plea colloquy silence about the custody promises is precisely the circumstance *Blackledge* addresses: "The barrier of the plea or sentencing proceeding record, although imposing, is not invariably insurmountable." *Id.* at 74.

¶ 136-A  The Magistrate Judge's reliance on the silence of the plea colloquy is explicitly foreclosed by Blackledge v. Allison, which holds that formal representations during a plea are "not invariably insurmountable" against claims of off-record promises. 431 U.S. at 74. At minimum, Petitioner's specific, documented allegations mandate an evidentiary hearing rather than summary dismissal. Furthermore, the remedy for a Santobello violation is not within the prosecution's discretion. As Justice Douglas stated: "a court ought to accord a defendant's preference considerable, if not controlling, weight inasmuch as the fundamental rights flouted by a prosecutor's breach of a plea bargain are those of the defendant, not of the State." Santobello, 404 U.S. at 267 (Douglas, J., concurring). Petitioner's preference is withdrawal of the plea.

¶ 136-B  The R&R's rejection of the welched plea claim independently violates a trilogy of controlling precedent. The Badillo recording and the 22-day repudiation timeline establish a direct violation of Santobello v. New York, which mandates that any promise inducing a plea must be fulfilled. 404 U.S. at 262. The Magistrate Judge's reliance on the silence of the plea colloquy is explicitly foreclosed by Blackledge v. Allison, which holds that formal representations during a plea are "not invariably insurmountable" against claims of off-record promises. 431 U.S. at 74. Finally, the R&R's blanket application of the Tollett bar fails under Sanchez v. United States, 50 F.3d 1448, 1453 (9th Cir. 1995), which holds that a guilty plea is not a waiver of Brady claims when suppression rendered the plea involuntary. Any one of these three cases alone requires the District Judge to reject the R&R's plea analysis. All three together make the error independently reversible on three separate grounds.

¶ 137  The welched plea claim is before the United States Supreme Court as *Emert v. San Diego Probation Department*, No. 25-6794.  This Court's adoption of an R&R that never addresses this claim as an independent ground would compound the error and place this Court on the wrong side of a pending Supreme Court adjudication.

> ¶ 138   *UNANSWERABLE QUESTION 9:   How does this Court adopt a recommendation that never analyzes the welched plea as an independent Santobello void — while that identical claim pends before the United States Supreme Court as No. 25-6794?*

## XIV-A. GROUND SIX (JUDICIAL BIAS) — PRESERVED WITH SPECIFIC OBJECTIONS

¶ 139   The R&R holds that Ground Six is unexhausted, conclusory, and unrelated to Petitioner's criminal judgment.  Petitioner preserves this ground and raises three specific objections to the R&R's analysis:

¶ 140   First, the docket suppression pattern documented in Objection 1 is itself evidence of institutional bias affecting this proceeding.  The Clerk's systematic processing of AG filings within minutes while suppressing 13 of Petitioner's filings over 61 days — culminating in an R&R based on that manufactured docket — creates a pattern that cannot be coincidental.  *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868, 886 (2009) (due process violated where probability of bias on the part of a decision-maker is too high to be constitutionally tolerable).

¶ 141   Second, the ADA non-adjudication pattern — two accommodation requests, zero responses — is part of the same pattern of treating Petitioner's submissions as non-existent.  *Tennessee v. Lane*, 541 U.S. 509, 533–34 (2004).

¶ 142   Third, the adverse inference from the missing warrant — documented in Objection 5 — is itself circumstantial evidence that the institutional actors controlling this record know its contents would be dispositive.  An institution that cannot locate the foundational instrument of a prosecution it is defending has either lost control of its own files or has reason not to find them.  Either inference is relevant to institutional bias.

¶ 143   As with Ground Two and Ground Five, Petitioner does not ask this Court to grant relief on Ground Six independently if any other ground succeeds.  Petitioner preserves this ground for the appellate record.

