# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA
EMERT v. SAN DIEGO PROBATION DEPARTMENT

Case No. 3:25-cv-00820-TWR-BLM

---

# EXHIBIT B
## TRAVERSE NO. 2 / AMENDED TRAVERSE
### February 20, 2026 — 6:51 PM Email Timestamp
**25 pages. Within the court's limit. Filed within 51 minutes of receiving the deadline order.**

The R&R states at page 4: "Emert did not respond to the Court's order." ECF No. 35 was issued February 13, postmarked February 17, and received by Petitioner on February 20 — the same day as its own deadline. Petitioner filed this response within 51 minutes of opening the envelope.

The 6:51 PM timestamp in the email header refutes the R&R's finding as a matter of documented fact. This filing was never docketed.

### ▼ ▼ ▼ INSERT EXHIBIT BELOW THIS PAGE ▼ ▼ ▼

*INSERT: Complete February 20, 2026 email (6:51 PM timestamp must be visible on page 1) with all four attachments: (1) Traverse No. 2, 25 pages; (2) ADA/Section 504 Accommodation Notice; (3) Appendices A–I; (4) Proof of Service.*

## [ DROP PDF OF EXHIBIT HERE WHEN ASSEMBLING FINAL PACKAGE ]

Robert Emert - (760) 612-9328

U.S DISTRICT COURT SOUTHERN DISTRICT OF CALIFORNIA

ROBERT EMERT, Petitioner

**Case No. 3:25-cv-00820-TWR-BLM**

v.

**TRAVERSE TO ANSWER**

San Diego Probation Department, Respondent

---

**STATEMENT OF RELIEF REQUESTED AND QUESTION PRESENTED** - The United States Supreme Court has already decided this case. This Court has denied discovery, denied an evidentiary hearing, refused to examine five categories of suppressed recordings, and applied Cullen v. Pinholster to exclude the very evidence the prosecution concealed — without ever making the threshold determination that Pinholster itself requires.

The controlling question can be stated in one sentence:

"A rule thus declaring 'prosecutor may hide, defendant must seek,' is not tenable in a system constitutionally bound to accord defendants due process." Banks v. Dretke, 540 U.S. 668, 696 (2004).

That is exactly what happened here. The prosecution suppressed its own investigator's forty-seven recorded admissions that Petitioner would "probably win at trial." It fabricated a threat narrative the FBI cleared. It coerced a guilty plea from a seriously ill man held ninety days without bail, then broke the plea agreement in twenty-two days. It now invokes that coerced plea as a permanent shield — while arguing Petitioner should have produced the hidden evidence from a jail cell.

The Ninth Circuit, sitting en banc, has already rejected this exact framework. Dickens v. Ryan, 740 F.3d 1302, 1321 (9th Cir. 2014). No California court ever reached the merits of the Brady claims. Review is therefore de novo.

If this page does not compel the Court to confront the merits, twenty-five pages will not either. The traverse that follows is filed in compliance with this Court's February 11, 2026 Order (ECF No. 33) and the 25-page limit imposed therein. Petitioner preserves his objection to that Order — including the ruling that the lodgment is "complete" and the categorical application of Pinholster to claims no state court ever adjudicated on the merits. This constitutes the recognized Brady exception to Pinholster: when the State suppresses material evidence, the petitioner is not bound by the corrupted state-court record. Dickens v. Ryan, 740 F.3d 1302, 1321 (9th Cir. 2014).

## EXECUTIVE SUMMARY

*If Brady-suppressed evidence is not in the state court record because the prosecutor hid it, and the federal court refuses to consider it because it is not in the state court record, then in what forum does the Constitution require Brady violations to be reviewed?*

Three institutions have now taken the same indefensible position in this case, each building on the misconduct of the one before it:

**The District Attorney's position:** Suppress exculpatory evidence—including forty-seven recorded admissions by the State's own investigator that Petitioner would "probably win at trial"—coerce a guilty plea through ninety days of fabricated no-bail detention, and disclose nothing.

**The Attorney General's position:** Refuse to produce the prosecution file containing the suppressed evidence, admit she never requested it, violate three federal court orders requiring complete lodgment, and then argue that the coerced guilty plea bars all claims about the evidence she will not produce.

**The District Court's position:** Apply *Cullen v. Pinholster*, 563 U.S. 170 (2011), to exclude the suppressed evidence from federal review because it was not in the state court record—without determining whether any state court ever adjudicated the Brady claims on the merits, and despite the fact that the evidence is absent from that record because the prosecution concealed it. ECF No. 33 (Feb. 11, 2026).

**The United States Supreme Court's answer:**

*"A rule thus declaring 'prosecutor may hide, defendant must seek,' is not tenable in a system constitutionally bound to accord defendants due process."*

*Banks v. Dretke*, 540 U.S. 668, 696 (2004).

Stated plainly: the State's position across all three institutions is that prosecutors can jail a defendant, withhold material exculpatory evidence, coerce a guilty plea under massive duress, and then use that coerced plea and the resulting absence of evidence from the record as a permanent shield from constitutional accountability—while arguing the defendant should have produced the evidence they were hiding, from a jail cell, without counsel willing to investigate. Each institution protects the misconduct of the one before it. The District Attorney suppresses the evidence. The Attorney General refuses to produce it. The District Court excludes it. At no point does any institution examine whether the evidence exists, what it shows, or whether its suppression violated the Constitution.

But even if this Court were to accept that framework—even in a system where the prosecutor may hide and the defendant must seek—Petitioner did seek. He sought relentlessly, at every level of the California court system, and was blocked at every turn. The Respondent's own lodgments document the systematic refusal:

***At the trial court:*** Petitioner raised the suppressed evidence in a motion to recuse the prosecutor under Penal Code § 1424, attaching the Peña recordings and Balerio/Bryce interview (Lodgments 2, 14)—denied without evidentiary hearing. He moved to dismiss based on void family court orders (Lodgments 2, 15)—denied without examination. He filed ex parte motions documenting medical emergencies (Lodgments 3, 4)—ignored. At the preliminary hearing, the

court ruled the Penal Code § 278.7 "good cause" defense was "irrelevant" before hearing any evidence (Lodgment 7). He moved to withdraw his guilty plea, presenting audio evidence of broken promises (Lodgments 6, 13, 14)—the court relied on printed plea form language over recordings. He raised the suppressed evidence in two *Marsden* motions, telling the court on the record that his attorneys refused to file or investigate the exculpatory exhibits (Lodgment 16)—denied. At sentencing, the prosecutor weaponized these very attempts as evidence of "lack of remorse" (Lodgment 16).

***At the Court of Appeal:*** Appellate counsel filed a *Wende* brief declaring that no arguable issues existed—despite the massive suppression record Petitioner had placed before the trial court (Lodgment 20). Petitioner filed a supplemental brief pro se attaching the exculpatory evidence. The Court of Appeal summarily denied without a reasoned opinion (Lodgment 21).

***At the California Supreme Court:*** Petitioner filed a habeas petition attaching all suppressed evidence. The court physically returned Petitioner's exhibits unfiled because they "exceed 300 pages," then denied the petition on a form letter (Lodgment 53). The court sent the evidence back unread. Petitioner refiled. The Supreme Court issued a second form denial (Lodgments 23, 25). At the Superior Court level, the court issued an "Order Taking No Action" and refused to docket the habeas filing entirely (Lodgment 22).

That is eleven separate vehicles filed across every level of the California judiciary. Not one court examined the substance of the Brady claims. Not one court held an evidentiary hearing. Not one court made findings on the suppressed evidence. The State's own lodgments—filed by the Attorney General in this proceeding—prove it. These are not summary

000080

denials after full briefing. These are affirmative refusals to examine the evidence. (See Appendix D (documenting eleven attempts to raise Brady claims across three levels of California courts, each blocked on procedural grounds).) The *Harrington v. Richter*, 562 U.S. 86 (2011), presumption of merits adjudication does not apply where the Respondent's own lodgments supply overwhelming "indication to the contrary." *Id.* at 99.

