# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

EMERT v. SAN DIEGO PROBATION DEPARTMENT

Case No. 3:25-cv-00820-TWR-BLM

---

## EXHIBIT C

### PETITION FOR WRIT OF MANDAMUS

#### Ninth Circuit Case No. 26-1808

#### Docketed March 25, 2026 — 966 Pages — Bates 000001–000965

The Emergency Petition for Writ of Mandamus is formally before the United States Court of Appeals for the Ninth Circuit as Case No. 26-1808 (*Emert v. United States District Court for the Southern District of California, San Diego*, docketed March 25, 2026). It is part of the Ninth Circuit's official appellate record.

The petition body is approximately 25 pages. The remaining pages consist of Appendices A–E and Exhibits F–N — all Bates-numbered, bookmarked for navigation, and organized with individual cover pages.

**Complete record available at:**

(1) Ninth Circuit PACER Docket: Case No. 26-1808

(2) This Court's Own Docket: ECF Document 37-1 (filed March 25, 2026)

(3) OneDrive — Complete Record:

Emert 3-25-cv-00820 — Undocketed Filings — Clerk Ministerial Duty Violation 28 USC 751

**[INSERT ONEDRIVE LINK]**

Every document in the complete 966-page record has been in the possession of the Attorney General, the AG Supervisor, U.S. Attorney Adam Gordon, and two FBI agents since March 3, 2026.

#### ▼ ▼ ▼ PETITION BODY (BATES 000001–000104) ATTACHED BELOW ▼ ▼ ▼

*INSERT: Petition body pages 1–25 (Bates 000001–000025) as courtesy copy. The opening page begins with Banks v. Dretke and Dickens v. Ryan — the controlling authorities the R&R never cited.*

**[ DROP PETITION BODY PDF HERE WHEN ASSEMBLING FINAL PACKAGE ]**

# UNITED STATES COURT OF APPEALS

# FOR THE NINTH CIRCUIT

Case No. _____

(D.C. Case No. 3:25-cv-00820-TWR-BLM)

## In re ROBERT EMERT, Petitioner

## <u>STACKING ORDER</u>

*Petition for Writ of Mandamus Under 28 U.S.C. § 1651(a)*

**Note to the Court:** This filing consists of three documents totaling 965 Bates-numbered pages plus a supplemental docketing record. In the interest of judicial economy and in compliance with FRAP 21 and the Ninth Circuit's e-filing requirements, Petitioner has organized the filing as follows:

## <u>DOCUMENT 1</u>

### Petition for Writ of Mandamus with Appendices

Pages 1–104 | Bates 000001–000104

| Component | Pages | Bates Range |
|---|---|---|
| Certificate of Interested Parties | 2–3 | 000002–000003 |
| Table of Contents | 3–4 | 000003–000004 |
| Table of Authorities | 5–7 | 000005–000007 |
| Executive Summary | 8–15 | 000008–000015 |
| Petition Body (Sections I–VI) | 16–42 | 000016–000042 |
| Certificate of Compliance | 43 | 000043 |
| Proof of Service | 44–45 | 000044–000045 |

| | | |
|---|---|---|
| IFP Motion with Declaration | | |
| Appendix A — Feb. 11, 2026 Order (ECF 33) | 46–50 | 000046–000050 |
| Appendix B — Dec. 11, 2025 Order (ECF 25) | 51–55 | 000051–000055 |
| Appendix C — May 16, 2025 Order (ECF 8) | 56–63 | 000056–000063 |
| Appendix D — CA Supreme Ct. Denial (S284407) | 64–68 | 000064–000068 |
| Appendix E — CA Court of Appeal Denial (D083239) | 69–102 | 000069–000102 |
| | 103–104 | 000103–000104 |

# DOCUMENT 2

## Exhibits to Petition for Writ of Mandamus

Pages 1–861  |  Bates 000105–000965

| Exhibit | Description | Bates Range |
|---|---|---|
| F | AG Email Admissions (Oct. 10, 2025) | 000107 |
| G | Schuck Recordings — Malice-Negation Evidence (AG Lodgments 3, 6, 35) (4 parts) | 000149 |
| H | Petitioner's Traverse (Filed Feb. 20, 2026) | |
| I | Traverse App. A — Recorded Admissions Analysis (47 Peña admissions, timestamped) | 000811 |
| | | 000837 |
| J | Traverse App. H — DA Correspondence (14 months PC § 278.7 defense emails, suppressed) | 000864 |
| K | USPS Postmarked Envelope — Mailing Delay | |
| L | Clerk Correspondence — Docketing/ADA | 000874 |
| M | Clerk Email — Mandamus Filing (Mar. 2, 2026) | 000867 |
| N | Original Traverse — Court-Stamped Filing Date | 000883 |
| O | DA CPRA Denial (Feb. 18, 2026 — Glomar Response) | 000888 |
| | | 000953 |

# DOCUMENT 3

## District Court Docketing Record

*(Requires Docketing in District Court)*

Petitioner's February 23, 2026 email to the Clerk of Court and all parties, requesting docketing of filed documents that remain absent from the docket and adjudication of pending ADA accommodation requests. This email—with its attachments—constitutes a formal request that has

not been docketed despite submission to the Court's e-filing address and service on all parties including Respondent's counsel, the AG supervisor, and the FBI contacts in this matter. Included here to preserve the complete procedural record for this Court's review.

# FILING SUMMARY

**What this filing is:** A petition for writ of mandamus under 28 U.S.C. § 1651(a) and FRAP 21, challenging the district court's February 11, 2026 Order (ECF No. 33), which applied *Cullen v. Pinholster* to categorically exclude Petitioner's *Brady* evidence without first determining whether any California court adjudicated those claims on the merits—a threshold analysis required by *Dickens v. Ryan*, 740 F.3d 1302, 1321 (9th Cir. 2014) (en banc).

**What the exhibits prove:** The prosecution's own investigator admitted on recording that Petitioner would "probably win at trial" and had "good cause for sure." The prosecution suppressed this and five other categories of exculpatory evidence to coerce a guilty plea, then every level of the justice system—DA, AG, and district court—has acted to prevent judicial review of that suppression.

**Why mandamus is necessary:** Petitioner has filed in seven courts over three years. No court—state or federal—has reached the merits of the constitutional violation. The district court's *Pinholster* ruling ensures none will unless this Court intervenes. A post-judgment appeal would require remand for the very determination mandamus directs now. That is not an adequate alternative remedy—it is a detour to the same destination.

## THE QUESTION

*If the State's own investigator told the defendant on recording that he would "probably win at trial," and the prosecution suppressed that recording to coerce a guilty plea—on what constitutional basis may a federal court refuse to hear it?*

## THE ANSWER

000117

The State's position is that prosecutors can throw you in jail, withhold exculpatory evidence, coerce a guilty plea under massive duress, and then use that coerced plea as a shield from accountability—while arguing you should have produced the evidence they were hiding from a jail cell.

The United States Supreme Court rejected this exact framework in *Banks v. Dretke*, 540 U.S. 668, 696 (2004): "A rule declaring 'prosecutor may hide, defendant must seek,' is not tenable in a system constitutionally bound to accord defendants due process."

## NUMBERING CONVENTION

**Page numbers** appear in the upper-right corner of each page. Document 1 is numbered 1–104. Document 2 restarts at 1–861 in the upper left corner

**Bates numbers** appear in the upper-center of each page and run continuously across both documents: 000001–000104 (Document 1) and 000105–000965 (Document 2). Any citation to "Bates ___" refers to this unified numbering system.

**Document 3** is an email supplemental docketing correspondence included to preserve the procedural record.

Respectfully submitted,

/s/ Robert Emert

**ROBERT EMERT**

Petitioner, Pro Se

2351 Vista Lago Terrace, Escondido, CA 92029

(760) 612-9328 | robemert@msn.com

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

Case No. _____

(D.C. Case No. 3:25-cv-00820-TWR-BLM)

*In re*

## ROBERT EMERT,

*Petitioner,*

v.

## UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF CALIFORNIA,

*Respondent,*

## SAN DIEGO PROBATION DEPARTMENT,

*Real Party in Interest.*

## PETITION FOR WRIT OF MANDAMUS WITH SUPPORTING DOCUMENTS

Relief Sought from the February 11, 2026 Order

of the District Court (ECF No. 33)

**Robert Emert**
Petitioner, Pro Se

# CERTIFICATE OF INTERESTED PARTIES
(Circuit Rule 21-3; FRAP 26.1)

Pursuant to Federal Rule of Appellate Procedure 26.1 and Ninth Circuit Rule 28-2.6, Petitioner Robert Emert states as follows:

**1. Corporate Disclosure Statement.** Not applicable. Petitioner is an individual proceeding pro se.

**2. Related Cases.** Pursuant to Circuit Rule 28-2.6, Petitioner identifies the following related cases:

**a.** *Emert v. San Diego Probation Department*, No. 3:25-cv-00820-TWR-BLM (S.D. Cal.) — the underlying federal habeas corpus proceeding.

**b.** *Emert v. Balerio et al.*, No. 24-5856 (9th Cir.) — § 1983 civil rights appeal. Rehearing pending.

**c.** *Emert v. Balerio et al.*, No. 25-3694 (9th Cir.) — § 1983 civil rights appeal. Rehearing pending.

**d.** *Emert v. County of San Diego et al.*, No. 3:25-cv-03646-JAH-JW (S.D. Cal.) — § 1983 civil rights action. Pending.