¶ 143-A   The standard the R&R failed to apply is clear: "In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." Schriro v. Landrigan, 550 U.S. 465, 474 (2007). Petitioner's factual allegations — that the Peña recording was suppressed, that the Bryce interview was suppressed, that the 14-month email chain establishing a complete PC § 278.7 defense was suppressed, and that the warrant was written under supervisor orders without adequate probable cause — are documented

by the prosecution's own recordings, the DA's CPRA certification, and the AG's admissions. If those allegations are accepted as true — and the record supports them — Petitioner is entitled to federal habeas relief on every ground. The denial of an evidentiary hearing on this record is an abuse of discretion under Schriro.

¶ 143-B  When a petitioner presents newly discovered Brady evidence that was suppressed during state proceedings, summary dismissal is inappropriate. In Gonzalez v. Wong, 667 F.3d 965, 972 (9th Cir. 2011), the Ninth Circuit remanded for an evidentiary hearing where the state suppressed evidence, noting the new material fundamentally altered the landscape of the claim. Like the petitioner in Gonzalez, Petitioner has presented newly discovered, State-suppressed recordings — including forty-seven admissions by the prosecution's own investigator that the case should never have been accepted — that fundamentally alter this case. At minimum, an evidentiary hearing is mandatory.

## XV. GLOBAL OBJECTION: THE R&R MISAPPLIED EVERY OPERATIVE AEDPA PROVISION

¶ 144  Beyond the individual objections above, the R&R misapplied three separate AEDPA subsections in ways that, taken together, transformed the statute's deferential review standard into a complete bar to relief.  This global misapplication is an independently sufficient ground to reject the R&R in its entirety.

### A. § 2254(d)(1): Unreasonable Application of Clearly Established Federal Law

¶ 145  The R&R applies *Cullen v. Pinholster*, 563 U.S. 170 (2011), to limit review to the state court record.  But as demonstrated in Objection 3, *Pinholster* applies only where a state court adjudicated the claim on the merits under § 2254(d)(1).  The R&R never identifies which state court performed that adjudication.  Applying § 2254(d)(1) deference to Brady claims that no state court examined on the merits is an unreasonable application of *Pinholster* itself, and of *Dickens v. Ryan*, 740 F.3d 1302 (9th Cir. 2014) (en banc).

### B. § 2254(d)(2): Unreasonable Determination of Facts

¶ 146  Even if § 2254(d)(2) applied, the R&R cannot sustain AEDPA reasonableness deference where the prosecution file underlying the state court record "cannot be located."  A state court's factual determination is "unreasonable" if it was made "without proper regard for the record as a whole," *Taylor v. Maddox*, 366 F.3d 992, 1000 (9th Cir. 2004), and the record here is structurally incomplete by the prosecution's own admission.  A § 2254(d)(2) reasonableness determination that cannot be traced to a complete factual record is not entitled to deference.

### C. Missing Look-Through Analysis Under Ylst v. Nunnemaker

¶ 147  The R&R never performs the "look-through" analysis required by *Ylst v. Nunnemaker*, 501 U.S. 797, 804–06 (1991).  Where the California Supreme Court's denial is a silent order, the federal court must look through to the last reasoned state court decision to identify the basis for the denial.  The R&R applies AEDPA deference globally without ever identifying what 'the last reasoned state court decision' was on any specific claim.  For Petitioner's Brady claims, there is no last reasoned decision — because no state court ever reached the merits.  Without completing the *Ylst* look-through, the R&R's AEDPA framework rests on a procedural fiction.

### D. The R&R Improperly Treated Summary Denials as Merits Adjudications

¶ 148   The R&R relies on summary denials from California courts as if they were merits adjudications under § 2254(d).  This is foreclosed by *Harrington v. Richter*, 562 U.S. 86, 100 (2011), and *Johnson v. Williams*, 568 U.S. 289, 301 (2013), which distinguish between "silent but substantive" and "silent but procedural" denials.  A summary denial on a claim the prosecution successfully kept from the state court record is procedural, not substantive.  The R&R never performs this analysis — never asks whether the California Supreme Court's silence reflected a merits decision or a procedural bypass.  Without that inquiry, § 2254(d) deference is applied blindly and incorrectly.