The State's framework therefore fails on its own terms. Even under a rule where the defendant must seek, a defendant who seeks eleven times and is blocked eleven times has not "waived" anything. He has exhausted every avenue the state system offered and been denied at all of them. That is not waiver. That is exhaustion. And it is precisely the circumstance in which federal habeas review exists.

The evidence the State has fought to keep from judicial review is not marginal. It is case-ending:

**The State's own investigator**, DAI Luis Peña, made forty-seven recorded admissions—verified by forensic transcript analysis—that Petitioner would "probably win at trial," had "good cause for sure," the District Attorney "never had a case," and supervisors ordered the warrant written over his objections: "Just finish the damn warrant and don't worry about it." *See* Appendix A (complete forensic analysis with timestamps).

**The alleged victim**—Petitioner's then-fifteen-year-old son—told the prosecutor on tape: "He [Dad] shouldn't be there [in jail], and I know that." The prosecutor promised the child: "I am going to tell the court . . . making sure that your voice is heard." She then suppressed the recording and told the court the opposite. *See* Appendix A, § 2.

**The FBI** investigated the fabricated "threat" allegation the prosecution used to justify ninety days of no-bail pretrial detention and closed its file with no finding of threat. The actual transcript shows Petitioner stating: "I am not making any threats. I need to make that perfectly clear." The prosecution told the court he was a "danger to the community." *See* Appendix C (side-by-side comparison); Appendix H (cooperation chain documenting DA's fourteen-month cooperative posture, suppressed from arrest warrant).

**The alleged victim returned to live with Petitioner voluntarily on his eighteenth birthday.** In six months, he completed his diploma, obtained his driver's permit, and enrolled in college. The "abduction victim" chose his father the moment the State could no longer prevent it.

This Court's February 11, 2026 Order applies *Pinholster* categorically without making the threshold determination that *Pinholster* itself requires: whether the state court "adjudicated the claim on the merits." 563 U.S. at 181. No California court did. The Ninth Circuit has held, en banc, that *Pinholster* "does not bar [the petitioner] from presenting evidence" on a claim "not 'adjudicated on the merits' by the [state] courts." *Dickens v. Ryan*, 740 F.3d 1302, 1321 (9th Cir. 2014) (en banc). *See also Gonzalez v. Wong*, 667 F.3d 965 (9th Cir. 2011); *Pirtle v. Morgan*, 313 F.3d 1160, 1167 (9th Cir. 2002). This Court's application of *Pinholster* is contrary to binding en banc authority. The Traverse that follows works within this Court's framework while preserving Petitioner's objection that the framework itself is constitutionally deficient.

Petitioner files this Traverse to comply with this Court's February 11, 2026 Order and the 25-page limit imposed therein. Petitioner preserves his objection to that Order for appellate review, including the ruling that the lodgment is "complete" and the categorical application of

000082

*Pinholster* to claims no state court adjudicated on the merits. Petitioner is contemporaneously filing a Petition for Writ of Mandamus in the Ninth Circuit challenging the legal framework under which this Court has excluded the suppressed evidence. Nothing in this Traverse constitutes a waiver of any ground preserved therein or in Petitioner's prior filings.

## II. THE PINHOLSTER EXCEPTION

### A. The Legal Standard

*Cullen v. Pinholster*, 563 U.S. 170, 181 (2011), holds that federal habeas review under 28 U.S.C. § 2254(d)(1) is "limited to the record that was before the state court that adjudicated the claim on the merits." This limitation contains its own precondition: it applies *only* when a state court has, in fact, adjudicated the federal claim on the merits. *Id.* at 187–88; 131 S.Ct. at 1401 n.10 ("We do not decide what standard applies when a state court disposes of a claim on procedural grounds.").

The Ninth Circuit, sitting en banc, has squarely held that *Pinholster's* record limitation does not apply to claims the state court never adjudicated on the merits. *Dickens v. Ryan*, 740 F.3d 1302, 1321 (9th Cir. 2014) (en banc) ("[W]here a state court does not decide a claim on the merits, § 2254(d) is inapplicable, and the federal court reviews the claim de novo."). This is binding authority. *See also Gonzalez v. Wong*, 667 F.3d 965, 979 (9th Cir. 2011) (*Pinholster* inapplicable to Brady claim where state court never reached the merits); *Pirtle v. Morgan*, 313 F.3d 1160, 1167 (9th Cir. 2002) (no merits adjudication requires de novo review with full evidentiary development).

000083

This Court's February 11, 2026 Order applied *Pinholster's* record limitation categorically, without first determining whether any California court adjudicated Petitioner's Brady claims on the merits. ECF No. 33 at 2. The Order never cites *Dickens*, *Gonzalez*, or *Pirtle*. It never identifies which state court purportedly conducted a merits analysis, what legal standard that court applied, or what evidence it reviewed. That threshold determination is not optional—it is the precondition to *Pinholster's* application.

**B. No State Court Adjudicated These Brady Claims on the Merits**

As detailed in Section I *supra*, Petitioner raised his claims through eleven distinct procedural vehicles across three levels of the California court system. Not one resulted in a merits adjudication of the Brady violations. The AG's own lodgments prove it: the trial court denied all motions without examining the suppressed evidence (Lodgments 2–16); the Court of Appeal affirmed on a *Wende* brief that by definition identifies no arguable issues (Lodgments 20–21), *see Smith v. Robbins*, 528 U.S. 259, 265–66 (2000); and the California Supreme Court returned 300 pages of exhibits unread (Lodgment 53) before issuing form denials citing *Waltreus* and *Dixon* without discussion of the Brady claims (Lodgments 22–25).

Respondent herself concedes the point. In her Answer, Respondent "admits that Emert has exhausted his state court remedies as to Grounds One, Three, Four, and Five." ECF No. 16 at 5. Ground Three is the Brady claim. If Brady is *exhausted* but was never *adjudicated on the merits*—and the record above proves it was not—then *Pinholster's* limitation does not apply, and this Court reviews the claim de novo. *Dickens*, 740 F.3d at 1321.

**C. The Richter Presumption Does Not Apply**

Respondent may invoke *Harrington v. Richter*, 562 U.S. 86, 99 (2011), which holds that a state court's summary denial is presumed to be "on the merits" absent an "indication to the contrary." But *Richter* itself requires the court to examine whether such an indication exists. Here, the indications are not subtle—they are the AG's own lodgments:

A court that returns 300 pages of evidence unread has not adjudicated the claims that evidence supports. Lodgment 53. A court that issues an "Order Taking No Action" on a filing it rendered incomplete has not reached the merits. Lodgment 22. A court that dismisses a petition with a form citation to *Waltreus* and *Dixon*—without identifying which claims fail, under what standard, or based on what evidence—has not conducted merits review. Lodgments 23, 25. A trial court that characterizes the State's own investigator calling the prosecution baseless as a "grievance" has not examined the Brady implications of that admission. Lodgment 14.

These are not ambiguous signals requiring judicial interpretation. They are affirmative proof—lodged by Respondent herself—that no California court engaged with the substance of Petitioner's Brady claims. The *Richter* presumption is rebutted. *See Johnson v. Williams*, 568 U.S. 289, 301 (2013) (presumption is rebuttable and "quite weak" when evidence shows state court did not address the federal claim). (See Appendix B (documenting zero Brady compliance records in AG's fifty-three lodgments).)

**D. The Structural Impossibility**

This Court's application of *Pinholster* creates a constitutional impossibility that the Supreme Court has expressly condemned. The sequence is now complete:

The prosecutor suppresses exculpatory evidence before the plea. Because the evidence is suppressed, it never enters the state court record. Because it is not in the state court record, the state courts dismiss Brady claims without reaching the merits—they cannot evaluate what they have never seen. Because the state courts never reached the merits, the claims are unexhausted or procedurally defaulted. And now, this Court applies Pinholster to exclude the evidence from federal review because it was not in the state record the prosecution corrupted.