Dated: 02/23/26

/s/ Robert Emert
**ROBERT EMERT**
Petitioner, Pro Se

## Contents

CERTIFICATE OF INTERESTED PARTIES ......................................................2
APPENDICES ..............................................................................................4
TABLE OF AUTHORITIES .............................................................................5
EXECUTIVE SUMMARY ...............................................................................8
I. INTRODUCTION AND RELIEF REQUESTED ...............................................16
  A. The District Court's Errors .....................................................................16
  B. The Evidence .......................................................................................18
  C. Relief Requested...................................................................................18
II. STATEMENT OF JURISDICTION................................................................20
III. STATEMENT OF THE ISSUES .................................................................20
IV. STATEMENT OF FACTS AND PROCEDURAL HISTORY ...........................21
V. ARGUMENT ...........................................................................................29
VI. CONCLUSION........................................................................................40
CERTIFICATE OF COMPLIANCE...................................................................43
PROOF OF SERVICE....................................................................................44
MOTION FOR LEAVE TO PROCEED .............................................................46
IN FORMA PAUPERIS ..................................................................................46
APPENDIX A ...............................................................................................51
Order of February 11, 2026 ...........................................................................51

(ECF No. 33)......................................................................................................51

United States District Court Southern District of California Hon. Todd W. Robinson ..............................................................................................................51

APPENDIX B ...........................................................................................................56

Order of December 11, 2025 ...................................................................................56

(ECF No. 25)...........................................................................................................56

United States District Court Southern District of California Hon. Barbara L. Major, Magistrate Judge ......................................................................................................56

APPENDIX C ...........................................................................................................64

Order of May 16, 2025.............................................................................................64

(ECF No. 8)..............................................................................................................64

United States District Court Southern District of California..................................64

APPENDIX D ...........................................................................................................69

California Supreme Court Denial .............................................................................69

Case No. S284407.....................................................................................................69

Filed February 11, 2025............................................................................................69

APPENDIX E ..........................................................................................................103

California Court of Appeal Denial...........................................................................103

Case No. D083239 ...................................................................................................103

## APPENDICES

Appendix A — Order of Feb. 11, 2026 (ECF No. 33)
Appendix B — Order of Dec. 11, 2025 (ECF No. 25)
Appendix C — Order of May 16, 2025 (ECF No. 8)
Appendix D — Cal. Supreme Court Denial (S284407)
Appendix E — Cal. Court of Appeal Denial (D083239)

# TABLE OF AUTHORITIES

## CASES

*Banks v. Dretke*, 540 U.S. 668 (2004) ....... passim

*Boumediene v. Bush*, 553 U.S. 723 (2008)

*Brady v. Maryland*, 373 U.S. 83 (1963) ....... passim

*Cheney v. U.S. Dist. Court*, 542 U.S. 367 (2004)

*Cone v. Bell*, 556 U.S. 449 (2009)

*Cullen v. Pinholster*, 563 U.S. 170 (2011) ....... passim

*Franks v. Delaware*, 438 U.S. 154 (1978)

*Harrington v. Richter*, 562 U.S. 86 (2011)

*Kyles v. Whitley*, 514 U.S. 419 (1995)

*McQuiggin v. Perkins*, 569 U.S. 383 (2013)

*Missouri v. Frye*, 566 U.S. 134 (2012)

*Santobello v. New York*, 404 U.S. 257 (1971)

*Schlup v. Delo*, 513 U.S. 298 (1995)

*Tollett v. Henderson*, 411 U.S. 258 (1973)

*United States v. Ruiz*, 536 U.S. 622 (2002)

*Williams v. Taylor*, 529 U.S. 420 (2000)

*Amado v. Gonzalez*, 758 F.3d 1119 (9th Cir. 2014)

*Bauman v. U.S. Dist. Court*, 557 F.2d 650 (9th Cir. 1977)

*Brown v. Poole*, 337 F.3d 1155 (9th Cir. 2003)

*Buckley v. Terhune*, 441 F.3d 688 (9th Cir. 2006) (en banc)

*Calderon v. U.S. Dist. Court*, 98 F.3d 1102 (9th Cir. 1996)

*Costanich v. Dep't of Soc. & Health Servs.*, 627 F.3d 1101 (9th Cir. 2010)

*Dickens v. Ryan*, 740 F.3d 1302 (9th Cir. 2014) (en banc) ....... passim

*Gonzalez v. Wong*, 667 F.3d 965 (9th Cir. 2011)

*Iaea v. Sunn*, 800 F.2d 861 (9th Cir. 1986)

*In re Kirkland*, 75 F.4th 1030 (9th Cir. 2023)

*In re Morris*, 363 F.3d 891 (9th Cir. 2004)

*Pirtle v. Morgan*, 313 F.3d 1160 (9th Cir. 2002)

*Sanchez v. United States*, 50 F.3d 1448 (9th Cir. 1995)

*Smith v. Baldwin*, 510 F.3d 1127 (9th Cir. 2007) (en banc)


*People v. Neidinger*, 40 Cal.4th 67 (2006)

## CONSTITUTIONAL PROVISIONS AND STATUTES


U.S. Const. art. I, § 9, cl. 2 (Suspension Clause)

U.S. Const. amend. V (Due Process)

U.S. Const. amend. XIV (Due Process)

28 U.S.C. § 1651(a) (All Writs Act)

28 U.S.C. § 2254

Cal. Penal Code § 278.5(a)

Cal. Penal Code § 278.7

Cal. Evid. Code § 1040

Cal. Gov. Code § 7923.600


## RULES


Fed. R. App. P. 21

Rules 6 and 7, Rules Governing § 2254 Cases

CALCRIM No. 1251

# EXECUTIVE SUMMARY

***Prefatory Statement.*** In 2021, a stay-at-home father caring for his autistic son contacted the San Diego District Attorney, invoking the good cause defense under California Penal Code § 278.7. For fourteen months, he complied with every condition the DA imposed, documented in emails later suppressed. CPS cleared him. The FBI interviewed him and cleared him. His son — then fifteen — walked into a police station, filed a report requesting to live with his father. The State's own investigator told the father on tape he would "probably win at trial" and "the DA's office should never have accepted your case." DDA Balerio interviewed the son, found him "articulate and well spoken," and heard him say his father "saved" him.

Then Balerio buried all of it. She withheld fourteen months of § 278.7 compliance emails, the investigator's forty-seven recorded admissions that the case lacked merit, the son's interview, and the FBI transcript. She fabricated a threat narrative from an eleven-minute FBI call the government directed the father to make — and used it to cage a man with zero criminal history and zero flight risk for ninety days without bail, during which he suffered two STEMI heart attacks. She coerced a guilty plea and welched on the deal. The son — the alleged "victim" — returned to live with his father voluntarily on his eighteenth birthday. All of this is recorded.

The District Attorney's position is that this is acceptable. The Attorney General's position is that this is acceptable. And now the district court — which has refused to docket two traverses presenting this evidence, ignored two ADA accommodation requests, ignored a formal docketing demand under Fed. R. Civ. P. 5(d)(2) and 79(a), and declined to order production of the Brady material or an affidavit certifying its nonexistence — appears to agree. Petitioner seeks mandamus to ensure the evidence is reviewed and an innocent man is not denied his day in court because every institution in the chain has chosen to look away.

The San Diego District Attorney's position is that it is permissible to suppress recorded evidence proving a defendant would "probably win at trial," cage him for ninety days without bail, coerce a guilty plea, and then invoke that coerced plea as a bar to review. The California Attorney General's position is the same. The United States District Court for the Southern District of California has now adopted it. That is not how the Constitution works. And it is not how binding Ninth Circuit or United States Supreme Court precedent works, either.

On May 16, 2025, the district court ordered the Attorney General to lodge "**all records bearing on the merits of Petitioner's claims.**" ECF No. 8 at 4. The court used this language deliberately. It did not say "transcripts." It did not say "clerk's records." It said *all records bearing on the merits.*

The Attorney General did not comply. She lodged transcripts and Petitioner's own filings. She did not lodge the prosecution file. On October 10, 2025, she admitted in writing: "We do not possess the prosecution or defense file for this case." She simultaneously revealed that she *never requested it* from the San Diego District Attorney's Office. She then certified the record "complete."

The district court accepted this. On December 11, 2025, it found the lodgment "complete" (ECF No. 25)—defining "all records bearing on the merits" as transcripts and nothing more. On February 11, 2026, the district judge affirmed, writing: "None of the materials Petitioner seeks were part of the record before the state court." ECF No. 33 at 2 (Appendix A to this Petition).

That statement is demonstrably false. The *Brady* material *is* in the record—because Petitioner put it there. The moment he was released from incarceration, he gave the suppressed evidence to his public defender, who refused to investigate. He then filed it himself in eleven separate proceedings across three levels of the California court system. He filed it in this Court's own docket. The evidence is not missing. It is being *excluded*—excluded because the district court applied *Cullen v. Pinholster*, 563 U.S. 170 (2011), without ever determining whether any state court adjudicated the *Brady* claims on the merits. None did.

What the suppressed evidence proves—and what no court has ever reviewed on the merits—is this:

The District Attorney's own investigators knew there was no case. DAI Steven McIntosh, the first investigator assigned, was cooperative—he emailed Petitioner that the child's mother "is willing to give over custody" (3-SER-319) and directed Petitioner to contact the FBI to resolve a jurisdictional conflict. DAI Luis Peña, who took over the investigation, recorded his conclusions in a three-hour telephone call on September 7, 2022:

"You definitely will get a trial and personally, I think you'll win that." (02:31:23)

"The DA's office should never have accepted your case because he was 14 when this all started on paper." (02:54:47)

*"I think you have good cause for sure." (02:38:13) (Exhibit I).*

"I don't want to file charges or write a warrant for your arrest because I believe this should be handling in family court." (02:21:43)

The DA did nothing for over a year—because both investigators knew there was no prosecutable case. Then DDA Balerio manufactured one.

In December 2022, Balerio took an eleven-minute FBI call—a call the government itself had directed Petitioner to make—and extracted fragments to fabricate a "threat" narrative. On that call, Petitioner stated three separate times: "I

am not making any threats. I need to make that perfectly clear. I've not made any threats whatsoever. I'm not a violent person." (00:06:33–37). The FBI operator responded: "Thank you for calling the FBI. I hope you have a great day today." The FBI investigated, met with Petitioner in person at their San Diego field office, and *cleared him completely*. Balerio never charged PC § 422 (criminal threats)—because she knew the full transcript would destroy her fabrication. She *never disclosed* the FBI clearance or the full transcript. She used the fragments to cage Petitioner for ninety days without bail. *See* Traverse Appendix A, Part V (complete FBI transcript and clearance documentation).

Peña signed the arrest warrant despite telling Petitioner on tape that he did not believe probable cause existed. His supervisors told him: "Just finish the damn warrant and don't worry about it" (00:27:12). The warrant affidavit omitted eight months of PC § 278.7 defense documentation, Peña's own assessment that Petitioner would "probably win," McIntosh's documentation that the mother had agreed to transfer custody, and Bryce's own statements wanting to live with his father. An arrest warrant affidavit that omits all exculpatory evidence known to the affiant is perjury under *Franks v. Delaware*, 438 U.S. 154 (1978). *See* Traverse Appendix A, Part I (complete Peña transcript analysis with more than 47 timestamped admissions).

While Petitioner sat in jail on this perjured warrant, DDA Balerio interviewed his son Bryce—the alleged "victim." Bryce told her: "My dad didn't do anything wrong. He saved me per my request." He said he "could have left at any given point" and that he "want[ed] to be a witness for [his] dad." Balerio never disclosed that this interview occurred. She suppressed the tape and prosecuted anyway. *See* Traverse Appendix A, Part II (complete Balerio/Bryce interview transcript with timestamps).