## XVI. CONCLUSION AND RELIEF REQUESTED

¶ 149  The Report and Recommendation (ECF No. 36) cannot be adopted.  It rests on two provably false factual findings.  It omits the controlling en banc authority that governs its central legal analysis.  It ignores a certification from the District Attorney — filed 13 days before it was signed — that proves the Brady record is incomplete.  It recommends denial based on the absence of filings that the clerk's office refused to docket for 61 days.  And it never addresses three independent grounds for relief: the Franks claim, the Schlup gateway, and the Santobello welched plea.

Petitioner respectfully requests that this Court:

1.  Decline to adopt the R&R (ECF No. 36) at this time and conduct de novo review of each objected-to portion on a complete record;

2.  Order the Clerk of Court to docket Exhibits A–D nunc pro tunc as of their original receipt and submission dates, and expand the record to include Exhibits A–E pursuant to Rule 7 of the Rules Governing Section 2254 Cases;

3.  Order supplemental briefing after docket correction so that the traverses and accompanying exhibits may be considered before any final ruling;

4. Grant leave for limited discovery for good cause under Rule 6 of the Rules Governing Section 2254 Cases, including at minimum: (i) the arrest warrant application and supporting affidavit, or a sworn declaration describing their unavailability and all search efforts; (ii) the Peña recording(s) and disclosure logs; (iii) the Balerio interview recording and disclosure history; and (iv) any Brady/Giglio disclosure logs reflecting what was produced to defense counsel before the April 3, 2023 plea;

5. Require Respondent to supplement the state court lodgments under Rule 5 of the Rules Governing Section 2254 Cases by identifying available transcripts and relevant prosecution file documents;

6. Grant an evidentiary hearing to resolve material factual disputes not conclusively resolvable on the expanded record. *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007);

7. In the alternative, recommit the matter to the Magistrate Judge for a supplemental Report and Recommendation after the traverses and Exhibits A–E are docketed and considered;

8. Grant such other relief as the Court deems just and proper, including issuance of the Writ of Habeas Corpus;

9. If the Court enters a final adverse judgment, issue a Certificate of Appealability under 28 U.S.C. § 2253(c) as to all nine grounds. See *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003); and

10. At minimum, grant a temporary administrative stay of further action on the R&R pending docket correction and completion of de novo review. In evaluating any stay, courts consider likelihood of success, irreparable harm, balance of equities, and the public interest. *Nken v. Holder*, 556 U.S. 418, 434 (2009); *Hilton v. Braunskill*, 481 U.S. 770 (1987). Petitioner's likelihood of success is demonstrated by the provably false factual findings in the R&R and the complete absence of the Brady evidence from the state court record.

¶ 150   Concurrent with these Objections, Petitioner is filing Proof of Service documenting transmission to the Court's official email address at efile_robinson@casd.uscourts.gov and to Deputy Attorney General Kristen Chenelia at Kristen.Chenelia@doj.ca.gov, consistent with this Court's prior service procedures. Petitioner respectfully requests that the Clerk docket these Objections and all four Exhibits promptly and in conformity with the non-discretionary obligations of Fed. R. Civ. P. 5(d)(4) and Fed. R. Civ. P. 79(a).

Respectfully submitted,

/s/ Robert Emert

Dated: April 3 2026

---

**DECLARATION UNDER 28 U.S.C. § 1746**

I, Robert Emert, declare under penalty of perjury under the laws of the United States of America that the foregoing Objections are true and correct to the best of my knowledge, information, and belief.


Executed on April 3 2026, in San Diego, California.

/s/ Robert Emert