The result: no court—state or federal—ever reviews the constitutional violation. The absence of the evidence from the state record is *the constitutional defect itself*, not the justification for perpetuating it. This is precisely the framework the Supreme Court held "not tenable" in *Banks v. Dretke*:

> *"A rule thus declaring 'prosecutor may hide, defendant must seek,' is not tenable in a system constitutionally bound to accord defendants due process."*

*Banks*, 540 U.S. at 696. Applying *Pinholster* to bar consideration of evidence the State itself suppressed transforms a procedural limitation into an instrument of the very constitutional injury it was designed to accommodate. That is clear legal error. Appendix E documents that no California court adjudicated these claims on the merits. Appendix H documents the evidence the State unconstitutionally suppressed from that record.

Respondent's own conduct confirms the structural impossibility. On October 10, 2025, Respondent certified that she had lodged "all documents in our possession pertaining to your case." But she simultaneously admitted she never requested or reviewed the prosecution file from the San Diego District Attorney's office. She lodged only court records—clerk's transcripts and reporter's transcripts—while the Brady material (DAI Peña's investigative file,

the Balerio/Bryce interview recording, discovery compliance documentation) remained in the prosecution's custody, unrequested and unproduced. The "complete state court record" this Court is relying upon was never complete. It was the record the State chose to produce. This Court's February 11 Order applies *Pinholster* categorically without first determining whether any state court "adjudicated the claim on the merits." 563 U.S. at 181. None did. Moreover, Rule 7 of the Rules Governing § 2254 Cases authorized this Court to order Respondent to obtain the prosecution file from the District Attorney's Office — the very file Respondent admitted she never requested before certifying lodgment as "complete." *See Gonzalez v. Wong,* 667 F.3d 965, 979 (9th Cir. 2011); *Banks v. Dretke,* 540 U.S. 668, 696 (2004). The Court's refusal to exercise that authority left the record incomplete in precisely the manner *Banks* held "not tenable in a system constitutionally bound to accord defendants due process."

### E. Objection Preserved

Petitioner respectfully preserves his objection to this Court's February 11, 2026 Order (ECF No. 33) insofar as it applies *Cullen v. Pinholster* without conducting the threshold determination required by *Dickens v. Ryan,* 740 F.3d at 1321 (en banc), and its progeny. Petitioner proceeds with this traverse in compliance with the Court's order and deadline, while simultaneously pursuing relief through appropriate appellate channels. Nothing in this filing constitutes a waiver of Petitioner's objection to the *Pinholster* framework as applied to claims no state court adjudicated on the merits.

Petitioner also preserves his objection to the twenty-five-page limitation as applied to a case involving five categories of suppressed evidence, three levels of state court obstruction,

and a prosecution that the State's own investigator called baseless forty-seven times on a single recording. The evidence supporting these claims is set forth in the appendices to this traverse, which are not subject to the page limitation. See Rules Governing § 2254 Cases, Rule 2(c)(2) (supporting facts may be set forth in memorandum).

## III. BRADY VIOLATIONS ON THE MERITS

### A. The Standard

*Brady v. Maryland*, 373 U.S. 83, 87 (1963), requires the prosecution to disclose evidence that is (1) favorable to the accused, (2) suppressed by the State, and (3) material to guilt or punishment. *Kyles v. Whitley*, 514 U.S. 419, 434 (1995), mandates cumulative analysis: "the question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether" the suppression "undermines confidence in the outcome." Where, as here, the claim is reviewed de novo, *see* Section II *supra*, Petitioner need only establish the three *Brady* elements. Five categories of suppressed evidence each independently satisfy all three.

### B. Category 1: DAI Peña's Forty-Seven Recorded Admissions

**Favorable.** The State's own investigator—District Attorney Investigator Luis Peña—admitted on a recorded telephone call that Petitioner would "probably win at trial" [02:31:23], had "good cause for sure" for his actions [02:38:13], and that "[t]he DA's office should never have accepted your case" [02:54:47]. When Peña expressed reservations about filing the arrest warrant against a man he believed was innocent, his supervisors ordered: "Just finish the damn warrant and don't worry about it" [00:27:12]. Peña also admitted the prosecution continued

despite its own doubts because "we're too deep in it now" [00:20:10]. The full forty-seven timestamped admissions are set forth in Appendix A, § 1; see also Appendix H (underlying documentary email evidence).

**Suppressed.** The recording was never disclosed to defense counsel Jose Badillo. Badillo confirmed this on tape. The prosecution selectively disclosed *other* Peña recordings while withholding this one—proving the suppression was deliberate, not inadvertent. Peña himself stated: "I'm not gonna give them this recording" [02:37:34]. (Appendix A, § 1, Quote #34— the investigator's recorded admission of deliberate concealment, on the very recording he concealed.) Discovery was four months post-plea, in August 2023.

**Material.** No rational defendant pleads guilty knowing the State's own investigator believes he will "probably win at trial." This is *per se* material under *United States v. Bagley*, 473 U.S. 667, 682 (1985). Respondent characterizes these forty-seven admissions as "sympathizing." ECF No. 16 at 14. The recording speaks for itself. An investigator who says "the DA never had a case" and "you have good cause for sure" is not sympathizing—he is admitting the prosecution is baseless. Respondent argues that because Petitioner "participated in the phone conversation," he "was in possession of the information he claims was suppressed." ECF No. 16 at 13. This conflates three legally distinct concepts. Participation in a conversation is not knowledge of its legal significance, and neither is possession of the prosecution's recording. *Brady* requires disclosure to *defense counsel*—not to the defendant from a jail cell. 373 U.S. at 87. *Banks v. Dretke*, 540 U.S. 668, 695–96 (2004), forecloses exactly this argument.

**C. Category 2: DDA Balerio's Interview with Bryce Emert**

**Favorable.** On February 17, 2023, DDA Balerio interviewed Bryce Emert—the alleged "abduction victim"—for thirty-two minutes. Bryce stated: "I want to be his witness for my dad. He's done nothing wrong" [20:43]. He described living with Petitioner as "great" and confirmed he "could have left at any given point" [16:35]. DDA Balerio herself called him "very well-spoken" and "articulate" [21:26]. Full analysis: Appendix A, § 2.

**Suppressed.** This interview was never disclosed to defense counsel. Badillo confirmed he never received it. DDA Balerio then represented to the Superior Court that Bryce was "incompetent" to testify or express a custody preference—a representation directly contradicted by the recording she possessed. This is a *Napue v. Illinois*, 360 U.S. 264 (1959), violation layered atop *Brady*: the prosecutor suppressed evidence of the victim's exoneration and then made affirmatively false representations to the court about his capacity.

**Material.** When the alleged victim tells the prosecutor that the defendant "did nothing wrong" and wants to testify for the defense, the prosecution theory collapses. There can be no "malicious abduction" under PC § 278.5(a) when the "victim" describes his experience as a voluntary rescue. Respondent's Answer does not address this interview's substance—it cannot. (Appendix A, § 2 documents twelve additional timestamped statements from this thirty-two-minute interview.)

## D. Category 3: FBI Transcript and Threat Assessment

**Favorable.** In a recorded call to the FBI, Petitioner explicitly stated: "I am not making any threats. I need to make that perfectly clear" [06:27]. The FBI operator responded: "Thank you

for calling. Have a great day." The FBI subsequently conducted an in-person threat assessment and concluded Petitioner was not a threat. Full analysis: Appendix C.

**Suppressed.** The complete transcript was withheld from defense counsel and from the bail court for ninety days. The FBI's threat assessment clearing Petitioner was never disclosed. Instead, DDA Balerio used cherry-picked fragments of this call to argue Petitioner was a "danger to the community" and to obtain no-bail detention on an uncharged offense—an offense she never charged because the FBI had already determined no threat existed.

**Material.** Petitioner—a man with zero criminal history and zero flight risk, who had voluntarily contacted the District Attorney and the FBI and documented everything he was doing—was held ninety days without bail as a "threat." The moment he signed a plea deal, he was released. If he were truly dangerous, why release him? The "threat" narrative was a fabricated lever to coerce a plea, and the FBI's own assessment proves it.