On April 3, 2023—the morning of trial—after ninety days of detention on fabricated grounds, two STEMI heart attacks, and severe medical deterioration, Petitioner accepted a guilty plea. Every piece of exculpatory evidence was withheld. The plea was predicated on an explicit promise that his son Bryce would be allowed to return home. Defense counsel Badillo confirmed: "the DA knows...that you resolved the case based on the conversation she and I had with Andrea" (5-SER-798, 00:16:58). *See* Traverse Appendix A, Part IV (welched plea deal recordings with timestamps).

DDA Balerio and Andrea Schuck immediately reneged. Schuck conditioned Bryce's return on Petitioner dropping his civil rights claims: "I will not send an offer...until you drop the civil and appeal case. FULL STOP." Balerio was CC'd on this email and did nothing. For two and a half years, Petitioner's son was held hostage to a broken promise by the very people who coerced the plea that was supposed to bring him home.

This is what the district court has refused to review. This is what the Attorney General has refused to produce. And this is what *Cullen v. Pinholster* is being weaponized to exclude—not because the evidence is unreliable or immaterial, but because the prosecution successfully hid it from the state courts and the federal court will not look at it because it is not in the state record the prosecution corrupted.

The United States Supreme Court has already said this is unconstitutional. *Banks v. Dretke*, 540 U.S. 668, 696 (2004): "A rule thus declaring 'prosecutor may hide, defendant must seek,' is not tenable in a system constitutionally bound to accord defendants due process." Common decency should have said so, too.

The district court had the discretion under Rules 6 and 7 of the Rules Governing § 2254 Cases to order the Attorney General to produce the prosecution file—or to require an affidavit explaining why it could not be produced. It did neither. Instead, it chose to hide behind *Pinholster*—a doctrine the Supreme Court expressly limited to claims "adjudicated on the merits," 563 U.S. at 187–88 n.10, and that this Court, sitting en banc, held inapplicable to unadjudicated claims. *Dickens v. Ryan*, 740 F.3d 1302, 1321 (9th Cir. 2014) (en banc).

Three additional failures compound the constitutional injury. First, Petitioner's original traverse—hand-delivered to the Clerk's office on January 16, 2026—has never been docketed. His revised traverse filed February 20, 2026 likewise remains undocketed. A supplemental brief filed January 31 was docketed

within one business day (ECF No. 29)—demonstrating that the Clerk is capable of timely docketing when it chooses. On February 24, 2026, Petitioner sent a formal written request to the Clerk citing Fed. R. Civ. P. 5(d)(2) and 79(a). No response was received. Second, two ADA accommodation requests—filed January 16 and February 20 pursuant to 42 U.S.C. § 12132—have never been granted, denied, or adjudicated, and no interactive process has been undertaken as required by *Tennessee v. Lane*, 541 U.S. 509, 533–34 (2004). Third, and most fundamentally: no court at any level has ever ordered the prosecution to produce the Brady material or certify under oath that it does not exist. The district court had the tools. Rules 6 and 7 of the Rules Governing § 2254 Cases authorized it to expand the record and compel production. It chose silence—and that silence now extends to Petitioner's filings, Petitioner's accommodation requests, and Petitioner's constitutional claims alike.

That is the position of the San Diego District Attorney. That is the position of the California Attorney General. And that is now the position of the United States District Court for the Southern District of California.

It is not, however, the position of this Court. This Court has already held—in binding en banc authority the district court failed to cite—that *Pinholster*'s limitation does not apply to claims never adjudicated on the merits. *Dickens*, 740 F.3d at 1321. This petition asks the Court to enforce its own precedent.

# I. INTRODUCTION AND RELIEF REQUESTED

If *Brady*-suppressed evidence is not in the state court record because the prosecutor hid it, and the federal court refuses to consider it because it is not in the state court record, then in what forum does the Constitution require *Brady* violations to be reviewed?

The United States Supreme Court has answered this question: "[A] rule thus declaring 'prosecutor may hide, defendant must seek,' is not tenable in a system constitutionally bound to accord defendants due process." *Banks v. Dretke*, 540 U.S. 668, 696 (2004). As the foregoing Executive Summary demonstrates, the district court has adopted precisely this untenable framework. Mandamus is the only available vehicle to correct this structural error before final judgment; delay would ratify the very *Brady* violation that *Banks v. Dretke* forbids. This section identifies the three specific legal errors that independently warrant mandamus relief.

A. The District Court's Errors

*First*, the district court applied *Cullen v. Pinholster*'s record limitation without the threshold merits-adjudication determination that is the precondition to its application. *Pinholster* itself limits § 2254(d)(1) review to the state court record only for claims "adjudicated on the merits." 563 U.S. 170, 181 (2011). The Court expressly reserved the question of unadjudicated claims: "We do not decide what

standard applies when a state court disposes of a claim on procedural grounds." 131 S.Ct. at 1401 n.10.

This Court answered that reserved question in binding en banc authority. *Dickens v. Ryan*, 740 F.3d 1302, 1321 (9th Cir. 2014) (en banc): "[W]here a state court does not decide a claim on the merits, § 2254(d) is inapplicable, and the federal court reviews the claim de novo." *See also Gonzalez v. Wong*, 667 F.3d 965, 979 (9th Cir. 2011) (*Pinholster* inapplicable to *Brady* claim where state court never reached the merits); *Pirtle v. Morgan*, 313 F.3d 1160, 1167 (9th Cir. 2002) (no merits adjudication requires de novo review with full evidentiary development); *Amado v. Gonzalez*, 758 F.3d 1119, 1135–37 (9th Cir. 2014) (state court's procedural dismissal of *Brady* claim did not survive AEDPA; habeas granted after de novo review).

No California court adjudicated Petitioner's *Brady* claims on the merits. The Attorney General herself concedes that Ground Three (*Brady*) is exhausted. ECF No. 16 at 5. Exhausted but unadjudicated on the merits means de novo federal review under *Dickens*—not *Pinholster* exclusion. Yet the district court's February 11, 2026 Order (ECF No. 33) applied *Pinholster* categorically. It never cited *Dickens*, *Gonzalez*, *Pirtle*, or *Amado*. It never identified which state court purportedly adjudicated the *Brady* claims on the merits. It never made the threshold determination. This is clear legal error—not a close call.

*Second,* the district court abdicated its authority under Rules 6 and 7 of the Rules Governing § 2254 Cases. The court's own order directed the Attorney General to lodge "all records bearing on the merits of Petitioner's claims." ECF No. 8 at 4. When the Attorney General admitted she never requested the prosecution file from the District Attorney—the file containing the suppressed recordings at the heart of Petitioner's *Brady* claims—the court accepted the certification of "completeness" without inquiry. The court had discretionary authority to order production or require an affidavit explaining the deficiency. It exercised neither. That is not deference. It is abdication.

Third, the district court's framework allows the State to profit from its own suppression—the precise result *Banks* declared untenable. 540 U.S. at 696.

B. The Evidence

The magnitude of the suppressed evidence is documented in the Executive Summary supra, Petitioner's Traverse Appendix A (Exhibit I), and Exhibit G. It includes six categories of material exculpatory evidence—none of which any court has ever reviewed on the merits.

C. Relief Requested

Petitioner respectfully requests that this Court issue a writ of mandamus directing the United States District Court for the Southern District of California to:

**1. VACATE** the portion of its February 11, 2026 Order (ECF No. 33) that excludes Petitioner's evidence under *Cullen v. Pinholster* without the threshold merits-adjudication determination required by *Dickens v. Ryan*, 740 F.3d 1302, 1321 (9th Cir. 2014) (en banc).

**2. DIRECT** the District Court to determine, as a prerequisite to applying § 2254(d) deference, whether any California court adjudicated Petitioner's *Brady* claims on the merits—and if not, to conduct de novo review with full evidentiary development as required by *Dickens v. Ryan*, 740 F.3d 1302, 1321 (9th Cir. 2014) (en banc), and *Pirtle v. Morgan*, 313 F.3d 1160, 1167 (9th Cir. 2002).

**3. ORDER** the Attorney General, pursuant to Rule 7 of the Rules Governing § 2254 Cases, to obtain and lodge the complete prosecution file from the San Diego District Attorney's Office, including the suppressed recordings that are the subject of Petitioner's *Brady* claims.

**4. GRANT** expedited consideration of this petition and, if necessary, a temporary stay of district court proceedings pending resolution.

In the alternative, Petitioner requests any other relief this Court deems just and appropriate.

## II. STATEMENT OF JURISDICTION

This Court has jurisdiction under the All Writs Act, 28 U.S.C. § 1651(a), which authorizes federal courts to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." The writ of mandamus is a "drastic and extraordinary remedy reserved for really extraordinary causes." *Cheney v. U.S. Dist. Court*, 542 U.S. 367, 380 (2004).

The district court's February 11, 2026 Order (ECF No. 33) is not a final judgment subject to appeal under 28 U.S.C. § 1291. It is an interlocutory ruling that establishes the legal framework under which Petitioner's habeas claims will be adjudicated—a framework that categorically excludes the evidence proving those claims. Because no adequate alternative remedy exists to correct this structural error before it produces a final judgment on a corrupted record, mandamus is the only available vehicle. *See Calderon v. U.S. Dist. Court (Nicolaus)*, 98 F.3d 1102, 1105 (9th Cir. 1996).

## III. STATEMENT OF THE ISSUES

**1.** Whether a district court commits clear legal error by applying *Cullen v. Pinholster*'s record-limitation rule to exclude a petitioner's evidence without first determining that the relevant state court "adjudicated the claim on the merits"—the threshold finding required by *Pinholster* itself, 563 U.S. 170, 187–88 n.10 (2011),

and by this Court's binding en banc decision in *Dickens v. Ryan*, 740 F.3d 1302, 1321 (9th Cir. 2014) (en banc), and confirmed in *Amado v. Gonzalez*, 758 F.3d 1119, 1135–37 (9th Cir. 2014).

**2.** Whether *Pinholster* bars federal habeas review of *Brady* material that is absent from the state court record because the prosecution suppressed it, where no state court adjudicated the *Brady* claim on the merits despite Petitioner raising the claim through eleven separate procedural vehicles across three levels of state courts—and where the Attorney General concedes the claim is exhausted. ECF No. 16 at 5.

**3.** Whether a district court abuses its discretion under Rules 6 and 7 of the Rules Governing § 2254 Cases by accepting the Attorney General's certification that the state court record is "complete" and refusing to expand the record, where the Attorney General admits she never requested the prosecution file from the District Attorney—the file containing the suppressed recordings at the heart of Petitioner's *Brady* claims—and where the court's own order required lodgment of "all records bearing on the merits." ECF No. 8 at 4.