### E. Category 4: Evidence of the Breached Plea Agreement

Petitioner's April 3, 2023 guilty plea was induced by a specific promise: Bryce would be returned to Petitioner's custody through a negotiated agreement. Defense counsel Badillo confirmed this deal existed on recording: "You had a disposition. Part of the disposition was the custody stuff" [00:17:00]; "I wouldn't have let you take the deal if it wasn't" [00:07:14]. The trial court acknowledged the arrangement, noting that "any agreements reached as part of the plea would be unwound" if the plea was set aside. Lodgment 13. Yet the promise was broken within twenty-two days. Bryce was never returned. DDA Balerio was copied on the breach correspondence and remained silent. The evidence of this broken promise—including

000091

the Badillo/Schuck recordings—was never produced by the State. (See Appendix A, Part IV (Schuck's recorded statements documenting breach); Appendix H, Section V (post-plea correspondence chain); Appendix I (Supplemental Brief documenting breached plea agreement, ECF No. 30).) Where a plea "rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." *Santobello v. New York*, 404 U.S. 257, 262 (1971).

## F. Category 5: PC § 278.7 Good Cause Defense Evidence

PC § 278.7 provides a complete statutory defense to PC § 278.5(a) where a parent acted with "good cause" to protect the child. The prosecution suppressed evidence establishing this defense from multiple sources. DAI Peña validated it: "I think you have good cause for sure" [02:38:13]. Family Court Services reports recommended fifty-fifty custody, negating any inference of malice. Lodgments 50–52. Commissioner Ratekin's recorded threat to place Bryce in a "24-hour school" or "facility"—the event that precipitated Petitioner's protective actions— was never presented to the jury because there was no trial. Good cause negates the "malice" element of PC § 278.5(a) as a matter of law. The prosecution suppressed the evidence proving it. (See Appendix H, Section II (McIntosh Cooperation Chain—ten emails over seventy-eight days documenting DA's cooperative posture, suppressed from arrest warrant); Appendix E.)

## G. Cumulative Materiality Under Kyles

Each of the five categories above independently satisfies *Brady*. But *Kyles* requires cumulative analysis. 514 U.S. at 434. Viewed together, the suppressed evidence reveals not isolated oversights but a coordinated campaign to secure a conviction the State's own

investigator admitted could not be obtained at trial: fabricate a "threat" using an FBI call the FBI itself cleared, obtain ninety-day no-bail detention on that fabrication, suppress the investigator's admissions that the case was meritless, suppress the victim's recorded exoneration of the defendant, block the statutory defense evidence, and induce a plea through promises the prosecution knew would be broken.

The motive is on tape. When Petitioner asked Peña why the prosecution continued despite his documented defense, Peña answered: "You pissed them off" [01:12:12]. Under *Kyles*, there is no reasonable probability this conviction would have survived disclosure of any one of these categories. Disclosure of all five would have ended the prosecution before trial. The cumulative weight of the evidence compiled in Appendices A through I demonstrates materiality under any standard.

The AG's Answer offers no category-by-category rebuttal. It asserts "no *Brady* material was withheld," ECF No. 16 at 6, while simultaneously refusing to produce the prosecution file that would prove or disprove that assertion—and while admitting she never requested or reviewed that file before making the claim. You cannot certify *Brady* compliance without knowing what was disclosed. The AG's position is not a defense—it is a confession of willful ignorance. (See Appendix B (documenting zero prosecution-sourced documents in AG's fifty-three lodgments).)

## IV.THE PLEA WAS INVOLUNTARY AND THE DEAL WAS BROKEN

### A. The Constitutional Standard

A guilty plea must be "voluntary, knowing, and intelligent." *Boykin v. Alabama*, 395 U.S. 238, 242–43 (1969). A plea "induced by threats, misrepresentation, or improper promises" cannot stand. *Brady v. United States*, 397 U.S. 742, 755 (1970). Where a plea "rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." *Santobello v. New York*, 404 U.S. 257, 262 (1971). *Tollett v. Henderson*, 411 U.S. 258 (1973), does not bar challenges to the voluntariness of the plea itself. The Ninth Circuit has squarely held that *Tollett* "does not bar a *Brady* claim if the petitioner contends that his guilty plea was not voluntary and intelligent because the plea was made in the absence of withheld *Brady* material." *Sanchez v. United States*, 50 F.3d 1448, 1453–54 (9th Cir. 1995).

## B. The Coercion Sequence

*Fabricated detention.* Petitioner was arrested January 3, 2023, and held without bail for ninety days. The sole justification was an alleged "threat" to the FBI—a call in which Petitioner explicitly said "I am not making any threats" and the FBI operator responded "Have a great day." DDA Balerio suppressed both the full transcript and the assessment, then used cherry-picked fragments to argue Petitioner was a "danger to the community." She never charged PC § 422 because she knew no criminal threat existed.

*Evidence suppression.* Throughout the ninety-day detention, the prosecution withheld every category of exculpatory evidence detailed in Section III *supra*. A plea made "in the absence of withheld *Brady* material" is not voluntary or intelligent. *Sanchez*, 50 F.3d at 1453–54. No rational defendant pleads guilty to a charge the State's own investigator says he would

"probably win at trial." The suppression did not merely affect the plea—it was the mechanism that made the plea possible.

*Medical duress.* Petitioner had suffered a life-threatening STEMI heart attack on September 30, 2021. Ninety days of incarceration with inadequate medical care placed him in physical jeopardy. On the morning of April 3, 2023—the day jury selection was to begin—Petitioner was ill with COVID-19. His attorney told him, in substance: "If this is about your son, sign and get out. Fight from outside." A defendant pleading guilty to end state-caused medical suffering is not making a voluntary choice—he is yielding to duress. *Iaea v. Sunn*, 800 F.2d 861, 866 (9th Cir. 1986).

Any single coercive circumstance—the fabricated detention, the evidence suppression, or the medical duress—would independently render the plea involuntary. Together, they establish a deliberate scheme to secure a conviction the prosecution's own investigator said could not be obtained at trial.

## C. The Broken Promise

The central inducement for the plea was a specific promise: Petitioner's son Bryce would be returned to his custody through a negotiated agreement. Defense counsel Badillo confirmed the arrangement on recording: "The DA knows . . . that you resolved the case based on the conversation she and I had with Andrea" [05/01/23, 00:16:58]. He further stated: "I wouldn't have let you take the deal if it wasn't" [00:07:14]. The trial court itself acknowledged the agreement, noting that "any agreements reached as part of the plea would be unwound" if the

plea was set aside. Lodgment 13. (See Appendix A, § 3 (complete Badillo recording analysis with timestamps).)

The promise was broken within twenty-two days. On April 13, 2023—ten days after the plea—Andrea Schuck included DDA Balerio on an email stating: "We are not in negotiations until you drop your other cases." That condition was never part of the agreement. DDA Balerio—the prosecutor who knew the plea was "based on the conversation she and I had with Andrea"—watched the promise being repudiated in writing. She took no remedial action. She never informed the Court. She let the fraudulent plea stand.

Under *Santobello*, 404 U.S. at 262, when a plea "rests in any significant degree" on a prosecutorial promise, "such promise must be fulfilled." It was not. Badillo's failure to reduce the custody agreement to writing before allowing his client to plead guilty constitutes ineffective assistance under *Hill v. Lockhart*, 474 U.S. 52 (1985). The prejudice is self-evident: Petitioner would not have pleaded guilty absent the promise, and the promise was illusory. (See Appendix I (Supplemental Brief addressing breached plea agreement, ECF No. 30).)

**D. Respondent Cannot Use Tollett as Both Sword and Shield**

Respondent's position creates a logical impossibility. She invokes *Tollett* to bar Petitioner's claims—"he pled guilty, so all antecedent constitutional claims are waived." She simultaneously invokes the plea to refuse production of the evidence that defeats *Tollett*—characterizing the prosecution file as "essentially a discovery request" beyond the scope of lodgment. She cannot use the same doctrine as both a sword to bar claims and a shield to hide the evidence proving those claims survive.