## IV. STATEMENT OF FACTS AND PROCEDURAL HISTORY

### A. The Underlying Prosecution and Suppressed Evidence

On September 7, 2022, Petitioner participated in a three-hour recorded telephone conversation with District Attorney Investigator Luis Peña regarding allegations under California Penal Code § 278.5(a). During that call, DAI Peña made forty-seven timestamped admissions that the prosecution was baseless, including that Petitioner had "good cause for sure" and would "probably win at trial." *See* Traverse Appendix A, Part I (forensic transcript analysis with timestamps). DAI Peña further stated: "I don't want to file charges or write a warrant for your arrest because I believe this should be handl[ed] in family court." *Id.* at 02:21:43. None of these admissions were disclosed to the defense.

On February 17, 2023, Deputy District Attorney Balerio interviewed the alleged victim—Petitioner's then-fifteen-year-old son, Bryce—who told the prosecutor over thirty-two minutes that his father "did nothing wrong." *See* Traverse Appendix A, Part II. DDA Balerio promised Bryce the case would be resolved, then suppressed the recording and continued prosecution. The defense was never informed this interview occurred. Traverse Appendix A, Part III (Badillo recording: defense counsel confirms interview "never disclosed").

Additional suppressed evidence includes: an FBI call transcript proving Petitioner made no threats—directly contradicting the prosecution's "danger to community" narrative used to secure ninety days of pretrial detention (Traverse Appendix A, Part V); recorded evidence of a plea agreement the prosecution

immediately breached (Traverse Appendix A, Part IV); California Penal Code § 278.7 defense evidence including a CPS clearance letter finding no abuse or neglect (Traverse Appendix A, Part V); and recorded statements by the prosecution's own complaining witness, Andrea Schuck, negating the essential "malice" element of PC § 278.5(a) (Exhibit G). In total, the prosecution suppressed six categories of material exculpatory evidence across the duration of the case. This evidence is not impeachment material subject to *United States v. Ruiz*, 536 U.S. 622 (2002)—it is core exculpatory evidence that proves the absence of the crime's essential element.

Petitioner entered a guilty plea on April 3, 2023. He was COVID-symptomatic on the morning of trial, had been detained for ninety days on the strength of the fabricated threat narrative, and was entirely unaware of the exculpatory evidence the prosecution was withholding. The plea was predicated on an explicit promise—confirmed by defense counsel on tape—that his son Bryce would be allowed to return home. *See Brown v. Poole*, 337 F.3d 1155, 1159 (9th Cir. 2003) (off-the-record oral promise inducing plea is enforceable; habeas granted); *Buckley v. Terhune*, 441 F.3d 688, 694 (9th Cir. 2006) (en banc) (plea agreements are contracts under *Santobello*; due process right to enforcement). He did not discover the suppressed evidence until approximately four months after his plea—a temporal impossibility that defeats any argument that the plea constituted waiver of the *Brady* claims.

## B. The State Court Proceedings

Upon discovering the suppressed evidence, Petitioner immediately provided it to his public defender, who refused to investigate. Petitioner then raised the *Brady* claims through eleven separate procedural vehicles across three levels of California courts. At the trial court level, Petitioner filed a motion to disqualify the District Attorney under Penal Code § 1424, a motion to dismiss, ex parte motions, a motion to withdraw the guilty plea, and two *Marsden* motions. The trial court refused to hear the Peña recording and denied all motions. Lodgment 14 ("The motion is denied. ... You have your record.").

On direct appeal, appointed counsel filed a *Wende* brief—which by definition identifies no arguable issues. *Smith v. Robbins*, 528 U.S. 259, 265 (2000). The Court of Appeal summarily denied without addressing the *Brady* claims. Lodgments 20–21. In the California Supreme Court, Petitioner submitted approximately 300 pages of exhibits documenting the suppressed evidence. The court returned the exhibits unfiled because they exceeded the page limit, then denied the petition without discussion. Lodgments 53, 25. The operative language of the Superior Court habeas order—"ORDER TAKING NO ACTION"—confirms by its terms that no court adjudicated Petitioner's claims on the merits. Lodgment 22.

The Attorney General's own lodgments prove each of these facts. Petitioner does not ask this Court to take his word for it—the record the State itself lodged establishes the obstruction. That is not waiver. That is exhaustion. The Attorney General concedes as much: Ground Three (*Brady*) is exhausted. ECF No. 16 at 5.

## C. The Federal Habeas Proceedings

Petitioner filed a federal habeas petition under 28 U.S.C. § 2254 in the Southern District of California. On May 16, 2025, the district court ordered the Attorney General to lodge "all records bearing on the merits of Petitioner's claims." ECF No. 8 at 5, ¶ 6. The court used this sweeping language three separate times in the same order. ECF No. 8 at 4–5.

On September 22, 2025, the Attorney General lodged clerk's transcripts, reporter's transcripts, and Petitioner's own state court filings—but not the prosecution file. ECF No. 14. On October 10, 2025, Deputy Attorney General Kristen Chenelia admitted in writing: "We have lodged with the court and supplied you with all documents in our possession pertaining to your case." Exhibits F, J. When Petitioner asked whether the Attorney General had requested the prosecution file from the District Attorney, Deputy AG Chenelia fell silent. She has never answered that question. The reason is clear: she never requested it.

Petitioner went further. On February 8, 2026, he filed a California Public Records Act request directly with the San Diego District Attorney's Office requesting the complete prosecution file across eight categories—the same categories the Attorney General admitted she never requested before certifying the lodgment "complete." Gov. Code § 7920 et seq. The District Attorney's response, received February 18, 2026, formally denied the request in its entirety. (Exhibit L.) The DA invoked Government Code § 7923.600 (investigatory records exemption) and Evidence Code § 1040 (official information privilege), and issued a "Glomar" response—refusing to "confirm nor deny" the existence of the Peña recordings. This from the office whose own investigator made the recordings, and whose contents Petitioner has already filed in this Court's own docket. The DA is not protecting an investigation. The DA is protecting a conviction.

This denial independently defeats any argument under 28 U.S.C. § 2254(e)(2) that Petitioner "failed to develop" the factual basis of his claims. Section 2254(e)(2) bars evidentiary hearings only when the petitioner bears responsibility for the undeveloped record. *Williams v. Taylor*, 529 U.S. 420, 432 (2000). Here, the State has formally refused to produce the evidence through every available channel—judicial orders, informal requests, safe harbor demands, and now public records law. Petitioner did not fail to develop the record. The State is preventing its development.

As of this filing, every institution possessing the suppressed evidence—the District Attorney, the Attorney General, and the district court—refuses to produce it.

On December 11, 2025, Magistrate Judge Major found the lodgment "complete" by equating clerk's and reporter's transcripts with "all records bearing on the merits." ECF No. 25 at 3. On February 11, 2026, Judge Robinson overruled Petitioner's Rule 72(a) objection and applied *Cullen v. Pinholster* to exclude the suppressed evidence from federal review. ECF No. 33 at 2. Robinson's order never cited *Dickens v. Ryan*, 740 F.3d 1302 (9th Cir. 2014) (en banc). It never cited *Gonzalez v. Wong*, 667 F.3d 965 (9th Cir. 2011), *Pirtle v. Morgan*, 313 F.3d 1160 (9th Cir. 2002), or *Amado v. Gonzalez*, 758 F.3d 1119 (9th Cir. 2014). It never identified which state court purportedly adjudicated the *Brady* claims on the merits. It never made the threshold determination that is the precondition to *Pinholster*'s application.

## D. The Resulting Structural Impossibility

The record now establishes a three-tier pattern of institutional protection. The District Attorney suppressed six categories of exculpatory evidence and coerced a guilty plea. The Attorney General, ordered to lodge "all records bearing on the merits," never requested the prosecution file containing that evidence—then certified the record as "complete." The district court excluded the evidence from federal review because it was absent from the state record the prosecution had

corrupted. No court—state or federal—has ever reviewed the suppressed evidence on the merits.

The suppressed evidence does not merely support a defense—it negates a required element of the offense. A conviction under § 278.5(a) requires proof that the defendant acted "maliciously," meaning with "the unlawful intent to disturb, defraud, annoy, or injure someone else." CALCRIM No. 1251; *see People v. Neidinger*, 40 Cal.4th 67 (2006). The suppressed recordings of Andrea Schuck—Bryce's mother and the prosecution's complaining witness—prove the affirmative opposite of malice: "I never wanted you arrested" (00:47:31); "I do want to share the kids with you" (00:05:11). Petitioner invited Ms. Schuck to spend Christmas morning with the family, invited her on two Disney World vacations, and was invited by her to dinner and church after his release—conduct entirely inconsistent with a malicious crime. *See* Exhibits G, I (complete malice-negation evidence and recorded admissions analysis). Petitioner immediately notified the District Attorney's Office, the Escondido Police Department, and Child Protective Services upon taking emergency custody. CPS investigated and cleared Petitioner of abuse or neglect. These facts establish the § 278.7 defense and simultaneously negate the malice element the prosecution was required to prove beyond a reasonable doubt. All of this evidence was suppressed.

The ultimate vindication of Petitioner's claims is not hypothetical. Bryce—the alleged "abduction victim"—returned to live with Petitioner on his eighteenth birthday. In six months, he completed his high school diploma, obtained his driver's permit, and enrolled in college. The prosecution's theory that Petitioner "abducted" his own son has been refuted by the only person whose testimony matters—the son himself.

## V. ARGUMENT

Mandamus is a "drastic and extraordinary remedy reserved for really extraordinary causes." *Cheney v. U.S. Dist. Court*, 542 U.S. 367, 380 (2004). This Court evaluates mandamus petitions under five factors: (1) whether the petitioner has no other adequate means to attain the relief sought; (2) whether the right to issuance of the writ is "clear and indisputable"; (3) whether the issuing court, in its discretion, is satisfied the writ is appropriate under the circumstances; (4) whether the issue is novel and of first impression; and (5) whether the issue is likely to recur and evade review. *Bauman v. U.S. Dist. Court*, 557 F.2d 650, 654–55 (9th Cir. 1977). This Court is "neither compelled to grant the writ when all five factors are present, nor prohibited from doing so when fewer than five, or only one, are present." *In re Kirkland*, 75 F.4th 1030, 1041 (9th Cir. 2023). All five factors are satisfied here.