The circularity is complete: the prosecution suppresses evidence, coerces a plea, invokes the plea to bar challenges, and refuses to produce the evidence that would prove the plea was coerced. If this framework is accepted, no *Brady* violation in a guilty plea case can ever be remedied—precisely the result the Supreme Court held "not tenable" in *Banks*, 540 U.S. at 696, and the Ninth Circuit foreclosed in *Sanchez*, 50 F.3d at 1453–54. Ground Four independently warrants habeas relief.

## V. RETALIATORY PROSECUTION

The First Amendment prohibits prosecuting an individual in retaliation for protected speech. *Hartman v. Moore*, 547 U.S. 250, 256 (2006). Under *Mt. Healthy City School District v. Doyle*, 429 U.S. 274, 287 (1977), Petitioner must show (1) protected activity, (2) adverse action, and (3) causal connection. All three elements are established—by the State's own investigator, on tape.

**Protected activity.** In October 2021, Petitioner filed a public corruption complaint against family court and District Attorney officials, distributed to the Department of Justice, the FBI, and other oversight entities. Lodgment 46, Exhibit S. Speech criticizing government officials lies at the core of First Amendment protection. *Gentile v. State Bar of Nevada*, 501 U.S. 1030, 1034 (1991).

**Adverse action.** Petitioner was arrested on January 3, 2023, held without bail for ninety days on a fabricated "threat," and prosecuted on a felony charge that the State's own investigator said was meritless. The DA's office took no action for over fifteen months after learning of

Petitioner's protective custody of Bryce—cooperating with Petitioner throughout that period—and initiated prosecution only after the corruption complaint.

**Causal connection.** DAI Peña provided the direct evidence that *Nieves v. Bartlett*, 139 S. Ct. 1715, 1727 (2019), requires. When Petitioner asked why the prosecution was proceeding despite his documented PC § 278.7 defense—which Peña himself validated as "good cause for sure"—Peña answered: "You pissed them off" [01:12:12]. This is not an inference drawn from circumstantial timing. It is the State's own investigator identifying the motive on a recorded call. The sentencing transcript confirms: DDA Campbell argued against Petitioner because "He is on podcasts . . . the whole system is corrupt . . . lack of remorse." Lodgment 16. The prosecution weaponized constitutionally protected speech as an aggravating factor at sentencing. (See Appendix H, Section III (Retaliation Timeline—eighteen formal notices to government officials culminating in arrest); Appendix E (documenting eighteen-month cooperative period followed by sudden prosecution).)

Respondent argues this claim is barred by the guilty plea and is "conclusory." ECF No. 16 at 21. It is neither. Retaliatory prosecution claims challenge the *decision to prosecute*—not the conduct admitted by the plea—and therefore survive under *Blackledge v. Perry*, 417 U.S. 21, 28–30 (1974). And the claim is supported by the investigator's recorded admission of retaliatory motive, the prosecution's weaponization of protected speech at sentencing, and an eighteen-month pattern of inaction followed by sudden prosecution. The State cannot carry its *Mt. Healthy* burden when its own investigator says the only reason it prosecuted was that Petitioner "pissed them off." Ground Five independently warrants habeas relief.

# VI. ACTUAL INNOCENCE GATEWAY

Actual innocence, if proved, *overcomes every procedural barrier* the State has erected in this case. *McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013); *Schlup v. Delo*, 513 U.S. 298, 327 (1995). The standard requires that "it is more likely than not that no reasonable juror would have convicted" in light of the new evidence. *Id.* PC § 278.5(a) requires proof of "malice." *People v. Neidinger*, 40 Cal.4th 67, 73 (2006). The five categories of suppressed evidence detailed in Section III *supra* negate malice as a matter of law:

The State's own investigator says the defendant would "probably win." The alleged victim tells the prosecutor "He's done nothing wrong." The FBI clears the fabricated "threat." Family Court Services recommends equal custody. And the alleged victim returned to live with Petitioner voluntarily on his eighteenth birthday—completing his diploma, obtaining his driver's permit, and enrolling in college within six months. The "abduction victim" chose his father the moment the State could no longer prevent it.

In *House v. Bell*, 547 U.S. 518, 540–54 (2006), the Supreme Court found actual innocence where DNA evidence and witness recantation undermined a murder conviction. Here, the evidence is stronger: five independent categories, each independently devastating and all systematically suppressed by the same prosecution. Considered cumulatively, this evidence does not merely create reasonable doubt—it eliminates the possibility of conviction. (See Appendices A through I (complete evidentiary record).)

To the extent any claim is deemed procedurally defaulted, *Martinez v. Ryan*, 566 U.S. 1 (2012), and *Trevino v. Thaler*, 569 U.S. 413 (2013), provide an independent pathway. Appellate

counsel filed a *Wende* brief finding "no arguable issues" (Lodgment 17)—without investigating any of the suppressed evidence Petitioner had identified. Trial counsel failed to file the motion to withdraw the guilty plea. Public defender Badillo refused to investigate the Peña recording. This chain of constitutionally deficient representation establishes "cause" under *Martinez*, and the five categories of suppressed evidence establish "prejudice" beyond any question. Ground Six independently warrants habeas relief.

*If the prosecution's own investigator says the defendant would win, the "victim" says he was rescued, the FBI says there was no threat, the family court says custody should be shared, and the "victim" returned home the moment he could—under what theory does a conviction for malicious abduction survive?*

## VII. RELIEF REQUESTED

For the reasons set forth in Sections I through VI, Petitioner respectfully requests that this Court grant the following relief, in order of preference:

### A. Primary Relief: Grant the Writ and Vacate Conviction

Because no state court adjudicated Petitioner's Brady claims on the merits, this Court reviews de novo. *Pirtle v. Morgan*, 313 F.3d 1160, 1167 (9th Cir. 2002); *Dickens v. Ryan*, 740 F.3d 1302, 1321 (9th Cir. 2014) (en banc). Petitioner requests that this Court:

1. **GRANT the petition for writ of habeas corpus;**
2. **VACATE the conviction in San Diego Superior Court Case No. SCD297230;**
3. **ORDER the State of California to retry Petitioner within 120 days, or dismiss all charges with prejudice;**
4. **ORDER the conviction EXPUNGED from Petitioner's record;**
5. **ORDER Petitioner released from all terms of probation, supervision, and custody immediately.**

### B. Alternative Relief

In the alternative, Petitioner requests: (1) an evidentiary hearing under 28 U.S.C. § 2254(e)(2), as Petitioner did not "fail to develop" the factual basis—the State's suppression prevented development, *Williams v. Taylor*, 529 U.S. 420, 432 (2000); (2) record expansion under Habeas Rules 6 and 7 to include the five categories of suppressed evidence, as *Pinholster* does not bar expansion of unadjudicated claims; (3) stay and abeyance under *Rhines v. Weber*, 544 U.S. 269 (2005), if further exhaustion is required; and (4) a Certificate of Appealability under 28 U.S.C. § 2253(c)(2) on all grounds.

## C. Preservation of Appellate Rights

Petitioner preserves for appellate review all claims raised in this traverse and in the underlying petition, including the structural *Pinholster* error identified in Section II. Petitioner will seek all available appellate remedies, including mandamus under 28 U.S.C. § 1651 and FRAP 21.

D. Appendices A through I are filed concurrently as separate attachments and are incorporated herein by reference in their entirety pursuant to Rule 2(c)(2) of the Rules Governing § 2254 Cases. These Appendices organize and reference evidence in the record and are not subject to the twenty-five-page limitation imposed by this Court's February 11, 2026 Order (ECF No. 33). Petitioner requests that the Appendices remain unsealed and part of the public record.

Respectfully submitted,
/s/ Robert Emert
02/20/26

 **Outlook**

---

SUBJECT: EMERGENCY PETITION FOR WRIT OF MANDAMUS (Circuit Rule 21-3) — In re Robert Emert — D.C. No. 3:25-cv-00820-TWR-BLM — Relief Required By April 6, 2026 — IFP/ADA Electronic Filing Waiver Requested — FRCP 5(d)(2) Demand to District Court — 18 U.S.C.