**A. The District Court Committed Clear Legal Error (Bauman Factor 3)**

## 1. *Pinholster* Does Not Apply Without a Merits Adjudication

*Cullen v. Pinholster* limits § 2254(d)(1) review to the state court record, but only for claims "adjudicated on the merits in State court proceedings." 563 U.S. 170, 181 (2011). The Court expressly reserved the question of unadjudicated claims: "We do not decide what standard applies when a state court disposes of a claim on procedural grounds." 131 S.Ct. at 1401 n.10.

This Court answered that reserved question in binding en banc authority. In *Dickens v. Ryan*, 740 F.3d 1302, 1321 (9th Cir. 2014) (en banc), this Court held: "[W]here a state court does not decide a claim on the merits, § 2254(d) is inapplicable, and the federal court reviews the claim de novo." *See also Gonzalez v. Wong*, 667 F.3d 965, 979 (9th Cir. 2011) (*Pinholster* inapplicable to *Brady* claim where state court never reached the merits); *Pirtle v. Morgan*, 313 F.3d 1160, 1167 (9th Cir. 2002) (no merits adjudication requires de novo review with full evidentiary development).

This Court's decision in *Amado v. Gonzalez*, 758 F.3d 1119 (9th Cir. 2014), is directly on point. In *Amado*, the California Court of Appeal dismissed a *Brady* claim on procedural grounds. This Court held the state court's dismissal was "contrary to clearly established Federal law," reviewed the *Brady* claim de novo, and granted habeas relief. *Id.* at 1135–37. The panel emphasized: "The prosecutor's

000148
000031
188

obligation under *Brady* is not excused by a defense counsel's failure to exercise diligence with respect to suppressed evidence." *Id.* at 1136. If *Amado*'s state court—which at least discussed the *Brady* evidence before dismissing procedurally—did not render a merits adjudication triggering *Pinholster*, then Petitioner's state courts—which returned exhibits unread, took "no action," and filed *Wende* briefs raising nothing—certainly did not. *Cone v. Bell*, 556 U.S. 449, 472 (2009) (de novo review required when state courts dismissed *Brady* claims on procedural grounds without reaching the merits).

The district court's February 11, 2026 Order applied *Pinholster* categorically. ECF No. 33 at 2. It never cited *Dickens*, *Gonzalez*, *Pirtle*, *Amado*, or *Cone*. It never identified which California court purportedly adjudicated Petitioner's *Brady* claims on the merits. It never made the threshold determination that is the precondition to *Pinholster*'s application. A district court that applies a record-limitation rule without satisfying the rule's threshold condition—while ignoring binding en banc authority directly on point—commits clear legal error. This is not a close call.

*Tollett v. Henderson*, 411 U.S. 258 (1973), does not alter this analysis—though the Attorney General has invoked it. ECF No. 16 at 2. *Tollett* bars review of waived pre-plea defects, not claims that a plea was rendered involuntary by undisclosed exculpatory evidence proving factual innocence. *See United States v. Ruiz*, 536 U.S. 622 (2002) (distinguishing impeachment from core exculpatory

evidence—inapposite here). The Ninth Circuit has squarely held that *Tollett* "does not bar a *Brady* claim if the petitioner contends that his guilty plea was not voluntary and intelligent because the plea was made in the absence of withheld *Brady* material." *Sanchez v. United States*, 50 F.3d 1448, 1453–54 (9th Cir. 1995).

### 2. The *Richter* Presumption Is Rebutted by the State's Own Record

The district court may have assumed that the California Supreme Court's form denial constituted a merits adjudication under *Harrington v. Richter*, 562 U.S. 86, 99 (2011). But *Richter*'s presumption applies only "absent indication to the contrary." *Id.* And the presumption is "quite weak" when "evidence that the state court did not address the federal claim" exists. *Johnson v. Williams*, 568 U.S. 289, 301 (2013).

The Attorney General's own lodgments provide the "indication to the contrary." The California Superior Court issued an "ORDER TAKING NO ACTION" on the habeas petition—not a denial, a refusal to engage. Lodgment 22. The California Supreme Court returned approximately 300 pages of exhibits unfiled because they exceeded the page limit, then denied the petition—without ever reviewing the evidence that was the basis of the *Brady* claims. Lodgment 53. On direct appeal, appointed counsel filed a *Wende* brief, which by definition identifies no arguable issues and cannot constitute a merits adjudication of claims the brief

does not raise. *Smith v. Robbins*, 528 U.S. 259, 265 (2000); Lodgments 20–21. A court that returns evidence unread cannot have adjudicated the claims that evidence supports.

The Attorney General herself concedes that Ground Three (*Brady*) is exhausted. ECF No. 16 at 5. A claim that is exhausted but never adjudicated on the merits receives de novo federal review under *Dickens*—not *Pinholster* exclusion. The district court applied the wrong framework.

### 3. The District Court Abdicated Its Rule 6 and Rule 7 Authority

Rule 7 of the Rules Governing § 2254 Cases authorizes the court to "direct the parties to expand the record by submitting additional materials relating to the petition." The district court's own May 16, 2025 order directed the Attorney General to lodge "all records bearing on the merits of Petitioner's claims." ECF No. 8 at 5, ¶ 6. The court used this sweeping language three times in the same order. ECF No. 8 at 4–5.

When the Attorney General admitted in writing that she never requested the prosecution file from the District Attorney—the file containing the suppressed recordings at the heart of Petitioner's *Brady* claims—the district court had both the authority and the obligation to act. It could have ordered the Attorney General to obtain the file. It could have required an affidavit explaining why the file was not

000151

000034

154

requested. It could have issued a Rule 7 order expanding the record. It did none of these things. It accepted a certification of "completeness" for a record that the certifying party admitted she never tried to complete. That is not deference. It is abdication.

## 4. Section 2254(e)(2) Does Not Bar Evidentiary Development

Even if the *Richter* presumption were not rebutted, § 2254(e)(2) does not bar evidentiary development. That provision applies only when a petitioner "has failed to develop the factual basis of a claim in State court proceedings." 28 U.S.C. § 2254(e)(2). A petitioner has not "failed to develop" the facts when he was diligent but circumstances beyond his control prevented development. *Williams v. Taylor*, 529 U.S. 420, 432 (2000). Petitioner raised the suppressed evidence through eleven separate procedural vehicles in state court—every one was denied without merits review. Lodgments 3, 6, 14, 20–25, 53. The California Supreme Court returned 300 pages of exhibits unread. Lodgment 53. This is not a failure to develop. It is a failure of every court to permit development. Section 2254(e)(2) does not reward the State's obstruction any more than *Pinholster* does.

The DA's formal CPRA denial (Exhibit L) eliminates any possible reliance on § 2254(e)(2) to deny an evidentiary hearing. The State cannot suppress evidence during prosecution, invoke privilege to hide it during post-conviction review, and

then argue the petitioner "failed to develop" the record. That is the definition of the structural impossibility this Court's mandamus authority exists to correct.

## B. Petitioner Has No Other Adequate Means to Attain Relief (Bauman Factor 1)

If Petitioner proceeds to final judgment on the current record, his *Brady* claims will be adjudicated without the evidence that proves them—because that evidence has been categorically excluded. The result is predetermined: denial on a truncated record. An appeal from that denial would require this Court to remand for the very evidentiary development the district court has refused to permit, wasting years in a case where the petitioner has already pursued relief for over three years across seven courts.

This Court has granted mandamus in precisely these circumstances. In *Calderon v. U.S. Dist. Court (Nicolaus)*, 98 F.3d 1102, 1105 (9th Cir. 1996), this Court issued the writ in a habeas case where the district court's legal framework was fundamentally flawed. The purpose of mandamus is to prevent structural errors from contaminating final judgment—not to force petitioners to litigate through a defective process, lose, appeal, obtain a remand, and start over. *See also Cheney*, 542 U.S. at 380–81 (mandamus appropriate to correct "clear abuse of discretion" before irreparable harm). The structural defect here cannot be cured on appeal without

remand, and remand would only require the district court to do what mandamus would direct it to do now: make the threshold *Pinholster* determination and consider the suppressed evidence.

This case is distinguishable from *In re Morris*, 363 F.3d 891 (9th Cir. 2004), where this Court denied mandamus in a habeas case as premature because the district court had not yet ruled on the disputed issue. Here, Robinson *has* ruled. The February 11, 2026 Order categorically excludes the suppressed evidence under *Pinholster* without making the threshold determination *Dickens* requires. ECF No. 33. The traverse will be adjudicated under this defective framework. A post-judgment appeal would require this Court to remand for the very determination mandamus would direct now—adding years to a case already spanning three years across seven courts, with no change in outcome. That is not an adequate alternative remedy. It is a detour to the same destination.

The human cost of that detour is not abstract: Petitioner has suffered two STEMI heart attacks since his release, and the ongoing constitutional deprivation imposes irreparable harm that no post-judgment remedy can cure.

This is not a petitioner who slept on his rights. The eleven separate procedural vehicles documented in Section IV.B—and confirmed by the Attorney General's own lodgments—demonstrate exhaustion of every remedy the legal system provides. Mandamus is not his first resort—it is his last.

The procedural hostility is further illustrated by the district court's February 13, 2026 Minute Order (ECF No. 35), which imposed a seven-day traverse deadline on a pro se litigant who receives all orders by U.S. Mail—a deadline Petitioner met only through independent docket monitoring. Exhibits H, K.

## C. Petitioner Will Suffer Irreparable Harm (Bauman Factor 2)

The harm is structural: once the traverse is adjudicated on an incomplete record, the exclusion of evidence becomes baked into the district court's merits determination. This Court would then review that determination under AEDPA deference—but the evidence proving the constitutional violations would never have been in the record. The exclusion is irreversible absent mandamus or remand.

The irreparable harm is compounded by the convergence of what the excluded evidence proves. The suppressed evidence simultaneously establishes three independent constitutional violations through the same factual record. *First*, actual innocence: the Schuck recordings, Peña admissions, CPS clearance, and § 278.7 emails negate the essential "malice" element of PC § 278.5(a) as a matter of law. Under *Schlup v. Delo*, 513 U.S. 298 (1995), and *Smith v. Baldwin*, 510 F.3d 1127 (9th Cir. 2007) (en banc), actual innocence overcomes all procedural barriers to federal review. *Second*, a complete statutory defense: the § 278.7 good-cause defense makes the charged conduct lawful. *Third*, plea involuntariness: under

*Sanchez v. United States*, 50 F.3d 1448, 1453–54 (9th Cir. 1995), suppression of this evidence renders the plea involuntary because no rational defendant would have pled guilty with knowledge of it; under *Santobello*, 404 U.S. at 262, the broken plea promise independently vitiates the plea. Petitioner's two STEMI heart attacks and federally-adjudicated disability render continued probation supervision and any further delay constitutionally intolerable.