---

**From** Rob Emert <robemert@msn.com>

**Date** Thu 3/19/2026 9:13 AM

**To** Emergency CA09StaffAtty <emergency@ca9.uscourts.gov>; adam.gordon@usdoj.gov <adam.gordon@usdoj.gov>; Kevin Shead <kshead@fbi.gov>; Nicole Lipka <nlipka@fbi.gov>; appeals_cmecf@ca9.uscourts.gov <appeals_cmecf@ca9.uscourts.gov>; sfca9_accessibility@ca9.uscourts.gov <sfca9_accessibility@ca9.uscourts.gov>

**Cc** CASDdb_efile Robinson <efile_robinson@casd.uscourts.gov>; efile_major@casd.uscourts.gov <efile_major@casd.uscourts.gov>; Kristen Chenelia <kristen.chenelia@doj.ca.gov>; christopher.beesley@doj.ca.gov <christopher.beesley@doj.ca.gov>

📎 8 attachments (13 MB)

Doc 1 — Circuit Rule 27-3 Certificate of Emergency — IFPADA Waiver + Personal Declaration — read this first.pdf; Doc 2 — Index of Complete Record.pdf; DOC3EC~1.PDF; Doc 4 — Court-Stamped Traverse No. 1 — January 16, 2026 — the traverse the R&R says does not exist.pdf; DOC4AC~1.PDF; Doc 5 — Traverse No. 2 — February 20, 2026 — 25 pages within court's limit — filed within 51 minutes.pdf; Doc 6 — Emergency Petition for Writ of Mandamus — March 3, 2026.pdf; Doc 7 — DA CPRA Letter — March 3, 2026 — prosecution file cannot be located.pdf;

**Dear Emergency Motions Duty Attorney, District Court Clerk, and U.S. Attorney Gordon:**

This email contains three clearly labeled sections. Each section is addressed to a specific recipient. All parties are copied simultaneously so the complete record is visible to every institution with authority to act on it.

This filing qualifies as an emergency under Circuit Rule 27-3. Relief is required before April 6, 2026 to prevent irreparable harm. The district court appears to have engaged in willful concealment of federal court records in violation of 18 U.S.C. § 2071 — constituting deliberate record engineering designed to present this Court with a manufactured record that conceals the district court's constitutional errors. The proof is documented in six images in the body of this email and in the complete record available at the link below.

**ATTACHED TO THIS EMAIL — 7 DOCUMENTS:**

- **Doc 1** — Circuit Rule 27-3 Certificate of Emergency — IFP/ADA Waiver + Personal Declaration — *read this first*

- **Doc 2** — Index of Complete Record — 26-document chronological table — 13 consecutive NEVER DOCKETED entries

- **Doc 3** — ECF No. 36 — Report and Recommendation — March 16, 2026 — contains the false factual findings proven in this email

- **Doc 4** — Court-Stamped Traverse No. 1 — January 16, 2026 — the traverse the R&R says does not exist

- **Doc 5** — Traverse No. 2 — February 20, 2026 — 25 pages within court's limit — filed within 51 minutes

- **Doc 6** — Emergency Petition for Writ of Mandamus — March 3, 2026 (Bates 000001–000109)

- **Doc 7** — DA CPRA Letter — March 3, 2026 — prosecution file cannot be located

**Complete record — all documents — OneDrive link below in Section 3.**

═══ **SECTION 1: TO THE NINTH CIRCUIT EMERGENCY MOTIONS DUTY ATTORNEY** ═══

**Three requests. One emergency. April 6, 2026.**

I am Robert Emert, pro se habeas petitioner. Pursuant to Circuit Rules 21-3 and 27-3, I make three requests:

**(1)** Docket number assignment for the Emergency Petition for Writ of Mandamus filed March 3, 2026 — currently undocketed after 15 days. The petition was filed as two documents with continuous Bates numbering 000001–000966: (a) 109-page petition body with Appendices A–E (Bates 000001–000109); (b) 857 pages of Exhibits F–N (Bates 000110–000966), including 663 pages of Peña and Schuck recordings as Exhibit G.

**(2)** IFP/ADA electronic filing waiver pursuant to FRAP 24(a), 28 U.S.C. § 1915, Circuit Rule 27-3, and Title II ADA (42 U.S.C. § 12132). Petitioner is an SSI recipient proceeding IFP in the district court below. Petitioner has suffered two documented STEMI heart attacks. Printing and mailing 966 pages plus required copies and repeated courthouse trips exceeds $1k — financially impossible and medically contraindicated. The fully bookmarked PDF package already transmitted to emergency@ca9.uscourts.gov is objectively more efficient for judicial review than a physical paper stack and constitutes the precise meaningful access required by *Tennessee v. Lane*, 541 U.S. 509 (2004) and *Updike v. Multnomah County*, 870 F.3d 939 (9th Cir. 2017). ADA accommodation requests have been pending and unadjudicated in the district court since January 16, 2026. This Court has discretion to grant this waiver. The facts compel it.

**(3)** Emergency intervention before April 6, 2026 — the deadline for Objections to the district court's Report and Recommendation (ECF No. 36). The attached Circuit Rule 27-3 Certificate contains the complete legal basis, all five Bauman factors, Element 6 documenting developments since March 3, and a sworn personal declaration of the ongoing irreparable harm under 28 U.S.C. § 1746.

═══ **SECTION 2: TO THE DISTRICT COURT CLERK AND U.S. ATTORNEY ADAM GORDON** ═══

**Fed. R. Civ. P. 5(d)(2): No discretion. Mandatory. The clerk must not refuse to file.**

Unlike the electronic filing waiver requested of the Ninth Circuit above — which rests in that Court's sound discretion — the docketing demand below is non-discretionary. Fed. R. Civ. P. 5(d)(2) uses mandatory language: the clerk "must not refuse to file." No local rule, no practice, and no preference overrides this command.

This Court previously docketed Petitioner's email submission within 24 hours as ECF No. 29 through efile_robinson@casd.uscourts.gov — proof the Court processes email filings through that address. The Court possesses the court-stamped Traverse No. 1 filed in person January 16, 2026. Thirteen filings have

been ignored for 61 days. The Magistrate Judge then issued ECF No. 36 stating Petitioner never filed a traverse.

**Petitioner demands immediate docketing of all 13 filings nunc pro tunc to their original filing dates.**

This ministerial violation is being referred simultaneously to U.S. Attorney Adam Gordon under 18 U.S.C. § 2071 — willful concealment of federal court records, forfeiture of office, permanent disqualification from federal employment — and under 18 U.S.C. § 1505 — obstruction of federal proceedings.

Petitioner respectfully requests that U.S. Attorney Gordon review this referral for investigation. The pattern documented here — systematic non-docketing of 13 filings over 61 days while processing identical AG submissions within 24 hours, culminating in a Magistrate Judge's recommendation to deny based on the absence of filings the clerks refused to process — constitutes deliberate record engineering designed to present the Ninth Circuit with a manufactured record that conceals the district court's constitutional errors. The clerks are not making a filing decision. They are making an appellate outcome decision. That is not a ministerial act — it is obstruction of federal appellate proceedings under 18 U.S.C. § 1505, and it is happening in plain view of every recipient of this email.

==== SECTION 3: TO ALL PARTIES — SIX IMAGES THAT CANNOT BE EXPLAINED ====

**What is happening — in plain terms:**

The San Diego DA suppressed more than 47 recorded investigator admissions that the DA never had a case, withheld the FBI threat assessment that cleared Petitioner, suppressed a 32-minute victim interview, and coerced a guilty plea through 90 days of pretrial detention coerced a guilty plea through 90 days of pretrial detention based on a fabricated threat the FBI itself cleared — a threat DDA Balerio never even charged — while withholding the full FBI transcript proving no threat was ever made, and suppressing 14 months of documented PC § 278.7 defense emails. The DA now certifies it cannot locate the prosecution file. The Attorney General certified the court record complete without ever requesting that file. The District Court applied *Pinholster* to exclude the suppressed evidence — but *Pinholster* does not apply because no state court ever adjudicated the Brady claims on the merits. *Dickens v. Ryan*, 740 F.3d 1302 (9th Cir. 2014) (en banc). When that legal argument failed, the district court clerks stopped docketing Petitioner's filings for 61 days in direct violation of Fed. R. Civ. P. 5(d)(2) — while processing the AG's emails within 24 hours through the identical address. On March 16, 2026 — the day the R&R was signed — the clerk confirmed she did not know why 13 filings were undocketed.