Each of the six categories of suppressed evidence independently satisfies the *Sanchez* materiality standard—"a reasonable probability that but for the failure to disclose the *Brady* material, the defendant would have refused to plead guilty and would have gone to trial." 50 F.3d at 1454. Taken together, they create not merely a "reasonable probability" but an absolute certainty that any rational defendant would have rejected the plea. The *Sanchez* court warned that "prosecutors may be tempted to deliberately withhold exculpatory information as part of an attempt to elicit guilty pleas." *Id.* at 1453. This case is that scenario executed across six evidence categories simultaneously.

## D. This Case Presents a Novel Issue of First Impression That Is Likely to Recur and Evade Review (Bauman Factors 4 & 5)

The question presented—whether *Pinholster* can be weaponized to shield *Brady* violations from all judicial review—is one this Court has not directly

addressed. The structural pattern is straightforward and replicable: a prosecutor suppresses exculpatory evidence before trial, coerces a guilty plea, and the evidence never enters the state court record because it was hidden. The defendant discovers the evidence post-conviction, raises *Brady* claims in state court, and is denied on procedural grounds—no state court ever reviews the evidence. The defendant then seeks federal habeas relief, and the district court excludes the evidence under *Pinholster* because it was never in the state court record. The circle closes. The constitutional violation is insulated from review in any forum.

If this framework stands, *Brady*'s protections are nullified for any plea case in which the prosecution successfully hides exculpatory evidence. Any prosecutor who suppresses evidence before a plea can replicate this pattern. The more successful the concealment, the stronger the *Pinholster* bar becomes—rewarding the State for the magnitude of its own violation. This perverse incentive structure is flatly inconsistent with *Banks v. Dretke*, 540 U.S. 668, 696 (2004). Under *In re Kirkland*, 75 F.4th 1030, 1041 (9th Cir. 2023), this factor alone can justify the writ: the Court is "neither compelled to grant the writ when all five factors are present, nor prohibited from doing so when fewer than five, or only one, are present." *Id.*

This issue will recur. Guilty pleas account for approximately ninety-four percent of criminal convictions. *Missouri v. Frye*, 566 U.S. 134, 143 (2012). In every such case where evidence is suppressed before the plea, the prosecution can invoke

*Pinholster* to prevent federal review if the district court's framework is left uncorrected. The Suspension Clause demands that the writ of habeas corpus remain "an effective remedy"—not a procedural formality that ratifies constitutional violations through circular logic. U.S. Const. art. I, § 9, cl. 2; *Boumediene v. Bush*, 553 U.S. 723, 779 (2008). Only this Court can correct the structural error before it produces a final judgment on a corrupted record.

## VI. CONCLUSION

If *Brady*-suppressed evidence is not in the state court record because the prosecutor hid it, and the federal court refuses to consider it because it is not in the state court record, then in what forum does the Constitution require *Brady* violations to be reviewed?

The district court's framework provides no answer. Under its reasoning, the prosecutor's successful suppression of evidence before the plea becomes the permanent bar to reviewing that suppression after the plea. The more effective the concealment, the more impenetrable the bar. The United States Supreme Court rejected this precise logic: "A rule thus declaring 'prosecutor may hide, defendant must seek,' is not tenable in a system constitutionally bound to accord defendants due process." *Banks v. Dretke*, 540 U.S. 668, 696 (2004). The Constitution demands a forum. Mandamus is the vehicle to ensure one exists.

Petitioner respectfully requests that this Court issue a writ of mandamus directing the United States District Court for the Southern District of California to:

**1. VACATE** the portion of its February 11, 2026 Order (ECF No. 33) that excludes Petitioner's evidence under *Cullen v. Pinholster* without the threshold merits-adjudication determination required by *Dickens v. Ryan*, 740 F.3d 1302, 1321 (9th Cir. 2014) (en banc).

**2. DIRECT** the District Court to determine, as a prerequisite to applying § 2254(d) deference, whether any California court adjudicated Petitioner's *Brady* claims on the merits—and if not, to conduct de novo review with full evidentiary development as required by *Dickens v. Ryan*, 740 F.3d 1302, 1321 (9th Cir. 2014) (en banc), and *Pirtle v. Morgan*, 313 F.3d 1160, 1167 (9th Cir. 2002).

**3. ORDER** the Attorney General, pursuant to Rule 7 of the Rules Governing § 2254 Cases, to obtain and lodge the complete prosecution file from the San Diego District Attorney's Office, including the suppressed recordings that are the subject of Petitioner's *Brady* claims.

**4. GRANT** expedited consideration of this petition and, if necessary, a temporary stay of district court proceedings pending resolution.

In the alternative, Petitioner requests any other relief this Court deems just and appropriate.

Dated: 03/02/26

Respectfully submitted,

/s/ Robert Emert
**ROBERT EMERT**
Petitioner, Pro Se
Telephone: (760) 612-9328
Email: robemert@msn.com

# CERTIFICATE OF COMPLIANCE
## (FRAP 32(g); Cir. R. 21-2)

Pursuant to Federal Rule of Appellate Procedure 32(g) and Ninth Circuit Rule 21-2, the undersigned certifies that this Petition for Writ of Mandamus complies with the applicable type-volume limitation.

**1. Type-Volume Limitation.** This petition contains approximately 7,395 words, excluding the parts exempted by Fed. R. App. P. 32(f) and Cir. R. 21-2. This is within the 7,800-word limit prescribed by FRAP 21(d).

**2. Typeface and Type Style.** This petition has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman, as required by Fed. R. App. P. 32(a)(5)(A) and 32(a)(6).

Dated: 03/02/26

/s/ Robert Emert
**ROBERT EMERT**
Petitioner, Pro Se

# PROOF OF SERVICE

I, Robert Emert, declare under penalty of perjury that the following is true and correct:

On 03/03/26, I served the foregoing Petition for Writ of Mandamus, Certificate of Compliance, Motion for Leave to Proceed In Forma Pauperis, and all exhibits on the following parties by the methods indicated:

## 1. Real Party in Interest (by email):

Deputy Attorney General Kristen Chenelia

Office of the Attorney General

600 West Broadway, Suite 1800

San Diego, CA 92101

Email: Kristen.Chenelia@doj.ca.gov

*Method: Electronic mail*

## 2. San Diego County Probation Department (by U.S. Mail):

San Diego County Probation Department
9444 Balboa Avenue, Suite 500
San Diego, CA 92123
*Method: First-class U.S. Mail, postage prepaid*

000162

000045

## 3. Copy to the District Court (FRAP 21(a)(1)):

Hon. Todd W. Robinson

United States District Court

Southern District of California

333 West Broadway, Suite 420

San Diego, CA 92101

Method: EMAIL TO THE CLERK - efile_robinson@casd.uscourts.gov

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on 03/03/26 at Escondido, California.

/s/ Robert Emert
**ROBERT EMERT**
Petitioner, Pro Se

**Outlook**

---

SUBJECT: EMERGENCY PETITION FOR WRIT OF MANDAMUS (Circuit Rule 21-3) — In re Robert
Emert — D.C. No. 3:25-cv-00820-TWR-BLM — Relief Required By April 6, 2026 — IFP/ADA
Electronic Filing Waiver Requested — FRCP 5(d)(2) Demand to District Court — 18 U.S.C.

---

From Rob Emert <robemert@msn.com>

Date Thu 3/19/2026 9:13 AM

To    Emergency CA09StaffAtty <emergency@ca9.uscourts.gov>; adam.gordon@usdoj.gov
      <adam.gordon@usdoj.gov>; Kevin Shead <kshead@fbi.gov>; Nicole Lipka <nlipka@fbi.gov>;
      appeals_cmecf@ca9.uscourts.gov <appeals_cmecf@ca9.uscourts.gov>; sfca9_accessibility@ca9.uscourts.gov
      <sfca9_accessibility@ca9.uscourts.gov>

Cc    CASDdb_efile Robinson <efile_robinson@casd.uscourts.gov>; efile_major@casd.uscourts.gov
      <efile_major@casd.uscourts.gov>; Kristen Chenelia <kristen.chenelia@doj.ca.gov>;
      christopher.beesley@doj.ca.gov <christopher.beesley@doj.ca.gov>

🔗 8 attachments (13 MB)

Doc 1 — Circuit Rule 27-3 Certificate of Emergency — IFPADA Waiver + Personal Declaration — read this first.pdf; Doc 2 —
Index of Complete Record.pdf; DOC3EC~1.PDF; Doc 4 — Court-Stamped Traverse No. 1 — January 16, 2026 — the traverse the
R&R says does not exist.pdf; DOC4AC~1.PDF; Doc 5 — Traverse No. 2 — February 20, 2026 — 25 pages within court's limit —
filed within 51 minutes.pdf; Doc 6 — Emergency Petition for Writ of Mandamus — March 3, 2026.pdf; Doc 7 — DA CPRA Letter
— March 3, 2026 — prosecution file cannot be located.pdf;

---

**Dear Emergency Motions Duty Attorney, District Court Clerk, and U.S. Attorney Gordon:**

This email contains three clearly labeled sections. Each section is addressed to a specific recipient. All
parties are copied simultaneously so the complete record is visible to every institution with authority to
act on it.

This filing qualifies as an emergency under Circuit Rule 27-3. Relief is required before April 6, 2026 to
prevent irreparable harm. The district court appears to have engaged in willful concealment of federal
court records in violation of 18 U.S.C. § 2071 — constituting deliberate record engineering designed to
present this Court with a manufactured record that conceals the district court's constitutional errors.
The proof is documented in six images in the body of this email and in the complete record available
at the link below.

**ATTACHED TO THIS EMAIL — 7 DOCUMENTS:**

* **Doc 1** — Circuit Rule 27-3 Certificate of Emergency — IFP/ADA Waiver + Personal Declaration —
  read this first

* **Doc 2** — Index of Complete Record — 26-document chronological table — 13 consecutive NEVER
  DOCKETED entries

* **Doc 3** — ECF No. 36 — Report and Recommendation — March 16, 2026 — contains the false
  factual findings proven in this email

000164

- **Doc 4** — Court-Stamped Traverse No. 1 — January 16, 2026 — the traverse the R&R says does not exist[164]

- **Doc 5** — Traverse No. 2 — February 20, 2026 — 25 pages within court's limit — filed within 51 minutes

- **Doc 6** — Emergency Petition for Writ of Mandamus — March 3, 2026 (Bates 000001–000109)

- **Doc 7** — DA CPRA Letter — March 3, 2026 — prosecution file cannot be located

Complete record — all documents — OneDrive link below in Section 3.