The R&R (ECF No. 36, Page 4) states:

"Emert did not file a traverse by January 30, 2026, the final deadline set by Magistrate Judge Major."

"Emert did not respond to the Court's order and did not file a traverse by the deadline imposed by Judge Robinson."

**Six images. Every recipient sees the proof right now.**

the same day, Respondent lodged the state court record. ECF No. 17.

Emert did not file a traverse by January 30, 2026, the final deadline set by Magistrate Judge Major. ECF No. 25. On February 2, 2026, Emert filed a Notice of Supplemental Evidence in Support of Petition for Writ of Habeas Corpus attaching a motion filed in the Ninth Circuit as part of an appeal of a different case. ECF No. 30. On February 11, 2026, District Judge Todd W. Robinson filed an order denying Emert's motion to overrule Magistrate Judge Major's December 11, 2025 discovery order. ECF No. 33. Judge Robinson also extended the deadline for Emert's traverse to March 13, 2026. Id. ("Petitioner MAY FILE an optional traverse, if any, within thirty (30) days of the date of this Order.") (emphasis in original). On February 11, 2026, Emert filed a notice that included a statement that he had filed a traverse on January 16, 2026. ECF No. 34. Because the docket did not reflect that filing, the Court directed Emert to re-file the traverse or clarify which filing was his traverse. ECF No. 35. Emert did not respond to the Court's order and did not file a traverse by the deadline imposed by Judge Robinson. See Docket.

**CAPTION:** *The R&R acknowledges Judge Robinson extended the traverse deadline to March 13, 2026 (lines 7-8) — then states in the very next sentence Petitioner did not file a traverse by that deadline (lines 12-13). Note line 10: the R&R acknowledges Petitioner filed a notice stating he had filed a traverse on January 16. The R&R then says he did not respond. See what actually happened in the next five images.*

000105

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ROB EMERT, | Case No. 3:25-cv-00020-TWR-BLM |
| Petitioner, | PETITIONER'S TRAVERSE TO |
| v. | RESPONDENT'S ANSWER TO PETITION |
| SAN DIEGO PROBATION DEPARTMENT, | FOR WRIT OF HABEAS CORPUS |
| Respondent. | |
| | District Judge: Hon. Todd W. Robinson |
| | Magistrate Judge: Hon. Barbara Lynn Major |

## EXECUTIVE SUMMARY

The State's own investigator made over 50 recorded admissions that Petitioner would "probably win at trial," had "good cause for sure," and that "the DA's office should never have accepted your case." When asked why the prosecution proceeded anyway, he answered, "You pissed them off."

Under PC § 278.5(a), the technical "victim" is the custodial parent — Petitioner's ex-wife. But even DA Polis acknowledged Petitioner had "good cause" to do what he did, which negates the malice element as a matter of law. And the person at the center of this case — Petitioner's son Bryce — told the prosecutor directly: "My dad didn't do anything wrong" and "I want to be his witness." On his 18th birthday, Bryce voluntarily returned to live with Petitioner. He remains there today. That is the ultimate vindication.

This evidence was systematically suppressed. The DA knew about this case for over a year, during which time Petitioner was in direct contact with the DA's office, had no criminal history, posed zero flight risk, and was openly documenting his PC § 278.7 defense. The DA did nothing. Then, when Petitioner's corruption complaint gained traction, they fabricated a "threat" from an FBI call that the FBI itself cleared — a threat the prosecutor never charged — and used it to cage Petitioner for 90 days with no bail while withholding every piece of exculpatory evidence that would have prevented the coerced guilty plea.

The Attorney General's Answer does not address any of this. Instead, the AG mischaracterizes devastating professional assessments as mere "sympathy," contradicts her own lodgment on exhaustion, invokes procedural bars that do not apply, and has refused—for over 90 days and despite three court orders—to produce the State's copies of recordings Petitioner already possesses. Her conduct may warrant sanctions under Rule 11.

The silence is not strategy. It is confession.

PETITIONER'S TRAVERSE TO RESPONDENT'S ANSWER TO PETITION FOR WRIT OF HABEAS CORPUS WITH APPENDIX A

---

**CAPTION:** *Traverse No. 1. Filed in person, January 16, 2026. The court's own RECEIVED JAN 16 2026 stamp is on it. Fourteen days before even the wrong deadline cited in the R&R. The R&R says this does not exist.*

**Outlook**

Subject: Case No. 3:25-cv-00820-TWR-BLM — Docketing Status of Traverse Filed January 16, 2026 -
15 days filed but still not docketed

From Rob Emert <robemert@msn.com>
Date Sat 1/31/2026 2:08 PM
To       CASDdb_efile Robinson <efile_robinson@casd.uscourts.gov>; Kristen Chenelia <kristen.chenelia@doj.ca.gov>;
         christopher.beesley@doj.ca.gov <christopher.beesley@doj.ca.gov>
Cc       Nicole Lipka <nlipka@fbi.gov>; Kevin Shead <kshead@fbi.gov>

📎 1 attachment (796 KB)
TRAVERSE 011926 WITH APPENDIX A AND TOC.pdf;

Dear Sarah,

Thank you again for your assistance.

I am writing to inquire about the docketing status of my Traverse to Respondent's Answer.
I filed the Traverse in person at the Clerk's Office on January 16, 2026, and served Deputy
Attorney General Chenelia (copied here) via email that same day. As of today, January 31,
2026 — fifteen days later — the Traverse does not appear on the docket.

Could you please advise whether there is an issue with the filing and, if so, what I need to
do to resolve it?

The document is thoroughly organized with extensive bookmarks for easy navigation. I
also provided a courtesy copy to the Court on a USB drive given the complexity and
volume of this case.

For the Court's awareness, the Traverse has also been:

- Attached as an appendix to filings in related Ninth Circuit proceedings (Case Nos. 24-
  5856 and 25-3694)
- Served on the San Diego District Attorney's Public Integrity Unit as an exhibit to a
  criminal complaint regarding DDA Balerio and DAI Peña
- Provided to the California State Bar in connection with a misconduct complaint
- Transmitted to the FBI for referral to the Public Corruption Unit regarding the San
  Diego District Attorney's conduct
- Attached again here for convenience

**CAPTION:** *January 31, 2026 — 2:08 PM. Petitioner emailed the court-stamped copy to
efile_robinson@casd.uscourts.gov asking why it had not been docketed 15 days after filing. The AG,
AG Supervisor, and two FBI agents were copied. Subject: "15 days filed but still not docketed." Zero
response. Never docketed. That same day a different Petitioner email was docketed within 24 hours as
ECF No. 29 through the same address.*



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

OFFICE OF THE CLERK
333 WEST BROADWAY, SUITE 420
SAN DIEGO, CALIFORNIA 92101

OFFICIAL BUSINESS

**CAPTION:** *The court issued ECF No. 35 on February 13. This is the envelope it arrived in. Postmarked February 17 — four days after issuance — by the court's own Pitney Bowes meter. Received February 20 — the same day as its own deadline. The court consumed every available response day with its own mailing process and then cited Petitioner's "failure" to respond.*

Outlook

Subject: Case No. 3:25-cv-00820-TWR-BLM — Response to February 13, 2026 Minute Order (ECF No. 35); Revised Traverse Fw: Subject: Case No. 3:25-cv-00820-TWR-BLM — Docketing Status of Traverse Filed January 16, 2026 - 15 days filed but still not dock...