==== **SECTION 1: TO THE NINTH CIRCUIT EMERGENCY MOTIONS DUTY ATTORNEY** ====

**Three requests. One emergency. April 6, 2026.**

I am Robert Emert, pro se habeas petitioner. Pursuant to Circuit Rules 21-3 and 27-3, I make three requests:

**(1)** Docket number assignment for the Emergency Petition for Writ of Mandamus filed March 3, 2026 — currently undocketed after 15 days. The petition was filed as two documents with continuous Bates numbering 000001–000966: (a) 109-page petition body with Appendices A–E (Bates 000001–000109); (b) 857 pages of Exhibits F–N (Bates 000110–000966), including 663 pages of Peña and Schuck recordings as Exhibit G.

**(2)** IFP/ADA electronic filing waiver pursuant to FRAP 24(a), 28 U.S.C. § 1915, Circuit Rule 27-3, and Title II ADA (42 U.S.C. § 12132). Petitioner is an SSI recipient proceeding IFP in the district court below. Petitioner has suffered two documented STEMI heart attacks. Printing and mailing 966 pages plus required copies and repeated courthouse trips exceeds $1k — financially impossible and medically contraindicated. The fully bookmarked PDF package already transmitted to emergency@ca9.uscourts.gov is objectively more efficient for judicial review than a physical paper stack and constitutes the precise meaningful access required by *Tennessee v. Lane*, 541 U.S. 509 (2004) and *Updike v. Multnomah County*, 870 F.3d 939 (9th Cir. 2017). ADA accommodation requests have been pending and unadjudicated in the district court since January 16, 2026. This Court has discretion to grant this waiver. The facts compel it.

**(3)** Emergency intervention before April 6, 2026 — the deadline for Objections to the district court's Report and Recommendation (ECF No. 36). The attached Circuit Rule 27-3 Certificate contains the complete legal basis, all five Bauman factors, Element 6 documenting developments since March 3, and a sworn personal declaration of the ongoing irreparable harm under 28 U.S.C. § 1746.

==== **SECTION 2: TO THE DISTRICT COURT CLERK AND U.S. ATTORNEY ADAM GORDON** ====

**Fed. R. Civ. P. 5(d)(2): No discretion. Mandatory. The clerk must not refuse to file.**

Unlike the electronic filing waiver requested of the Ninth Circuit above — which rests in that Court's sound discretion — the docketing demand below is non-discretionary. Fed. R. Civ. P. 5(d)(2) uses mandatory language: the clerk "must not refuse to file." No local rule, no practice, and no preference overrides this command.

This Court previously docketed Petitioner's email submission within 24 hours as ECF No. 29 through efile_robinson@casd.uscourts.gov — proof the Court processes email filings through that address. The Court possesses the court-stamped Traverse No. 1 filed in person January 16, 2026. Thirteen filings have

been ignored for 61 days. The Magistrate Judge then issued ECF No. 36 stating Petitioner never filed a traverse.

**Petitioner demands immediate docketing of all 13 filings nunc pro tunc to their original filing dates.**

This ministerial violation is being referred simultaneously to U.S. Attorney Adam Gordon under 18 U.S.C. § 2071 — willful concealment of federal court records, forfeiture of office, permanent disqualification from federal employment — and under 18 U.S.C. § 1505 — obstruction of federal proceedings.

Petitioner respectfully requests that U.S. Attorney Gordon review this referral for investigation. The pattern documented here — systematic non-docketing of 13 filings over 61 days while processing identical AG submissions within 24 hours, culminating in a Magistrate Judge's recommendation to deny based on the absence of filings the clerks refused to process — constitutes deliberate record engineering designed to present the Ninth Circuit with a manufactured record that conceals the district court's constitutional errors. The clerks are not making a filing decision. They are making an appellate outcome decision. That is not a ministerial act — it is obstruction of federal appellate proceedings under 18 U.S.C. § 1505, and it is happening in plain view of every recipient of this email.

## ==== SECTION 3: TO ALL PARTIES — SIX IMAGES THAT CANNOT BE EXPLAINED ====

**What is happening — in plain terms:**

The San Diego DA suppressed more than 47 recorded investigator admissions that the DA never had a case, withheld the FBI threat assessment that cleared Petitioner, suppressed a 32-minute victim interview, and coerced a guilty plea through 90 days of pretrial detention coerced a guilty plea through 90 days of pretrial detention based on a fabricated threat the FBI itself cleared — a threat DDA Balerio never even charged — while withholding the full FBI transcript proving no threat was ever made, and suppressing 14 months of documented PC § 278.7 defense emails. The DA now certifies it cannot locate the prosecution file. The Attorney General certified the court record complete without ever requesting that file. The District Court applied *Pinholster* to exclude the suppressed evidence — but *Pinholster* does not apply because no state court ever adjudicated the Brady claims on the merits. *Dickens v. Ryan*, 740 F.3d 1302 (9th Cir. 2014) (en banc). When that legal argument failed, the district court clerks stopped docketing Petitioner's filings for 61 days in direct violation of Fed. R. Civ. P. 5(d)(2) — while processing the AG's emails within 24 hours through the identical address. On March 16, 2026 — the day the R&R was signed — the clerk confirmed she did not know why 13 filings were undocketed.

The R&R (ECF No. 36, Page 4) states:

"Emert did not file a traverse by January 30, 2026, the final deadline set by Magistrate Judge Major."

"Emert did not respond to the Court's order and did not file a traverse by the deadline imposed by Judge Robinson."

**Six images. Every recipient sees the proof right now.**

the same day, Respondent lodged the state court record, ECF No. 17.

Emert did not file a traverse by January 30, 2026, the final deadline set by Magistrate Judge Major. ECF No. 25. On February 2, 2026, Emert filed a Notice of Supplemental Evidence in Support of Petition for Writ of Habeas Corpus attaching a motion filed in the Ninth Circuit as part of an appeal of a different case. ECF No. 30. On February 11, 2026, District Judge Todd W. Robinson filed an order denying Emert's motion to overrule Magistrate Judge Major's December 11, 2025 discovery order. ECF No. 33. Judge Robinson also extended the deadline for Emert's traverse to March 13, 2026. Id. ("Petitioner MAY FILE an optional traverse, if any, within thirty (30) days of the date of this Order.") (emphasis in original). On February 11, 2026, Emert filed a notice that included a statement that he had filed a traverse on January 16, 2026. ECF No. 34. Because the docket did not reflect that filing, the Court directed Emert to re-file the traverse or clarify which filing was his traverse. ECF No. 35. Emert did not respond to the Court's order and did not file a traverse by the deadline imposed by Judge Robinson. See Docket.

**CAPTION: *The R&R acknowledges Judge Robinson extended the traverse deadline to March 13, 2026 (lines 7-8) — then states in the very next sentence Petitioner did not file a traverse by that deadline (lines 12-13). Note line 10: the R&R acknowledges Petitioner filed a notice stating he had filed a traverse on January 16. The R&R then says he did not respond. See what actually happened in the next five images.***

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

RECEIVED

JAN 16

ROB OMORI,

    Petitioner,

v.

SAN DIEGO PROBATION DEPARTMENT,

    Respondent.

Case No. 3:25-cv-00820-TWR

PETITIONER'S TRAVERSE TO
RESPONDENT'S ANSWER TO PETITION
FOR WRIT OF HABEAS CORPUS

District Judge: Hon. Todd W. Robinson

Magistrate Judge: Hon. Barbara Lynn Major

## EXECUTIVE SUMMARY

The State's own investigator made over 50 recorded admissions that Petitioner would "probably win at trial," had "good cause for jury," and that "the DA's office should never have accepted your case." When asked why the prosecution proceeded anyway, he answered: "You pissed them off."

Under PC § 278.5(a), the technical "victim" is the custodial parent—Petitioner's ex-wife. But even DA1 Pena acknowledged Petitioner had "good cause" to do what he did, which negates the malice element as a matter of law. And the person at the center of this case—Petitioner's son Bryce—told the prosecutor directly: "My dad didn't do anything wrong" and "I want to be his witness." On his 18th birthday, Bryce voluntarily returned to live with Petitioner. He remains there today. That is the ultimate vindication.

This evidence was systematically suppressed. The DA knew about this case for over a year—during which time Petitioner was in direct contact with the DA's office, had no criminal history, posed zero flight risk, and was openly documenting his PC § 278.7 defense. The DA did nothing. Then, when Petitioner's corruption complaint gained traction, they fabricated a "threat" from an 1-13 call that the FBI itself closed—a threat the prosecutor never charged—and used it to cage Petitioner for 90 days with no bail while withholding every piece of exculpatory evidence that would have prevented the coerced guilty plea.

The Attorney General's Answer does not address any of this. Instead, the AG mischaracterizes devastating professional assessments as mere "sympathy," overstates her own judgment on exhaustion, invokes procedural bars that do not apply, and has refused—for over 70 days and despite three court orders—to produce the State's copies of recordings Petitioner already possesses. Her conduct may warrant sanctions under Rule 11.

The silence is not strategy. It is confession.

PETITIONER'S TRAVERSE TO RESPONDENT'S ANSWER TO PETITION FOR WRIT OF
HABEAS CORPUS WITH APPENDIX A

---

**CAPTION:** *Traverse No. 1. Filed in person, January 16, 2026. The court's own RECEIVED JAN 16 2026 stamp is on it. Fourteen days before even the wrong deadline cited in the R&R. The R&R says this does not exist.*

Outlook

Subject: Case No. 3:25-cv-00820-TWR-BLM — Docketing Status of Traverse Filed January 16, 2026 — 15 days filed but still not docketed

From Rob Emert <robemert@msn.com>
Date Sat 1/31/2026 2:08 PM
To   CASDdb_efile Robinson <efile_robinson@casd.uscourts.gov>; Kristen Chenelia <kristen.chenelia@doj.ca.gov>; christopher.beesley@doj.ca.gov <christopher.beesley@doj.ca.gov>
Cc   Nicole Lipka <nlipka@fbi.gov>; Kevin Shead <kshead@fbi.gov>

1 attachment (796 KB)
TRAVERSE 011926 WITH APPENDIX A AND TOC.pdf;

Dear Sarah,

Thank you again for your assistance.

I am writing to inquire about the docketing status of my Traverse to Respondent's Answer. I filed the Traverse in person at the Clerk's Office on January 16, 2026, and served Deputy Attorney General Chenelia (copied here) via email that same day. As of today, January 31, 2026 — fifteen days later — the Traverse does not appear on the docket.