From Rob Emert <robemmit@msn.com>
Date: Fri 2/20/2026 6:51 PM
To    CASD(ib_efile_Robinson <efile_robinson@casd.uscourt.gov>; Kristin Chenelia <kristen.chenelia@doj.ca.gov>; christopher.beesley@doj.ca.gov <christopher.beesley@doj.ca.gov>
Cc    Nicole Lipka <nlipka@fbi.gov>; Kevin Shaw <kshaw@fbi.gov>
Bcc   Rob Emert <robemert@msn.com>

4 attachments (5 MB)
APPENDIX 022026.pdf; NOTICE_ADA_ACCOMMODATION_APPENDIX_STATUS_022026.pdf; PROOF_OF_SERVICE_TRAVERSE and RELATED FILINGS 022026.pdf; TRAVERSE 022026.pdf;

To: CASddb_efile_robinson@casd.uscourts.gov

CC: Kristen.Chenelia@doj.ca.gov; christopher.beesley@doj.ca.gov

Subject: Case No. 3:25-cv-00820-TWR-BLM — Response to February 13, 2026 Minute Order (ECF No. 35); Revised Traverse and Accompanying Filings

---

Dear Clerk of Court,

I am writing in response to the Court's February 13, 2026 Minute Order (ECF No. 35). I only discovered this Minute Order today, February 20, when I checked PACER for unrelated reasons. As a pro se litigant, I receive all court orders by U.S. Mail, and this order had not yet arrived by mail as of today — which is the very deadline it imposed. There was no realistic way for me to receive this order by mail and respond within the time allowed.

I had no reason to check PACER. Judge Robinson's February 11 Order (ECF No. 33) gave me until March 13, 2026 to file my Traverse with a 25-page limit. I was working off that deadline and focused on preparing my revised filing. There was nothing to suggest another order had been entered two days later requiring an immediate response.

---

**CAPTION:** *February 20, 2026 — 6:51 PM. The same day the postmarked envelope arrived. Petitioner discovered ECF No. 35 by checking PACER and filed Traverse No. 2 with four attachments within 51 minutes. The email body states: "There was no realistic way for me to receive this order by mail and respond within the time allowed." Petitioner responded anyway. Four attachments including the traverse, ADA accommodation notice, and proof of service. The AG and two FBI agents were copied. Never docketed.*

Robert Emert (760) 612-9328

## U.S. DISTRICT COURT SOUTHERN DISTRICT OF CALIFORNIA

ROBERT EMERT, Petitioner

v.

San Diego Probation Department, Respondent

Case No. 3:25-cv-00820-TWR-BLM
**TRAVERSE TO ANSWER**

---

**STATEMENT OF RELIEF REQUESTED AND QUESTION PRESENTED** - The United States Supreme Court has already decided this case. This Court has denied discovery, denied an evidentiary hearing, refused to examine five categories of suppressed recordings, and applied Cullen v. Pinholster to exclude the very evidence the prosecution concealed — without ever making the threshold determination that Pinholster itself requires.

The controlling question can be stated in one sentence:

"A rule thus declaring 'prosecutor may hide, defendant must seek,' is not tenable in a system constitutionally bound to accord defendants due process." Banks v. Dretke, 540 U.S. 668, 696 (2004).

That is exactly what happened here. The prosecution suppressed its own investigator's forty-seven recorded admissions that Petitioner would "probably win at trial." It fabricated a threat narrative the FBI cleared. It coerced a guilty plea from a seriously ill man held ninety days without bail, then broke the plea agreement in twenty-two days. It now invokes that coerced plea as a permanent shield — while arguing Petitioner should have produced the hidden evidence from a jail cell.

The Ninth Circuit, sitting en banc, has already rejected this exact framework. Dickens v. Ryan, 740 F.3d 1302, 1321 (9th Cir. 2014). No California court ever reached the merits of the Brady claims. Review is therefore de novo.

If this page does not compel the Court to confront the merits, twenty-five pages will not either. The traverse that follows is filed in compliance with this Court's February 11, 2026 Order (ECF No. 33) and the 25-page limit imposed therein. Petitioner preserves his objection to that Order — including the ruling that the lodgment is "complete" and the categorical application of Pinholster to claims no state court ever adjudicated on the merits. This constitutes the recognized Brady exception to Pinholster: when the State suppresses material evidence, the petitioner is not bound by the corrupted state-court record. Dickens v. Ryan, 740 F.3d 1302, 1321 (9th Cir. 2014).

---

**CAPTION:** *Traverse No. 2. Filed within 51 minutes. 25 pages within the court's limit. Opens with Banks v. Dretke and Dickens v. Ryan en banc — the controlling authorities the R&R never cited. This is the legal argument the district court refused to read because the clerks refused to docket it.*

---

**Six images. Six documents. All six prove the same thing. Every recipient of this email is now a documented witness to the existence of these filings that the District Court of Southern California is trying to say do not exist.**

This is not procedural. A father is serving probation under a felony conviction obtained through suppressed Brady evidence. His son — autistic — lost his high school diploma, driver's license, and college plan during their separation. All three were restored in seven months home with his father. His sixteen-year-old daughter believes he is a dangerous felon and will not speak to him. He has suffered two STEMI heart attacks under the stress of this prosecution. The DA cannot find the prosecution file. The AG will not get it. The district court will not require it. The clerks will not docket the proof of any of it.

**If the Ninth Circuit does not intervene before April 6, 2026, a final order issues on a record every recipient of this email can see is false.**

*Banks v. Dretke*, 540 U.S. 668, 696 (2004): "A rule thus declaring 'prosecutor may hide, defendant must seek,' is not tenable in a system constitutionally bound to accord defendants due process."

That is exactly what happened here. The proof is in six images above.

---

**ATTACHED — 7 DOCUMENTS:**

1. Circuit Rule 27-3 Certificate of Emergency — IFP/ADA Electronic Filing Waiver + Personal Declaration (28 U.S.C. § 1746) — read this first

2. Index of Complete Record — all 26 documents in the OneDrive folder — chronological table showing what each document proves and docketing status — 13 consecutive NEVER DOCKETED entries

3. ECF No. 36 — Report and Recommendation — March 16, 2026 — contains the false factual findings shown above

4. Court-Stamped Traverse No. 1 — January 16, 2026 — the traverse the R&R says does not exist

5. Traverse No. 2 — February 20, 2026 — 25 pages within court's limit — filed within 51 minutes — also does not exist according to the R&R

6. Emergency Petition for Writ of Mandamus — March 3, 2026 (Bates 000001–000109)

7. DA CPRA Letter — March 3, 2026 — prosecution file cannot be located

**COMPLETE RECORD — ALL DOCUMENTS THE DISTRICT COURT REFUSED TO DOCKET:**

Emert 3-25-cv-00820 — Undocketed Filings — Clerk Ministerial Duty Violation 28 USC 751

- **00** — ECF No. 36 R&R (March 16, 2026) — the document with false findings — appears first

- **01** — Traverse No. 1 — court-stamped RECEIVED JAN 16 2026 — never docketed

- **03B** — January 31 email to clerk — stamped copy attached — zero response

- **04** — Traverse No. 2 — 25 pages — filed within 51 minutes — never docketed

- **09** — Emergency Mandamus Petition — 109 pages — Bates 000001–000109

- **09A** — Mandamus Exhibits F–N — 857 pages — Bates 000110–000966

- **13** — Emergency Motion for Status Conference — never docketed

- **15** — USPS postmarked envelope — February 17 postmark — court mail delay proof

- **Items E & F** — Executive Summary of Objections + Preliminary Highlights — fully drafted — formal filing April 6, 2026

- **Items A & B** — Team RICO (Ninth Circuit) + Welched Plea Deal (SCOTUS No. 25-6794)

- **Item C** — DA CPRA March 3 letter — prosecution file cannot be located

- **Item D** — Selena call transcript — "I don't know" — March 16, 2026

---

Respectfully submitted,

/s/ Robert Emert

Robert Emert, Petitioner Pro Se

2351 Vista Lago Terrace, Escondido, CA 92029

(760) 612-9328 | robemert@msn.com | March 19, 2026

Courtesy copies transmitted simultaneously to: District Court (efile_robinson@casd.uscourts.gov, efile_major@casd.uscourts.gov) for mandatory docketing in Case No. 3:25-cv-00820-TWR-BLM pursuant to Fed. R. Civ. P. 5(d)(2); AG Chenelia; AG Beesley; U.S. Attorney Adam Gordon (adam.gordon@usdoj.gov / (619) 557-5610).