Could you please advise whether there is an issue with the filing and, if so, what I need to do to resolve it?

The document is thoroughly organized with extensive bookmarks for easy navigation. I also provided a courtesy copy to the Court on a USB drive given the complexity and volume of this case.

For the Court's awareness, the Traverse has also been:

- Attached as an appendix to filings in related Ninth Circuit proceedings (Case Nos. 24-5856 and 25-3694)
- Served on the San Diego District Attorney's Public Integrity Unit as an exhibit to a criminal complaint regarding DDA Balerio and DAI Peña
- Provided to the California State Bar in connection with a misconduct complaint
- Transmitted to the FBI for referral to the Public Corruption Unit regarding the San Diego District Attorney's conduct
- Attached again here for convenience

CAPTION: *January 31, 2026 — 2:08 PM. Petitioner emailed the court-stamped copy to efile_robinson@casd.uscourts.gov asking why it had not been docketed 15 days after filing. The AG, AG Supervisor, and two FBI agents were copied. Subject: "15 days filed but still not docketed." Zero response. Never docketed. That same day a different Petitioner email was docketed within 24 hours as ECF No. 29 through the same address.*



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

OFFICE OF THE CLERK
333 WEST BROADWAY, SUITE 420
SAN DIEGO, CALIFORNIA 92101

OFFICIAL BUSINESS

**CAPTION:** *The court issued ECF No. 35 on February 13. This is the envelope it arrived in. Postmarked February 17 — four days after issuance — by the court's own Pitney Bowes meter. Received February 20 — the same day as its own deadline. The court consumed every available response day with its own mailing process and then cited Petitioner's "failure" to respond.*

Outlook

Subject: Case No. 3:25-cv-00820-TWR-BLM — Response to February 13, 2026 Minute Order (ECF
No. 35); Revised Traverse Fw: Subject: Case No. 3:25-cv-00820-TWR-BLM — Docketing Status of
Traverse Filed January 16, 2026 - 15 days filed but still not dock...

From: Rob Emmet <robemmet@proshinom>
Date: Fri 2/20/2026 6:51 PM
To:    CASDdb_efile_robinson <efile_robinson@casd.uscourts.gov>; Kristen Chenella <kristen.chenella@doj.ca.gov>;
       christopher.beesley@doj.ca.gov <christopher.beesley@doj.ca.gov>
Cc:    Nicole Lipka <nlipka@fbi.gov>; Kevin Smith <kdsmith@fbi.gov>
Bcc:   Rob Emmet <robemmet@msn.com>

4 attachments (5 KB):
APPENDIX 022026.odt NOTICE_ADA_ACCOMMODATION_APPENDIX_STATUS 022026.odt PROOF_OF_SERVICE_TRAVERSE and
RELATED FILINGS 022026.pdf TRAVERSE 022026.odt

To: CASddb_efile_robinson@casd.uscourts.gov

CC: Kristen.Chenella@doj.ca.gov; christophur.beesley@doj.ca.gov

Subject: Case No. 3:25-cv-00820-TWR-BLM — Response to February 13, 2026 Minute
Order (ECF No. 35); Revised Traverse and Accompanying Filings

Dear Clerk of Court,

I am writing in response to the Court's February 13, 2026 Minute Order (ECF No. 35). I
only discovered this Minute Order today, February 20, when I checked PACER for
unrelated reasons. As a pro se litigant, I receive all court orders by U.S. Mail, and this
order had not yet arrived by mail as of today — which is the very deadline it imposed.
There was no realistic way for me to receive this order by mail and respond within the
time allowed.

I had no reason to check PACER. Judge Robinson's February 11 Order (ECF No. 33) gave
me until March 13, 2026 to file my Traverse with a 25-page limit. I was working off that
deadline and focused on preparing my revised filing. There was nothing to suggest
another order had been entered two days later requiring an immediate response.

CAPTION: *February 20, 2026 — 6:51 PM. The same day the postmarked envelope arrived. Petitioner
discovered ECF No. 35 by checking PACER and filed Traverse No. 2 with four attachments within 51
minutes. The email body states: "There was no realistic way for me to receive this order by mail and
respond within the time allowed." Petitioner responded anyway. Four attachments including the
traverse, ADA accommodation notice, and proof of service. The AG and two FBI agents were copied.
Never docketed.*

Robert Emert  (760) 612-9328

### U.S DISTRICT COURT SOUTHERN DISTRICT OF CALIFORNIA

ROBERT EMERT, Petitioner

v.

San Diego Probation Department, Respondent

Case No. 3:25-cv-00820-TWR-JAC

**TRAVERSE TO ANSWER**

STATEMENT OF RELIEF REQUESTED AND QUESTION PRESENTED - The United States Supreme Court has already decided this case. This Court has denied discovery, denied an evidentiary hearing, refused to examine five categories of suppressed recordings, and applied Cullen v. Pinholster to exclude the very evidence the prosecution concealed — without ever making the threshold determination that Pinholster itself requires.

The controlling question can be stated in one sentence:

"A rule thus declaring 'prosecutor may hide, defendant must seek,' is not tenable in a system constitutionally bound to accord defendants due process." Banks v. Dretke, 540 U.S. 668, 696 (2004).

That is exactly what happened here. The prosecution suppressed its own investigator's forty-seven recorded admissions that Petitioner would "probably win at trial." It fabricated a threat narrative the FBI cleared. It coerced a guilty plea from a seriously ill man held ninety days without bail, then broke the plea agreement in twenty-two days. It now invokes that coerced plea as a permanent shield — while arguing Petitioner should have produced the hidden evidence from a jail cell.

The Ninth Circuit, sitting en banc, has already rejected this exact framework. Dickens v. Ryan, 740 F.3d 1302, 1321 (9th Cir. 2014). No California court ever reached the merits of the Brady claims. Review is therefore de novo.

If this page does not compel the Court to confront the merits, twenty-five pages will not either. The traverse that follows is filed in compliance with this Court's February 11, 2026 Order (ECF No. 33) and the 25-page limit imposed therein. Petitioner preserves his objection to that Order — including the ruling that the lodgment is "complete" and the categorical application of Pinholster to claims no state court ever adjudicated on the merits. This constitutes the recognized Brady exception to Pinholster: when the State suppresses material evidence, the petitioner is not bound by the corrupted state-court record. Dickens v. Ryan, 740 F.3d 1302, 1321 (9th Cir. 2014).

**CAPTION:** *Traverse No. 2. Filed within 51 minutes. 25 pages within the court's limit. Opens with Banks v. Dretke and Dickens v. Ryan en banc — the controlling authorities the R&R never cited. This is the legal argument the district court refused to read because the clerks refused to docket it.*

---

**Six images. Six documents. All six prove the same thing. Every recipient of this email is now a documented witness to the existence of these filings that the District Court of Southern California is trying to say do not exist.**

This is not procedural. A father is serving probation under a felony conviction obtained through suppressed Brady evidence. His son — autistic — lost his high school diploma, driver's license, and college plan during their separation. All three were restored in seven months home with his father. His sixteen-year-old daughter believes he is a dangerous felon and will not speak to him. He has suffered two STEMI heart attacks under the stress of this prosecution. The DA cannot find the prosecution file. The AG will not get it. The district court will not require it. The clerks will not docket the proof of any of it.

**If the Ninth Circuit does not intervene before April 6, 2026, a final order issues on a record every recipient of this email can see is false.**

*Banks v. Dretke*, 540 U.S. 668, 696 (2004): "A rule thus declaring 'prosecutor may hide, defendant must seek,' is not tenable in a system constitutionally bound to accord defendants due process."

That is exactly what happened here. The proof is in six images above.

---

**ATTACHED — 7 DOCUMENTS:**

1. Circuit Rule 27-3 Certificate of Emergency — IFP/ADA Electronic Filing Waiver + Personal Declaration (28 U.S.C. § 1746) — read this first

2. Index of Complete Record — all 26 documents in the OneDrive folder — chronological table showing what each document proves and docketing status — 13 consecutive NEVER DOCKETED entries

3. ECF No. 36 — Report and Recommendation — March 16, 2026 — contains the false factual findings shown above

4. Court-Stamped Traverse No. 1 — January 16, 2026 — the traverse the R&R says does not exist

5. Traverse No. 2 — February 20, 2026 — 25 pages within court's limit — filed within 51 minutes — also does not exist according to the R&R

6. Emergency Petition for Writ of Mandamus — March 3, 2026 (Bates 000001–000109)

7. DA CPRA Letter — March 3, 2026 — prosecution file cannot be located

**COMPLETE RECORD — ALL DOCUMENTS THE DISTRICT COURT REFUSED TO DOCKET:**

Emert 3-25-cv-00820 — Undocketed Filings — Clerk Ministerial Duty Violation 28 USC 751

- **00** — ECF No. 36 R&R (March 16, 2026) — the document with false findings — appears first

- **01** — Traverse No. 1 — court-stamped RECEIVED JAN 16 2026 — never docketed

- **03B** — January 31 email to clerk — stamped copy attached — zero response

- **04** — Traverse No. 2 — 25 pages — filed within 51 minutes — never docketed

- **09** — Emergency Mandamus Petition — 109 pages — Bates 000001–000109

- **09A** — Mandamus Exhibits F–N — 857 pages — Bates 000110–000966

- **13** — Emergency Motion for Status Conference — never docketed

- **15** — USPS postmarked envelope — February 17 postmark — court mail delay proof

- **Items E & F** — Executive Summary of Objections + Preliminary Highlights — fully drafted — formal filing April 6, 2026

- **Items A & B** — Team RICO (Ninth Circuit) + Welched Plea Deal (SCOTUS No. 25-6794)

- **Item C** — DA CPRA March 3 letter — prosecution file cannot be located

- **Item D** — Selena call transcript — "I don't know" — March 16, 2026

---

Respectfully submitted,

/s/ Robert Emert

Robert Emert, Petitioner Pro Se

2351 Vista Lago Terrace, Escondido, CA 92029

(760) 612-9328 | robemert@msn.com | March 19, 2026

Courtesy copies transmitted simultaneously to: District Court (efile_robinson@casd.uscourts.gov, efile_major@casd.uscourts.gov) for mandatory docketing in Case No. 3:25-cv-00820-TWR-BLM pursuant to Fed. R. Civ. P. 5(d)(2); AG Chenelia; AG Beesley; U.S. Attorney Adam Gordon (adam.gordon@usdoj.gov / (619) 557-5610).